Tony Ashtiani, Pro Se
P.O.Box 12723
Tamuning Guam 96931
(671) 653-5575
(671) 688-4844

Attorneys for Defendants
Mr. David Ledger
Ms. Elyze McDonald

# DISTRICT COURT OF GUAM

## TERRITORY OF GUAM

FILED
DISTRICT COURT OF GUAM
MAY 15 2003
MARY L. M. MORAN
CLERK OF COURT

34

Tony H. Ashtiani,

    Plaintiff,

    Vs.

Continenetal Micronesia Inc,
dba, Continental Micronesia,
Continental Airlines.

    Defendant

)
)
)
)
)
)
)
)
)
)

CIVIL CASE

NO.: 02-00032

**SECOND AMENDED COMPLAINT
UNDER TITTLE VII CIVIL
RIGHTS ACT OF 1964 AS
AMENDED & FAMILY MEDIACL
LEAVE ACT OF 1993 AND
DEMAND FOR JURY TRIAL.**

    1)    This amended complaint is in pursuant within the provisions of title VII civil right act of 1964 as amended,. The Family Medical Leave Act of 1993, (FMLA or "the Act") 29 CFR Part 825.

    2)    Jurisdiction is specially conferred on the court by U.S.C 2000e-5(g), Equitable and other relief are also sought pursuant to 42 U.S.C 2000e-5(g), 102 of civil rights act of 1991 U.S.C 29 & 2615.

ORIGINAL

1  3) Plaintiff, Tony H. Ashtiani is a citizen of the United

2  States of America and resides at 191A Chalan Cabesa Yigo, Guam

3  96929.

4  4) Plaintiff Tony Ashtiani, at all time here in relevant,

5  was a resident of Guam, a person of male gender, and an employee

6  of Defendant Continental Micronesia, Inc. (hereinafter referred

7  to as "Defendant Continental ") at the time of the acts

8  hereinafter set forth.

9  5) Defendant Continental at all times was conducting

10  business as an airline in the territory of Guam, Doing business

11  as "Continental Micronesia INC., and was employer of the

12  plaintiff.     The Defendant Mr. Dixon McKinzie (hereinafter

13  referred to as "Defendant McKinzie"), Defendant Mr. James

14  Hammer, and Defendant Continental, at all times relevant herein,

15  was an employer with the scope of the fair employment practice,

16  and knew or should have known of the conduct of Defendants who

17  inflicted injury upon Plaintiff.

18  6) "Defendant McKinzie" at all times relevant herein, was

19  acting within the scope of his employment as Plaintiff's Manager

20  and director of Human resources at Continental at the time of

21  the acts complained of herein.

22  7) Defendants, at all times herein relevant, were acting

23  within the scope of their employment as employees of Defendant

24  Continental at the times of the acts complained of herein and

25  knew or should have known of the conduct of the other Defendants

Case 1:02-cv-00032     Document 36     Filed 05/15/2003     Page 2 of 36

1  who inflicted injury upon Plaintiff, and Defendants, did nothing

2  to cause the cessation of the injury producing conduct of

3  Defendants Continental, McKinzie and Hammer thereby ratifying

4  and approving said Defendants conduct.

5      8)  On Jan 14, 1985 Plaintiff was hired by Continental

6  Airlines as a Certified Airframe and power plant mechanic

7  Plaintiff steadily rose through the ranks among his peers and

8  was known to be one the best wide body mechanics and later was

9  promoted to a inspector on B-747 and DC-10 In LAX airport.

10     9)  On or about AUG 11, 1992. LAX Manager had asked several

11 DC-10 inspectors and senior mechanics to assist Guam to increase

12 the reliability of the aircraft as LAX was the center facility

13 for the DC-10 fleets.

14     10) Plaintiff in good faith effort and good will was more

15 than happy to help out, thus accepted the assignment in Guam.

16 Plaintiff joint the team of experienced Mechanics in Guam and

17 enjoyed working with many from other different ethnicity and all

18 walk of life.

19     11) Plaintiff had a civil duty to provide safe departure

20 to the friendly community of Guam thus plaintiff would stop a

21 unsafe aircraft for leaking oil from the gear box on GE engine,

22 even though airline had program of "HOC" High oil consumption,

23 plaintiff despite of supervisor false advise stopped the flight

24 due to a cracked Gearbox which was loosing too much oil and it

25 was out of the limitation of the "HOC" (high oil consumption)

Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 3 of 36

1 program, the Chief pilot that was flying the aircraft after

2 seeing the cracked gearbox presented the plaintiff a letter of

3 recommendation due to the plaintiff inspection and seeing the

4 crack by naked eye. **EXHIBITS A.** plaintiff received many other

5 appreciative letters from pilots **EXHIBIT B.** through out his

6 employment. Plaintiff certainly did his job to the best of his

7 ability with assertiveness and confident.

8    12) On or about 1998 to 1999 new management was in place

9 and a new breed had came from Houston with different style of

10 running the show, they fired and transferred a few with new

11 breed in place, with previous existing favoritism that was in

12 place, disparate treatment and discrimination had taken over and

13 hostile work environment was born. Under the new management the

14 work assignment had gotten heavier and harder for the minority

15 as they were treated with more of the unwelcome eye in

16 particular, there was always hostility between the Parent

17 company, CO and subsidiary CMI.

18    13) Plaintiff had complaint to both Mr. Bill Meehan and

19 Dixon McKinzie and nothing was done thus retaliation had taken

20 place.

21    14) On month of Jun 2001, Plaintiff had the right to

22 exercise his rights under the FMLA, Even though plaintiff had

23 accumulated more than 1600 hours of sick leave the maximum

24 allowed to use was 1000 hours. While plaintiff had used few days

25 to attend an immediate family member's needs. Defendant used a

Case 1:02-cv-00032   Document 36   Filed 05/15/2003   Page 4 of 36

1   two consecutive no call/no show on Jun 23 and Jun 24, 2001 as

2   the specific reason of the termination and ended plaintiff's

3   employment after 17 years of dedicated service.

4       15) Defendant is in binding and married the specific

5   reason in the letter dated Jul 03, 2001 and as upheld in state

6   and federal courts, Defendant shall not reserve any rights in

7   changing the specific reason of termination and enter the back

8   door since it can not enter the front door.

9       16) The action of the employer was shocking to many

10  mechanics and in deed offensive, devastating and traumatic

11  experience for the plaintiff.

12      17) Plaintiff shortly after suffered financial hard ship

13  and was forced to withdraw his retirement 401-k plan after 9/11

14  in Dec, 2001 which had taken a heavy hit and was worth 46

15  percent of its original value, as plaintiff was wrongfully

16  terminated and lost source of income and suffered negative

17  publicity by the termination, needed to meet certain payments to

18  pay off his loans as plaintiff had responsibility to meet his

19  obligation to the financial institutions.

