```
1  Tony H. Ashtiani
   P.O.Box 12723
2  Tamuning Guam 96931
   671-688-4844
3  671-653-5575

4  Attorneys for Defendant
   CARLSMITH BALL LLP
5  Mr. David Ledger
   Ms. Elyze McDonald
6
```



```
7                  DISTRICT COURT OF GUAM
8                     TERRITORY OF GUAM
9

10 Tony H. Ashtiani,              )
11           Plaintiff,           )
                                  ) Civil Case No.: 02-00032
12      Vs.                       )
13                                ) PLAINTIFF FIRST REQUEST OF THE
   Continental Micronesia Inc,    ) PRODUCTION OF DOCUMENTS TO
14                                ) DEFENDANT CONTINENTAL
   Dba, Continental Micronesia,   ) MOCRONESIA INC,
15                                )
   Continental Airlines,          ) Fed R. Civ P. 34
16                                )
           Defendant              )
17                                )
                                  )
18
19
20 TO: DEFENDENTAL MICRONESIA INC., AND ITS ATTORNEYS OF
21 RECORD: Plaintiff hereby request pursuant to Fed R Civ P rule 34,
22 Plaintiff requests that Defendant respond in writing, under
23 oath, to the following Requests for Production of Documents
24 within 30 days from the service and this request, and produce
25 and permit inspection and copying of documents described below
   on July 15 , 2003. At 0900 A.M to plaintiff at Guam Law Library
```

at 141 San Ramon street Conference room B Hagatna, Guam. In lieu of producing the documents for inspection, defendant may forward legible copies of them to plaintiff on or before the date of production, except that defendant must label all documents (e.g. Exhibit A, B, C, etc.). And indicate in writing which documents are responsive to which requests). As an alternative earlier means of production, defendant may photocopy all responsive documents and deliver the same to the plaintiff on or before the date set for production. Defendants and the counsel of records are reminded of their obligations under rule 34 of the Federal rule of civil procedure. Terms are defined in accordance with Rule 1001 of Rules of Evidence.

**DEFINITION AND INSTRUCTION**

The word "document is used in these requests in the broad and liberal sense and means any written, typed, recorded or graphic matter, however produced or reproduced, of any kind and description, whether sent, received, or neither, and all copies thereof which differ in any way from the original (whether by interlineations, stamped received, notation, indication of copy sent or received, or otherwise) regardless of whether designated confidential, privileged or otherwise and whether such is an original, master, duplicate or copy, including, but not limited to, papers, notes, accounts statements or summaries, ledgers,

pamphlets, periodicals, books, advertisements, drawings, telegrams, audio or video tape recordings, communications, including inter-office and intra office memoranda, delivery tickets, bills of lading, invoices, quotations, claims documents, reports, records, studies, work sheets, working papers, corporate records, minutes of meetings, circulars, bulletins, notebooks, bank deposit slips, bank check, canceled checks, data processing cards and/or tapes, computer software, electronic mail messages, photographs, transcriptions or sound recordings of any type of personal or telephone conversations, interviews, negotiations, meetings or conferences, or any other things similar to any of the foregoing.

The term "communication" as used in these requests means any words heard, spoken, written or read, regardless of whether designated confidential, privileged or otherwise, and including, without limitation, words spoken or heard at any meeting, discussion, interview, encounter, conference, speech, conversation or other similar occurrence, and words written or read from any document(s) as described above.

The term "person" as used in these requests means individuals or entities or any type, including but not limited to, natural persons, governments (or agencies thereof), quasi-public entities, corporations, partnerships, groups, mutual or joint ventures and other forms of organizations or associations.

The term "date" as used in these requests shall mean the exact day, month and year, if ascertainable, or if not the best approximation thereof (including by relationship to other events).

As used herein, the words or phrases, "explaining," "describing," "defining," "concerning," "reflecting," or "relating to" when used separately or in conjunction with one another mean, directly or indirectly, mentioning, pertaining to, involving, being connected with or embodying in any way or to any degree the stated subject matter.

The term "relate to," or any similar phrase, shall mean refer to, reflect on, concern or be in any way logically or factually connected with the matter discussed.

The term "employee" means any person who receives wages, a salary or other income, in any form, from the defendant, including, without limitation, supervisors, administrators, manager, directors, officers, board of directors members, contract workers, commission workers or any combination thereof.

