```
 1  Tony H. Ashtiani
    P.O.Box 12723
 2  Tamuning Guam 96931
    671-688-4844
 3  671-653-5575
```



# UNITED STATES DISTRICT COURT

## DISTRICT COURT OF GUAM

| | |
|---|---|
| Tony H. Ashtiani, | ) |
|     Plaintiff, | ) Civil Case No.: 02-00032 |
| Vs. | ) |
| Continental Micronesia Inc, | ) |
| Dba, Continental Micronesia, | ) NOTICE AND MOTION |
| | ) TO COMPEL DISCOVERY. |
| Continental Airlines, | ) (Fed. R. Civ. P. 37(a)) |
|     Defendant | ) |

TO: DEFENDANT CONTINETAL MICRONESIA INC., AND ITS ATTORNEYS OF RECORD:

    **Please take note** that on  October 30TH, 2003 At  10:00A .M., or soon there after as the matter be heard in the above-entitled Court located at Fourth floor US. Court house 520 West Soledad Avenue Hagatna, Guam Plaintiff Tony H. Ashtiani (herein after Ashtiani) will and hereby does move this Court for an order compelling defendant Continental Micronesia, Inc. (hereinafter "CMI") to produce documents in response to

Ashtiani's First Request for production of documents and things: specifically document requests 3,4,6,7,8,9,13,24,32,35, AND 36 Ashtiani also moves for an order that CMI pay to the moving party the sum of $ 2000.00 as the reasonable costs and time of self representation, studies , research and transportation to and from the law library. Self-representation fees incurred by the moving party in connection with this proceeding, pursuant to Rule 37(a)(4)(A) Fed R. CIV. P. This motion seeks to compel production of documents relevant to the subject matter of the action, not privileged, and the refusal to respond is without justification. This motion is based on this notice and motion, the memorandum of points and authorities subjoined hereto and the Declaration of Tony H. Ashtiani pro se plaintiff filed herewith, Ashtiani's First Request for Production of Documents and things, and Defendant's Answer to plaintiff's First Request for Production of Documents.

Respectfully submitted,

Dated this 7TH day of October , 2003.

Tony H. Ashtiani

Plaintiff

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On June 16 ,2003 Plaintiff Tony H. Ashtiani (hereinafter Ashtiani) served on Defendant Continental Micronesia, inc. (hereinafter "CMI") a First Request for Production of documents **Exhibit A.** CMI responded with Defendant's Answers to Plaintiff's First Production OF documents hereinafter "Answer to Request for production" Or "Document Request (#)"). **Exhibit B.**

In its answer to request for production, CMI objects to, and fails to comply with, several of Ashtiani's discovery requests. This Memorandum addresses the following issues raised by CMI's objections:

**1)** Whether Ashtiani document requests 3,4,13,32,and,35 seek "Objection is being made on grounds of overbreadth as to time frame and substances, and not being reasonable calculated to lead to discovery of admissible evidence.

**2)** Whether Ashtiani may obtain information requested in Document requests 7(a), and 8 "if these items can be obtained and appear to be discoverable in this action they will be produced." Since no additional information was provided plaintiff nor was any disclosure made, a compel order may be necessary.

**3)** Whether Ashtiani may obtain information requested in Document requests 3,4,9,13,24,32,and 35 objection being made as to relevancy.

**4)** Whether Ashtiani may obtain information requested in Document requests 3,4,7,8,9,13,24,32,and 35 objection being made as to overbreadth, relevancy, and burdensomeness. The responses also state that if the requested items exist and appear to be discoverable, they will be produced. To date no documents were produced nor any objection made to their production.

**5)** Whether Ashtiani may obtain information requested in Document requests 3,4,13,and 32 information sought which is allegedly confidential, private and personal, and the disclosure of it would necessarily invade the privacy, and expectation of privacy, or persons not parties to this suit." It should be noted that no objections is being made by the individuals whose privacy is allegedly invaded. Instead, CMI -- who has already invaded these individuals' privacy and have collected the information in its files -- is now showing a great deal of concern for their privacy.

**6)** Whether Ashtiani may obtain at the minimum referred to in document requests 6,and 36 (relating to plaintiff's first knowledge of termination and internal investigations of

Defendant Hammer survey, done by electronic means by his own supervisors.) withheld by CMI. ("hiding the ball").

