Tony H. Ashtiani
P.O.Box 12723
Tamuning Guam 96931
671-688-4844
671-653-5575

FILED
DISTRICT COURT OF GUAM

NOV 21 2003

MARY L. M. MORAN
CLERK OF COURT

94

# UNITED STATES DISTRICT COURT

## DISTRICT COURT OF GUAM

| | |
|---|---|
| Tony H. Ashtiani, | ) |
| Plaintiff, | ) Civil Case No.: 02-00032 |
| | ) |
| Vs. | ) MEMORANDUM OF POINTS AND |
| | ) AUTHORITIES IN SUPPORT OF |
| | ) MOTION FOR PARTIAL SUMMARY |
| Continental Micronesia Inc, | ) JUDGMENT. |
| | ) |
| Dba, Continental Micronesia, | ) (FED R. CIV. P. 56) |
| | ) ((FED R. CIV. P. 56 (a),(d)) |
| Continental Airlines, | ) |
| | ) 42 U.S.C. |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |

Summary Judgment as part of a Modern System of Federal Litigation Management.

### I. RELIEF SOUGHT

Plaintiff Tony H. Ashtiani pro se litigant and undersigned moves the Court for an Order, pursuant to Fed R. Civ P. 56(a),(c),(d),(e) for Partial Summary Judgment against defendant Continental Micronesia Inc., and its' parent company Continental Airlines. Plaintiff humbly prays that this Court

# ORIGINAL
CV 02-00032 1 OF 17

render a judgment for the plaintiff for liability set forth in plaintiff's [Second Amended] complaint filed on May 15 ,2003.

In support of his motion, plaintiff presenting <u>Defendants' produced documents</u>, exhibits, other documents, and accompanying memorandum of law all filed contemporaneously herewith demonstrate that with respect to the issue there is no genuine issue of material fact and plaintiff is entitled to judgment as matter of law.

## II. **SUMMARY JUDGEMNT IS PROPER WHEN MOVING PARTY MEET TWO PRONGED TEST.**

Summary Judgment is proper only if and when the summary judgment record provided established both

- There is no "genuine issue" as to any "material fact", <u>and</u>
- The moving party is entitled to judgment as matter of law.

## III. **STANDARD FOR GRANTING SUMMARY JUDGMENT.**

Pursuant to FRCP 56, It is well settled that if there are no material questions of fact existing in a legal matter, the court may make a determination of the issues and enter judgment in favor of the moving party. *Celotex corp. V. Catrett,* 477 U.S. 317, 106 S. Ct. 2548 (1986);

# TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352) (Title VII), as amended, in volume 42 of the United States Code, section 2000e. Title VII <u>prohibits employment discrimination based on race,</u> color, religion, sex and <u>national origin</u>. The Civil Rights Act of 1991 (Pub. L. 102-166) (CRA) amends several sections of Title VII. section 102 of the CRA and (42 U.S.C. 1981), to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII.

## UNLAWFUL EMPLOYMENT PRACTICES

### SEC. 2000e-2. *[Section 703]*

<u>It shall be an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.</u>

## TITLE 42 USC & 1981 PROVIDES:

All persons .. . shall have the same right in every state and <u>territory</u> to make and enforce <u>contracts</u>, to sue, be parties, give evidence, and to full and equal benefit of law and proceeding for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses , and exactions of every kind, and to no other.

**The act covers whites as well as nonwhites from discrimination.** *McDonald v. Santa Fe Trail trans. Co.* 540 F2d 219

Discharge cases always fit into the contract provisions.

Case 1:02-cv-00032    Document 102    Filed 11/21/2003    Page 3 of 41

# IV. <u>STATEMENT OF ISSUES PRESENTED.</u>

1) Whether Ashtiani attended his ailing mother, as children become parents and parents become children in the aging process of life cycle on this earth so, I lovingly embrace my responsibility in caring for my elderly mother in her time of decline.

2) Whether CMI Approved or Disapproved Ashtiani's FMLA While his son (Matthew) 3 ½ year old son was ill.

3) Whether CMI comprehends that among all its 1300 employees it is expected that any of its' employees age 40 to either have old parent or a child that will be needing care, intend of congress <u>balance of family needs and work</u> FMLA of 1993.

4) Whether Ashtiani was a "public policy enforcer" and was retaliated by Mr. McKinzie HR. Director.

5) Whether, defendant Mr. McKinzie (HR. director) administrated "flight or fight response" on Mr. Mahdi and later on Ashtiani.

# V. <u>UNDISPUTED MATERIAL FACTS</u>

6) By the <u>**"End of the day"**</u> on July 03, 2001 defendant CMI executed letter stating <u>two</u> defenses as *specific reasons* for cause of termination. <u>**EXHIBIT A.**</u>

1  ***Defense I***. No call/ No show On Jun 23, 24 2001.

2

3  ***Defense II.*** Refusal to meet to discuss the situation on Monday

4  July 02, 2001.

5  Also see paragraph, 21,22,23 and 24 for alleged unauthorized

6  absence.

7

8  **Now comes;** Plaintiff striking both defenses as pretext.

9                    A.***STRICKING DEFENSE I.***

10

11  7) Mr. Joe Pangelinans' Declaration and statement. **Exhibit B.**

12

13  8) Mr. Joe Pangelinans' Declaration and statement. **Exhibit C.**

14  Noted, that Mr. Joe pangelinan states that "I had informed

15  Mr.Mendoza that duty supv. on duty that Tony Ashtiani would not

16  be in on Jun 23, 24 2001 at approx 1300, shift starts at 1330".

17

18  9) Mr. Mendoza On June 23, 2001 at 16:38 (Approx 3 and ½

19  Hours after he was informed by Mr. Pangelinan sends a e-mail

20  "TONY DID NOT SHOW UP FOR ANY OF HIS DAYS". Defendant's

21  production document (000931)  **EXHIBIT D.**

22  10) Mr. Ron Roberts statement 'I was told by one supervisor

23  Bill Herrera " if Glenn would of told me Tony called in all this

24  would not be happening."'  **EXHIBIT E.**

25

Case 1:02-cv-00032   Document 102   Filed 11/21/2003   Page 5 of 41

## B. *STRIKING DEFENSE II.*

11) Plaintiff was informed to attend a meeting at 1600 on July 02, 2001.

12) Attorney Mark Williams Esq,. asks what is the meeting about and defendant deprived plaintiff rights to procedural due process and rights to representation Declaration of Mark Williams .**EXHIBIT F.** (please note that this happened at 10:30 a.m.)