20

21      18) Defendant Continental owed a duty of due care to

22  Plaintiff.

23

24

25

Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 5 of 36

## FIRST CAUSE OF ACTION

### *Intentional Infliction of Emotional Distress*

19) Plaintiff re alleges here as though fully set forth all of the allegations contained in paragraphs 1 through 18.

20) Defendant knew or should have known that its conduct and that of its management personnel acting within the scope of their employment could cause Plaintiff severe emotional distress. Plaintiff's chronic depression and posttraumatic stress syndrome were the foreseeable results of Defendant's conduct.

21) Negligently creating a hostile work environment for an employee through verbal abuse, imposition of totally unreasonable job assignments, requirements, refusing to investigate Plaintiff's complaints in any meaningful manner when harassment was brought up to human resources manger at the time Defendant McKinzie, eventhought the name of the harasser and witnesses were given, McKinzie asked the plaintiff to investigate, while the witnesses were a phone call away. McKinzie's body language and tone of voice was insulting and uncomfortable. Witnesses whom spoke to me did not want to speak to McKinzie, as I was told by them retaliation by McKinzie was enviable. The person committing the harassing conduct described to Mr. McKinzie were the direct and proximate causes of this severe emotional distress plaintiff suffered and continues to suffer as the cause of retaliation as plaintiff wanted to

1  enforce public policy so harmony and enjoyable work environment

2  could be produced for everyone.

3

4

5

6  ### SECOND CAUSE OF ACTION

7  ### _Negligent supervisor_

8

9  22) Plaintiff repeats and re alleges by reference each and

10  every allegation contained in paragraphs 1 through 21 and

11  incorporates the same herein as though fully set forth.

12  23) Plaintiff assertion of negligent supervision arises

13  from many cover-ups, which occurred, between Maintenance

14  supervisors, which will be proven during the trial. Defendant

15  Continental knew, or reasonably should have known, that

16  Maintenance supervisors were engaging in the unlawful behavior

17  described herein and above.

18  24) Defendant Continental knew, or reasonably should have

19  known, that Mr. Hammer was not fit to act as the grievance

20  officer to hear, investigate, and remedy complaints in wrongful

21  termination, harassment in the work place, particularly abusive

22  behavior and racial harassment alleged herein and above,

23  conflict of interest indeed acting as administrative hearing

24  officer with no experience in the field.

25  25) At all times material herein, Defendant Continental

23  knew or should have known that the conduct, acts, and failures

24  to act of all defendant's supervisors, agents, and employees as

25  described herein above violated Plaintiff's rights under,

Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 7 of 36

1 federal statutes, enacted to protect persons such as plaintiff

2 from the aforementioned harassment and discrimination.

3 26) At all times material herein Defendant Continental

4 knew, or in the exercise of reasonable care should have known

5 that unless Defendant intervene to protect Plaintiff, and to

6 adequately supervise, prohibit, control, regulate, discipline,

7 and/or otherwise penalize the conduct, acts, and failures to

8 act, over all of defendants supervisors, as alleged herein,

9 above, said conduct, acts, and failures to act would continue,

10 thereby subjecting Plaintiff to personal and bodily injury and

11 forced plaintiff in lifting heavy objects into the aircraft

12 cargo bay by means of unreasonable assignment.

13 27) Defendant McKinzie in a official capacity failure to

14 so protect, supervise, and intervene would have the effect of

15 encouraging, ratifying, condoning, exacerbating, increasing and

16 worsening said conduct, acts, and failures to act.

17 28) At all times material herein, Defendant Continental

18 had the power, ability, authority, and duty to so intervene,

19 and/or penalize such conduct of defendants supervisors and

20 managers described above.

21 29) Despite said knowledge, power, and duty, Defendant

22 Continental negligently failed to act so as to prevent,

23 supervise, prohibit, control, regulate, discipline, and/or

24 penalize such conduct, acts, and failures to act, or to

25 otherwise protect Plaintiff.

Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 8 of 36

1    30) As a direct and proximate result of the failure of

2 Defendant Continental to protect Plaintiff, and to adequately

3 supervise, prohibit, control, regulate, discipline, and/or

4 otherwise penalize the conduct, acts, and failures to act of all

5 other defendants and/or supervisors and managers as alleged

6 herein above, said conduct, acts, and failures to act.

7    31) At all times materials herein, the failure of

8 Defendant Continental to protect Plaintiff, and to adequately

9 supervise, and/or otherwise penalize, the conduct, acts and

10 failures to act of all defendants and/or supervisors, or

11 employees Plaintiffs right under federal statutes were being

12 violated.

13    32) As a direct and proximate result of Defendant

14 Continental actions, Plaintiff suffered and continues to suffer

15 the damages as herein before alleged.

16

17    ___THIRD CAUSE OF ACTION___

18    *Unlawful Discrimination Based Upon Race and National Origin*

19    33) Plaintiff hereby re alleges here as though fully set

20 forth all of the allegations contained in paragraphs 1 through

21 32 above.

22    34) At all times material hereto, federal statute civil

23 rights act of 1964 as amended and USC-2000-e5. Which prohibited

24 Defendant Continental, from discriminating against any employee

25 on the basis of race, color or ancestry. Said laws required

26 Defendant Continental to refrain from discriminating against

Case 1:02-cv-00032   Document 36   Filed 05/15/2003   Page 9 of 36

1  Plaintiff on the basis that he was a minority among the majority

2  group.

3    35)  At all times during his 17 years with Defendant

4  Continental, Plaintiff performed his duties in an exemplary

5  fashion as hereinabove set forth.

6    36)  During the period described above, and through the

7  acts, intent, and behavior of defendant as alleged above,

8  Plaintiff was terminated and forced from his position without

9  good cause.

10    37)  Plaintiff believes in thereupon alleges that a

11  substantial factor in defendant's decision to terminate him from

12  his position was because he was a minority and defendants'

13  assumption that plaintiff would not stand up for his rights.

14  Such discrimination has resulted in the damage and injury to

15  Plaintiff as alleged above.

16    38)  Plaintiff is informed and believes in thereupon

17  alleges that the discriminatory practice against him is part of

18  a long course of conduct in scheme of conduct even towards the

19  Philipinos, and Guamanians and that therefore Defendant

20  Continental has engaged in other discriminatory practices which

21  Plaintiff is fully aware of and will be discussed in the trial.

22    39)  As a direct, foreseeable, and proximate result of

23  Defendant's discriminatory acts, Plaintiff has suffered and

24  continues to suffer the humiliation, embarrassment, negative

25  publicity, mental and emotional distress as alleged above, all

Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 10 of 36

1 to his damage, the precise amount of which will be proven at

2 trial.

3   40)   Defendants committed the acts herein alleged

4 maliciously, fraudulently, and oppressively with the wrongful

5 intention of injuring Plaintiff, and acted with improper and

6 evil motive amounting to the malice, offensive, outrageous,

7 atrocious, utterly, and intolerable in a civilized society.