For each document encompassed by these requests which defendant claims to be privileged from or otherwise protected against discovery on any ground, defendant shall expressly make the claim, fully setting forth all grounds for the privileged or protection and shall expressly describe the document with a degree of specificity that will enable pro se plaintiff to assess the applicability of the claimed privilege or protection.

If a request is made for production of documents which are no longer in the possession, custody and/or control of defendant, state when such documents were lost, destroyed or otherwise disposed of; how recently where they in the possession, custody and/or control of defendant and what dispositions were made of them, including the identity of the person(s) believed to be last or presently in possession, custody and/or control of the documents. If a document has been destroyed, if applicable, state when such document was destroyed, identify the person(s) who destroyed the documents, and the person(s) who directed that the document be destroyed and the reasons the document was destroyed.

Unless otherwise specified, each request requires a full response for every and entire period of time with respect to which defendant intends to offer any evidence.

If more than one copy of a requested document (e.g., a clean copy and a copy with handwritten or other notations) exists, and if one or more documents have any writing on them, which differentiate them from other copies, defendant shall produce all copies.

These document requests are continuing and, if at any time subsequent to production of documents requested herein, any document responsive to this request is located or comes within the custody, possession or control of the defendant, plaintiff

requests that it forthwith be produced to the full extent required by Rule 34 of the Federal Rules of Civil Procedure.

**REQUESTED DOCUMENTS**

1. All documents, notes, recordings, data compilations and all files or other collections of documents, official or unofficial, formal or informal, maintained or kept by Defendant, or by any agent, attorney, employee, independent contractor, representative, or board member thereof, or otherwise in its or their possession, custody or control, relating or pertaining in any way to the plaintiff, including, without limitation, all of plaintiff's personnel files and documents, plaintiff's transfer document, plaintiff's administrative file maintained by defendant's Human Resources Department or any other department or subdivision, representative or agent, and any other departmental files relating or pertaining in any way to the plaintiff.

2. All documents pertaining to plaintiff's job performance and/or salary or compensation history as an employee, including, without limitation, each document reviewed, referred to, considered, or utilized in any way in the preparation of plaintiff's performance reports.

3.  Copy of all (a)P-160s (b) P-187 of Mr. Dixon McKenzie, Human Resources Director.

4.  Copy of all P-160s (b) P-187 of Mr. James Hammer director of maintenance.

5.  Plaintiff's statement which was requested by and given to Mr. William Herrera on the evening of June 26, 2001 explaining plaintiff's position relevant to the absence from duty.

6.  Copy of the return receipt of the U.S.P.S certified letter (PS form 3811) signed by the plaintiff on July 12, 2001 which contained plaintiff's termination letter dated July 03, 2001 signed by Mr. Herrera.

7. (a) All document of 1 thru 6 levels of attendance records and counseling notice of which were received by plaintiff; (b) list of witnesses and attendees whom were present at such meetings, including employer's representative, employees, and union representative; and (c) the jointly filled out discussion form(s) (which, at the end of each such meeting all parties acknowledged such meeting and signed the mentioned form).

8.  Documents of plaintiff's employee evaluation and/or progress reports from defendant's Technical Services Division, where plaintiff worked and employer provided this form during evaluation as plaintiff had acknowledged and signed of employer expectation from the plaintiff (referred to therein as, "employee").

9. Please provide dates [???] in regard to each and every DC-10-30 exiting the fleets of Continental Micronesia inc.,

10. Please provide the list of all off-island trainings of plaintiff's mechanics including the list the names of the mechanics, their nationality, race, and ethnicity.

11. Please provide list of names of all defendant's employees who attended the off island General electric engine trainings, as well as their experience and comprehension of the complex engine and hand on experience, and their race, nationality and ethnicity.

12. Please provide the monthly shift schedules for mechanics working swings, early swings, early graveyard, and regular graveyard shifts, from the period of June 1997 to present.

13. Please provide a list of names of all mechanics, mechanic helpers, Airframe mechanics, sheet metal mechanics, sheet metal mechanic helpers, tool crib attendants either in the Technical Services Division of terminal line or B CHECK that were under the union contract of Continental Micronesia Inc, and International Brotherhood of Teamsters who were employed by the defendant who had two or more consecutive No call/No show from the period from Jun 1990 to the present.