Document Production Request 3 and 4 seek in various forms information relating to promotion of Mr. Dixon McKenzie and Mr. James Hammer seeks key document in relationship to promotion of new management versus termination of minorities, it is a general knowledge that many benefits of locals and minorities even in transfer rights were deprived by Mr. Dixon McKenzie. Plaintiff asserts this crucial piece of information will shed light on this case, specifically, as the date Mr. McKenzie became director of Human resources, which resulted in dispossessing minorities, due to failure to investigate discrimination complaint and in house investigation, leading to isolation, depression, stress of the minority group and their lives. Causing stress, anxiety, depression that was generated by the hostile work condition. McKenzie's failure of in-house investigation is the direct result of this statistical data.

## II. ARGUMENT

Ashtiani, an individual of minority, alleges that CMI discriminated against him in his employment because he is an individual of Middle Eastern background. Ashtiani will prove "national origin" and "disparate treatment theory " <u>Green vs.</u>

McDonald Douglas, 411 U.S 792,804,93 S.Ct. 1817,1825 1973) Heagney V. University of Washington 642 F. 2d 1157, 1163 (9th cir. 1981).

Ashtiani also alleges that CMI violated his civil rights by its failure to provide relief from disparate treatment action inflicted by supervisor Mr. Glenn Mendoza an employee of CMI, who was Ashtiani's immediate supervisor. Ashtiani was forced by defendant's conduct to trade days off from his employment, in part, for relief from this "hostile work environment."

All the disputed discovery requests are discoverable evidence pursuant to rule 26(a) (1) (B) and (b)(1) to obtain statistical data or other relevant information that may prove that he was subject to a retaliatory "hostile work environment," and that CMI adhered to a "pattern and practice" of intentional discrimination in employment decisions effecting individuals of minorities, Including Ashtiani, or that CMI's employment practices had a discriminatory impact. In order to present such evidence, plaintiff is seeking documentary evidence which might provide him with the raw data needed for the evaluation and presentation of such evidence at trial.

## A. THE TEST FOR DETRMINATING WHETHER MATERIAL IS DISCOVARABLE IS RELEVENCY.

In its response to documents requests 3,4,9,13,24,32,and 35 CMI objects on the grounds that Ashtiani's request seek "production of documents that are neither relevant nor reasonably calculated to lead to the discovery of relevant and admissible evidence" As stated in Kerr v. United States Dist. Ct for north. Dist. Of California, 511 F.2d 192, 196(9th Cir. 1975), aff'd, 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976):

> The question of relevancy is to be more Loosely construed at the discovery stage than at the trail. Under F.R.C.P. 26(b)(1) it is no ground for objection that information sought in pretrial discovery would not be admissible at trail if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence.

As further stated in Jones v. Commander, Kansas Army Ammunitions plant, 147 F.R.D. 248, 250 (D.KAN.1993) emphasis added):

> Relevancy has been defined as encompassing any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that or may be in the case. Discovery is not limited to issues by pleadings, for discovery itself is designed to help define and clarity the issues. . . . . A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action. Discovery

> should ordinarily be allowed under the concept
> of relevancy unless it is clear that the information
> sought can have no possible bearing upon the
> subject matter of the action. (Citations omitted;
> emphasis added.)

"Information is regarded as 'relevant to the subject matter' if it might reasonably assist a party in <u>evaluating</u> the case, <u>preparing</u> for trial, or facilitating <u>settlement</u> thereof. . . . ." <u>CERAMIC Corp. Of America V. Inka Maritime Corp.</u>, 163 F.R.D 584,587 (C.D.CAL. 1995) (emphasis in original).

As will be further discussed bellow, document requests 13,24,32,and 35 are relevant because Ashtiani intends to rely on them to compile statistical evidence indicating that CMI's pervasively discriminates against minorities, including plaintiff, through its disparate treatment policies against pacific islanders and local hires. Thus, for instance, in order to meet his burden plaintiff could show, through circumstantial, statistical or direct evidence that the discharge occurred under circumstances giving rise to an inference of discrimination. <u>Wallis v. J.R. Simplot Co.</u>, 26 F.3d 885, 891 (9th Cir.1994). Ashtiani can meet his burden by showing that defendant had a continuing need for his skills and services in his various duties. <u>Id.</u> Despite DC-10's departing from CMI'S fleet and being replaced with new generation Jets.

Plaintiff could also establish a prima facie case of discrimination by offering direct evidence of defendant's discriminatory motives. See, Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406, 1409-10 (9th Cir.1996).

Document requests 3,4,6,7,8,9,and, 36 are relevant because Ashtiani may relay on them as direct or circumenstantial evidence of either intentional discrimination and that hiring, firing, and employment evaluation practices have a desperate impact including Ashtiani.