13) Accordingly, Ashtiani was left with limited procedural mechanism, thus, plaintiff requested information about the meeting and submitted a letter to human resources on July 02, 2001 at 11:05 a.m. Defendants' production of document (000928) **EXHIBIT G.**

14) It was not until 11 minutes after the meeting at 16:11 that Ms. Teresa Sage response to my letter and states " I Have received your letter". She states "you need to contact Zar as soon as possible". Defendants Production of Document (000929) **EXHIBIT H.**

15) plaintiff respectfully directs the attention of the Court that, this meeting was nothing but a "staged theatre" as Mr. Zar Atalig On June 28, 2001 (3 days prior to the meeting) had

Case 1:02-cv-00032    Document 102    Filed 11/21/2003    Page 6 of 41

1  requested plaintiff's final pay check Defendants' production of
2  documents (000225)  **EXHIBIT I** .

3

4     16)  It is not plaintiff that has produced these documents
5  Rather, it is the defendant through its own production of
6  documents that has produced documents to discredit and unworthy
7  of believe their own case. This single piece of document
8  (000225) critical pivoting point under FRCP rule (56), <u>Genuine</u>
9  <u>issue of facts</u>, upsetting indeed,  indicates ill will, malice,
10 and recklessness with no regards to plaintiffs' rights to
11 adequate fair hearing to clear his name.

12

13    17) <u>Defendants in their official capacity has violated</u>
14 <u>plaintiff's right protected by the Equal Protection and equal</u>
15 <u>application Clause of the Fifth and Fourteenth Amendment which</u>
16 <u>is emphasized below,</u> **42 U.S.C. SEC 2000e-2 (703)(2)(D)**.
17 <u>Consequently, plaintiff prays for partial summary judgment.</u>

18

19              **UNLAWFUL EMPLOYMENT PRACTICES.**

20              <u>**42 U.S.C. SEC 2000e-2 (703)(2)(D)**</u>

21       <u>Nothing in this Subsection shall be construed to authorize or</u>
         <u>permit the denial to any person of the due process of law</u>
22       <u>requires by the constitution.</u>   **EXHIBIT J.**

23       The Supreme Court's statement in Aikens and Burdine is
         clear: <u>a plaintiff can prevail either by proving that</u>
24       <u>discrimination more likely motivated the decision or that the</u>
         <u>employer's articulated reason is unworthy of belief.</u> See,
25       e.g., *Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 766, 51
         EPD Par. 39,244 (3d Cir. 1989)

Case 1:02-cv-00032   Document 102   Filed 11/21/2003   Page 7 of 41

**simply disproving defendant's reason is enough,** *CBS, Inc. v. Bruno*, 493 U.S. 1062 (1990); MacDissi v. Valmont Industries, 856 F.2d 1054, 1059, 47 EPD Par. 38,261 (8th Cir. 1988) plaintiff need not also prove intentional discrimination; such an approach "unjustifiably multiplies the plaintiff's burden").

## VI.   THERE ARE NO GENUINE ISSUE OF MATERIAL FACT

### A. CONTSTRUCTIVE TERMINATION

### SIXTH CAUSE OF ACTION

18)   Plaintiff had called work on Jun 23rd of 2001, prior to the shift start. Defendants' maintenance supervisor acting in official capacity of the defendant withheld and concealed the information and regarded the plaintiff as two consecutive days no-call/no-show.

19) Mr. Joe Pangelinan furthermore clarifies that the supervisor was informed about my absences due to illness of my son and that this information was passed down to him prior to shift start. Mr. Ron Roberts statement Confirms that a wrongful termination was at play and that Mr. Bill Herrera knew about the information. Accordingly, CMI was well informed about my wrongful discharge and made no attempt to prevent the intentional infliction of emotional distress thus, allowed to continue on as a result administrated more intolerable stress and harm to a common man and his family.

Case 1:02-cv-00032   Document 102   Filed 11/21/2003   Page 8 of 41

A **constructive discharge** occurs when the employer has given the <u>employee the option to remain employed</u> by the company but has placed such <u>intolerable, difficult, or unpleasant conditions</u> on the employee's continued employment that a reasonable person in the employee's circumstances would resign rather than remain employed. <u>*Rulon- miller v international business machines Corp.*</u>*(1984)162 Cal. APP. 3d 241,208 Cal.Rprt.254*

## B. <u>WRONGFUL TERMINATION</u>

### SEVENTH CAUSE OF ACTION

20) Plaintiff asserts that wrongful termination occurred due to the fact supervisors in coordinated effort withheld information from each other or they knew and did not tell the truth acted in ill will, false motive, malice and willful misconduct.

### <u>LENGTH OF SERVICE</u>

In which the fact that an airline employee had <u>worked for the airline for **18 years**</u> was a factor to which **the court pointed in holding that,** under the circumstances of the case, the covenant of good faith and fair dealing <u>required the airline to have good cause to terminate the employee.</u> C*learly v. American Airlines* (1980) 111 Cal App 3d 443,168 Cal Rptr 722

### <u>LACK OF GOOD FAITH DEALING DEFINED</u>

To find the defendant liable for breach of the covenant of good faith and fair dealing, you do not have to find that the employer intentionally acted in bad faith. <u>Bad faith implies dishonesty, fraud, and concealment.</u> However, lack of good faith and fair dealing may be found where an employer acts unreasonably or without giving equal consideration to the employee's rights and interest as it gives to its own interest. The employer is liable for breach of its duty to act in good faith and fairly if its conduct showed either a lack of good faith or a <u>lack of fair dealing toward plaintiff.</u> *Gruenberg v Aetna Ins. Co*. (1973) 9 Cal.3d 566, 573-574,108 Cal.Rptr.480

## C. Negligent Supervisor

### SECOND CAUSE OF ACTION

21) Plaintiff assertion of negligent supervision arises from many cover up-s and bad faith which occurred, between supervisors, Defendant Continental knew, or reasonably should have known, that Maintenance supervisors were engaging in the unlawful behavior, After defendant discovered that Ashtiani had called, Mr. Herrera without communicating or my consent signs "for employee" and places reason for absences "No show" by removing "NO CALL" part of it, as defendant is well aware if specific reason is invalid in part thus, invalid as whole.

22) Noted that Defendant is making this change on October 30, 2001. (4 months after termination). Defendants' production of document (000254) **EXHIBIT K.**

23) Plaintiff also prepared for this defense of defendants as Plaintiff requested from his Co-worker to bring out similar situation sick calls from the same classification as plaintiff of different race and nationality in comparative worth capacity.

**1)**. On April 03, 2002  Tony. R.   Calls Roger.  (non Supv).

**2)**. On April 14  2002  Junior. M. Calls Victor. (non Supv).

**3)**. On April 27, 2002  Marlon  R. Calls Fabian. (non Supv).

**JOINT EXHIBITS L.**

Case 1:02-cv-00032   Document 102   Filed 11/21/2003   Page 10 of 41

24) These above employees did call non-supervisors and did not receive any authorization from supervisor prior to their absences of not coming to work, and Ashtiani among all the employees of CMI needs authorization from supervisor for his absences.