8   41) Defendant McKinzie had first hand knowledge yet ignored

9 the discrimination reported to him and incautious disregard of

10 Plaintiff's rights. Because the acts taken toward Plaintiff were

11 carried out by managerial employees acting in a despicable,

12 deliberate, cold, callous, and intentional manner in order to

13 injure and damage Plaintiff, Plaintiff is entitled to recover

14 punitive from Defendants in the amount according to proof.

15

16 ***FOURTH CAUSE OF ACTION.***

17

18 ***INTENTIONAL DISCRIMINATION AND INTENTIONAL RETALIATION POST 9/11***

19   42)   Plaintiff incorporates herein by reference, as though

20 fully set forth, the allegations at paragraph 1 through 41.

21   43) <u>Plaintiff in fourth cause of action proves despite the</u>

22 <u>smoking gun there is a thick cloud of smoke dissipating from the</u>

23 <u>gun,</u> which secures both first, second and third cause of actions

24 based on solid concrete evidence from the Continental legal

25 department in Houston, Texas., Covering-up discrimination with no

Case 1:02-cv-00032     Document 36     Filed 05/15/2003     Page 11 of 36

1  regards for the rights of minorities in Guam despite the joint

2  statement from the EEOC AND DEPARTMENT OF JUSTICE. **EXHIBIT C.**

3  plaintiff asserts if such activity occurs in the Guam it

4  certainly happens in else where against the Guamanian, of

5  Chamorro ethnicity employed with Continental Airlines.

6      44) Plaintiff had first hand knowledge of his termination

7  on July 12, 2001, by a certified letter USPS mail.

8      45) Plaintiff field discrimination charge with E.E.O.C.,

9  after receiving unjust dismissal notice, Plaintiff requested his

10 case file from EEOC. it took several months for the Plaintiff to

11 put 631 pages of documents in sequence by dates and events. The

12 plaintiff noticed investigators recommendation dated July 11,

13 2002. This recommendation was following a chain of events of

14 three letters.

15      46) June 14, 2002 letter from EEOC investigator to

16 Continental Airlines, requesting statistical data. **EXHIBIT D.**

17      47) June 18, 2002 Intentional delay to accomplish July 3,

18 2001 as pivoting of respond to EEOC. **EXHIBIT E.**  Noted that Jul

19 03 2001 was the date of termination letter of plaintiff.

20      48) July 10, 2002 defendants concealed crucial information,

21 and statistical data in reference to number of terminated

22 employees, all minorities, by shifting months, and not

23 responsive to EEOC requests of specific months in question.

24 **EXHIBIT F.**  Defendant alters the initial request of EEOC June

25 1999 and modification made to 6 months ahead to January 1, 2000.

Case 1:02-cv-00032   Document 36   Filed 05/15/2003   Page 12 of 36

1 (Skipping 6 months) Defendant withheld information in reference

2 to statistical data to conceal the identity of Mr. Ali Mahdi

3 which was released in December 1999. African-American, 44 years

4 old, male, Muslim.

5 49) Defendant's bold legal strategy was a big risk between

6 no cause finding and now intentional discrimination and

7 intentional retaliation post 9/11. The intentional act generates

8 from Cover-up which similar cases will be cited during the

9 trial.

10 50) On July 11, 2002 EEOC Investigator submits his actual

11 findings of desperate treatment theory. **EXHIBIT G.**

12 51) Defendant interfering with the Federal Government

13 investigation procedures by shifting months back and forth, with

14 no regards for EEOC and Plaintiff's rights.

15 52) Moreover, On July 10, 2002 Respondent alters the ending

16 period of statistics from June 2001, to July 3, 2001, which its

17 original motive of change of this date was generated on the

18 letter dated June 18, 2002. More importantly, this had played an

19 optical illusion to distract investigator's recollection in

20 reference to (July 03). U.S. Federal Investigator had requested

21 statistics between June 1999 to June 2001. no mention by federal

22 investigator of July 3, 2001.

23 53) Intentional discrimination and intentional Retaliation

24 for filing charges against Defendant Continental.

25

1    54) Plaintiff was emotionally distressed following his

2    findings, for several months thereon after, this conduct is

3    shocking and offends the common man's conscience, no doubt

4    Defendant Continental had acted recklessly, with malice and

5    accordingly willful misconduct.

6    55) Defendant had already terminated Mr. Bruce Lee on or

7    about June 6, 2001. Chinese National, also a minority in

8    Plaintiff's Department, defendant does a touch and go with his

9    name and never mentioned that he was also terminated. Once again

10    defendant interfering with federal investigation.

11    56) If in fact, correct information was presented, pattern

12    of practice had been established which is what the investigator

13    was looking for.

14

15    **FIFTH CAUSE OF ACTION**

16    ***VIOLATION OF FEDERAL STATUTE OF FAMILY MEDICAL LEAVE ACT OF 1993***

17    57) Plaintiff realleges here as though fully set forth all

18    of the allegations contained in paragraph 1 through 56.

19    58) Plaintiff was forced to take care of his sick

20    immediate family member thus called his employer and informed

21    the supervisor on duty of the circumstances.

22    59) Plaintiff upon return to work received a FMLA

23    certificate and a letter from Supervisor on Jun 26 2001 stating

24    return the document within 15 days as matter of law. Rather

25

Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 14 of 36

1  employer awaiting the pending certificate terminates the

2  plaintiff on Jun 28, 2001 two days later.

3    60) While other part of the country "Family Sick Leave"

4  bill becomes a law. California passes a law to offer family

5  leave to workers. "I do not want Californians choosing between

6  being good parents and good employees". Said Governor Gray

7  Davis. Dept. of labor Title 29 Chapter 28 Sec 2653.

8  Encouragement of more Generous Leave policies. **JOINT EXHIBIT H.**

9    61) It is certainly unclear why the fifth largest airline

10  in the U.S continues depriving good parents of their rights of

11  **UNPAID FMLA.** Plaintiff will prove beyond the reasonable doubt

12  that violation of federal statute occurred.

13

14

15                  *CONTSTRUCTIVE TERMINATION*

16                  <u>SIXTH CAUSE OF ACTION</u>

17    62) Plaintiff re alleges here as though fully set forth all

18  of the allegations contained paragraphs 1 through 61.

19    63) Plaintiff had called work on Jun 23rd and 24th of 2001,

20  prior to the shift start. Defendants' maintenance supervisor

21  acting in official capacity of the defendant withheld and

22  concealed the information and regarded the plaintiff as two

23  consecutive days no-call/no-show. Mr. Joe pangelinan Statement

24  dated Sep 13th 2002. Proves plaintiff as credible and truthful.