14. Defendant's personnel and/or operating policies and/or procedures in existence during plaintiff's employment and all documents relating or pertaining thereto, including, without

limitation, each version of defendant's policies and/or procedures on compensation, salary increases, bonuses, job performance, performance evaluations, and equal employment opportunity and retaliation for complaints of discrimination and disparate treatments.

15. Defendant's policies and/or procedures on discrimination and harassment and/or any other discrimination in existence at any time during plaintiff's employment, and all documents relating or pertaining thereto, including, without limitation, each version of any discrimination policy or procedure in effect during plaintiff's employment and each draft thereof, and all documents referring or relating to training, supervision, discipline of, or instruction to defendant's officers, employees, independent contractors, representatives, and/or board members on or about discrimination, harassment and/or disparate treatments.

16. All documents referring, relating to, describing or explaining, any suggestion, allegation, charge or complaint of discrimination, harassment, disparate treatment (regardless of how defendant characterizes the suggestion, allegation, charge or complaint, and whether formal or informal), made by any other employee, supervisor or management personnel of defendant during plaintiff's employment, including, without limitation, any suggestion, allegation, charge or complaint that defendant, Mr. Dixon McKenzie, James Hammer , Mr. William Herrera , Mr. Glenn

Mendoza or any other officer, employee, independent contractor, representative or board member thereof, (allegedly or actually) discriminated ,harassed any employee, officer, supervisor on any other person during plaintiff's employment.

17. Defendant's policies and/or procedures on racial and/or national origin discrimination in existence at any time during plaintiff's employment, and all documents relating or pertaining thereto, including, without limitation, each version of any racial or national origin discrimination policy or procedure in effect during plaintiff's employment and each draft thereof, and all documents referring to relating to training, supervision, discipline of, or instruction to defendant's officers, employees, independent contractors, representatives, and/or board members on or about racial and/or national origin discrimination.

18. All documents referring or relating to, or describing or explaining, any suggestion, allegation, charge or complaint of racial and/or national origin discrimination (regardless of how defendant characterizes the suggestion, allegation, charge or complaint, whether formal or informal), made by any other employee, supervisor or management personnel of defendant during plaintiff's employment, including, without limitation, any suggestion, allegation, charge or complaint that defendant, Mr. Dixon McKenzie and Mr. James Hammer or any other officer, employee, independent contractor, representative, or board

member thereof, discriminated against any employee, officer, supervisor or any other person during plaintiff's employment on the basis of race or national origin.

19. All documents referring or relating to salary increases and/or bonuses for all maintenance supervisors, and aircraft mechanics for the period of June 1998 to the present, including, without limitation, all documents describing or explaining the method or process, if any, by which defendant made determinations as to salary increases and/or bonuses for its employees during this same period.

20. All documents referring to or relating to salary, bonus and/or compensation histories of each maintenance supervisor employed by defendant in the period of June 1998 and to the present.

21. All documents referring or relating to promotion of the Human Resources Department management staff, including but not limited to, Mr. Dixon McKenzie, Mr. Robbie Crisostomo, and Theresa Sage, including the dates of promotion and date of transfer from any other department to Human resources Department of Continental Micronesia, Inc., and those of Continental Airlines, that transferred to Continental Micronesia, Inc.

22. All documents referring or relating to compensation grades, which have been established by defendant for compensation, including, without limitation, employment records

showing compensation grade and actual salary for Mr. Mckinzie and Mr. Hammer.

23. All documents, and all files or other collections of documents, official or unofficial, formal or informal, maintained or kept by defendant, or by any employee, independent contractor, representative, or board member thereof, or otherwise in its or their possession, custody or control, relating or pertaining to the Mr. Dixon McKenzie and Mr. James Hammer, including, without limitation, all of their personnel files, their P-160's, the employees administrative file maintained by the Human Resources Department and any departmental or company files.

24. All documents referring or relating to Mr. Dixon McKenzie and Mr. James Hammer participation or involvement in decision-making concerning any employee's employment, including, without limitation, decisions relating to salary, promotion, bonuses, hiring layoff or firing.

25. All organizational descriptions or charts reflecting the defendant's organizational structure, including without limitation, each individual department's organizational structure for the period from June 1998 to the present.

26. All position descriptions or other documents referring or relating to the duties and responsibilities of each position of employment with defendant's organization from June 1998 to present.

27. All documents that state, reflect, describe or evaluate, in whole or in part, the net worth of defendant, including, without limitation, documents listing or describing defendant's assets from which net worth independently may be ascertained, and any current financial statements reflecting defendant's assets and/or liabilities.