Document Requests 13,24,32,and 35 are directly relevant as they refer to investigations of national origin discrimination and harassment, respectively.

Document Request 7,8 in the First Request are relevant because it is clear from the course of discovery to date that CMI intends to place in issue Defendant Ashtiani's attendance reports level 1 thru 6 which does not even exist. CMI plans to argue that these manufactured reports are valid.

**B. THE SCOPE OF DISCOVERY THROUGH REQUESTS FOR PRODUCTION OF DOCUMENTS IS LIMITED ONLY BY RELEVANCE AND BURDENSOMENESS.**

The scope of discovery through requests for production of documents is broad, giving access to documents, which will lead to evidence necessary to prove the complaint. An opposing party can defeat a discovery request only by demonstrating an absence of relevance and unusual burdensomeness. In order to proceed to trial or his racial discrimination claim, Plaintiff Ashtiani must establish a prima facie case of discrimination. A company's statistical information is routinely used to meet the prima facie burden. Plaintiff's national origin discrimination case will be proven in whole by demonstrating that Defendant CMI routinely and pervasively discriminates against racial minorities, for instance, Pacific Islanders, and including Ashtiani. A commonly accepted way to demonstrate such discrimination is through the company's own statistical and employment records. In Rich v. Martin Marietta Corp., 522 F.2d 333, 343, (10th Cir. 1975) the court of appeals held that the district court erred in denying plaintiffs the right to discover information and statistics withheld by the defendant regarding hiring, firing, promotion and demotion of Blacks, Hispanics and women on a plant-wide basis and within individual departments. Id. at 344-345. The court of appeals rationale was, in part, that defendant was able to rely on its own plant-wide information to compile statistical evidence to disprove plaintiff's prima facie case of employment discrimination. Id. at 343. The court of appeals also stated that:

In an EEOC case the discovery scope is extensive.

> . . . If the information sought promises to be particularly cogent to the case, the defendant must require shouldering the burden . . . Whether . . . The action is by a Plaintiff or by the government, the object [of The case] is "the elimination of employment discrimination, whether practiced knowingly or unconsciously and in relation to employment or advancement criteria which, although neutral on its face, is discriminatory in its application. Information relevant in an EEOC investigation is equally relevant to litigation brought by a private party. <u>Id</u>., at 343, 344.

All Document Requests of Ashtiani's document requests seek some form of employment or personnel record created and maintained by CMI.

CMI objects that such document requests are extraordinarily overbroad [or] unduly burdensome," and/or that such document requests seek "disclosure of sensitive information of a personal nature." While Defendant is unable to comply as it has no document in its possession responsive to this request.

<u>Orbovich v. Macalester College</u>, 119 F.R.D. 411, 416 (D. Minn. 1988). Following the Court of Appeals' rationale in <u>Rich</u>, <u>supra</u>, Ashtiani should be permitted discovery of the documents requested because CMI will be able to rely on the same in it defense of this case.

CMI also objects to Ashtiani's document requests 3,4,13,and 32 claiming they seek information "which is confidential, private and personal and the disclosure of it would necessarily invade the privacy, and expectation of privacy" CMI's objections on those grounds are insufficient. CMI has made no claim that documents in its possession that contain "sensitive information of a personal nature" are protected by any privilege recognized under and Guam Federal common law of privilege and under Federal statute of 42 USC 2000e3 can not be withheld. Garrett v. City and County of San Francisco, 818 F2d 1515, 1519 n. 6 (9th Cir. 1987). Neither is a reasonable expectation of privacy created under, e.g., the California State Constitution entitled to recognition in a federal question case. Ceramic Corp., supra, 163 F.R.D. at 588. The federal Title VII interest in the "elimination of employment discrimination" (Rich, supra, 522 F.2d at 344) is in such conflict with a state doctrine promoting confidentiality that it need not be taken into account even as a matter of comity. Finally, as stated above, while the individuals whose privacy is allegedly invaded do not register an objection to the discovery, CMI who has no privacy interest at stake (it does not raise such objection) should not be allowed to use others' purported privileges to plaintiff's disadvantage.