> Plaintiff must demonstrate that the employer's stated reasons for its employment practices "were not its true reasons, but were a pretext for discrimination." *Texas Department of community affairs v. Burdine,* 450 U.S at 253,101 S.Ct at 1093.

## D. Unlawful Discrimination Based upon Race and National Origin

### THIRD CAUSE OF ACTION

25) At all times material hereto, federal statute civil rights act of 1964 as amended and USC-2000-e5. Which prohibited Defendant Continental, from discriminating against any employee on the basis of race, color or ancestry. Said laws required Defendant Continental to refrain from discriminating against Plaintiff on the basis that he was a minority among the majority group. Second Amended Complaint *Id* at paragraph (34).

> (Prima facie case of racial discrimination established by showing that plaintiff was (1) A member of a protected class; (2) qualified for the position from which he or she was discharged; (3) discharged; and (4) that after plaintiff's discharge, "the position remained open and the employer continued to seek applicants from persons of complainant's *qualifications*"). See *McDonell Douglas v. Green*, 411 U.S. 792, 801, 92 S.Ct.

26) Elements (1) and (3) is uncontested also <u>see,</u> Second Amended Complaint **id** at paragraph (11). For element (2).

27) Plaintiff now needs to satisfy condition **(4)** of prima facie case within the framework of <u>McDonell Douglas v. Green.</u> Mr. Vince Diaz's statement " 2 Employees were hired as A&P'S after H. Ashtiani's termination." A&P's(Airframe & power plant) Mechanic. **EXHIBIT M.**

> McAlester alleged he suffered racial discrimination because he received disparate treatment under United's disciplinary procedures. <u>McDonnell Douglas, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668,</u> establishes the model of proof for an individual disparate treatment case. A prima facie case of discriminatory termination is made by showing **(i)** that McAlester belongs to a racial minority; **(ii)** that he was discharged for violating a work rule of United; and **(iii)** that similarly situated non-minority employees who violated the same rule were treated differently than he was. <u>Brown v. A.J. Gerrard Mfg. Co.,</u> 643 F.2d 273, 276 (5th Cir.1981).

28) In this case Elements **(i)** and **(ii)** is uncontested. plaintiff reasonably believes that based on circumstantial evidence has proven condition **(iii)** previously in this motion **Id** at paragraph 15,17,23,and 24. Also <u>see</u>, Mr. Larry Kimball's statement in plaintiff's declaration.

29) Therefore, Defendant Continental has engaged in other discriminatory practices. As a direct, foreseeable, and proximate result of Defendant's discriminatory acts, Plaintiff has suffered and continues to suffer the humiliation, embarrassment, negative publicity, mental and emotional distress

Case 1:02-cv-00032   Document 102   Filed 11/21/2003   Page 12 of 41

administrated upon him including name callings. Plaintiff's

Affidavit. _Id_ at answer to interrogatories No 18.

> United asserts McAlester failed to prove intentional race discrimination because he did not show <u>specific racial animus</u> on the part of his supervisors. This is not McAlester's burden. While McAlester must produce evidence of discriminatory intent or motive to establish a prima facie case, it can be inferred from the mere fact of differences in treatment. _Teamsters,_ 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15 (1977); _Clark v. Atchison, Topeka and Santa Fe Ry. Co.,_ 731 F.2d 698, 702 (10th Cir.1984). <u>McAlester need not show his supervisors were personally prejudiced against him.</u>

30) On the other hand, <u>Ashtiani is able to prove beyond</u> circumstantial evidence that racial animus was existing and stated by the director of maintenance Mr. Hammer. **EXHIBIT N**. also _see,_ Answer to Interrogatories No 18.

> Thus, it must be shown between the employer's proven bias and its adverse action. For example, evidence that <u>the **biased remarks** were made by the **individual responsible** for the **adverse employment decision** or by one who was involved in the decision, along with evidence that the remarks were related to the decisionmaking process, would be sufficient to establish this link.</u> See also _Randle v. LaSalle Telecommunications, Inc.,_ 876 F.2d 563, 569, 50 EPD Par. 39,074 (7th Cir. 1989)

E. <u>INTENTIONAL DISCRIMINATION ,INTENTIONAL RETALIATION POST 9/11</u>

**FOURTH CAUSE OF ACTION.**

31) Plaintiff moves to secure discrimination occurred based on solid concrete evidence provided from the Continental legal department in Houston, Texas., <u>Covering-up discrimination</u> with no regards for the rights of minorities in Guam despite the

Case 1:02-cv-00032    Document 102    Filed 11/21/2003    Page 13 of 41

joint statement from the EEOC AND DEPARTMENT OF JUSTICE post 9/11.

32) June 14, 2002 letter from EEOC investigator to Continental Airlines, requesting statistical data. **EXHIBIT O.** Defendants' production of document 001032.

33) June 18, 2002 Intentional delay to accomplish **July 3,** as pivoting of response to EEOC. **EXHIBIT P.** Defendants' production of document 001034. (Noted that Jul 03, 2001 was the date of plaintiff's termination letter).

34) July 10, 2002 defendants concealed crucial information, and statistical data in reference to number of terminated employees, all minorities, by shifting months, and not responsive to EEOC requests of specific months in question. **EXHIBIT Q.** Defendants production of documents 001037.

35) Defendants alters the initial request of EEOC for June 1999 and submits modification made to 6 months ahead to January 1, 2000. **(Skipping 6 months).**

36) Defendant withheld information in reference to statistical data to conceal the identity of Mr. Ali Mahdi which was released in December 1999.(Shortly after e-mail in

1  plaintiff's affidavit) <u>African-American</u>, 44 years old, male.
2  Also in the same respond to EEOC, defendant had already
3  terminated Mr. Bruce Lee on or about June 6, 2001. <u>Chinese</u>
4  <u>National,</u> also a minority in Plaintiff's Department, defendant
5  does a touch and go with his name and never mentioned that he
6  was also terminated.

8  37) Defendant On the same **Exhibit Q**, alters the ending
9  period of statistics from June 2001 of EEOC request , <u>to fit</u>
10 <u>their own to **July 3, 2001**</u>, which its original motive of change
11 of this date was generated on the letter dated June 18, 2002.
12 previous <u>EXHIBIT P,</u> More importantly, this had played an optical
13 illusion to distract investigator's recollection in reference to
14 **(July 03)**. U.S. Federal Investigator had requested statistics
15 between June 1999 to ending June 2001, no mention any where in
16 his initial request of ending period **July 03, 2001.**

18 38) Defendant's bold legal strategy was a big risk between no
19 cause finding and now intentional discrimination and intentional
20 retaliation post 9/11. The defendants' actions were generated to
21 covering up statistical data, conspiracy of federal statute.

23 39) If in fact, correct information was presented, pattern of
24 practice had been established which is what the investigator was
25 looking for. <u>See</u>, plaintiffs' affidavit. Paragraph 6 ,7,and 10.