25  **EXHIBIT I.**

Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 15 of 36

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## SEVENTH CAUSE OF ACTION

### *Wrongful termination*

64) Plaintiff hereby realleges here as though fully set

forth all of the allegations contained 1 through 63

65) Plaintiff asserts that wrong full termination occurred

due to fact supervisors in coordinated effort had withheld

information from each other or they knew and did not tell the

truth acted in ill will, false motive, malice and willful

misconduct will be proven in trial.

## EIGHTH CAUSE OF ACTION

### *SALES OF FRAGULANET INSURANCE POLICIES BY DEFENDANT TO EMPLOYEES.*

66) Plaintiff hereby alleges here as though fully set forth

all of the allegations contained in paragraphs 1 through 65 and

hereinafter through paragraph 72.

67) Plaintiff in his years of employment always had

selected the highest amount of accidental death life insurance

of $500.000 as plaintiff was working in the heights from time to

time and was worried if something happens to him his kids will

get good education, with something to live on for his spouse,

### EXHIBIT J.

68) Plaintiff received series of documents that were

intentionally delayed by defendants' Human resources benefit

dept, document which was most suspicious had the top of it moved

up on the copy machine to cover-up something, and the amount

1  $ 500.000 enlarged in two places of the document. **EXHIBIT K.**

2

3      69) Plaintiff after looking at this document for long time,

4  searched for the hidden motive and started searching the web,

5  and found the phone number of the insurance company that was

6  producer of the original in New York. **EXHIBIT L.**

7      70) Plaintiff after a through investigation found out that the

8  insurance policy was not even valid in Guam, and was only valid

9  in the fifty states and the maximum amount of the policy was $

10  250.000,00 **EXHIBIT M.** and a benefit dept's employee had changed

11  the amount to $ 500.000,00 so that it would match the policy

12  that employee had paid for, as evident in previous EXHIBIT K.

13      71) Plaintiff became aware of discrimination in employee

14  benefits. **EXHIBIT N.**

15      72) Plaintiff is a key witness that this act did not only

16  happened to the plaintiff but there are families of the deceased

17  employees of Guamanians and pacific islanders ethnicity that are

18  suffering today, rater than defendant paying these families

19  their claim of these policies, defendant denied the amounts by

20  switching documents and put the money right in their pocket

21  books as additional profit in the corporation, while these

22  families and their children being deprived of their benefits and

23  being discriminated by the wealthy corporation such as

24  defendants.

25

WHEREFORE, Plaintiff prays for judgment against Defendant as follows:

1) In all causes of action, for judgment against Defendant Continental for compensatory damages, including lost wages, lost employee benefits, vacation benefits, future medical expenses, mental and emotional distress, and other special and general damages according to proof.

2) For an award of punitive damages on the first, second, third, fourth, fifth, sixth, seventh and eight causes of action.

3) For cost of suit and the time of pro se plaintiff.

4) For whatever further relief this court deems just.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial of twelve persons on each count of this second Amended Complaint. Plaintiff prays the District Court of Guam grants this Pro Se Litigant his days in the court of law to find truth and justice, furthermore, Plaintiff prays more and more that the Honorable chief Judge JOHN S. UNPINGCO grants the Plaintiff Jury trial.

Date: MAy/15/2003          By _____

                                    Tony H. Ashtiani

                                    Pro se Plaintiff

**Continental** ◐

Continental Airlines, Inc.
Flight Operations
Terminal Box 11
Honolulu International Airport
Honolulu HI 96819

TO:    Bud Perry

DATE:  April 22, 1994

SUBJ:  Tony Ashtiani
=====================================================================

Dear Bud:

I am writing to inform you of the outstanding support I received
recently from one of your mechanics, Mr. Ashtiani.

I was the captain on Flt. 961 the 23 of March GUM/NRT. ship #042.
Shortly before departure Mr. Ashtiani advised me of a possible
problem with the #3 engine which was on a H.O.C. watch.
Throughout the delay Mr. Ashtiani kept me informed of the
situation, took me down to the #3 engine and showed me the
cracked gearbox (the cause of the excessive leak).

Could you please convey to Mr. Ashtiani my appreciation for
professionalism throughout the delay.

Sincerely,

*(signature)*

Craig Browning
Acting Chief Pilot (Continental)
Guam



AUGUST 28, 1994

CONTINENTAL MICRONESIA
MAINTENANCE
INTERNATIONAL AIRPORT
TAMUNING, GUAM

DEAR SIR:

I WOULD LIKE TO RECOGNIZE YOUR MECHANIC TONY ASHTRAINI FOR HIS
CONTINUING DEDICATION TO HIS DUTIES AS A LINE MECHANIC FOR
CONTINENTAL MICRONESIA.

ON AUGUST 5, 1994 I WAS THE CAPTAIN ON A DC10-10 OPERATING FLIGHT 973
FROM GUAM TO NAGOYA. JUST AS WE WERE BEGINNING TO PUSH OFF THE
GATE IN GUAM TONY SAW A PROBLEM IN THE AREA OF THE RIGHT MAIN GEAR.
HE INSISTED ON STOPPING THE PUSH BACK AND CHECKING OUT WHAT HE SAW.
THE AIRCRAFT WAS LEAKING FUEL FROM AN INSPECTION PLATE ON THE WING
SURFACE ALLOWING IT TO FLOW DOWN ONTO THE WHEEL AND BRAKE
ASSEMBLY. AS A RESULT OF HIS OBSERVATION WE CORRECTED THE PROBLEM
AND ADDED GREATLY TO SAFETY OF OUR FLIGHT OPERATION.

I HAVE WORKED WITH TONY ON OTHER OCCASIONS AND I HAVE OBSERVED HIM
TO BE A REAL TEAM LEADER WHO IS AN EXPERT ON THE AIRCRAFT AND A REAL
ASSET TO THE MAINTENANCE DEPARTMENT. I WOULD LIKE TO TAKE THIS
OPPORTUNITY TO PERSONALLY THANK HIM, AND TO ALERT HIS SUPERVISOR
OF HIS OUTSTANDING DEDICATION AND KNOWLEDGE. I LOOK FORWARD TO
WORKING WITH TONY IN THE FUTURE.

SINCERELY,

STEVE BOWMAN
CAPTAIN DC10

CC: OPERATIONS

*The U.S. Equal Employment Opportunity Commission*

FOR IMMEDIATE RELEASE
Monday, November 19, 2001

CONTACT:  Ann Colgrove
          Reginald Welch
          (202)  663-4900
TTY:      (202)  663-4494

# EEOC AND DEPARTMENTS OF JUSTICE AND LABOR ISSUE JOINT STATEMENT AGAINST WORKPLACE BIAS IN WAKE OF SEPTEMBER 11 ATTACKS

WASHINGTON - The U.S. Equal Employment Opportunity Commission (EEOC) and the U.S. Departments of Justice and Labor today issued a joint statement reaffirming the federal government's commitment to upholding the federal anti-discrimination laws in the aftermath of the events of September 11. The statement, posted on the Commission's Web site (www.eeoc.gov), focuses on preventing and redressing incidents of harassment, discrimination, and violence in the workplace, including such acts directed toward individuals who are, or are perceived to be, Arab, Muslim, Middle Eastern, South Asian or Sikh.