28. All minutes of meetings of defendant's board of directors and/or officers attended by Mr. Dixon McKenzie and Mr. James Hammer and all minutes of meetings of defendant's board of directors and/or officers during which any reference was made to any one or more of the following: Plaintiff, Mr. Dixon McKenzie, Mr. James Hammer, Mr. Bill Herrera and Mr. Glenn Mendoza which contain any reference to or mention plaintiff filing charge with EEOC, plaintiff's civil action, plaintiff's termination, plaintiff's allegations that he was harassed, plaintiff's allegations that he was discriminated against, discrimination and/or differences in treatment between pacific islanders, Caucasians ,Blacks, Middle easterners or any other ethnic group or minority, any religious group including but not limited to, any Muslim group or employees.

29. All documents referring or relating, or the raw data from which the information may be compiled proving or disproving the existence of any differences or variations in grade, salary, bonuses and promotions between persons of Pacific Island origin and Caucasians, blacks, and Middle easterners between persons of

Pacific Island origin and Continental Airlines, Inc.'s employees, or between employees of defendant and Continental Airlines, Inc., or between persons who were residents of Guam at the time they were hired and persons hired from off-island.

30. All documents in regards to or which in any manner refer to or mention the transfer of any aircraft mechanics from Continental Airlines, Inc., to Continental Micronesia Inc., and any documents in regards or which in any manner refer to or mention their pay scale; and whether equal pay was applied for performing the same job in the same job classification, during period of August 1991 to the date of plaintiff's termination.

31. The P-160's for every supervisor, officer, director or any other supervisory or management personnel of defendant for the period of Jun 1998 to the present, in the technical services division, Maintenance, quality control and quality assurance division of Continental Micronesia Inc.

32. The P-160's for all defendant's supervisors that were (a) promoted in period of June 1998 to September 11, 2001; and (b) those supervisor that were furloughed or laid off after September 11, 2001 up to January 10 , 2002. Please provide their names, their race, nationality, and their ethnicity of all such individuals who were furloughed in the Technical Services Division, Maintenance, Quality control and Quality Assurance Division of Continental Micronesia, Inc.

33. All written and/or computerized and/or electronic communications or other documents, including electronic mail messages, to or from, or intended to be to or from, any officer, employee, independent contractor, representative, or board member of defendant regarding plaintiff and/or plaintiff's complaint, whether such communication was addressed to such person or not and whether such communication was actually delivered to such person or not.

34. All written and/or computerized and/or electronic communications or other documents, including electronic mail messages, to or from, or intended to be to or from, any officer, employee, independent contractor, representative, or board member of defendant regarding Mr. Dixon McKenzie and Mr. James Hammer, whether such communication was addressed to such person or not and whether such communication was actually delivered to such person or not.

35. All documents or computerized surveys which was done by any means, including but not limited to, electronic means and referred to as survey by the maintenance supervisors in Guam of their director Mr. James Hammer. Please provide the copy of the surveys from each and every supervisor and identify which survey belongs to which supervisor.

36. All documents and statement from James Hammer in regards to making any racial comments either after September 11, 2001 or before September 11, 2001 to any one employed by the

defendant before or after Plaintiff's termination, in reference to plaintiff.

37. All documents, which relate or pertain to the factual basis for any defense, including, without limitation, any affirmative defense, defendant asserts in this civil action.

38. All documents which relate or pertain to any suggestions, proposals, plans, projects or other activities concerning defendant's treatment of persons of Pacific Island origin, Blacks, whites, Middle Easterners including, without limitation, to proposals, programs, suggestions or plans to remedy differences in treatment of pacific islanders, Micronesian, Blacks, and Middle Eastern employed by defendant.

39. All documents which defendant contends support or constitute evidence supporting any defense, including, without limitation, any affirmative defense, defendant asserts in this civil action.

40. All documents which defendant contends reflect or relate to any alleged job performance deficiency of plaintiff.

41. All documents referring or relating to, or describing or explaining, any investigation by any individual or entity, including, without limitation, defendant or Continental Airlines, Inc., of any suggestion, allegation, charge or complaint that Mr. Dixon McKenzie and any other Maintenance Supervisor, at the time of plaintiff employed by the defendant, harassed (regardless of how defendant characterized, the

suggestion, allegation, charge or complaint) plaintiff or anyone else or otherwise engaged in conduct of a discriminatory and disparate treatment with respect to plaintiff or anyone else.