Despite documents' allegedly confidential nature and the burdensomeness of the requests, plaintiffs in numerous Title VII cases have been permitted to discover employment and personnel records from Defendant employers. See, e.g., Rich, supra, 522 F.2d at 344, 345; Garrett, supra, 818 F.2d at 1519 (Discovery of personnel files permitted to determine whether similarly situated firefighters were treated differently on the basis of race); Kerr, supra, 511 F.2d at 196 (Discovery of personnel records of prison officials permitted to prove that member and executive personnel have no expertise at arriving at fair decisions with regards to parole, sentencing and disciplinary proceedings in civil rights action); Orbovich, supra, 119 F.R.D. at 415 (Discovery of tenure review and personnel files of all other faculty members was permitted for purposes of comparing treatments of genders in alleged discriminatory tenure denial; E.E.O.C. v. University of New Mexico, 504 F.2d 1296, 1299 (10th Cir. 1974) (Discovery of personnel files of all College of Engineering faculty members permitted in action alleging discriminatory termination based on national origin); Weahkee v. Norton, 621 F.2d 1080, 1082 (10th Cir. 1980) (Discovery of qualifications and job records of employees hired or promoted in discriminatory preference over plaintiff was permitted).

Despite the fact that Ashtiani's document requests may generate a large amount of documents and seek employment

information not normally made public, each of these requests is designed to assist Ashtiani in evaluation of his national origin discrimination and retaliatory "hostile work environment" claims. CMI has already denied any national origin discrimination. These documents will help sustain or refute that defense.

For instance, documents 24 "referring or relating to Mr. McKenzie's involvement or Mr. James Hammer participation or involvement in decision making concerning employee's termination" as the two individuals had terminated a African American, a Chinese National, Mr. Bruce Lee and Ashtiani. Document Request 3,4,13,24,32,and 35 may reveal a pattern or practice of discrimination against minorities and its ripple effect.

### C. GENERALIZED STATISTICAL DATA IS RELEVANT BECAUSE IT MAY BE USED TO ESTABLISH A GENERAL DISCRIMINATORY PATTERN IN AN EMPLOYER'S HIRING, TERMINATION, COMPENSATION OR PROMOTION PRACTICES.

Plaintiff has alleged that he was discriminated against because of his national origin. Part of his claim is that CMI treated him differently than majority. Part of his claim is also that this treatment had disparate impact on him. Statistical evidence is relevant to establish a prima facie case of national origin discrimination under either a "disparate

impact" or "disparate treatment" theory. Rich, supra, 522 F.2d at 345 (disparate impact), Heagney, supra, 642 F.2d at 1164, Lowe v. City of Monrovia, 775 F.2d 998, 1008 (9th Cir. 1985) (disparate treatment).

Furthermore, under a "disparate impact" theory, Ashtiani may rely on statistical evidence to prove that any "business necessity" defense forwarded by CMI is pertexual. Rich, supra, 522 F.2d at 345. Similarly, under a "disparate treatment" theory, Ashtiani may rely on statistical evidence to prove that CMI's "articulated nondiscriminatory reason for the employment decision in question is pretextual." Lowe, supra, 775 F.2d at 1008. As the Court of Appeal noted in Lowe: "Statistical data is relevant because it can be used to establish a general discriminatory pattern in an employer's hiring or promotion practices. Such a discriminatory pattern is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue."

Ashtiani in his request No 13, is requesting a document that is relevant. The 10th Circuit, in McAlester v. United Air Lines Inc. stated:

> McAlester did not pursue his claim of racial discrimination under Title VII, 42 U.S.C. § 2000e. McAlester then filed his present complaint in federal district court alleging deprivation of rights under 42 U.S.C. § 1981, asserting that United failed to apply its

CV 02-00032 PAGE 15 OF 20

Case 1:02-cv-00032    Document 63    Filed 10/07/2003    Page 15 of 20

system of progressive discipline to him, because white employees involved in similar situations were not disciplined as severely. McAlester sought reinstatement with back pay. In support of his claim, McAlester presented testimony of specific instances of individual discrimination. McAlester was aware of other white employees who violated similar rules for which they could be terminated but were not. He contends minorities and white employees were disciplined differently because minorities were terminated on their first offense.

The value of statistical evidence to prove discrimination under Title VII is well articulated by the court in <u>Boyd v. Betchel Corp.</u>, 485 F.Supp. 610, 612-613 (N.D. CA 1979):

> "First generation: Title VII suits involved overt intentional acts and policies which were not difficult to discern as discriminatory, such as the blanket exclusion of women from certain positions regardless of their ability to do the work . . . . Today, however, after vigorous enforcement of our laws against employment discrimination by government and "private attorneys general," employers are aware that their overall employment policies must, at the very least, comply with the letter of the law. Discrimination is likely to be found, if at all, in the enforcement, at lower levels, of company-wide policies which appear fair and reasonable on their face. Many employers have enacted affirmative action programs, and others, having contracts with the government, are periodically inspected by federal compliance agencies. <u>Thus, if discrimination in employment exists in large organizations it is likely to be subtle, detectable, if at all, only upon careful examination of sophisticated statistical analysis.</u> (Citations omitted.) (emphasis added).