## F. Intentional Infliction of Emotional Distress

### FIRST CAUSE OF ACTION

40) Plaintiff after wrongfull termination and intentioanl discrimination had suffered loss of motivation, loss of self esteem, loss of energy, injury to professional standing, loss of enjoyment of life, anexity, stress, depression, marital strain, humilation, emotional distress, nervous break down, injury to credit standing.

41) Ashtiani had complaint to Dr. Chenet on October 03, 2001. and it was brifly noted by Dr. Chenet "37 year old male is in for decrease energy, elev fatigue, chronic fatigue syndrom, depression over loss of job at Contininatal as aircraft mechanic. **EXHIBIT R.**

42) Plaintiff based on direct and circumstantial evidence reasonably believes that he has proven that wrongful termination has occurred and that plaintiff moves the court for intentional infliction of emotional distress as liability against the defendant.

> Emotional distress are available in a wrongful discharge action under the public policy.
>
> Plaintiff's psychiatrist testified that the plaintiff was suffering from anxiety, stress, and depression. The court found that this was an adequate basis for the award. Rowlett v. Anheuser-Busch, 832 F.2d 194, 44 EPD Par. 37,428 (1st Cir. 1987).

Case 1:02-cv-00032   Document 102   Filed 11/21/2003   Page 16 of 41

# VII. CONCLUSION

43) Plaintiff has been left with impression that employer has taken 17 years of my youth life, and has taken the very best employee that had to offer, in addition 2 ½ years to fight my case, nearly 20 years, has destroyed the future of my children's education and now has discarded the employee like a used tissue or in a way that disregards all human dignity.

44) For all of the reasons set forth above, the plaintiff respectfully asks of Honorable Chief Judge John S. Unpingco of United States District Court of Guam and prays even more that Partial Summary Judgment will be Granted.

**Submitted respectfully**,    This 21st day of November, 2003

_____
Tony H. Ashtiani

<u>Pro Se</u>, Litigant

 

To:        Hamid (Tony) Ashtiani

From:      William A. Herrera

Subject:   Disciplinary Action

Date:      July 3, 2001

At the end of our discussion on June 26, 2001 with Prudencio Aguilo and IBT Representative, Mike Pablo present, you were advised that you would be contacted for a meeting on Monday. I had also advised you to contact me by Tuesday, 1600 if you had not heard from me. The meeting was scheduled to discuss your no-call/no-show of your shifts of June 23 and 24, 2001.

After numerous attempts, starting with my e-mail sent on June 27 to the address you had provided and also voice messages left on the answering machine associated with telephone number 653-5575, we have been unable to set a formal meeting date. Because of the faxed received at 1701 on July 3, 2001 it is apparent that you don't want to meet to complete this investigation. With the information that I have available and based on no reasonable explanation for not securing authorization for your absences on June 23 and 24, 2001 I have made the decision to terminate your employment with Continental Micronesia effective July 3, 2001.

Because your refusal to meet and discuss this situation any further, it is with regret that I am reduced to sending this certified letter concerning your status with Continental Micronesia. Your final paycheck is available and may be retrieved from the Human Resources department by contacting Robbi Crisostomo, 642-8727 or Teresa Sage, 642-8852.

Should you elect to appeal this termination, you may do so in accordance with Article 24 of the current bargaining agreement between Continental Micronesia, Inc. and The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

William A. Herrera

Cc:    Baltazar Atalig
       Employee Relations
       Union Representative
       P-file

323

# DECLARATION

DECLARATION OF JOE . PANGELINAN.

I, Joe Pangelinan declare as follows:

My name is Joe Pangelinan, at my own will I testify that Tony Ashtiani did call on June 23, 2001 at approx. 1250 p.m. that Tony informed me he will not be in due to illness of his son and he would not be in on June 23 and 24 , 2001.

If you have any questions please contact me at Cell 687-2303. Hm. 789-1946.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at _AGANA_ , Guam. on this _17_ day of November 2003.

_JOSEPH M. PANGELINAN_

Printed Name                             Signature

## CERTIFIED COPY

GUAM, U. S. A.,

On this 18th day of November, 2003, I certify that the preceding or attached documents and the duplicate retained by me as a notarial record, are true, exact, copies of "DECLARATION OF JOE PANGELINAN", presented to me by the document's custodian TONY H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.

BENJAMIN B. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 200?
P. O. Box 821, Hagatna, Guam 9693?

13 SEPT '02

TO E.E.O.C. Director:

Dear Mr. Piera,

My name is Joe Pangelinan. At my own will I testify that Tony Ashtiani did call on June 23, 2001 at approx 1250 pm. That Tony informed me he will not be in due to illness, of his son and he would not be in on June 23 & 24th 2001. → If you have any questions pls contact me at 687-2303

Hm # 789-1946

5559 17417

JOSEPH M. PANGELINAN

475

# DECLARATION

## DECLARATION OF JOE . PANGELINAN.

I, Joe Pangelinan declare as follows:

In addition to previous declaration, I had informed Mr. Mendoza that duty supervisor on duty that Tony Ashtiani would not be in on Jun 23 & 24 2001 at approx 1300, shift starts at 1330.

In reference to Mr. Sherman Thompson's statement everyone in the dept knew Tony Ashtiani was of Iranian descent on several occasion Mr. Sherman Thompson would talk Politics about Iran with Tony Ashtiani. Sherman Thompson on different occasions would refer to Tony Ashtiani as his "Persian Brother" or "Iranian Brother." Sherman Thompson is misleading the investigator on Tony Ashtiani knowledge of his nationality.

My personal view on the situation is Mr. Tony Ashtiani is a very respectable and knowledgeable individual in our dept. Please consider his case.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at ~~AGANA~~ , Guam. on this __17__ day of November 2003.


_Joseph M. Pangelinan_
Printed Name                              Signature

## CERTIFIED COPY

GUAM, U. S. A.,

On this 18th day of November, 2003, I certify that the preceding or attached documents and the duplicate retained by me as a notarial record, are true, exact, copies of "DECLARATION OF JOE PANGELINAN", presented to me by the document's custodian TONY H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.

_Benjamin G. Galarpe_

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2005
P. O. Box 821, Hagatna, Guam 96932

14 SEPT '02

TO E.E.O.C. Director:

Dear Mr. Rivera,

In addition to previous letter I had informed Mr. Mendoza that Duty Supr on duty that Tony Ashtiani would not be in on Jun 23 + 24 2001 at approx 1300, Shift Starts at 1330.

In reference to Mr. Shumna Thompson's Statement everyone in the dept knew Tony Ashtiani was of IRANIAN Descent. On several occasions Mr. Shumna Thompson would talk politics about Iran with Tony Ashtiani. Shumna Thompson on different occasions would refer to Tony Ashtiani as his "Persian Brother" or "Iranian Brother". Shumna Thompson is misleading the investigator on Tony Ashtiani knowledge of his nationality.