"As leaders within the principal federal agencies responsible for enforcing the laws against discrimination in employment, we are issuing this joint statement to reaffirm the federal government's commitment to the civil rights of all working people in our fight against terrorism," reads the document. "These agencies together continue to intensify their efforts to combat discrimination based on religion, ethnicity, national origin, or immigration status in the workplace."

The joint statement is signed by Cari M. Dominguez, Chair of the EEOC; Ralph F. Boyd, Jr., Assistant Attorney General for Civil Rights; and Charles E. James, Sr., Deputy Assistant Secretary of Labor for the Office of Federal Contract Compliance Programs.

"The Commission, along with its sister agencies, is committed to safeguarding the civil rights of all America's working people," said EEOC Chair Dominguez.

The three agencies point out that they are closely coordinating and increasing their joint efforts to provide information, public education, guidance, and outreach to a broad range of stakeholders across the country including employers, employees, civil rights advocacy groups, religious and national origin communities, and the general public. While the statement notes that "many employers, labor organizations, and employee groups have taken swift action already," it also urges victims of workplace bias to report such incidents promptly to ensure timely investigations."

Individuals may file charges of employment discrimination in person, by mail or by telephone at the nearest EEOC office. If there is not an EEOC office in the immediate area, individuals may call the following toll free phone numbers: 1-800-669-4000 or 1-800-669-6820 (TTY number for

Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 21 of 36

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Honolulu Local Office

300 Ala Moana Boulevard, Room 7-127
Honolulu, HI 96850-0051
TTY (808) 541-3120
(808) 541-3131
FAX (808) 541-3390

June 14, 2002

Via US Mail and Fax

Continental Airlines, Inc.
Legal Department
ATTN: Louid Obdyke, Esq.
P.O. Box 4607
Mail Code HQSLG
Houston, Texas 77210

RE: Tony Ashtiani v. Continental Micronesia, Inc.
EEOC Charge No.378-A2-000115

Dear Obdyke,

In order to continue with the investigation, our office will need the following information.

1) Provide a list of all Respondent's aircraft mechanics who were no call/no show for two consecutive days between June 1999 to June 2001. Identify by

a. name
b. ethnic identity
c. date of hire
d. date(s) of no call/no show
e. date of discharge

2) Provide all relevant documentation for each employee's discharge. If the employee was not discharged, explain why.

Provide the requested informed by June 21, 2002. If you have any questions, contact me at 808-541-3721. Thank you.

Sincerely,

Raymond J. Griffin Jr.

Investigator

**Continental Airlines**

Continental Airlines, Inc.
41st Floor HQSIG
1600 Smith Street
Houston TX 77002

Tel 713 324 5000
Fax 713 324 5161

IMANAGE 45020v1

June 18, 2002

VIA FACSIMILE: 808-541-3390

Mr. Raymond J. Griffin, Jr.
The Equal Employment Opportunity Commission
Honolulu Local Office
300 Ala Moana Blvd., Room 7-127
Honolulu, HI 96850

Re:  Tony H. Ashtiani, Charging Party
     Continental Micronesia, Inc., Respondent
     Charge No. 378A200115

Dear Mr. Griffin:

I am in receipt of your request for additional information dated June 14, 2002. I am unable to respond by June 21 due to the fact that the company's director of human resources is out of the office until June 24, and then I will be "on the road" until July 1, 2002. We will gather appropriate comparative information and will forward it on July 3, 2002.

Again, I look forward to working with you in order to assist in a closing this charge with a finding of no cause for discrimination.

Sincerely,

Louis K. Obdyke
Senior Attorney
(713) 324-2218



**Continental**
**Airlines**

Continental Airlines, Inc.
41st Floor HQSMG
1600 Smith Street
Houston TX 77002

Tel 713 324 5000
Fax 713 324 5161

July 10, 2002

Mr. Raymond J. Griffin, Jr.
The Equal Employment Opportunity Commission
Honolulu Local Office
300 Ala Moana Blvd., Room 7-127
Honolulu, HI 96850

Re:    Tony H. Ashtiani, Charging Party
       Continental Micronesia, Inc., Respondent
       Charge No. 378A200115

Dear Mr. Griffin:

In response to your June 14 request for supplemental information, CMI advises that two maintenance employees other than Mr. Ashtiani were disciplined during the time period of January 1, 2000 to the date of Mr. Ashtiani's discharge. Other divisions within the company have additional disciplinary actions for No Call/No Show, but checks were made only within the maintenance (Tech Ops) department as that is where Mr. Ashtiani worked.

Mr. Bruce Lee, Chinese/American, was deemed a No Call/No Show in May 2000, but upon investigation and the employee's explanation (death in the family and qualified FMLA leave), Mr. Lee's disciplinary action was retracted. A second No Call/No Show involved a mechanic assigned to fly check flights for maintenance checks, Mr. Edwin Antonio, Asian-Filipino/American. Mr. Antonio failed to show-up for a scheduled check flight and failed to call in - he was issued a written warning based on no prior disciplinary action in his file, unlike Mr. Ashtiani's extensive disciplinary history. The Guam maintenance supervisors are checking for other possible No Call/No Show disciplinary actions, but since the company does not keep a "running log" for discipline, they must look at each individual personnel file - including all those discharged during the time period (files now in storage).

Ashtiani EEOC Response
July 10, 2002
Page 2

CMI hopes this information supports its decision to terminate Mr. Ashtiani for
reasons other than his national origin, or any other discriminatory reason, and that you
will be able to find no cause for discrimination.

Sincerely,

Louis K. Obdyke
Senior Attorney
(713) 324-2218



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Honolulu Local Office

300 Ala Moana Boulevard, Room 7-127
Honolulu, HI 96850-0051
TTY (808) 541-3120
TTY (808) 541-3131
FAX (808) 541-3390

July 11, 2002

TO:     File

FROM: Raymond J. Griffin Jr., Investigator

RE: Tony Ashtiani v. Continental Micronesia, Inc.
EEOC Charge # 378-A2-00131

Investigator received additional information from Respondent on July 11, 2002. (See Response)



Between May 30, 2002 to June 28, 2002, Investigator received additional information from Charging Party to review. Charging Party's submitted witnesses' contact numbers and statements. Several witnesses attest of how Respondent's treated "locals" better than "non-local" in regard to terms and conditions of employment. **However, there was no new evidence found that CP was discriminated against of his national origin, Iranian.** I respectfully recommend case dismissal.

# California to offer paid family leave to workers

Pacific Daily News, Wednesday, September 25, 2002 guampdn.com

LOS ANGELES (AP) — Gov. Gray Davis signed a law Monday that makes California the first state to offer workers paid family leave.