42. All documents and notes from or by Mr. Dixon McKenzie regarding any complaint regarding public policy enforcement submitted to defendant's Manger of Human Resources, in relation to plaintiff during his employment with the defendant; and any documents evidencing any investigation launched consequently, its results or the outcome of any such investigation.

43. All documents and statement from Mr. Dixon McKenzie in regard to his involvement in any backroom meetings, orchestration of plaintiff's suspension which led to plaintiff termination on June 26, 2001.

44. All documents referring or relating to describing or explaining, any investigation by any individual or entity, including, without limitation, defendant and/or Continental Airlines, Inc., of any suggestion, allegation, charge or complaint that defendant or anyone else or otherwise engaged in conduct which discriminates against or otherwise disfavors any of the following: (1) persons of Middle Eastern origin; (2) persons hired by the company on Guam as opposed to persons hired from off island; or (3) Continental Airline, Inc.'s employees as opposed to Continental Micronesia Inc.'s employees.

45. All documents referring or relating to the administration and/or results of the management trainee program,

including documents showing those trainees who were promoted to management positions after undergoing the training program.

46. All documents referring or relating to defendant's knowledge of Mr. Dixon McKenzie, Mr. James Hammer, Mr. William Herrera and Mr. Glenn Mendoza prior employment record, including, without limitation, those referring or relating to any prior claims that any one of them was involved in any kinds of discrimination and/or harassment of employees at his current or prior places of employment.

47. All documents referring or relating to defendant's knowledge of Mr. Sherman Thompson's prior employment in either civil employment and armed forces of the United States of America, including demotion due to sexual harassment of a female in Anderson Air Force Base and any other female in the armed forces or elsewhere, including any female which employed at Continental Micronesia Inc., while Mr. Sherman Thompson was employed by the defendant.

48. All documents presented for signature to, or prepared for signature by, any employee, manager, supervisor, administrator, officer or director of defendant relating to alleged discrimination, harassment or any other conduct of discriminatory nature by Mr. Dixon McKenzie and Mr. James Hammer.

49. All documents presented for signature to, or prepared for signature by, any employee relating to any claims, charges,

allegations or complaints (however characterized) alleging racial or national origin discrimination or any other kind of discrimination by defendant or any of its employees.

50. All surveillance videos, tapes, movies, photos, notes, memoranda, tape recordings, reports, whether electronic, digital or analogue, or any other recording, documents or things regarding, pertaining or relating to surveillance of the plaintiff at the direction of defendant or anyone acting on its behalf.

51. All documents, including, without limitation, notes, tape recordings, diary entries, calendars, meetings' minutes or meetings' notes, notes of or relating to communications, or any other writing, recording or memorialization prepared or received by defendant, or by any employee, representative or agent relating to any of the events and circumstances alleged in plaintiff's complaint and/or amended complaint.

52. All documents, referring or relating to any surveys conducted by defendant or any of its employees of attitudes of its employees.

53. All copies of letters sent by plaintiff to Mr. Bill Meehan, including, without limitation, any copies which have had written notes on them.

54. All copies of letter sent by plaintiff to Mr. Dixon McKenzie in regards to plaintiff complaining about disparate

treatment and racial discrimination that Mr. Glenn Mendoza was administrating on the non pacific islanders.

55. All copies of the shift supervisors schedule on duty and off duty schedule for the entire line maintenance supervisor for period of January 1, 2001 to July 30, 2001.

56. All documents which were reviewed or used by defendant in preparing its answers to complaint and amended complaints.

57. (a) All documents listed by defendant in its Initial Disclosure (served on plaintiff on May 30, 2003) in this matter; and (b) Any and all insurance policies, referred to as "insurance coverage" on page 2, of Initial Disclosure (served on plaintiff on May 30, 2003) in this matter, regardless of the alleged deductible.

58. All statements made by any person regarding plaintiff.

59. All correspondence from or to defendant, its agents, representatives or employees regarding plaintiff, or any member of his family, or regarding his allegations, complaint or any other matter or issue related to plaintiff of\r any member of his family.

60. All other documents from or to defendant, its agents, representatives or employees regarding plaintiff, or any member of his family, or regarding his allegations, complaint or any other matter or issue related to plaintiff of\r any member of his family.

Date: Jun/16/2003    Respectfully submitted,

T. Att[signature]