In McDonnell Douglas Corp. v. Green, 411 U.S. 792, 804, 93 S.Ct. 1817, 1825 (1973), the Court stated that a plaintiff must "be afforded a fair opportunity to show that (the employer's) stated reason for (the employee's) rejection was in fact pretext." The Court went on to point out that relevant evidence on pretext includes the employer's "general policy and practice with respect to minority employment. On the latter point, statistics as to ... employment policy and practice may be helpful to a determination of whether (the employer's conduct) conformed to a general pattern of discrimination "

In Weahkee v. Norton, 621 F.2d 1080,1083(10th Cir. 1980),

> we said, "(w)hen the employer has come forward with legitimate nondiscriminatory reasons for the action contested, a <u>plaintiff may rely on statistics to discredit the reasons the employer presented for its action.</u>

Bauer v. Bailar, 647 F.2d 1037, 1045 (10th Cir. 1981).

> Plaintiffs' statistics alone support the conclusion that black employees as a class were discriminatorily discharged. <u>When considered with the other evidence of record, that conclusion is inescapable.</u>

American National Bank, supra; see also, Chisholm v. United Postal Service, supra; ; Williams v. Trans-World Airlines, 660 F.2d 1267 (8th Cir. 1981); Flowers v. Crouch-Walker, 552 F.2d

1277 (7th Cir. 1977); <u>Bolton v. Murray Envelope</u>, 493 F.2d 191 (5th Cir. 1974)

Analysis of the P-160's and P-187 document request 3 and 4 Of Mr. McKenzie and Mr. Hammer will show consistency with the pattern of practice of the time of their promotion. It also will conclude that under their management CMI has sent two of their Mechanics to U.S District Court, Ashtiani In District of Guam. Mr. Chuck Sanders In U.S District Court in Saipan. (REF Marianas variety newspaper September 25, 2003.)

### D. Conclusion

Plaintiff's request of documents may reveal that these individuals all minorities were targeted by the new management, and may reveal that the disparate treatment had impact on their emotions and in fact what effect did it have on their lives.

Any documents referring or relating to the attitudes of employees (Document Request 35) may reveal a level of dissatisfaction on the part of CMI employees with CMI's response or lack of response to employee concerns such as salary, **"COLA"** or promotion practices effecting Guamanian, Locals or other nationalities, <u>the fact remains that CMI provides "COLA" (Cost Of Living Allowance) to Group of Caucasians management and less</u>

or none to Group of Local Managements. <u>The reality of life is that 1 [lb] of banana or a box of cereal at the store does not change price tags based on one race, it costs the same.</u> In its Supplemental Answer to Request for Production, CMI has produced certain documents requested regarding, e.g., its personnel and operating policies and policies and/or procedures on racial and/or national origin discrimination. Assuming such company-wide policies appear "fair and reasonable on their face," Ashtiani should be permitted to discover all documents requested, over CMI's objections, and submit them to statistical analysis to determine whether "subtle" discriminatory patterns or practices may be discerned. Ashtiani will heavily rely on McAlester Vs. United Airlines, as he is similarly situated in his case.

United asserts McAlester failed to prove intentional race discrimination because he did not show specific racial animus on the part of his supervisors. <u>Id</u>. 851 F.2d 1249 (10 th Cir.1988). Ashtiani will prove even more based on direct evidence of E-MAILS and statements that racial animus existed by supervisors and directors.

Statistics may be used to prove the employer's racially neutral reason for termination is purely pretext. <u>Id</u>., at 805, 93 S.Ct. at 1825; <u>Anderson</u>, 690 F.2d, at 802. When terminations are

often based on subjective evaluations of mitigating circumstances, <u>statistical evidence as to the overall disciplinary practices of the employer is especially significant.</u> **McAlester** presented the unrebutted statistical evidence that in the Denver facility blacks received twenty-four percent of the terminations over a five-year period, although they made up only six percent of the work force. The statistics also established that for the ramp service, blacks received six of eight terminations over a two-year period. The likelihood of this occurring by chance is one in 440,000. These unrefuted statistics are sufficient to support a jury's finding of pretext against United. See, <u>Castaneda v. Partida</u>, 430 U.S. 482, 495-96, 97 S.Ct. 1272, 1280-81, 51 L.Ed.2d 498 (1977).

          Respectfully submitted,

this 7TH day of October, 2003.

          Tony H. Ashtiani

          _____

          Plaintiff