My personal view on the situation is Mr. Tony Ashtiani is a very respectable + knowlegable individual in our dept. Please reconsider his case.

JOSEPH M. PRESSMAN

| | |
|---|---|
| **From:** | Mendoza, Glenn R |
| **Sent:** | Saturday, June 23, 2001 16:38 |
| **To:** | Babauta, Benjamin C; Herrera, William A |
| **Cc:** | Atalig, Baltazar |

TO DAYS/SWINGS 23JUN01
201- NLG DIP CW BY DAYS. AC TO DO 973. NO PLA.

227- GOOD TA AC. PUT LITE BULBS 4551 FOR MNL MX. IT'S IN THE COCKPIT. NO PLA.

228- SCK WIP, NO PLA. ONE DIP FOR NO1 ENG NO8 BLADE SLOT CONVEX TE SIDE  WITHIN LIMITS, NEED TO DO INSP PER ECRA 7221-0164. SPN PLA NO1 ENG HIGH STAGE BLEED, SWINGS WIP.

232- GOOD DISP, CHECKING ON AOG FOR INFO FOR SHIPPING ON PANEL 29-5221-3-0024 DUE IN 03JUL PER AOG ROBERT..

235- COMING IN AT 2255. WILL TRY AND MEET TO PUT OIL. NO PLA.

236- GOOD DISP.

GOOD TA AC. NO PLA.

246- SCK WIP, NO PLA.

249- SWAPPED WITH 250, SENT SCK-3 PAPERWORK AND PARTS TO SPN TO CW.

250- SWINGS WIP FOR CONDUIT DIP, SCK WIP. ETR 0200 24JUN.

063- CAME IN WITH COFFEE AND OVEN INOP CW, DID NOT WORK CARGO DUE RAMP LOADING.

083- SCK WIP, WORKING PLA AT THIS TIME. FAULT ISO PANEL, A/C DOOR OIL, FWD CARGO LOADING SYS INOP.

PLS SEE IDI FOR EA FOR OXY GEN INSP.

BILL, TONY DID NOT SHOW UP FOR ANY OF HIS DAYS, HE DID TALK TO JOE P. ABOUT SOME MEETING YOU AND HIM ARE TO ATTEND ON MONDAY. SEE NOTE IN YOUR MAILBOX. ALSO RYAN G. HAS BEEN SICK THIS WHOLE WEEK. HE CALLED ME ON FRIDAY AND SAID HE WAS GOING TO SEE A DOCTOR THAT DAY, I TOLD HIM TO MAKE SURE HE HAD A DOC. NOTE. I DID OFFER FMLA BUT HE DECLINED.

PER MARTY EA FOR OXY GEN INSP MY BE DONE IF YOU FEEL YOU HAVE THE TIME AND MANPWR. IF NOT HE CAN HAVE IT DONE AT BCK, NO BIG RUSH ON THIS. PER MARTY.

ZAR, I WOULD LIKE TO TAKE ONE WEEK VAC STARTING 12-15JUL, THIS IS THE WEEK I MOVED IN MAY DUE TO BILL WAS ALSO ON VAC.

**000931**

1

Case 1:02-cv-00032    Document 102    Filed 11/21/2003    Page 23 of 41

## Herrera, William A

| | |
|---|---|
| **From:** | Mendoza, Glenn R |
| **Sent:** | Saturday, June 23, 2001 16:38 |
| **To:** | Babauta, Benjamin C; Herrera, William A |
| **Cc:** | Atalig, Baltazar |

TO DAYS/SWINGS 23JUN01
201- NLG DIP CW BY DAYS. AC TO DO 973. NO PLA.

227- GOOD TA AC. PUT LITE BULBS 4551 FOR MNL MX. IT'S IN THE COCKPIT. NO PLA.

228- SCK WIP, NO PLA. ONE DIP FOR NO1 ENG NO8 BLADE SLOT CONVEX TE SIDE  WITHIN LIMITS, NEED TO DO INSP PER ECRA 7221-0164. SPN PLA NO1 ENG HIGH STAGE BLEED, SWINGS WIP.

232- GOOD DISP, CHECKING ON AOG FOR INFO FOR SHIPPING ON PANEL 29-5221-3-0024 DUE IN 03JUL PER AOG ROBERT..

235- COMING IN AT 2255. WILL TRY AND MEET TO PUT OIL. NO PLA.

236- GOOD DISP.

240- GOOD TA AC. NO PLA.

246- SCK WIP, NO PLA.

249- SWAPPED WITH 250, SENT SCK-3 PAPERWORK AND PARTS TO SPN TO CW.

250- SWINGS WIP FOR CONDUIT DIP, SCK WIP. ETR 0200 24JUN.

063- CAME IN WITH COFFEE AND OVEN INOP CW, DID NOT WORK CARGO DUE RAMP LOADING.

083- SCK WIP, WORKING PLA AT THIS TIME. FAULT ISO PANEL, A/C DOOR OIL, FWD CARGO LOADING SYS INOP.

PLS SEE IDI FOR EA FOR OXY GEN INSP.

BILL, TONY DID NOT SHOW UP FOR ANY OF HIS DAYS, HE DID TALK TO JOE P. ABOUT SOME MEETING YOU AND HIM ARE TO ATTEND ON MONDAY. SEE NOTE IN YOUR MAILBOX. ALSO RYAN G. HAS BEEN SICK THIS WHOLE WEEK. HE CALLED ME ON FRIDAY AND SAID HE WAS GOING TO SEE A DOCTOR THAT DAY, I TOLD HIM TO MAKE SURE HE HAD A DOC. NOTE. I DID OFFER FMLA BUT HE DECLINED.

PER MARTY EA FOR OXY GEN INSP MY BE DONE IF YOU FEEL YOU HAVE THE TIME AND MANPWR. IF NOT HE CAN HAVE IT DONE AT BCK, NO BIG RUSH ON THIS. PER MARTY.

ZAR, I WOULD LIKE TO TAKE ONE WEEK VAC STARTING 12-15JUL, THIS IS THE WEEK I MOVED IN MAY DUE TO BILL WAS ALSO ON VAC.

Witth~0 1/24/02

1

During the month of December on or about 11th I Ronald Roberts went to MR. Jim Hammer's office to talk to him about man power. Because of the recent layoff of Aircraft mechanic's. when I asked mr. Hammer about Bringing Back mr. Wong (ED). Because we were told, By mr John Carballido who took a year leave of absent's. John was told by mr Hammer He was recalling ED Wong. But this was only to keep John Happy until he left. mr Hammer Had no intentions of Bring anyone back, enfact mr. Hammer Had told me we were still 6 people over - manpower. So I asked mr Hammer about Tony Cistiani who I feel was wrongfully Released from the Company. Because of two Supervisor's not communicating with each other. I was told by one Supervisor Bill Herrera "if Glenn would of told me Tony Called in all this would not be Happening."