The law — financed by an employee payroll tax — allows workers to take six weeks off to care for a newborn, a newly adopted child or ill family member. Employees will be eligible to receive 55 percent of their wages during their absence, up to a maximum of $728 a week.

"I don't want Californians to choose between being good parents and good employees," said Davis, a Democrat running for re-election in November.

Supporters hope the bill will serve as a nationwide model, while business groups denounced it as too costly for employers.

Federal law grants up to 12 weeks of unpaid leave for workers at businesses with more than 50 employees.

The paid-leave law is the latest of several groundbreaking social and environmental laws passed in California this year. Earlier, California became the first state to regulate greenhouse gas emissions. On Sunday, Davis signed a bill to allow stem cell research in the state — a move that runs counter to Bush administration policy.

Under the new paid-leave program, workers will be allowed to start taking time off as of July 1, 2004.

The program will be funded entirely by employee payroll deductions, averaging about $27 a year and ranging up to $70 a year for those earning more than $72,000 annually.

About 13 million of California's 16 million workers will be eligible.

Businesses with fewer than 50 employees are not required to hold a job for a worker who goes on paid family leave, according to the AFL-CIO, which helped write the bill.

Nevertheless, AFL-CIO President John Sweeney called the bill landmark legislation and said he hopes other states will follow suit.

Twenty-seven other states, including Massachusetts, New York, New Jersey and Washington, have introduced similar legislation.

GOP gubernatorial candidate Bill Simon, Davis' rival in the November election, called the bill a "one-size-fits-all mandate" that will prove too costly for small businesses.

He said in a statement that workers should be able to decide whether to take part, and incentives should be offered to employers. "This avoids taxing every employee and employer in the labor force in order to provide a benefit not everyone wants," he said.

California business groups had tried to kill the bill.

"It's very discouraging, and California small businesses are going to pay the price for this bill," said Julianne Broyles, a lobbyist for the California Chamber of Commerce.

"They are going to have to compete with similar businesses in other states that don't have to contend with this."

She said the law fails to address the real cost to employers, which includes paying for overtime, replacement workers and training to fill in for those who go on family leave.

Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 27 of 36

**US CODE COLLECTION**

Prev | Next

## Sec. 2653. - Encouragement of more generous leave policies

Nothing in this Act or any amendment made by this Act shall be construed to discourage employers from adopting or retaining leave policies more generous than any policies that comply with the requirements under this Act or any amendment made by this Act

Search this title:

[ Search Title 29 ]

Notes
Updates
Parallel authorities
(CFR)
Topical references

Prev | Next

about us

© copyright

get e-mail



Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 28 of 36

To E.E.O.C. Director:

Dear Mr. Riere,

My name is Joe Pangelinan. At my Son Will Certify that Tony Colthirn did call on June 23, 2001 at approx 1250 pm. That Tony informed me he will not be in due to illness. If his Boss would not be in on Jun 23 & 24th 2001, if you have any questions you contact one at 687-2305

Joseph W. Pangelinan

555-9124/7

Hm # 789-1946



B3697'02

# Continental Micronesia

## Benefit Confirmation Sheet

4/6/2001

**Name:** ASHTIANI, HAMID (TONY)          **Station/Dept:** GUM/MX

**Address:** P.O. Box 12723               **DOH:** 1/14/1985

Tamuning, GU 96931                        **DOB:** 10/6/1963

**SSN:** 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

2AB

**The following are your current benefit elections and monthly deductions. Please notify the Benefits Department immediately of any discrepancies. You may only change your benefit elections during Open Enrollment or within 30 days of a qualified lifestyle event.**

| Benefit Option | Benefit Summary | Per Month | Dependents | Other Info/Comments |
|---|---|---|---|---|
| *Basic Life* Employee | 54,000 | Paid by CMI | | |
| *Supplemental Life* Supplemental Life | 162,000 | 11.34 | | |
| *Spouse Supplemental Life* | | | | |
| *Long-Term Disability* | Enrolled | 6.25 | | |
| *Accidental Death and Dismemberment* | 500,000 EF | 12.50 | | |
| *Vision* | | | | |
| *Medical* | Not Enrolled | | | |
| *Dental* | Not Enrolled | | | |
| TOTAL | | 30.09 | | |

# AMERICAN HOME ASSURANCE COMPANY

NEW YORK, NEW YORK · A CAPITAL STOCK COMPANY · FOUNDED 1853

## APPLICATION FOR ACCIDENT INSURANCE UNDER CONVERSION PRIVILEGE

APPLICATION is hereby made to the American Home Assurance Company for Accident Insurance.

| Name of the Insured (Last) | (First) | (Middle Initial) | Date of Birth |
|---|---|---|---|

Address

| Name of Group Policyholder | | Policy Number | |
|---|---|---|---|

Amount of Principal Sum
GTP 804 92 77

| Name and Address of Beneficiary | Relationship |
|---|---|

Date of Termination of Employment

Date _____ 19____

Signature
of
Applicant

## RATES

### ACCIDENTAL DEATH, DISMEMBERMENT, OR LOSS OF SIGHT BENEFITS

Amounts Available: $50,000.00 to $500,000.00

### ANNUAL PREMIUM PER $1,000.00 PER APPLICATION

**ALL STATES (EXCEPT NEW YORK AND MASSACHUSETTS)**

| | Ages 16 - 62 | Ages 63 - 69 |
|---|---|---|
| | $1.25 | $3.00 |

**NEW YORK STATE RESIDENTS**

| | Ages 16 - 70 | | (Renewal Only) Ages 70 - 79 |
|---|---|---|---|
| | $1.25 | | $4.00 |

**MASSACHUSETTS RESIDENTS**

| | Ages 16 - 62 | Ages 63 - 69 |
|---|---|---|
| | $1.20 | $3.00 |

## INSTRUCTIONS FOR CONVERSION PRIVILEGE

On the date of termination of employment or during the 31 day period following termination of employment, you may convert your insurance, without a medical examination, to American Home Assurance Company's individual Insurance Policy. The individual policy will be effective either as of the date the application and payment is received by the Insurance Company or its Agent, or on the date coverage under the group policy ceases, whichever occurs later. The premium will be the same as you would ordinarily pay if you applied for an individual policy at the American Home Assurance Company. The amount of insurance benefit converted cannot exceed $500,000 nor be less than $50,000. Another form must be completed if you desire coverage for your spouse and for each dependent child 18 years of age or older. They must each have a separate application.

This form with your payment should be submitted to:

Reuben Warner Associates, Inc.
100 William Street
New York, NY 10038

Reuben Warner Associates, Inc. is American Home Assurance Company's Managing General Agent for Individual AD&D business.
Your check should be payable to Reuben Warner Associates, Inc.