477

**DECLARATION**

**DECLARATION OF MARK E. WILLIAMS**

I, Mark E. Williams, declare as follows:

① On ~~June~~ JULY 2, 2001 at approximately 10:30 a.m., Guam time, I contacted Ms. Teresa Sage of the Continental Airlines Human Resources Office by phone and advised her of this office's representation of Mr. Tony Ashtiani, and requested information regarding the subject matter of the pending hearing or conference between the Management of Continental Airlines and Mr. Ashtiani involving Mr. Ashtiani's disciplinary action, and his related appeal/grievance of such action. I further requested information necessary for the preparation of Mr. Astiani and this office for such conference or hearing. However, Ms. Sage refused to provide any such requested information or to acknowledge this office's representation of Mr. Ashtiani. Instead, Ms. Sage directed me to contact Continental's legal office in Houston, which we were unable to do by phone as the office in Houston was apparently closed at that hour.

I declare that I have firsthand knowledge of the foregoing facts, that I have read the foregoing statement and that the information contained herein is true and correct to the best of my knowledge and belief, and that if called as a witness, I could testify competently thereto. I further hereby declare that this declaration is executed under penalty of perjury at _Hagatna Guam_ on
_5/20/02_
{Date}

_Mark E. Williams_
**Printed Name**

_Cantwell_
**Signature**

313.

July 01, 2001

**TONY ASHTIANI**

P.O. BOX 12723
TAMUNING, GUAM  96931
CELL: 671- 688-4844
CELL: 671- 687-8182
TEL  : 671- 653-8008
FAX  : 671- 653-5575
(e-mail) ashtiani@ite.net

TO :  Ms .TERESA SAGE
        HUMAN RESOURCES DEPT.
        LABOR RELATIONS

RE:    MEETING

        PLEASE BE ADVISE AS PER THE AGREEMENT BETWEEN CMI AND IBT ,
ARTICLE 24 ITEM F. LETTER VIA CERTIFIED MAIL WHICH WOULD INCLUDE THE
FOLLOWING INFORMATION.

        1) THE CONTENTS OF THE MEETING?
        2) THE NUMBERS OF PERSONS WHICH WILL ATTEND (CMI)?
        3) WHO WILL BE ATTENDING THIS MEETING (PROVIDE LIST OF NAMES)?
        4) WHICH  ARTICLES WILL BE DISCUSSED?
        5) WHICH STEPS OF ARTICLE 24 WILL BE DISCUSSED?

        SINCE THIS MEETING HAS DIRECT EFFECT ON ME I AM ENTITLED TO
SUCH BASIC ANSWERS ALSO PROPER AND ADEQUATE TIME TO PREPARE.

        YOUR COOPERATION IN THIS MATTER IS KINDLY APPRECIATED .

        SINCERELY YOURS

                                                                    RECEIVED
                                                                    7/2/01
            JUl/02/01                                                 11:12 Am
              11:05 Am

                                                                    000928

**Sage, Teresa**

| | |
|---|---|
| From: | Sage, Teresa |
| Sent: | Monday, July 02, 2001 4:11 PM |
| To: | 'ashtiani@ite.net' |
| Subject: | Meeting |

Importance:      High

Tony,

I have received your letter. As a matter of fact, Bill Herrera has been trying to reach you to confirm the meeting that was scheduled for 1600 today. I understand he e-mailed you last week when he set it up. With regard to the information you refer to in your letter, I'm afraid you have misunderstood the contract. We welcome the chance to clarify during the meeting with you.

You need to contact Bill or one of the Tech Ops supervisors or Zar as soon as possible.

*Regards,*

*Teresa Sage*

tsage@csair.com
Employee Relations
(671) 642-8852 - *Office*
(671) 649-5006 - *Fax (private)*
(671) 720-8202 - *Pager*
*Co mail:* GUMHR

**000929**

1



# Continental
# Micronesia

TO:        Beatriz A. Camacho,
           Payroll Department

FROM:      Adrienne B. Cruz

SUBJECT:   Final Paycheck – Tony Ashtiani

Enclosed is the Hours Summary, and Punch Detail Report for the aforementioned subject. Should you have any inquiries or require additional information, please do not hesitate to contact me.

Please be advised that this memorandum is countersigned and approved by our Manager.

BALTAZAR ATALIG, Manager - Aircraft Maintenance

From the desk of:
*Adrienne B. Cruz*
Administrative Specialist
Phone:  [671] 642-8904
Fax:    [671] 649-5248
E-mail:  acruz@csair.com
Boardmail:    GUMMX

## 000225

(i) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had-

(I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

(II) a reasonable opportunity to present objections to such judgment or order; or

(ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

(2) Nothing in this subsection shall be construed to-

(A) alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened;

(B) apply to the rights of parties to the action in which a litigated or consent judgment or order was entered, or of members of a class represented or sought to be represented in such action, or of members of a group on whose behalf relief was sought in such action by the Federal Government;

(C) prevent challenges to a litigated or consent judgment or order on the ground that such judgment or order was obtained through collusion or fraud, or is transparently invalid or was entered by a court lacking subject matter jurisdiction; or

(D) authorize or permit the denial to any person of the due process of law required by the Constitution.

(3) Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsection shall preclude a transfer of such action pursuant to section 1404 of title 28, United States Code.

OTHER UNLAWFUL EMPLOYMENT PRACTICES

SEC. 2000e-3. [Section 704]

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including onthejob training programs, to discriminate against any



FORM: P-138CM
I&E#: 00-0703-3-1415
REV: 02/95

# Continental Micronesia

**Employee Number:** 05963

## ABSENCE FROM DUTY REPORT

**Date Prepared:** 10/30/01

**INSTRUCTIONS**

1. SICK LEAVE: Immediately upon return to work or at the end of each pay period whichever first occurs.
2. OCCUPATIONAL INJURY LEAVE: Immediately when injury necessitates absence from duty.
3. **VACATION: Prior to the start of the vacation period; OR when a paycheck is desired before the start of the vacation period, this form must be <u>received</u> in Payroll FOURTEEN (14) CALENDAR days <u>prior</u> to the date the check is desired.**
4. OTHER: Immediately upon return to work or at the end of each pay period whichever first occurs.
   **Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee**

**SICK LEAVE**

(Attach Doctor's Certificate When Requesting)

I, _____, employed at _____ and _____
              PRINT NAME                         WORK LOCATION    /    COST CENTER

Employee Number_____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE_____ TOTAL HOURS **000254**

BRIEF DESCRIPTION, NATURE OF ABSENCE _____

Signature of Employee _____ ACKNOWLEDGED _____
                                                              SUPERVISOR                    DATE

CIRCLE REGULAR DAYS OFF:  S  M  T  W  T  F  S

**OCCUPATIONAL INJURY LEAVE**

(Attach Doctor's Certificate When Requesting)

I, _____, employed at _____ and _____
              PRINT NAME                         WORK LOCATION    /    COST CENTER

Employee Number_____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE_____ TOTAL HOURS_____

Signature of Employee _____ ACKNOWLEDGED _____
                                                              SUPERVISOR                    DATE

CIRCLE REGULAR DAYS OFF:  S  M  T  W  T  F  S

**VACATION**

I, _____, employed at _____ and _____
              PRINT NAME                         WORK LOCATION    /    COST CENTER

Employee Number_____ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicated below.