*[handwritten:]* Please NoTE
ENlarged 500,000
In Two PlAce S.
CompAre To FAX.

| Company | Address | Zip | Phone |
|---|---|---|---|
| NAVIGATORS MANAGMNT CORP | 123 WILLIAM ST | 10038 | 212-406-2900 |
| NE FACIL DAK INTENTL LT | 111 JOHN ST | 10038 | 212-513-1446 |
| NEW YORK AUTOMOBILE INS PLAN | 125 MAIDEN LN | 10038 | 212-943-5100 |
| NEW YORK BD OF FIRE UND | 85 JOHN ST | 10038 | 212-227-3700 |
| NEW YORK LIFE INSURANCE | 8 CHATHAM SQ | 10038 | 212-349-8050 |
| NEW YORK MERCHANT BANKERS | 116 JOHN ST | 10038 | 212-528-0610 |
| NIXON-GALLAGHER CO | 111 JOHN ST | 10038 | 212-619-3750 |
| NORTHEASTERN FACILITIES | 111 JOHN ST | 10038 | 212-385-7575 |
| NUR PRACTNR PRO LBLTY GRP INC | 151 WILLIAM ST | 10038 | 212-227-0028 |
| NY PROP INS UNDERWRTNG ASSOC | 100 WILLIAM ST | 10038 | 212-208-9700 |
| NYDEC BROKERAGE CORP | 80 BEEKMAN ST | 10038 | 212-732-4042 |
| NYLING, GEORGE J | 80 BEEKMAN ST | 10038 | 212-964-3676 |
| OCEAN AIR CARGO CLAIMS INC | 111 JOHN ST | 10038 | 212-732-8340 |
| OLD REPUBLIC RE INC | 90 WILLIAM ST | 10038 | 212-732-4575 |
| ORIENTAL FIRE & MRNE NY | 111 JOHN ST | 10038 | 212-766-0800 |
| ORNTL FIRE & MRNE NY LIAISON | 111 JOHN ST | 10038 | 212-964-4270 |
| P C RALLI & CO | 116 JOHN ST | 10038 | 212-619-4900 |
| P W S USA INC | 40 FULTON ST | 10038 | 212-732-0201 |
| PORTER & YEE ASSOCS INC | 117 BEEKMAN ST | 10038 | 212-732-0201 |
| POST & KURTZ INC | 111 JOHN ST | 10038 | 212-608-0800 |
| PREFERRED CONCEPTS INC | 111 JOHN ST | 10038 | 212-608-9400 |
| PROFESSIONAL COVERAGE MANAGER | 130 WILLIAM ST | 10038 | 212-619-4900 |
| R D T BROKERAGE CORP | 111 JOHN ST | 10038 | 212-732-0201 |
| REINSURANCE CORP OF NY | 111 JOHN ST | 10038 | 212-363-4440 |
| RELIANCE GROUP HOLDINGS INC | 116 JOHN ST | 10038 | 212-608-6680 |
| RELIANCE INSURANCE | 130 WILLIAM ST | 10038 | 212-608-6990 |
| RICHARD WHILEY INC | 110 WILLIAM ST | 10038 | 212-732-1322 |
| ROEBUCK ASSOC | 45 JOHN ST | 10038 | 212-267-3224 |
| ROGER METZGER ASSOC INC | 59 JOHN ST | 10038 | 212-608-2100 |
| ROSE COMPASS SVCES | 116 JOHN ST | 10038 | 212-406-4004 |
| ROSE COMPASS SVCES INC | 111 JOHN ST | 10038 | 212-964-2600 |
| S & L AGENCY INC | 130 WILLIAM ST | 10038 | 212-227-4532 |
| S Y KUAN INSURANCE | 8 CHATHAM SQ | 10038 | 212-699-2800 |
| SAINT PAUL COMPANIES | 160 WATER AVE | 10038 | 212-248-2300 |
| SAPPERSTEIN HOCHBERG | 18 JOHN ST | 10038 | 212-233-4452 |
| SAPPERSTEIN HOCHBERG BRKRGE | 45 JOHN ST | 10038 | 212-608-1008 |
| SAUNDRA DEE INSURANCE | 116 JOHN ST | 10038 | 212-406-2424 |
| SCAMPA BARON AGENCY | 125 MAIDEN LN | 10038 | 212-809-6166 |
| SELLNER & SELLNER INC | 111 JOHN ST | 10038 | 212-233-9000 |
| SENECA INSURANCE COMPANY INC | 160 BROADWAY | 10038 | 212-964-7802 |
| SERHEY-DAVIDSON CORP | 135 WILLIAM ST | 10038 | 212-374-1323 |
| SMYTH SANFORD & GERARD INC | 111 FULTON ST | 10038 | 212-349-2626 |
| SOLBERG CAMPBELL ASSOC INC | 111 FULTON ST | 10038 | 212-349-2626 |
| SOLBERG, BILLING J | 45 JOHN ST | 10038 | 212-285-4920 |
| SOLOMON GLITTER INSURANCE | 123 WILLIAM ST | 10038 | 212-343-1606 |
| SOMERSET MARINE | 88 FULTON ST | 10038 | 212-239-2287 |
| SOUTH CONTINENTAL OF N Y INC | 125 MAIDEN LN | 10038 | 212-480-4270 |
| SOUTHERN MARINE & AVIATION INC | 125 MAIDEN LN | 10038 | 212-668-9300 |
| STARR ASSOCS INC | 111 JOHN ST | 10038 | 212-349-6431 |
| STEPHEN WIND ASSOC | 156 WILLIAM ST | 10038 | 212-964-6190 |
| STRUL FLEISCH SCHMUTTER INC | 217 PARK ROW | 10038 | 212-693-1818 |
| SUCCESS INSURANCE AGENCY INC | 156 WILLIAM ST | 10038 | 212-785-0240 |
| SULCOV, ARTHUR | 40 FULTON ST | 10038 | 212-602-6400 |
| TFG INSURANCE | 111 JOHN ST | 10038 | 212-266-0700 |
| TILDEN, JOHN P | 110 WILLIAM ST | 10038 | 212-233-1399 |
| TOWER INSURANCE CO INC | 127 JOHN ST | 10038 | 212-349-6190 |
| UNIONE ITALIANA REINSURANCE CO | 83 MAIDEN LN | 10038 | 212-514-7400 |
| UNITED AMERICAS INSURANCE CO | 125 MAIDEN LN | 10038 | 212-709-6000 |
| UNITED STATES LIFE INS CO | 8 CHATHAM SQ | 10038 | 212-385-5520 |
| VMG BROKERAGE INC | 40 FULTON ST | 10038 | 212-406-2400 |
| WALSH GROUP INC | 40 FULTON ST | 10038 | 212-809-8300 |
| WARNER REUBEN ASSOCIATES INC | 100 WILLIAM ST | 10038 | 212-809-8300 |
| WEXFORD UNDERWRITING | 40 FULTON ST | 10038 | 212-962-3030 |

Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 32 of 36

# AMERICAN HOME ASSURANCE COMPANY

NEW YORK, NEW YORK · A CAPITAL STOCK COMPANY · FOUNDED 1853

## APPLICATION FOR ACCIDENT INSURANCE UNDER CONVERSION PRIVILEGE

APPLICATION is hereby made to the American Home Assurance Company for Accident Insurance.