VACATION (HOURS)_____

DEFERRED HOLIDAYS (HOURS)_____

DATES OF VACATION (FROM)_____ (TO)_____ TOTAL HOURS_____

MY PAYCHECK TO BE ISSUED ON _____ is herewith requested for _____
                                             ( DATE )                                                                ( DATE )

Signature of Employee _____ ACKNOWLEDGED _____
                                                              SUPERVISOR                    DATE

CIRCLE REGULAR DAYS OFF:  S  M  T  W  T  F  S

**OTHER**

(Personal Business, Authorized Leave, Jury Service, etc.)

I, _Tony Astiani_____, employed at _Gumax_ and _____
              PRINT NAME                         WORK LOCATION    /    COST CENTER

Employee Number _05963_, hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicted below.

DATE OF ABSENCE _Jun 23-24, 2001_ TOTAL HOURS _20_

REASON FOR ABSENCE _No Show_

If because of death in the immediate family, what relation to the employee? _____

Signature of Employee _For Employee_ ACKNOWLEDGED _____ 10/30/01
                                                                             SUPERVISOR                    DATE

CIRCLE REGULAR DAYS OFF:  S  M  T  Ⓦ  Ⓣ  Ⓕ  S

**Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee**

**Continental Micronesia** 

## TECHNICAL SERVICES DIVISION
### SHIFT LOG

SUPERVISOR SIGNATURE: _____ DATE: 4/3/02 SHIFT: Swing STATION: Gum

#### PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|----------|-------------|----------|--------|
| Tony R. | 1228 | Roger | Sick |
| | | | |
| | | | |
| | | | |

| ACFT | TIME | SHIFT NOTES |
|------|------|-------------|
| | | Heads up Garage = RLR STRETCHER INSTR T-852/03 |
| | | SEAT 5-7 DGR plus 5 SMALL MOD 02 |
| | | |
| | INFO | CLNNER FTR T-900 N-236 (DRS) FAK-3 |
| | | |
| | INFO | RLR √ MEL BOOK ONBOARD AIRCRAFT FOR possible |
| | | ATA CHAPTER - 32, 33, 34 + 38 missing |
| | | INSPECTED A/C AS FOLLOWS- |
| | | N-240 — OK    N-246 — OK    N-227 — OK |
| | | N-236 — OK    N-228 — OK    N-235 — OK |
| | | N-201 — OK    N-249 — OK |
| | | N-250 — OPEN |
| | | N-232 — OPEN |
| | | |
| | INFO | 2EA CDL NON-ROUTINE ON N-250 As Follows |
| | | ① RH SIDE KRUEGER FLAP 3+4 SEALS TORN |
| | | ② LH SIDE FLAP SEALS 1+2 TORN KRUEGER |
| 058 | 9 | SV= DONE    P/L= θ    PLA= θ |
| MIKE/JOS OK | | OIL= θ    FLPS= θ    BOR= θ |
| | | N/R= θ    LAV SHROUDS= DONE |
| | | |
| 249 | 18 | SV= DONE    P/L= OPEN    PLA= θ |
| CONIE/VIC | | OIL= OPEN    FLPS= θ    BOR= θ |
| TONY D. | | HF MOD=    N/R= |
| | | LAV SHROUDS= REMOVED |

FORM: 40.0061CM
DATE: 04-01-01
M&E: 00-0703-3-1309


**Continental Micronesia**

## TECHNICAL SERVICES DIVISION

### SHIFT LOG

SUPERVISOR SIGNATURE: _P. Gzoula_   DATE: 4/14/02  SHIFT: GRAVES  STATION: GUAM

### PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|---|---|---|---|
| J. Martino | 0513 | V. Saclof | Sick - Flu |
| | | | |
| | | | |
| | | | |

| ACFT | TIME | SHIFT NOTES |
|---|---|---|
| 236 | | 20  SV - C/W |
| | | MX RON - open |
| | | NAV DB - C/W |
| | | NonRoutines = 2 |
| | JOB BOX | (1) #3 & #4 LE KRUGER FLAP SPN Wise Seals |
| | | 2) #2 ENG COWLING VORTEX DEVICE |
| 246 | | 20  SV - C/W   PLA - 1 |
| | | PLA - VIDEO SYST INOP < Controller coming |
| | | in on trip - 1 > |
| | | NAV - DB - C/W |
| | | Move to Gate 13 - |
| | | * Swapped out w/ A/c 228 |
| 227 | | 21  SV - C/W  PR - 0   PLA - 2  OIL - 0 |
| | | OIL - Door Stoppers |
| | | PLA - Kruger flap seals |
| | | |
| | | |
| 249 | | 15  SV 3 -       PLA - 0   OIL - 0  PR - 0 |
| | | Tire chg - |
| | | NAV DB - |
| | | 2 - dents INBD LWR TKG EDGE FLAP - C/W |
| | | TRNBKL - |
| | | 11 NR |
| 'N/? | -£ | MUST offer out PLT for 902/903 CNS @ 1850 |
| | | J. Martinez Called |

FORM: 40.0061CM
DATE: 04-01-01
M&E: 00-0703-3-1309


**Continental Micronesia**

## TECHNICAL SERVICES DIVISION
### SHIFT LOG

SUPERVISOR SIGNATURE: _(signature)_  DATE: 4·28·02  SHIFT: GRAVEYARD  STATION: GUM

### PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|----------|-------------|----------|--------|
| Mailor | 4:35 | Fabian | Sick |
| | | | |
| | | | |
| | | | |

| ACFT | TIME | SHIFT NOTES |
|------|------|-------------|
| 236 | 0110-TERM | G-21   SC-OPEN   PR·∅   PLA·∅   OIL·∅ |
| | | |
| | | * APU AUTO SHUTDOWN : STARTER GEN FILTER CLOGGED·OPEN |
| | | * STAB TRIM MOTOR R+R - OPEN |
| | | * ENG OIL SERVICE - C/W |
| | | |
| | | |
| | | |
| | | |
| | | |
| 246 | 0100-TERM | G-20   SC-C/W   PR·∅   PLA-∅   OIL-∅ |
| | | |
| | | * DIP - #2 ENG EEC FAULT, NEED TO CHANGE VBV - OPEN |
| | | * FWP - DROP DEAD : RIGHT PRIMARY HEAT EXCHANGER - ∅ C/W |
| | | |
| | | |
| | | |
| 240 | 0440-TERM | G-13   SC-OPEN   PR·∅   PLA·∅   OIL-∅ |
| | | |
| | | |

MAY 29, 2002

TO WHOM IT MAY CONCERN:

I, VINCE DIAZ, MAKE THE FOLLOWING STATEMENT THAT,

1. EMPLOYEES, OTHER THAN SUPERVISORS, IN THE MX DEPT. TOOK SICK CALL MESSAGES FROM OTHER EMPLOYEES ...

2. THESE MESSAGES WERE EITHER NOTED IN THE SHIFT TURNOVER LOG, ON THE MESSAGE BOARD OR PASSED ON VERBALLY TO THE SUPERVISOR ON DUTY ...