Name of the Insured (Last) _____ (First) _____ (Middle Initial) _____ Date of Birth _____

Address _____ Amount of Principal Sum _____

Name of Group Policyholder _____ Policy Number _____

Name and Address of Beneficiary _____ Relationship _____

Date of Termination of Employment _____

Date _____ , 19 _____   Signature of Applicant _____

## RATES

### ACCIDENTAL DEATH, DISMEMBERMENT, OR LOSS OF SIGHT BENEFITS

Amounts Available: $50,000.00 to $250,000.00

**ANNUAL PREMIUM PER $1,000.00 PER APPLICATION**

| | | | |
|---|---|---|---|
| **ALL STATES (EXCEPT NEW YORK AND MASSACHUSETTS)** | | | |
| | Ages 16 - 70 | Ages 63 - 69 | (Renewal Only) Ages 70 - 79 |
| | $1.25 | $3.00 | $4.00 |
| **NEW YORK STATE RESIDENTS** | | | |
| | Ages 16 - 70 | | |
| | $1.25 | | |
| **MASSACHUSETTS RESIDENTS** | | | |
| | Ages 16 - 62 | Ages 63 - 69 | |
| | $1.20 | $3.00 | |

## INSTRUCTIONS FOR CONVERSION PRIVILEGE

On the date of termination of employment or during the 31 day period following termination of employment, you may convert your insurance, without a medical examination, to American Home Assurance Company's Individual Insurance Policy. The individual policy will be effective either as of the date the application and payment is received by the Insurance Company or its Agent, or on the date coverage under the group policy ceases, whichever occurs later. The premium will be the same as you would ordinarily pay if you applied for an individual policy at the American Home Assurance Company. The amount of insurance benefit converted cannot exceed $250,000 nor be less than $50,000. Another form must be completed if you desire coverage for your spouse and for each dependent child 16 years of age or older. They must each have a separate application.

This form with your payment should be submitted to:

Reuben Warner Associates, Inc.
100 William Street
New York, NY 10038

Your check should be payable to Reuben Warner Associates, Inc.

Reuben Warner Associates, Inc. is American Home Assurance Company's Managing General Agent for individual AD&D business.

*Handwritten note:* Please NOTE. Valid Amount. Not Tampered. Premiums Same As Previous Page.

*The U.S. Equal Employment Opportunity Commission*

FOR IMMEDIATE RELEASE
Tuesday, October 3, 2000

CONTACT:   Reginald Welch
           David Grinberg
           (202)  663-4900
TTY:       (202)  663-4494

# EEOC ISSUES NEW GUIDANCE ON DISCRIMINATION IN EMPLOYEE BENEFITS

WASHINGTON - The U.S. Equal Employment Opportunity Commission (EEOC) today issued a new section to its Compliance Manual which provides the Commission's first comprehensive analysis of some of the most important employee benefits issues under the anti- discrimination laws.

The new Compliance Manual section analyzes benefit discrimination claims under each of the laws enforced by the Commission, clearly explaining that the laws prohibit discrimination in fringe benefits. "This guidance makes clear that employers are never allowed to consider employees' race, color, sex, national origin, or religion, nor retaliate against them, in connection with their benefits plan," said EEOC Chairwoman Ida L. Castro. "The section also explains that benefit plan provisions that differentiate on the basis of age or disability must be carefully scrutinized to ensure they do not run afoul of the law."

The section examines the legal standards that apply to claims of discrimination in health and life insurance benefits, long-term and short-term disability benefits, severance benefits, pension or other retirement benefits, and early retirement incentives. The limited circumstances in which the law permits employers to provide lower benefits to older employees than to younger workers and the specific requirements of the Americans with Disabilities Act are set forth.

Ms. Castro added. "Issuing this new section is a major step in EEOC's continuing efforts to update and streamline its Compliance Manual in order to aid our investigators and attorneys in handling claims involving discrimination in employee benefits while also enhancing our customer service." The new Compliance Manual section replaces former Section 627: Employee Benefit Plans and seven other Commission policy statements.

This is the second issuance of new sections to the Compliance Manual in recent months. In May, EEOC issued a new section on "threshold" issues, the factors considered by the Commission in determining who can pursue a legal claim of employment discrimination. The full text of the both new sections, as well as other information about the Commission, is available on the agency's web site at www.eeoc.gov.

Case 1:02-cv-00032    Document 36    Filed 05/15/2003    Page 34 of 36

# UNITED STATES DISTRICT COURT

TERRITORY OF GUAM

District of _____ GUAM

TONY H. ASHTIANI

V.

CONTINENTAL MICRONESIA, INC.
dba Continental Micronesia
and Continental Airlines, Inc.

CASE NUMBER: **CV-02-00032**

**AMENDED
SUMMONS IN A CIVIL CASE**

TO: (Name and address of Defendant)

**Mr. Dixon McKinzie
H.R. Director, Human Resources Department
Continental Micronesia, Inc.
Guam International Airport Old Terminal**

YOU ARE HEREBY SUMMONED and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Pro Se

**Tony Ashtiani, Pro Se
P.O. Box 12723
Tamuning, Guam 96931
Telephone: 653-5575**

an answer to the second amended complaint which is served on you with this amended summons within __**twenty (20)**__ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the second amended complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

ACKNOWLEDGED RECEIPT

By: _/signature/_
Date: _05/15/2003_

**Mary L. M. Moran**

CLERK

_/s/ Marilyn B. Alcon_

(BY) DEPUTY CLERK

DATE

MAY 1 5 2003

COPY

# UNITED STATES DISTRICT COURT

TERRITORY OF GUAM      District of ———————      GUAM

TONY H. ASHTIANI

V.

CONTINENTAL MICRONESIA, INC.
dba Continental Micronesia
and Continental Airlines, Inc.

**AMENDED
SUMMONS IN A CIVIL CASE**

CASE NUMBER:    **CV-02-00032**

TO: (Name and address of Defendant)

**Mr. James Hammer
Director of Maintenance
Continental Micronesia, Inc.
Guam International Airport**

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

**Pro Se**

**Tony Ashtiani, Pro Se
P.O. Box 12723
Tamuning, Guam 96931
Telephone: 653-5575**

ACKNOWLEDGED RECEIPT

By: _/s/ illegible_

Date: _illegible 2003_

an answer to the second amended complaint which is served on you with this amended summons within **twenty (20)** days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the second amended complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

**Mary L. M. Moran**

CLERK

/s/ Marilyn B. Alcon

(By) DEPUTY CLERK

DATE

MAY 1 5 2003

**COPY**