3. THIS PRACTICE IS NO LONGER USED AT WORK.

4. 2 EMPLOYEES WERE HIRED AS A & P's AFTER H. ASHTIANI'S TERMINATION, DENNIS FLORES & RICK CRUZ ...

VINCE DIAZ

734-1383



"mr Hammer told me that after the recent event of 9-11." That tony astiani would never work around these aircraft Again if he could do anything about it. Because he could not trust people like mr. Astiani." End of statement.

Ronald E Robert

671-6538408

478



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Honolulu Local Office

300 Ala Moana Boulevard, Room 7-127
Honolulu, HI 96850-0051
(808) 541-3120
TTY (808) 541-3131
FAX (808) 541-3390

June 14, 2002

**Via US Mail and Fax**

Continental Airlines, Inc.
Legal Department
ATTN: Louid Obdyde, Esq.
P.O. Box 4607
Mail Code HQSLG
Houston, Texas 77210

**RE: Tony Ashtiani v. Continental Micronesia, Inc.**
    **EEOC Charge No.378-A2-000115**

Dear Obdyke,

In order to continue with the investigation, our office will need the following information.

1) Provide a list of all Respondent's aircraft mechanics who were no call/no show for two consecutive days between June 1999 to June 2001. Identify by

a. name
b. ethnic identity
c. date of hire
d. date(s) of no call/no show
e. date of discharge

2) Provide all relevant documentation for each employee's discharge. If the employee was not discharged, explain why.

Provide the requested informed by June 21, 2002. If you have any questions, contact me at 808-541-3721. Thank you.

Sincerely,

Raymond J. Griffin Jr.

Investigator

**001032**




Continental Airlines, Inc.      Tel  713 324 5000
41st Floor  HQSLG              Fax 713 324 5161
1600 Smith Street
Houston TX 77002

June 18, 2002

VIA FACSIMILE: 808-541-3390

Mr. Raymond J. Griffin, Jr.
The Equal Employment Opportunity Commission
Honolulu Local Office
300 Ala Moana Blvd., Room 7-127
Honolulu, HI 96850

> Re:   Tony H. Ashtiani, Charging Party
>        Continental Micronesia, Inc., Respondent
>        Charge No. 378A200115

Dear Mr. Griffin:

I am in receipt of your request for additional information dated June 14, 2002.  I am unable to respond by June 21 due to the fact that the company's director of human resources is out of the office until June 24, and then I will be "on the road" until July 1, 2002.  We will gather appropriate comparative information and will forward it on July 3, 2002.

Again, I look forward to working with you in order to assist in a closing this charge with a finding of no cause for discrimination.

Sincerely,

Louis K. Obdyke
Senior Attorney
(713) 324-2218

IMANAGE 45020v1

**001034**

 **Continental Airlines**



Continental Airlines, Inc.     Tel 713 324 5000
41st Floor HQSLG              Fax 713 324 5161
1600 Smith Street
Houston TX 77002

July 10, 2002

VIA FACSIMILE: 808-541-3390

Mr. Raymond J. Griffin, Jr.
The Equal Employment Opportunity Commission
Honolulu Local Office
300 Ala Moana Blvd., Room 7-127
Honolulu, HI 96850

Re:   Tony H. Ashtiani, Charging Party
      Continental Micronesia, Inc., Respondent
      Charge No. 378A200115

Dear Mr. Griffin:

In response to your June 14 request for supplemental information, CMI advises that two maintenance employees other than Mr. Ashtiani were disciplined during the time period of January 1, 2000 to the date of Mr. Ashtiani's discharge, July 3, 2001, both occurred prior to Mr. Ashtiani's discharge. Other divisions within the company have additional disciplinary actions for No Call/No Show, but checks were made only within the maintenance (Tech Ops) department as that is where Mr. Ashtiani worked.

Mr. Bruce Lee, Chinese/American, was deemed a No Call/No Show in May 2000, but upon investigation and the employee's explanation (death in the family and qualified FMLA leave), Mr. Lee's disciplinary action was retracted. A second No Call/No Show involved a mechanic assigned to fly check flights for maintenance checks, Mr. Edwin Antonio, Asian-Filipino/American. Mr. Antonio failed to show-up for a scheduled check flight and failed to call in - he was issued a written warning based on no prior disciplinary action in his file, unlike Mr. Ashtiani's extensive disciplinary history. The Guam maintenance supervisors are checking for other possible No Call/No Show disciplinary actions, but since the company does not keep a "running log" for discipline, they must look at each individual personnel file - including all those discharged during the time period (files now in storage).

**001037**

IMANAGE 45258v1

CMI hopes this information supports its decision to terminate Mr. Ashtiani for reasons other than his national origin, or any other discriminatory reason, and that you will be able to find no cause for discrimination.

Sincerely,

Louis K. Obayke
Senior Attorney
(713) 324-2218

001038

| PATIENT HOUR | CHECK-IN | |
|---|---|---|
| Date | OCT 03 2001 | |
| | 10.15 mt | |
| | 110/80 | |
| T - P - R | 97. 69 84. 20 | |
| Weight | 185 # | |
| Recorder | de | |
| Allergy | NKA | |

S- 37 y.o male is here
for decrease energy
+ ability to work
completed
concern his Boss
4 months ago
he was demoted at
work, No loss
of sexual dysfunc
or sleep Distu
- chronic fatigue, Dyspnea Exer
his demer his work been effect
O: BP 110/80 P 84 no TSH

HEENT clE, no thy

Chest - clr lungs

Cor ( )

Abd bowere regular
no tender

neuro grossly wm

A- Chronic fatigue Sydr- ? D/t mild
Depression over loss of
job he held as air engt
mechanic or kntructur for 17 yrs, DOE
P Lab workup
TMT & NOLAD
& follow up

---

**Guam Adult-Pediatric Clinic**

612 N. Marine Drive, Suite #8, Dededo, Guam 96929
Phone: 671-633-GAPC (4272)

**Patient's Progress Record**

NAME: Achtiani, Tony
D.O.B. 10/6/63
INSURANCE: Multicover
CHART #: 48767

572