Tony H. Ashtiani
P.O.Box 12723
Tamuning Guam 96931
671-688-4844
671-653-5575



FILED
DISTRICT COURT OF GUAM
NOV 28 2003
MARY L. M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

## DISTRICT COURT OF GUAM

| | |
|---|---|
| **Tony H. Ashtiani,** | ) |
| Plaintiff, | ) Civil Case No.: 02-00032 |
| | ) |
| Vs. | ) **PLAINTIFF'S OPPOSITION TO** |
| | ) **DEFT'S MOTION FOR SUMMARY** |
| **Continental Micronesia Inc,** | ) **JUDGMENT. MEMORANDUM OF** |
| | ) **POINTS AND AUTHORITIES.** |
| **Dba, Continental Micronesia,** | ) |
| | ) **DECLARATION OF RON ROBERTS** |
| **Continental Airlines,** | )    **EXHIBIT E AND N** |
| | ) |
| Defendant. | ) **(FED R. CIV. P. 56)** |
| | ) |
| | ) |
| | ) |

Plaintiff Tony H. Ashtiani <u>pro</u> <u>se</u> litigant and undersigned files opposition to defendants' motion for summary judgment Plaintiff humbly prays that this Court will deny defendants' motion on all counts.

In support of his motion, plaintiff presenting declaration of Mr. Ron Roberts, Declaration of Ms. Kathleen Sgambelluri, <u>defendants' produced documents</u>, exhibits, other documents,

# ORIGINAL

declarations, affidavits and accompanying memorandum of law all filed contemporaneously herewith demonstrate that defendants has not proven facts on any of all eight actions.

1) On November 21, 2003. Defendant filed Motion for summary judgment, plaintiff filed for partial summary judgment on the same day.

2) After reviewing of the defendants' Motion, plaintiff noticed that defendant had not provided the Court set of interrogatories served on the parties. Rather defendant had provided the court with plaintiff's respond to defendants' first request for production of documents.

3) Defendants citing **STANDARD FOR SUMMARY JUDGEMENT** Mot at 5 Federal Rule of Civil Procedure 56 provides that judgment sought shall be rendered forthwith if the pleadings, depositions, answer to interrogatories, and admissions on file, together with affidavits, if any show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as matter of law.

> To find the defendant liable for breach of the covenant of good faith and fair dealing, you do not have to find that the employer intentionally acted in bad faith. Bad faith implies dishonesty, fraud, and **concealment**. *Gruenberg v Aetna Ins. Co*. (1973) 9 Cal.3d 566, 573-574,108 Cal.Rptr.480

4)  In this case defendant bad faith implies dishonesty fraud and <u>concealment of interrogatories</u> not filed with the Court.

## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

Title VII of the Civil Rights Act of 1964 (Pub. L. 88-352) (Title VII), as amended, in volume 42 of the United States Code, section 2000e. Title VII <u>prohibits employment discrimination based on race,</u> color, religion, sex and <u>national origin.</u> The Civil Rights Act of 1991 (Pub. L. 102-166) (CRA) amends several sections of Title VII. section 102 of the CRA and (42 U.S.C. 1981), to provide for the recovery of compensatory and punitive damages in cases of intentional violations of Title VII.

## UNLAWFUL EMPLOYMENT PRACTICES

SEC. 2000e-2. *[Section 703]*

<u>It shall be an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.</u>

## <u>TITLE 42 USC & 1981 PROVIDES:</u>

All persons .. . shall have the same right in every state and <u>territory</u> to make and enforce <u>contracts</u>, to sue, be parties, give evidence, and to full and equal benefit of law and proceeding for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses , and exactions of every kind, and to no other.

The act covers whites as well as nonwhites from discrimination. *McDonald v. Santa Fe Trail trans. Co.* 540 F2d 219

5) Discharge cases always fit into the contract provisions.

## I. STATEMENT OF ISSUES PRESENTED.

6) Fight of flight response: the groundwork for the modern meaning of "stress" was laid by Walter B. Cannon, a physiologist at Harvard around the turn of the century. He was the first to describe the "fight or flight response" as a series of biochemical changes that prepare you to deal with threats or danger.

7) Mr. McKinzie having a degree in psychology is well aware of this tactic and puts it to its use at best of his capability in combination with constructive discharge as did to Mr. Mahdi, Mr.Lee and Ashtinai.

## II. UNDISPUTED MATERIAL FACTS

8)    By the **"End of the day"** on July 03, 2001 defendant CMI executed letter stating <u>two</u> defenses as *specific reasons* for cause of termination. **EXHIBIT A.**

*Defense I*. No call/ No show On Jun 23, 24 2001.

*Defense II*. Refusal to meet to discuss the situation on Monday July 02, 2001.

Also <u>see</u> paragraph, 23,24,25 and 26 for alleged unauthorized absence.

**Now comes;** Plaintiff striking both defenses as <u>pretext.</u>

### A.<u>*STRICKING DEFENSE I.*</u>

9) Mr. Joe Pangelinans' Declaration. **Exhibit B.**

10) Mr. Joe Pangelinans' Declaration. **Exhibit C.**

Noted, that Mr. Joe pangelinan states that "I had informed Mr.Mendoza that duty supv. on duty that Tony Ashtiani would not be in on Jun 23, 24 2001 at approx 1300, shift starts at 1330".

11) Mr. Mendoza On June 23, 2001 at 16:38 (Approx 3 and ½ Hours after he was informed by Mr. Pangelinan sends a <u>e-mail</u> "TONY DID NOT SHOW UP FOR ANY OF HIS DAYS". <u>Defendant's</u> <u>production document (000931)</u> **EXHIBIT D.**

12) Mr. Ron Roberts **declaration** 'I was told by one supervisor Bill Herrera " if Glenn would of told me Tony called in all this would not be happening."' **EXHIBIT E.**

### B.<u>*STRIKING DEFENSE II.*</u>

13) Plaintiff was informed to attend a meeting at 1600 on July 02, 2001.

14) Attorney Mark Williams Esq,. asks what is the meeting about and defendant deprived plaintiff rights to procedural due process and rights to representation Declaration of Mark Williams .**EXHIBIT F.** (please note that this happened at 10:30 a.m.)

15) Accordingly, Ashtiani was left with limited procedural mechanism, thus, plaintiff requested information about the meeting and submitted a letter to human resources on July 02, 2001 at 11:05 a.m. Defendants' production of document (000928) **EXHIBIT G.**

16) It was not until 11 minutes after the meeting at 16:11 that Ms. Teresa Sage response to my letter and states " I Have received your letter". She states "you need to contact Zar as soon as possible". Defendants Production of Document (000929) **EXHIBIT H.**

17) plaintiff respectfully directs the attention of the Court that, this meeting was nothing but a "staged theatre" as Mr. Zar Atalig On June 28, 2001 (3 days prior to the meeting) had requested plaintiff's final pay check Defendants' production of documents (000225) **EXHIBIT I** .

18) It is not plaintiff that has produced these documents Rather, it is the defendant through its own production of

documents that has produced documents to discredit and unworthy of believe their own case. This single piece of document (000225) critical pivoting point under FRCP rule (56), <u>Genuine issue of facts</u>, upsetting indeed, indicates ill will, malice, and recklessness with no regards to plaintiffs' rights to adequate fair hearing to clear his name.

19) <u>Defendants in their official capacity has violated plaintiff's right protected by the Equal Protection and equal application Clause of the Fifth and Fourteenth Amendment which is emphasized below, **42 U.S.C. SEC 2000e-2 (703)(2)(D).** Consequently, plaintiff prays for partial summary judgment.</u>

### UNLAWFUL EMPLOYMENT PRACTICES.

### <u>42 U.S.C. SEC 2000e-2 (703)(2)(D)</u>

<u>Nothing in this Subsection shall be construed to authorize or permit the denial to any person of the due process of law requires by the constitution.</u> **EXHIBIT J.**

The Supreme Court's statement in Aikens and Burdine is clear: <u>a plaintiff can prevail either by proving that discrimination more likely motivated the decision or that the employer's articulated reason is unworthy of belief.</u> See, e.g., *Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 766, 51 EPD Par. 39,244 (3d Cir. 1989)

**<u>simply disproving defendant's reason is enough.</u>** *CBS, Inc. v. Bruno*, 493 U.S. 1062 (1990); MacDissi v. Valmont Industries, 856 F.2d 1054, 1059, 47 EPD Par. 38,261 (8th Cir. 1988) <u>plaintiff need not also prove intentional discrimination; such an approach "unjustifiably multiplies the plaintiff's burden").</u>

## III. THERE ARE NO GENUINE ISSUE OF MATERIAL FACT

### A. CONTSTRUCTIVE TERMINATION

#### SIXTH CAUSE OF ACTION

20) Plaintiff had called work on Jun 23rd of 2001, prior to the shift start. Defendants' maintenance supervisor acting in official capacity of the defendant withheld and concealed the information and regarded the plaintiff as two consecutive days no-call/no-show.

21) Mr. Joe Pangelinan furthermore clarifies that the supervisor was informed about my absences due to illness of my son and that this information was passed down to him prior to shift start. Mr. Ron Roberts statement Confirms that a wrongful termination was at play and that Mr. Bill Herrera knew about the information. Accordingly, CMI was well informed about my wrongful discharge and made no attempt to prevent the intentional infliction of emotional distress thus, allowed to continue on as a result administrated more intolerable stress and harm to a common man and his family.

> A **constructive discharge** occurs when the employer has given the employee the option to remain employed by the company but has placed such intolerable, difficult, or unpleasant conditions on the employee's continued employment that a reasonable person in the employee's circumstances would resign rather than remain employed. *Rulon- miller v international business machines Corp.*(1984)162 Cal. APP. 3d 241,208 Cal.Rprt.254

## B. WRONGFUL TERMINATION

### SEVENTH CAUSE OF ACTION

22) Plaintiff asserts that wrongful termination occurred due to the fact supervisors in coordinated effort withheld information from each other or they knew and did not tell the truth acted in ill will, false motive, malice and willful misconduct.

### LENGTH OF SERVICE

In which the fact that an airline employee had worked for the airline for **18 years** was a factor to which **the court pointed in holding that**, under the circumstances of the case, the covenant of good faith and fair dealing required the airline to have good cause to terminate the employee. *Clearly v. American Airlines* (1980) 111 Cal App 3d 443,168 Cal Rptr 722

### LACK OF GOOD FAITH DEALING DEFINED

To find the defendant liable for breach of the covenant of good faith and fair dealing, you do not have to find that the employer intentionally acted in bad faith. Bad faith implies dishonesty, fraud, and concealment. However, lack of good faith and fair dealing may be found where an employer acts unreasonably or without giving equal consideration to the employee's rights and interest as it gives to its own interest. The employer is liable for breach of its duty to act in good faith and fairly if its conduct showed either a lack of good faith or a lack of fair dealing toward plaintiff. *Gruenberg v Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573-574,108 Cal.Rptr.480

### C. Negligent Supervisor

### SECOND CAUSE OF ACTION

23) Plaintiff assertion of negligent supervision arises from many cover up-s and bad faith which occurred, between

supervisors, Defendant Continental knew, or reasonably should have known, that Maintenance supervisors were engaging in the unlawful behavior, After defendant discovered that Ashtiani had called, Mr. Herrera without communicating or my consent signs "for employee" and places reason for absences "No show" by removing "NO CALL" part of it, as defendant is well aware if specific reason is invalid in part thus, invalid as whole.

24) Noted that Defendant is making this change on October 30, 2001. (4 months after termination). <u>Defendants' production of document (000254)</u> **EXHIBIT K.**

25) Plaintiff also prepared for this defense of defendants as Plaintiff requested from his Co-worker to bring out similar situation sick calls from the same classification as plaintiff of different race and nationality in <u>comparative worth</u> capacity.

**1)**. On April 03, 2002  Tony. R.   <u>Calls</u> Roger.  (non Supv).
**2)**. On April 14  2002  Junior. M. <u>Calls</u> Victor. (non Supv).
**3)**. On April 27, 2002  Marlon  R. <u>Calls</u> Fabian. (non Supv).
**JOINT EXHIBITS L.**

26) These above employees did call non-supervisors and did not receive any authorization from supervisor prior to their absences of not coming to work, and Ashtiani among all the

employees of CMI needs authorization from supervisor for his absences.

> Plaintiff must demonstrate that the employer's stated reasons for its employment practices "were not its true reasons, but were a pretext for discrimination." *Texas Department of community affairs v. Burdine,* 450 U.S at 253,101 S.Ct at 1093.

**D. Unlawful Discrimination Based upon Race and National Origin**

**THIRD CAUSE OF ACTION**

27) At all times material hereto, federal statute civil rights act of 1964 as amended and USC-2000-e5. Which prohibited Defendant Continental, from discriminating against any employee on the basis of race, color or ancestry. Said laws required Defendant Continental to refrain from discriminating against Plaintiff on the basis that he was a minority among the majority group. Second Amended Complaint *Id* at paragraph (34).

> (Prima facie case of racial discrimination established by showing that plaintiff was (1) A member of a protected class; (2) qualified for the position from which he or she was discharged; (3) discharged; and (4) that after plaintiff's discharge, "the position remained open and the employer continued to seek applicants from persons of complainant's *qualifications*"). See *McDonell Douglas v. Green*, 411 U.S. 792, 801, 92 S.Ct.

28) Elements (1) and (3) is uncontested also <u>see,</u> Second Amended Complaint *id* at paragraph (11). For element (2).

Case 1:02-cv-00032    Document 121    Filed 11/28/2003    Page 11 of 49

29) Plaintiff now needs to satisfy condition **(4)** of prima facie case within the framework of _McDonell Douglas v. Green._ Mr. Vince Diaz's statement " 2 Employees were hired as A&P'S after H. Ashtiani's termination." A&P's(Airframe & power plant) Mechanic. **EXHIBIT M.**

> McAlester alleged he suffered racial discrimination because he received disparate treatment under United's disciplinary procedures. _McDonnell Douglas,_ 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668, establishes the model of proof for an individual disparate treatment case. A prima facie case of discriminatory termination is made by showing **(i)** that McAlester belongs to a racial minority; **(ii)** that he was discharged for violating a work rule of United; and **(iii)** that similarly situated non-minority employees who violated the same rule were treated differently than he was. _Brown v. A.J. Gerrard Mfg. Co.,_ 643 F.2d 273, 276 (5th Cir.1981).

30) In this case Elements **(i)** and **(ii)** is uncontested. plaintiff reasonably believes that based on circumstantial evidence has proven condition **(iii)** previously in this motion **_Id_** at paragraph 17,19,25,and 26. Also <u>see</u>, Mr. Larry Kimball's statement in plaintiff's declaration.

31) Therefore, Defendant Continental has engaged in other discriminatory practices. As a direct, foreseeable, and proximate result of Defendant's discriminatory acts, Plaintiff has suffered and continues to suffer the humiliation, embarrassment, negative publicity, mental and emotional distress as plaintiff had difficulty coping with the unlawful acts administrated upon him including name callings. Plaintiff's first Affidavit. **_Id_** at answer to interrogatories No 18.

Case 1:02-cv-00032    Document 121    Filed 11/28/2003    Page 12 of 49

United asserts McAlester failed to prove intentional race discrimination because he did not show specific racial animus on the part of his supervisors. This is not McAlester's burden. While McAlester must produce evidence of discriminatory intent or motive to establish a prima facie case, it can be inferred from the mere fact of differences in treatment. *Teamsters*, 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15 (1977); *Clark v. Atchison, Topeka and Santa Fe Ry. Co.*, 731 F.2d 698, 702 (10th Cir.1984). McAlester need not show his supervisors were personally prejudiced against him.

32) On the other hand, Ashtiani is able to prove beyond circumstantial evidence that racial animus was existing and stated by the director of maintenance Mr. Hammer. **EXHIBIT N**. also see, Answer to Interrogatories No 18.

Thus, it must be shown between the employer's proven bias and its adverse action. For example, evidence that the **biased remarks** were made by the **individual responsible** for the **adverse employment decision** or by one who was involved in the decision, along with evidence that the remarks were related to the decisionmaking process, would be sufficient to establish this link. See also *Randle v. LaSalle Telecommunications, Inc.*, 876 F.2d 563, 569, 50 EPD Par. 39,074 (7th Cir. 1989)

E. INTENTIONAL DISCRIMINATION , INTENTIONAL RETALIATION POST 9/11

FOURTH CAUSE OF ACTION.

33) Plaintiff moves to secure discrimination occurred based on solid concrete evidence provided from the Continental legal department in Houston, Texas., Covering-up discrimination with no regards for the rights of minorities in Guam despite the joint statement from the EEOC AND DEPARTMENT OF JUSTICE post 9/11.

34) June 14, 2002 letter from EEOC investigator to Continental Airlines, requesting statistical data. **EXHIBIT O.** Defendants' production of document 001032.

35) June 18, 2002 Intentional delay to accomplish **July 3,** as pivoting of response to EEOC. **EXHIBIT P.** Defendants' production of document 001034. (Noted that Jul 03, 2001 was the date of plaintiff's termination letter).

36) July 10, 2002 defendants concealed crucial information, and statistical data in reference to number of terminated employees, all minorities, by shifting months, and not responsive to EEOC requests of specific months in question. **EXHIBIT Q.** Defendants production of documents 001037.

37) Defendants alters the initial request of EEOC for June 1999 and submits modification made to 6 months ahead to January 1, 2000. **(Skipping 6 months).**

38) Defendant withheld information in reference to statistical data to conceal the identity of Mr. Ali Mahdi which was released in December 1999.(Shortly after e-mail in plaintiff's affidavit) African-American, 44 years old, male. Also in the same respond to EEOC, defendant had already

terminated Mr. Bruce Lee on or about June 6, 2001. <u>Chinese</u>

<u>National,</u> also a minority in Plaintiff's Department, defendant

does a touch and go with his name and never mentioned that he

was also terminated.


39) Defendant On the same **Exhibit Q**, alters the ending

period of statistics from June 2001 of EEOC request , <u>to fit</u>

<u>their own to</u> **July 3, 2001**, which its original motive of change

of this date was generated on the letter dated June 18, 2002.

previous <u>EXHIBIT P,</u> More importantly, this had played an optical

illusion to distract investigator's recollection in reference to

**(July 03)**. U.S. Federal Investigator had requested statistics

between June 1999 to ending June 2001, no mention any where in

his initial request of ending period **July 03, 2001.**


40) Defendant's bold legal strategy was a big risk between no

cause finding and now intentional discrimination and intentional

retaliation post 9/11. The defendants' actions were generated to

covering up statistical data, conspiracy of federal statute.


41) If in fact, correct information was presented, pattern of

practice had been established which is what the investigator was

looking for. <u>See</u>, plaintiffs' first affidavit. Paragraph 6

,7,and 10.

Case 1:02-cv-00032    Document 121    Filed 11/28/2003    Page 15 of 49

## F. Intentional Infliction of Emotional Distress

### FIRST CAUSE OF ACTION

42) Plaintiff after wrongfull termination and intentioanl discrimination had suffered loss of motivation, loss of self esteem, loss of energy, injury to professional standing, loss of enjoyment of life, anexity, stress, depression, marital strain, humilation, emotional distress, nervous break down, injury to credit standing.

43) Ashtiani had complaint to Dr. Chenet on October 03, 2001. and it was brifly noted by Dr. Chenet "37 year old male is in for decrease energy, elev fatigue, chronic fatigue syndrom, depression over loss of job at Contininatal as aircraft mechanic. **EXHIBIT R.**

44) Plaintiff based on direct and circumstantial evidence reasonably believes that he has proven that wrongful termination has occurred and that plaintiff moves the court for intentional infliction of emotional distress as liability against the defendant.

> Emotional distress are available in a wrongful discharge action under the public policy.

> Plaintiff's psychiatrist testified that the plaintiff was suffering from anxiety, stress, and depression. The court found that this was an adequate basis for the award. Rowlett v. Anheuser-Busch, 832 F.2d 194, 44 EPD Par. 37,428 (1st Cir. 1987).

## FIFTH CAUSE OF ACTION

*VIOLATION OF FEDERAL STATUTE OF FAMILY MEDICAL LEAVE ACT OF 1993*

45) Plaintiff was forced to take care of his sick immediate family member thus called his employer and informed the supervisor on duty of the circumstances.

46) Plaintiff upon return to work received a FMLA certificate and a letter from Supervisor on Jun 26, 2001 stating return the document within 15 days as matter of law. **EXHIBIT S.**

47) Defendant argues that "Ashtiani made No attempt to return the FMLA forms until July 10, 2001 after his discharge on July 3 2001. See Ashtiani motion to compel at paragraph (6) and Ashtiani'S first Affidavit. I received the letter of termination on JUL 12, 2001. I had 15 days to return. Also CMI's e-mail reference to Mahdi. Regarding (2) day and (15) days. . Also <u>see</u> FMLA law 825. 208(a)(2)(e) **EXHIBIT T.**

48) Defendant further argued that the patient right now symptomatic and that the patient <u>does not require transportation needs</u>, this is also false as any one could assert that a 3 ½ year old boy can not drive himself. Dr. appellants is a new guest in GUAM as he had recently arrived from out side of United States. Also see answer interrogatories to NO 4.and 5.

## EIGHTH CAUSE OF ACTION

**SALES OF FRAGULANET INSUARNCE POLICIES BY DEFENDANT TO EMPLOYEES.**

49) Plaintiff in his years of employment always had selected the highest amount of accidental death life insurance of $500.000 as plaintiff was working in the heights from time to time and was worried if something happens to him his kids will get good education, with something to live on for his spouse, **EXHIBIT U.**

50) Plaintiff received series of documents that were intentionally delayed by defendants' Human resources benefit dept, document which was most suspicious had the top of it moved up on the copy machine to cover-up something, and the amount $ 500.000 enlarged in two places of the document. **EXHIBIT V.**

51) Plaintiff after looking at this document for long time, searched for the hidden motive and started searching the web, and found the phone number of the insurance company that was producer of the original in New York. **EXHIBIT W.**

52) Plaintiff after a through investigation found out that the insurance policy was not even valid in Guam, and was only valid in the fifty states and the maximum amount of the policy was $ 250.000,00 **EXHIBIT X.** and a benefit dept's employee had changed the amount to $ 500.000.00 so that it would match the policy that employee had paid for, as evident in previous EXHIBIT U.

Case 1:02-cv-00032    Document 121    Filed 11/28/2003    Page 18 of 49

53) Plaintiff became aware of discrimination in employee benefits. **EXHIBIT Y.**

54) Plaintiff is a key witness that this act did not only happened to the plaintiff but there are families of the deceased employees of Guamanians and pacific islanders ethnicity that are suffering today, rater than defendant paying these families their claim of these policies, defendant denied the amounts by switching documents and put the money right in their pocket books as additional profit in the corporation, while these families and their children being deprived of their benefits and being discriminated by the wealthy corporation such as defendants .

## IV. CONCLUSION

55) For all of the reasons set forth above, the plaintiff respectfully asks of Honorable Chief Judge John S. Unpingco of United States District Court of Guam and prays that defendants' motion to be denied.

**Submitted respectfully,** This 28TH day of November, 2003.

_____
Tony H. Ashtiani

Pro Se, Litigant



To:        Hamid (Tony) Ashtiani

From:      William A. Herrera

Subject:   Disciplinary Action

Date:      July 3, 2001

At the end of our discussion on June 26, 2001 with Prudencio Aguilo and IBT Representative, Mike Pablo present, you were advised that you would be contacted for a meeting on Monday. I had also advised you to contact me by Tuesday, 1600 if you had not heard from me. The meeting was scheduled to discuss your no-call/no-show of your shifts of June 23 and 24, 2001.

After numerous attempts, starting with my e-mail sent on June 27 to the address you had provided and also voice messages left on the answering machine associated with telephone number 653-5575, we have been unable to set a formal meeting date. Because of the faxed received at 1701 on July 3, 2001 it is apparent that you don't want to meet to complete this investigation. With the information that I have available and based on no reasonable explanation for not securing authorization for your absences on June 23 and 24, 2001 I have made the decision to terminate your employment with Continental Micronesia effective July 3, 2001.

Because your refusal to meet and discuss this situation any further, it is with regret that I am reduced to sending this certified letter concerning your status with Continental Micronesia. Your final paycheck is available and may be retrieved from the Human Resources department by contacting Robbi Crisostomo, 642-8727 or Teresa Sage, 642-8852.

Should you elect to appeal this termination, you may do so in accordance with Article 24 of the current bargaining agreement between Continental Micronesia, Inc. and The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.


William A. Herrera

Cc:    Baltazar Atalig
       Employee Relations
       Union Representative
       P-file

323

# DECLARATION

DECLARATION OF JOE . PANGELINAN.

I, Joe Pangelinan declare as follows:

My name is Joe Pangelinan, at my own will I testify that Tony Ashtiani did call on June 23, 2001 at approx. 1250 p.m. that Tony informed me he will not be in due to illness of his son and he would not be in on June 23 and 24 , 2001.

If you have any questions please contact me at Cell 687-2303. Hm. 789-1946.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at _AGANA_ , Guam. on this _17_ day of November 2003

_JOSEPH M. PANGELINAN_

Printed Name                                    Signature

## CERTIFIED COPY

GUAM, U. S. A.,

On this 18th day of November, 2003, I certify that the preceding or attached documents and the duplicate retained by me as a notarial record, are true, exact, copies of "DECLARATION OF JOE PANGELINAN", presented to me by the document's custodian TONY H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2009
P. O. Box 821, Hagatna, Guam 96932

# DECLARATION

DECLARATION OF JOE . PANGELINAN.

I, Joe Pangelinan declare as follows:

In addition to previous declaration, I had informed Mr. Mendoza that duty supervisor on duty that Tony Ashtiani would not be in on Jun 23 & 24 2001 at approx 1300, shift starts at 1330.

In reference to Mr. Sherman Thompson's statement everyone in the dept knew Tony Ashtiani was of Iranian descent on several occasion Mr. Sherman Thompson would talk Politics about Iran with Tony Ashtiani. Sherman Thompson on different occasions would refer to Tony Ashtiani as his "Persian Brother" or "Iranian Brother." Sherman Thompson is misleading the investigator on Tony Ashtiani knowledge of his nationality.

My personal view on the situation is Mr. Tony Ashtiani is a very respectable and knowledgeable individual in our dept. Please consider his case.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at _AGANA_ , Guam. on this _17_ day of November 2003.

_JOSEPH M. PANGELINAN_
Printed Name

_Signature_

CERTIFIED COPY

GUAM, U. S. A.,

On this 18th day of November, 2003, I certify that the preceding or attached documents and the duplicate retained by me as a notarial record, are true, exact, copies of "DECLARATION OF JOE PANGELINAN", presented to me by the document's custodian TONY H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2005
P. O. Box 821, Hagatna, Guam 96932

| | |
|---|---|
| **From:** | Mendoza, Glenn R |
| **Sent:** | Saturday, June 23, 2001 16:38 |
| **To:** | Babauta, Benjamin C; Herrera, William A |
| **Cc:** | Atalig, Baltazar |

TO DAYS/SWINGS 23JUN01
201- NLG DIP CW BY DAYS. AC TO DO 973. NO PLA.

227- GOOD TA AC. PUT LITE BULBS 4551 FOR MNL MX. IT'S IN THE COCKPIT. NO PLA.

228- SCK WIP, NO PLA. ONE DIP FOR NO1 ENG NO8 BLADE SLOT CONVEX TE SIDE WITHIN LIMITS, NEED TO DO INSP PER ECRA 7221-0164. SPN PLA NO1 ENG HIGH STAGE BLEED, SWINGS WIP.

232- GOOD DISP, CHECKING ON AOG FOR INFO FOR SHIPPING ON PANEL 29-5221-3-0024 DUE IN 03JUL PER AOG ROBERT..

235- COMING IN AT 2255. WILL TRY AND MEET TO PUT OIL. NO PLA.

236- GOOD DISP.

GOOD TA AC. NO PLA.

246- SCK WIP, NO PLA.

249- SWAPPED WITH 250, SENT SCK-3 PAPERWORK AND PARTS TO SPN TO CW.

250- SWINGS WIP FOR CONDUIT DIP, SCK WIP. ETR 0200 24JUN.

063- CAME IN WITH COFFEE AND OVEN INOP CW, DID NOT WORK CARGO DUE RAMP LOADING.

083- SCK WIP, WORKING PLA AT THIS TIME. FAULT ISO PANEL, A/C DOOR OIL, FWD CARGO LOADING SYS INOP.

PLS SEE IDI FOR EA FOR OXY GEN INSP.

BILL, TONY DID NOT SHOW UP FOR ANY OF HIS DAYS, HE DID TALK TO JOE P. ABOUT SOME MEETING YOU AND HIM ARE TO ATTEND ON MONDAY. SEE NOTE IN YOUR MAILBOX. ALSO RYAN G. HAS BEEN SICK THIS WHOLE WEEK. HE CALLED ME ON FRIDAY AND SAID HE WAS GOING TO SEE A DOCTOR THAT DAY, I TOLD HIM TO MAKE SURE HE HAD A DOC. NOTE. I DID OFFER FMLA BUT HE DECLINED.

PER MARTY EA FOR OXY GEN INSP MY BE DONE IF YOU FEEL YOU HAVE THE TIME AND MANPWR. IF NOT HE CAN HAVE IT DONE AT BCK, NO BIG RUSH ON THIS. PER MARTY.

ZAR, I WOULD LIKE TO TAKE ONE WEEK VAC STARTING 12-15JUL, THIS IS THE WEEK I MOVED IN MAY DUE TO BILL WAS ALSO ON VAC.

**000931**

1

Herrera, William A

**From:** Mendoza, Glenn R
**Sent:** Saturday, June 23, 2001 16:38
**To:** Babauta, Benjamin C; Herrera, William A
**Cc:** Atalig, Baltazar

TO DAYS/SWINGS 23JUN01
201- NLG DIP CW BY DAYS. AC TO DO 973. NO PLA.

227- GOOD TA AC. PUT LITE BULBS 4551 FOR MNL MX. IT'S IN THE COCKPIT. NO PLA.

228- SCK WIP, NO PLA. ONE DIP FOR NO1 ENG NO8 BLADE SLOT CONVEX TE SIDE WITHIN LIMITS, NEED TO DO INSP PER ECRA 7221-0164. SPN PLA NO1 ENG HIGH STAGE BLEED, SWINGS WIP.

232- GOOD DISP, CHECKING ON AOG FOR INFO FOR SHIPPING ON PANEL 29-5221-3-0024 DUE IN 03JUL PER AOG ROBERT..

235- COMING IN AT 2255. WILL TRY AND MEET TO PUT OIL. NO PLA.

236- GOOD DISP.

240- GOOD TA AC. NO PLA.

246- SCK WIP, NO PLA.

249- SWAPPED WITH 250, SENT SCK-3 PAPERWORK AND PARTS TO SPN TO CW.

250- SWINGS WIP FOR CONDUIT DIP, SCK WIP. ETR 0200 24JUN.

063- CAME IN WITH COFFEE AND OVEN INOP CW, DID NOT WORK CARGO DUE RAMP LOADING.

083- SCK WIP, WORKING PLA AT THIS TIME. FAULT ISO PANEL, A/C DOOR OIL, FWD CARGO LOADING SYS INOP.

PLS SEE IDI FOR EA FOR OXY GEN INSP.

BILL, TONY DID NOT SHOW UP FOR ANY OF HIS DAYS, HE DID TALK TO JOE P. ABOUT SOME MEETING YOU AND HIM ARE TO ATTEND ON MONDAY. SEE NOTE IN YOUR MAILBOX. ALSO RYAN G. HAS BEEN SICK THIS WHOLE WEEK. HE CALLED ME ON FRIDAY AND SAID HE WAS GOING TO SEE A DOCTOR THAT DAY, I TOLD HIM TO MAKE SURE HE HAD A DOC. NOTE. I DID OFFER FMLA BUT HE DECLINED.

PER MARTY EA FOR OXY GEN INSP MY BE DONE IF YOU FEEL YOU HAVE THE TIME AND MANPWR. IF NOT HE CAN HAVE IT DONE AT BCK, NO BIG RUSH ON THIS. PER MARTY.

ZAR, I WOULD LIKE TO TAKE ONE WEEK VAC STARTING 12-15JUL, THIS IS THE WEEK I MOVED IN MAY DUE TO BILL WAS ALSO ON VAC.

WWH-C 11/24/02

1

# DECLARATION

## DECLARATION OF RON ROBERTS .

I, Ron Roberts declare as follows:

During the month of December on or about 11th, 2001. I Ronald Roberts went to Mr. Jim Hammer's office to talk to him about man power. Because of the recent layoff of Aircraft Mechanics when I asked Mr. Hammer about bringing back Mr. Wong (Ed), because we were told, by Mr. John Carbullido who took a year leave of absents. John was told by Mr. Hammer he was recalling Ed Wong. But this was only to keep John Happy until he left. Mr. Hammer had no intentions of bring anyone back, In fact, Mr. Hammer had told me we were still 6 people over-manpower. So I asked Mr. Hammer about Tony Ashtiani who I feel was wrongfully released from the Company because of two supervisor's not communicating with each other. I was told by one supervisor Bill Herrera "If Glenn would of told me Tony Called in all this would not be happening."

Mr. Hammer told me that after the recent event of 9-11 "That Tony Ashtiani would never work around these aircraft again if he could do anything about it because he could not trust people like Mr. Ashtiani." End of statement.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at _YiGO_____, Guam. on this _20 H_ day of November 2003.

**RON ROBERTS**

Printed Name

Signature

### CERTIFIED COPY

GUAM, U. S. A.,

On this 26th day aof November, 2003, I certify that the proceding or attached document, and the duplicate retained by me as a notarial record, are true, exact, stated portion of "DECLARATION OF RON ROBERTS", presented to me by the document's custodian TONI H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2005
P. O. Box 821, Hagatna, Guam 96932

## DECLARATION

**DECLARATION OF MARK E. WILLIAMS**

I, Mark E. Williams, declare as follows:

N1.       On ~~June~~ JULY 2, 2001 at approximately 10:30 a.m., Guam time, I contacted Ms. Teresa Sage of the Continental Airlines Human Resources Office by phone and advised her of this office's representation of Mr. Tony Ashtiani, and requested information regarding the subject matter of the pending hearing or conference between the Management of Continental Airlines and Mr. Ashtiani involving Mr. Ashtiani's disciplinary action, and his related appeal/grievance of such action. I further requested information necessary for the preparation of Mr. Astiani and this office for such conference or hearing. However, Ms. Sage refused to provide any such requested information or to acknowledge this office's representation of Mr. Ashtiani. Instead, Ms. Sage directed me to contact Continental's legal office in Houston, which we were unable to do by phone as the office in Houston was apparently closed at that hour.

     I declare that I have firsthand knowledge of the foregoing facts, that I have read the foregoing statement and that the information contained herein is true and correct to the best of my knowledge and belief, and that if called as a witness, I could testify competently thereto. I further hereby declare that this declaration is executed under penalty of perjury at _Hagatna Guam_ on

_5/20/02_

                                                              {Date}

_MARK E. williams_                 _Cantwell_
Printed Name                             Signature

313.

July 01, 2001

**TONY ASHTIANI**

P.O. BOX 12723
TAMUNING, GUAM  96931
CELL: 671- 688-4844
CELL: 671- 687-8182
TEL : 671- 653-8008
FAX : 671- 653-5575
(e-mail) ashtiani@ite.net

TO :   Ms .TERESA SAGE
        HUMAN RESOURCES DEPT.
        LABOR RELATIONS

RE:    MEETING

        PLEASE BE ADVISE AS PER THE AGREEMENT BETWEEN CMI AND IBT ,
ARTICLE 24 ITEM F. LETTER VIA CERTIFIED MAIL WHICH WOULD INCLUDE THE
FOLLOWING INFORMATION.

        1) THE CONTENTS OF THE MEETING?
        2) THE NUMBERS OF PERSONS WHICH WILL ATTEND (CMI)?
        3) WHO WILL BE ATTENDING THIS MEETING (PROVIDE LIST OF NAMES)?
        4) WHICH  ARTICLES WILL BE DISCUSSED?
        5) WHICH STEPS OF ARTICLE 24 WILL BE DISCUSSED?

        SINCE THIS MEETING HAS DIRECT EFFECT ON ME I AM ENTITLED TO
SUCH BASIC ANSWERS ALSO PROPER AND ADEQUATE TIME TO PREPARE.

        YOUR COOPERATION IN THIS MATTER IS KINDLY APPRECIATED .

        SINCERELY YOURS

        Jul/02/01
        11:05 AM

RECEIVED
7/2/01
11:12 AM

000928

| | |
|---|---|
| **From:** | Sage, Teresa |
| **Sent:** | Monday, July 02, 2001 4:11 PM |
| **To:** | 'ashtiani@ite.net' |
| **Subject:** | Meeting |

**Importance:** High

Tony,

I have received your letter. As a matter of fact, Bill Herrera has been trying to reach you to confirm the meeting that was scheduled for 1600 today. I understand he e-mailed you last week when he set it up. With regard to the information you refer to in your letter, I'm afraid you have misunderstood the contract. We welcome the chance to clarify during the meeting with you.

You need to contact Bill or one of the Tech Ops supervisors or Zar as soon as possible.

*Regards,*

*Teresa Sage*

tsage@csair.com
Employee Relations
(671) 642-8852 - *Office*
(671) 649-5006 - *Fax (private)*
(671) 720-8202 - *Pager*
*Co mail:* GUMHR

**000929**

1


# Continental
# Micronesia

INTER-DEPARTMENTAL MEMORANDUM
June 28, 2001

TO:        Beatriz A. Camacho,
           Payroll Department

FROM:      Adrienne B. Cruz

SUBJECT:   Final Paycheck – Tony Ashtiani

Enclosed is the Hours Summary, and Punch Detail Report for the aforementioned subject. Should you have any inquiries or require additional information, please do not hesitate to contact me.

Please be advised that this memorandum is countersigned and approved by our Manager.

BALTAZAR ATALIG, Manager - Aircraft Maintenance

From the desk of:
*Adrienne B. Cruz*
Administrative Specialist
Phone: [671] 642-8904
Fax:    [671] 649-5248
E-mail: acruz@csair.com
Boardmail:    GUMMX

000225

Case 1:02-cv-00032    Document 121    Filed 11/28/2003    Page 29 of 49

(i) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had-

(I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

(II) a reasonable opportunity to present objections to such judgment or order; or

(ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

(2) Nothing in this subsection shall be construed to-

(A) alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened;

(B) apply to the rights of parties to the action in which a litigated or consent judgment or order was entered, or of members of a class represented or sought to be represented in such action, or of members of a group on whose behalf relief was sought in such action by the Federal Government;

(C) prevent challenges to a litigated or consent judgment or order on the ground that such judgment or order was obtained through collusion or fraud, or is transparently invalid or was entered by a court lacking subject matter jurisdiction; or

(D) authorize or permit the denial to any person of the due process of law required by the Constitution.

(3) Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsection shall preclude a transfer of such action pursuant to section 1404 of title 28, United States Code.

OTHER UNLAWFUL EMPLOYMENT PRACTICES

SEC. 2000e-3.  [Section 704]

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labormanagement committee controlling apprenticeship or other training or retraining, including onthejob training programs, to discriminate against any

FORM: P-138CM
I&E#: 00-0703-3-1415
REV: 02/95

# Continental Micronesia

Employee Number: 05963

## ABSENCE FROM DUTY REPORT

Date Prepared: 10/30/01

1. SICK LEAVE: Immediately upon return to work or at the end of each pay period whichever first occurs.
2. OCCUPATIONAL INJURY LEAVE: Immediately when injury necessitates absence from duty.
3. VACATION: Prior to the start of the vacation period; OR when a paycheck is desired before the start of the vacation period, this form must be received in Payroll FOURTEEN (14) CALENDAR days prior to the date the check is desired.
4. OTHER: Immediately upon return to work or at the end of each pay period whichever first occurs.
Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee

**INSTRUCTIONS**

---

**SICK LEAVE**

(Attach Doctor's Certificate When Requesting)

I, _____ , employed at _____ and _____
PRINT NAME                          WORK LOCATION      /   COST CENTER

Employee Number _____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE _____ TOTAL HOURS **000254**

BRIEF DESCRIPTION, NATURE OF ABSENCE _____

Signature of Employee _____ ACKNOWLEDGED _____
                                                      SUPERVISOR            DATE

CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S

---

**OCCUPATIONAL INJURY LEAVE**

(Attach Doctor's Certificate When Requesting)

I, _____ , employed at _____ and _____
PRINT NAME                          WORK LOCATION      /   COST CENTER

Employee Number _____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE _____ TOTAL HOURS _____

Signature of Employee _____ ACKNOWLEDGED _____
                                                      SUPERVISOR            DATE

CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S

---

**VACATION**

I, _____ , employed at _____ and _____
PRINT NAME                          WORK LOCATION      /   COST CENTER

Employee Number _____ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicated below.

VACATION (HOURS) _____

DEFERRED HOLIDAYS (HOURS) _____

DATES OF VACATION (FROM) _____ (TO) _____ TOTAL HOURS _____

MY PAYCHECK TO BE ISSUED ON _____ is herewith requested for _____
                                ( DATE )                              ( DATE )

Signature of Employee _____ ACKNOWLEDGED _____
                                                      SUPERVISOR            DATE

CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S

---

**OTHER**

(Personal Business, Authorized Leave, Jury Service, etc.)

I, _Tony Astiani_ , employed at _GUMMY_ and _____
PRINT NAME                          WORK LOCATION      /   COST CENTER

Employee Number _05963_ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicted below.

DATE OF ABSENCE _Jun 23-24, 2001_ TOTAL HOURS _20_

REASON FOR ABSENCE _No Show_

If because of death in the immediate family, what relation to the employee? _____

Signature of Employee _For Employee_ ACKNOWLEDGED _____ 10/30/01
                                                      SUPERVISOR            DATE

CIRCLE REGULAR DAYS OFF:   S   M   T   (W)  (T)  F   S

Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee

FORM: 40.0061CM
DATE: 04-01-01
M&E: 00-0703-3-1309


**Continental
Micronesia**

## TECHNICAL SERVICES DIVISION
### SHIFT LOG

| SUPERVISOR SIGNATURE: | DATE: 4/3/02 | SHIFT: SWING | STATION: Guam |
|---|---|---|---|

### PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|---|---|---|---|
| Tony R. | 1228 | Roger | Sick |
| | | | |
| | | | |
| | | | |
| | | | |

| ACFT | TIME | SHIFT NOTES |
|---|---|---|
| | | ~~Heads up Guana~~ = Rub STROTCHUR INSTR T-952/03 SCAT 5-7 DCSR plus 5 SMALL MOD 02 |
| | | ~~~~ CLNNUR PTR T-200 N-236 (DOS) FAK-3 |
| | | RCSQ ✓ MEL BOOK ONBOARD AIRCRAFT FOR POSSIBLE ATA CHAPTER - 32, 33, 34 + 38 MISSING. INSPECTED A/C AS FOLLOWS- N-240 — OK    N-246 — OK    N-227 - OK N-236 — OK    N-228 — OK    N-235 — OK N-201 — OK    N-249 — OK N-250 — OPEN N-238 — OPEN |
| | | ~~~~ 2EA CDL NON-ROUTINES ON N-260 AS FOLLOWS ① RH SIDE KRUEGER FLAP 3+4 SCALS TORN ② LH SIDE FLAP SCALS 1+2 TORN KRUEGER |
| 058 MIKE/JOO5 | 9 OK | SV = DONE    P/E = ~~~~ ⊖    PLA = ⊖ OIL = ⊖    FUP = ⊖    BOR = ⊖ N/E = + ⊖    LAV SHROUDS = DONE |
| 249 CURLC/VLC TONY B. | 18 | SV = DONE    P/E = ~~OPEN~~    PLA = ⊖ OIL = ~~OPEN~~    FUP = ⊖    BOR = ⊖ HF MOD = ~~~~ |

FORM: 40.0061CM
DATE: 04-01-01
M&E: 00-0703-3-1309

Continental Micronesia 

## TECHNICAL SERVICES DIVISION

### SHIFT LOG

SUPERVISOR SIGNATURE: _P. Gyeule_     DATE: 4/14/02 SHIFT: GRAVES STATION: GUAM

### PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|---|---|---|---|
| J. Martino | 0513 | V. Sacbof | Sick - Flu |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

| ACFT | TIME | SHIFT NOTES |
|---|---|---|
| 236 |  | 20 SV - C/W |
|  |  | MX RON - OPEN |
|  |  | NAV DB - C/W |
|  |  | NonRoutines = 2 |
|  | JOB BOX | 1) #3 & #4 LE KRUGER FLAP SPN Wise Seals |
|  |  | 2) #2 ENG COWLING VORTEX DEVICE |
| 246 |  | 20 SV - C/W     PLA - 1 |
|  |  | PLA - VIDEO SYST INOP < Controller coming |
|  |  | in on trip - 1 > |
|  |  | NAV - DB - C/W |
|  |  | Move to Gate 13 - |
|  |  | * Swapped out w/ A/c 228 |
| 227 |  | 21 SV - C/W  Pr - 0    PLA - 2   OIL - 1 |
|  |  | OIL - Door Stoppers |
|  |  | PLA - Kruger flap seals |
|  |  |  |
|  |  |  |
| 249 |  | 15 SV 3 -        PLA - 0    OIL - 0   PR - 0 |
|  |  | Tire chg - |
|  |  | NAV DB - |
|  |  | 2-dents INBD LWR TRL EDGE FLAP - |
|  |  | TRNBKL - |
|  |  | 11 NR |

FORM: 40.0061CM
DATE: 04-01-01
M&E: 00-0703-3-1309


**Continental Micronesia**

## TECHNICAL SERVICES DIVISION
### SHIFT LOG

SUPERVISOR SIGNATURE: _[signature]_ DATE: 4-28-02 SHIFT: GRAVEYARD STATION: GUM

### PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|---|---|---|---|
| Mailor | 4:35 | Fabian | Sick |
| | | | |
| | | | |
| | | | |

| ACFT | TIME | SHIFT NOTES |
|---|---|---|

236  0110-TERM  G-21   SC-OPEN   PR-∅   PLA-∅   OIL-∅

   * APU AUTO SHUTDOWN : STARTER GEN FILTER CLOGGED-OPEN
   * STAB TRIM MOTOR R+R - OPEN
   * ENG OIL SERVICE - C/W

246  0100-TERM  G-20   SC-C/W   PR-∅   PLA-∅   OIL-∅

   * DIP - #2 ENG EEC FAULT, NEED TO CHANGE VBV-OPEN
   * FUP- DROP DEAD: RIGHT PRIMARY HEAT EXCHANGER - ∅ C/W

240  0440-TERM  G-13   SC-OPEN   PR-∅   PLA-∅   OIL-∅

MAY 29, 2002

TO WHOM IT MAY CONCERN:

I, VINCE DIAZ, MAKE THE FOLLOWING STATEMENT

THAT,

1. EMPLOYEES, OTHER THAN SUPERVISORS, IN THE MX
DEPT. TOOK SICK CALL MESSAGES FROM OTHER
EMPLOYEES ...

2. THESE MESSAGES WERE EITHER NOTED IN THE
SHIFT TURNOVER LOG, ON THE MESSAGE BOARD
OR PASSED ON VERBALLY TO THE SUPERVISOR
ON DUTY ...

3. THIS PRACTICE IS NO LONGER USED AT WORK.

4. 2 EMPLOYEES WERE HIRED AS A & P'S
AFTER H. ASHTIANI'S TERMINATION, DENNIS
FLORES & RICK CRUZ ...

VINCE DIAZ

734-1383

[10]

# DECLARATION

DECLARATION OF RON ROBERTS .

I, Ron Roberts declare as follows:

During the month of December on or about 11th, 2001. I Ronald Roberts went to Mr. Jim Hammer's office to talk to him about man power. Because of the recent layoff of Aircraft Mechanics when I asked Mr. Hammer about bringing back Mr. Wong (Ed), because we were told, by Mr. John Carbullido who took a year leave of absents. John was told by Mr. Hammer he was recalling Ed Wong. But this was only to keep John Happy until he left. Mr. Hammer had no intentions of bring anyone back, In fact, Mr. Hammer had told me we were still 6 people over-manpower. So I asked Mr. Hammer about Tony Ashtiani who I feel was wrongfully released from the Company because of two supervisor's not communicating with each other. I was told by one supervisor Bill Herrera "If Glenn would of told me Tony Called in all this would not be happening."

Mr. Hammer told me that after the recent event of 9-11 "That Tony Ashtiani would never work around these aircraft again if he could do anything about it because he could not trust people like Mr. Ashtiani." End of statement.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at YIGO _____, Guam. on this 20th day of November 2003.

RON  ROBERTS

Printed Name                                                    Signature

## CERTIFIED COPY

GUAM, U. S. A.,

On this 26th day aof November, 2003, I certify that the proceding or attached document, and the duplicate retained by me as a notarial record, are true, exact,  stated portion of "DECLARATION OF RON ROBERTS", presented to me by the document's custodian TONI H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2005
P. O. Box 821, Hagatna, Guam 96932



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Honolulu Local Office**

300 Ala Moana Boulevard, Room 7-127
Honolulu, HI 96850-0051
(808) 541-3120
TTY (808) 541-3131
FAX (808) 541-3390

June 14, 2002

**Via US Mail and Fax**

Continental Airlines, Inc.
Legal Department
ATTN: Louid Obdyde, Esq.
P.O. Box 4607
Mail Code HQSLG
Houston, Texas 77210

**RE: Tony Ashtiani v. Continental Micronesia, Inc.**
     **EEOC Charge No.378-A2-000115**

Dear Obdyke,

In order to continue with the investigation, our office will need the following information.

1) Provide a list of all Respondent's aircraft mechanics who were no call/no show for two consecutive days between June 1999 to June 2001. Identify by

a. name
b. ethnic identity
c. date of hire
d. date(s) of no call/no show
e. date of discharge

2) Provide all relevant documentation for each employee's discharge. If the employee was not discharged, explain why.

Provide the requested informed by June 21, 2002. If you have any questions, contact me at 808-541-3721. Thank you.

Sincerely,

Raymond J. Griffin Jr.

Investigator

**001032**

 **Continental Airlines**



Continental Airlines, Inc.      Tel  713 324 5000
41st Floor  HQSLG              Fax 713 324 5161
1600 Smith Street
Houston TX 77002

June 18, 2002

VIA FACSIMILE: 808-541-3390

Mr. Raymond J. Griffin, Jr.
The Equal Employment Opportunity Commission
Honolulu Local Office
300 Ala Moana Blvd., Room 7-127
Honolulu, HI 96850

Re:   Tony H. Ashtiani, Charging Party
      Continental Micronesia, Inc., Respondent
      Charge No. 378A200115

Dear Mr. Griffin:

I am in receipt of your request for additional information dated June 14, 2002. I am unable to respond by June 21 due to the fact that the company's director of human resources is out of the office until June 24, and then I will be "on the road" until July 1, 2002. We will gather appropriate comparative information and will forward it on July 3, 2002.

Again, I look forward to working with you in order to assist in a closing this charge with a finding of no cause for discrimination.

Sincerely,

Louis K. Obdyke
Senior Attorney
(713) 324-2218

IMANAGE 45020v1

**001034**

**Continental**  
**Airlines**

Continental Airlines, Inc.   Tel 713 324 5000
41st Floor HQSLG           Fax 713 324 5161
1600 Smith Street
Houston TX 77002

July 10, 2002

VIA FACSIMILE: 808-541-3390

Mr. Raymond J. Griffin, Jr.
The Equal Employment Opportunity Commission
Honolulu Local Office
300 Ala Moana Blvd., Room 7-127
Honolulu, HI 96850

Re:   Tony H. Ashtiani, Charging Party
                 Continental Micronesia, Inc., Respondent
                 Charge No. 378A200115

Dear Mr. Griffin:

In response to your June 14 request for supplemental information, CMI advises that two maintenance employees other than Mr. Ashtiani were disciplined during the time period of January 1, 2000 to the date of Mr. Ashtiani's discharge, July 3, 2001, both occurred prior to Mr. Ashtiani's discharge. Other divisions within the company have additional disciplinary actions for No Call/No Show, but checks were made only within the maintenance (Tech Ops) department as that is where Mr. Ashtiani worked.

Mr. Bruce Lee, Chinese/American, was deemed a No Call/No Show in May 2000, but upon investigation and the employee's explanation (death in the family and qualified FMLA leave), Mr. Lee's disciplinary action was retracted. A second No Call/No Show involved a mechanic assigned to fly check flights for maintenance checks, Mr. Edwin Antonio, Asian-Filipino/American. Mr. Antonio failed to show-up for a scheduled check flight and failed to call in - he was issued a written warning based on no prior disciplinary action in his file, unlike Mr. Ashtiani's extensive disciplinary history. The Guam maintenance supervisors are checking for other possible No Call/No Show disciplinary actions, but since the company does not keep a "running log" for discipline, they must look at each individual personnel file - including all those discharged during the time period (files now in storage).

**001037**

IMANAGE 45258v1

CMI hopes this information supports its decision to terminate Mr. Ashtiani for reasons other than his national origin, or any other discriminatory reason, and that you will be able to find no cause for discrimination.

Sincerely,

Louis K. Obayke
Senior Attorney
(713) 324-2218

IMANAGE 45258v1

001038

**PATIENT CHECK-IN**

| | |
|---|---|
| Date | OCT 03 2001 |
| | 10:15 [illegible] |
| | 110/60 |
| T-P-R | 98 °F 84/20 |
| Weight | 185 # |
| Recorder | [illegible] |
| Allergy | NKA |

S- 37 y.o. male is here
[illegible] for decrease energy
[illegible]
[illegible]
[illegible] after [illegible]
4 [illegible] after
he was [illegible] of
[illegible]. NO loss
of [illegible]
[illegible]
- chronic fatigue + dyspnea [illegible]
[illegible]

O: BP 110/70   P 84   no TSH [illegible]

HEENT [illegible]

Chest - clear [illegible]

C/V  S₁ S₂

Abd [illegible]

[illegible]

A) Chronic fatigue [illegible] ? DOE + mild
dyspnea [illegible] less ?
[illegible]
[illegible] for [illegible], DOE
P- Lab work up
TMST + MOLAD
[illegible] + full [illegible]

---

**Guam Adult-Pediatric Clinic**
612 N. Marine Drive,  Suite #8,  Dededo, Guam 96929
Phone: 671-633-GAPC (4272)

**Patient's Progress Record**

NAME: Achiani, Tony
D.O.B. 10/6/63
INSURANCE: Multicover
CHART #: 48767

572

To:        Tony Ashtiani                                    June 26, 2001

From:      William A. Herrera

Subject:   Attendance


We are currently investigating your attendance for the period June 3 through June 19, 2001. Because of the possibility that FMLA may apply, we are including FMLA forms to have completed by your physician. In keeping with our policy for FMLA, these forms must be returned within 15 days of receipt in order for FMLA to apply.

*[signature]*

William A. Herrera

*Tony has taken the FMLA Forms as of 1900 this date.*

_____
*Tony Ashtiani*

_____
*Mike Pablo*
*IBT Shop Steward*

_____
*P. Aguilo*

*Called by Tuesday*
*{16:00}*

_____

*332*

§ 825.208(a)(2)

provide notice, though the employee would need to state a qualifying reason for the needed leave. An employee requesting or notifying the employer of an intent to use accrued paid leave, even if for a purpose covered by FMLA, would not need to assert such right either. However, if an employee requesting to use paid leave for an FMLA-qualifying purpose does not explain the reason for the leave — consistent with the employer's established policy or practice — and the employer denies the employee's request, the employee will need to provide sufficient information to establish an FMLA-qualifying reason for the needed leave so that the employer is aware of the employee's entitlement (i.e., that the leave may not be denied) and, then, may designate that the paid leave be appropriately counted against (substituted for) the employee's 12-week entitlement. Similarly, an employee using accrued paid vacation leave who seeks an extension of unpaid leave for an FMLA-qualifying purpose will need to state the reason. If this is due to an event which occurred during the period of paid leave, the employer may count the leave used after the FMLA-qualifying event against the employee's 12-week entitlement.

(b)(1) Once the employer has acquired knowledge that the leave is being taken for an FMLA required reason, the employer must promptly (within two business days absent extenuating circumstances) notify the employee that the paid leave is designated and will be counted as FMLA leave. If there is a dispute between an employer and an employee as to whether paid leave qualifies as FMLA leave, it should be resolved through discussions between the employee and the employer. Such discussions and the decision must be documented.

(2) The employer's notice to the employee that the leave has been designated as FMLA leave may be orally or in writing. If the notice is oral, it shall be confirmed in writing, no later than the following payday (unless the payday is less than one week after the oral notice, in which case the notice must be no later than the subsequent payday). The written notice may be in any form, including a notation on the employee's pay stub.

(c) If the employer requires paid leave to be substituted for unpaid leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, this decision must be made by the employer within two business days of the time the employee gives notice of the need for leave, or, where the employer does not initially have sufficient

information to make a determination, when the employer determines that the leave qualifies as FMLA leave if this happens later. The employer's designation must be made before the leave starts, unless the employer does not have sufficient information as to the employee's reason for taking the leave until after the leave commenced. If the employer has the requisite knowledge to make a determination that the paid leave is for an FMLA reason at the time the employee either gives notice of the need for leave or commences leave and fails to designate the leave as FMLA leave (and so notify the employee in accordance with paragraph (b)), the employer may not designate leave as FMLA leave retroactively, and may designate only prospectively as of the date of notification to the employee of the designation. In such circumstances, the employee is subject to the full protections of the Act, but none of the absence preceding the notice to the employee of the designation may be counted against the employee's 12-week FMLA leave entitlement.

(d) If the employer learns that leave is for an FMLA purpose after leave has begun, such as when an employee gives notice of the need for an extension of the paid leave with unpaid FMLA leave, the entire or some portion of the paid leave period may be retroactively counted as FMLA leave, to the extent that the leave period qualified as FMLA leave. For example, an employee is granted two weeks paid vacation leave for a skiing trip. In mid-week of the second week, the employee contacts the employer for an extension of leave as unpaid leave and advises that at the beginning of the second week of paid vacation leave the employee suffered a severe accident requiring hospitalization. The employer may notify the employee that both the extension and the second week of paid vacation leave (from the date of the injury) is designated as FMLA leave. On the other hand, when the employee takes sick leave that turns into a serious health condition (*e.g.*, bronchitis that turns into bronchial pneumonia) and the employee gives notice of the need for an extension of leave, the entire period of the serious health condition may be counted as FMLA leave.

(e) Employers may not designate leave as FMLA leave after the employee has returned to work with two exceptions:

(1) If the employee was absent for an FMLA reason and the employer did not learn the reason for the absence until the employee's return (e.g., where the employee was absent for only a brief period), the employer may, upon the employee's return to work,

§ 825.208(e)(1)

promptly (within two business days of the employee's return to work) designate the leave retroactively with appropriate notice to the employee. If leave is taken for an FMLA reason but the employer was not aware of the reason, and the employee desires that the leave be counted as FMLA leave, the employee must notify the employer within two business days of returning to work of the reason for the leave. In the absence of such timely notification by the employee, the employee may not subsequently assert FMLA protections for the absence. [60 FR 16383, Mar. 30, 1995]

(2) If the employer knows the reason for the leave but has not been able to confirm that the leave qualifies under FMLA, or where the employer has requested medical certification which has not yet been received or the parties are in the process of obtaining a second or third medical opinion, the employer should make a preliminary designation, and so notify the employee, at the time leave begins, or as soon as the reason for the leave becomes known. Upon receipt of the requisite information from the employee or of the medical certification which confirms the leave is for an FMLA reason, the preliminary designation becomes final. If the medical certifications fail to confirm that the reason for the absence was an FMLA reason, the employer must withdraw the designation (with written notice to the employee).

§ 825.209 Is an employee entitled to benefits while using FMLA leave?

(a) During any FMLA leave, an employer must maintain the employee's coverage under any group health plan (as defined in the Internal Revenue Code of 1986 at 26 U.S.C. 5000(b)(1)) on the same conditions as coverage would have been provided if the employee had been continuously employed during the entire leave period. All employers covered by FMLA, including public agencies, are subject to the Act's requirements to maintain health coverage. The definition of "group health plan" is set forth in § 825.800. For purposes of FMLA, the term "group health plan" shall not include an insurance program providing health coverage under which employees purchase individual policies from insurers provided that:

(1) no contributions are made by the employer;

(2) participation in the program is completely voluntary for employees;

(3) the sole functions of the employer with respect to the program are, without endorsing the program,

to permit the insurer to publicize the program to employees, to collect premiums through payroll deductions and to remit them to the insurer;

(4) the employer receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deduction; and,

(5) the premium charged with respect to such coverage does not increase in the event the employment relationship terminates.

(b) The same group health plan benefits provided to an employee prior to taking FMLA leave must be maintained during the FMLA leave. For example, if family member coverage is provided to an employee, family member coverage must be maintained during the FMLA leave. Similarly, benefit coverage during FMLA leave for medical care, surgical care, hospital care, dental care, eye care, mental health counseling, substance abuse treatment, etc., must be maintained during leave if provided in an employer's group health plan, including a supplement to a group health plan, whether or not provided through a flexible spending account or other component of a cafeteria plan.

(c) If an employer provides a new health plan or benefits or changes health benefits or plans while an employee is on FMLA leave, the employee is entitled to the new or changed plan/benefits to the same extent as if the employee were not on leave. For example, if an employer changes a group health plan so that dental care becomes covered under the plan, an employee on FMLA leave must be given the same opportunity as other employees to receive (or obtain) the dental care coverage. Any other plan changes (e.g., in coverage, premiums, deductibles, etc.) which apply to all employees of the workforce would also apply to an employee on FMLA leave.

(d) Notice of any opportunity to change plans or benefits must also be given to an employee on FMLA leave. If the group health plan permits an employee to change from single to family coverage upon the birth of a child or otherwise add new family members, such a change in benefits must be made available while an employee is on FMLA leave. If the employee requests the changed coverage it must be provided by the employer.

(e) An employee may choose not to retain group health plan coverage during FMLA leave. However, when an employee returns from leave, the employee is entitled to be reinstated on the same terms as prior

| Name: | ASHTIANI, HAMID (TONY) | | Station/Dept: | GUMMX |
| Address: | P.O. Box 12723 | | DOH: | 1/14/1985 |
| | Tamuning, GU 96931 | | DOB: | 10/6/1963 |
| SSN: | 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 | | | |

**The following are your current benefit elections and monthly deductions. Please notify the Benefits Department immediately of any discrepancies. You may only change your benefit elections during Open Enrollment or within 30 days of a qualified lifestyle event.**

| Benefit Option | Benefit Summary | Per Month | Dependents | Other Info/Comments |
|---|---|---|---|---|
| Basic Life | 54,000 | Paid by CMI | | |
| Employee Supplemental Life | 162,000 | 11.34 | | |
| Spouse Supplemental Life | | | | |
| Long-Term Disability | Enrolled | 6.25 | | |
| Accidental Death and Dismemberment | 500,000 EF | 12.50 | | |
| Vision | | | | |
| Medical | Not Enrolled | | | |
| Dental | Not Enrolled | | | |
| TOTAL | | 30.09 | | |



# AMERICAN HOME ASSURANCE COMPANY

## NEW YORK, NEW YORK    A CAPITAL STOCK COMPANY    FOUNDED 1853

### APPLICATION FOR ACCIDENT INSURANCE UNDER CONVERSION PRIVILEGE

APPLICATION is hereby made to the American Home Assurance Company for Accident Insurance.

| Name of the Insured (Last) | (First) | (Middle Initial) | Date of Birth |
|---|---|---|---|
| Address | | Amount of Principal Sum | |
| Name of Group Policyholder | | Policy Number   GTP 804 9277 | |
| Name and Address of Beneficiary | | Relationship | |
| Date of Termination of Employment | | | |
| Date _____ 19___ | Signature of Applicant | | |

### RATES

#### ACCIDENTAL DEATH, DISMEMBERMENT, OR LOSS OF SIGHT BENEFITS

Amounts Available: $50,000.00 to $500,000.00

ANNUAL PREMIUM PER $1,000.00 PER APPLICATION

**ALL STATES (EXCEPT NEW YORK AND MASSACHUSETTS)**

| Ages 16 - 62 $1.25 | Ages 63 - 69 $3.00 | (Renewal Only) Ages 70 - 79 $4.00 |
|---|---|---|

**NEW YORK STATE RESIDENTS**

Ages 16 - 70
$1.25

*Please NoTE
ENlarged 500,000
IN Two PLACES.
CompARE Teo FAX.*

**MASSACHUSETTS RESIDENTS**

| Ages 16 - 62 $1.20 | Ages 63 - 69 $3.00 |
|---|---|

### INSTRUCTIONS FOR CONVERSION PRIVILEGE

On the date of termination of employment or during the 31 day period following termination of employment, you may convert your insurance, without a medical examination, to American Home Assurance Company's individual Insurance Policy. The individual policy will be effective either as of the date the application and payment is received by the insurance Company or its Agent, or on the date coverage under the group policy ceases, whichever occurs later.   The premium will be the same as you would ordinarily pay if you applied for an individual policy at the American Home Assurance Company.   The amount of insurance benefit converted cannot exceed $500,000 nor be less than $50,000. Another form must be completed if you desire coverage for your spouse and for each dependent child 16 years of age or older.   They must each have a separate application.

This form with your payment should be submitted to:

Reuben Warner Associates, Inc.
100 William Street
New York, NY 10038

Reuben Warner Associates, Inc. is American Home Assurance Company's Managing General Agent for Individual AD&D business.
Your check should be payable to Reuben Warner Associates, Inc.



| | | | |
|---|---|---|---|
| NAVIGATORS MANAGMNT CORP | 123 WILLIAM ST | 10038 | 212-406-2900 |
| NE FACIL DAK INTRNTL LT | 111 JOHN ST | 10038 | 212-513-1446 |
| NEW YORK AUTOMOBILE INS | 125 MAIDEN LN | 10038 | 212-943-5100 |
| NEW YORK BD OF FIRE UND | 85 JOHN ST | 10038 | 212-227-3700 |
| NEW YORK LIFE INSURANCE | 8 CHATHAM SQ | 10038 | 212-349-8050 |
| NEW YORK MERCHANT BANKERS | 116 JOHN ST | 10038 | 212-528-0610 |
| NIXON-GALLAGHER CO | 111 JOHN ST | 10038 | 212-619-3750 |
| NORTHEASTERN FACILITIES | 111 JOHN ST | 10038 | 212-385-7575 |
| NUR PRACTNR PRO LBLTY GRP INC | 151 WILLIAM ST | 10038 | 212-227-0028 |
| NY PROP INS UNDERWRTNG ASSOC | 100 WILLIAM ST | 10038 | 212-208-9700 |
| NYDEC BROKERAGE CORP | 80 BEEKMAN ST | 10038 | 212-732-4042 |
| NYLUNG, GEORGE J | 80 BEEKMAN ST | 10038 | 212-964-3676 |
| OCEAN AIR CARGO CLAIMS INC | 111 JOHN ST | 10038 | 212-732-8340 |
| OLD REPUBLIC RE INC | 90 WILLIAM ST | 10038 | 212-968-7899 |
| ORIENTIAL FIRE & MRNE NY | 111 JOHN ST | 10038 | 212-964-4270 |
| ORNTL FIRE & MRNE NY LIAISON | 111 JOHN ST | 10038 | 212-964-4270 |
| P C RALLI & CO | 116 JOHN ST | 10038 | 212-962-3071 |
| P W S USA INC | 40 FULTON ST | 10038 | 212-791-9350 |
| PORTER & YEE ASSOCS INC | 117 BEEKMAN ST | 10038 | 212-732-4575 |
| POST & KURTZ INC | 111 JOHN ST | 10038 | 212-766-8800 |
| PREFERRED CONCEPTS INC | 111 JOHN ST | 10038 | 212-608-9400 |
| PROFESSIONAL COVERAGE MANAGER | 130 WILLIAM ST | 10038 | 212-619-4900 |
| R D T BROKERAGE CORP | 111 JOHN ST | 10038 | 212-732-0201 |
| REINSURANCE CORP OF NY | 80 MAIDEN LN | 10038 | 212-363-4440 |
| RELIANCE GROUP HOLDINGS INC | 116 JOHN ST | 10038 | 212-608-6680 |
| RELIANCE INSURANCE | 130 WILLIAM ST | 10038 | 212-608-6990 |
| RICHARD WHILEY INC | 110 WILLIAM ST | 10038 | 212-732-1322 |
| ROEBUCK ASSOC | 45 JOHN ST | 10038 | 212-267-3224 |
| ROGER METZGER ASSOC INC | 59 JOHN ST | 10038 | 212-608-2500 |
| ROSE COMPASS SVCES | 116 JOHN ST | 10038 | 212-406-4004 |
| ROSE COMPASS SVCES INC | 111 JOHN ST | 10038 | 212-964-2600 |
| S & M AGENCY INC | 130 WILLIAM ST | 10038 | 212-227-4532 |
| S Y RYAN INSURANCE | 8 CHATHAM SQ | 10038 | 212-693-2800 |
| SAINT PAUL COMPANIES | 160 WATER ST | 10038 | 212-248-2300 |
| SAMUEL MENDALIS CO | 160 BROADWAY | 10038 | 212-269-6586 |
| SAPPERSTEIN HOCHBERG | 18 JOHN ST | 10038 | 212-233-4452 |
| SAUNDRA DEE INSURANCE BRKRGE | 45 JOHN ST | 10038 | 212-608-1008 |
| SCABPA BARON AGENCY | 116 JOHN ST | 10038 | 212-406-2424 |
| SELLNER & SELLNER INC | 125 MAIDEN LN | 10038 | 212-809-6166 |
| SENECA INSURANCE COMPANY INC | 111 JOHN ST | 10038 | 212-233-9000 |
| SERHEY-DAVIDSON CORP | 160 BROADWAY | 10038 | 212-964-7802 |
| SMYTH SANFORD & GERARD INC | 135 WILLIAM ST | 10038 | 212-374-1323 |
| SOLBERG CAMPBELL ASSOC INC | 111 FULTON ST | 10038 | 212-349-2626 |
| SOLBERG, ERLING J | 111 FULTON ST | 10038 | 212-349-2626 |
| SOLOMON GUTTER INSURANCE | 45 JOHN ST | 10038 | 212-285-4920 |
| SOMERSET MARINE | 123 WILLIAM ST | 10038 | 212-349-1600 |
| SOUTH CONTINENTAL OF N Y INC | 88 FULTON ST | 10038 | 212-233-2287 |
| SOUTHERN MARINE & AVIATION INC | 125 MAIDEN LN | 10038 | 212-480-4270 |
| STARR ASSOCS INC | 125 MAIDEN LN | 10038 | 212-668-9300 |
| STEPHEN WUND ASSOC | 111 JOHN ST | 10038 | 212-349-6431 |
| STRULL FLEISCH SCHMUTTER INC | 156 WILLIAM ST | 10038 | 212-964-6190 |
| SUCCESS INSURANCE AGENCY INC | 217 PARK ROW | 10038 | 212-693-1818 |
| SULCOV, ARTHUR | 156 WILLIAM ST | 10038 | 212-785-0240 |
| TTC INSURANCE | 40 FULTON ST | 10038 | 212-602-6400 |
| TILDEN, JOHN P | 123 WILLIAM ST | 10038 | 212-266-0700 |
| TOWER INSURANCE CO INC | 110 WILLIAM ST | 10038 | 212-233-1399 |
| UNIONE ITALIANA REINSURANCE CO | 127 JOHN ST | 10038 | 212-269-1951 |
| UNITED AMERICAS INSURANCE CO | 83 MAIDEN LN | 10038 | 212-514-7400 |
| UNITED STATES LIFE INS CO | 125 MAIDEN LN | 10038 | 212-709-6000 |
| VMG BROKERAGE INC | 8 CHATHAM SQ | 10038 | 212-385-9520 |
| WALSH GROUP INC | 40 FULTON ST | 10038 | 212-406-2400 |
| WARNER REUBEN ASSOCIATES INC | 100 WILLIAM ST | 10038 | 212-809-8300 |
| WEXFORD UNDERWRITING | 40 FULTON ST | 10038 | 212-962-3030 |

Case 1:02-cv-00032     Document 121     Filed 11/28/2003     Page 47 of 49

# AMERICAN ⬛ HOME ASSURANCE COMPANY

### NEW YORK, NEW YORK   A CAPITAL STOCK COMPANY   FOUNDED 1853

## APPLICATION FOR ACCIDENT INSURANCE UNDER CONVERSION PRIVILEGE

APPLICATION is hereby made to the American Home Assurance Company for Accident Insurance.

| | |
|---|---|
| Name of the Insured (Last)     (First)     (Middle Initial) | Date of Birth |
| Address | Amount of Principal Sum |
| Name of Group Policyholder | Policy Number |
| Name and Address of Beneficiary | Relationship |
| Date of Termination of Employment | |
| Date _____ 19___ | Signature of Applicant _____ |

## RATES

### ACCIDENTAL DEATH, DISMEMBERMENT, OR LOSS OF SIGHT BENEFITS

Amounts Available: $50,000.00 to $250,000.00

**ANNUAL PREMIUM PER $1,000.00  PER APPLICATION**

**ALL STATES (EXCEPT NEW YORK AND MASSACHUSETTS)**

| Ages 16 - 62 | Ages 63 - 69 | (Renewal Only) Ages 70 - 79 |
|---|---|---|
| $1.25 | $3.00 | $4.00 |

**NEW YORK STATE RESIDENTS**

Ages 16 - 70
$1.25

**MASSACHUSETTS RESIDENTS**

| Ages 16 - 62 | Ages 63 - 69 |
|---|---|
| $1.20 | $3.00 |

*[handwritten note:]* Please Note. VALID AmounT. NOT Tampered. Premiums same as previous page.

## INSTRUCTIONS FOR CONVERSION PRIVILEGE

On the date of termination of employment or during the 31 day period following termination of employment, you may convert your insurance, without a medical examination, to American Home Assurance Company's Individual Insurance Policy. The individual policy will be effective either as of the date the application and payment is received by the Insurance Company or its Agent, or on the date coverage under the group policy ceases, whichever occurs later. The premium will be the same as you would ordinarily pay if you applied for an Individual policy at the American Home Assurance Company. The amount of Insurance benefit converted cannot exceed $250,000 nor be less than $50,000. Another form must be completed if you desire coverage for your spouse and for each dependent child 16 years of age or older. They must each have a separate application.

This form with your payment should be submitted to:

**Reuben Warner Associates, Inc.**
**100 William Street**
**New York, NY 10038**

Reuben Warner Associates, Inc. is American Home Assurance Company's Managing General Agent for Individual AD&D business.
Your check should be payable to Reuben Warner Associates, Inc.

*The U.S. Equal Employment Opportunity Commission*

FOR IMMEDIATE RELEASE
Tuesday, October 3, 2000

CONTACT: Reginald Welch
David Grinberg
(202) 663-4900
TTY: (202) 663-4494

# EEOC ISSUES NEW GUIDANCE ON DISCRIMINATION IN EMPLOYEE BENEFITS

WASHINGTON - The U.S. Equal Employment Opportunity Commission (EEOC) today issued a new section to its Compliance Manual which provides the Commission's first comprehensive analysis of some of the most important employee benefits issues under the anti- discrimination laws.

The new Compliance Manual section analyzes benefit discrimination claims under each of the laws enforced by the Commission, clearly explaining that the laws prohibit discrimination in fringe benefits. "This guidance makes clear that employers are never allowed to consider employees' race, color, sex, national origin, or religion, nor retaliate against them, in connection with their benefits plan," said EEOC Chairwoman Ida L. Castro "The section also explains that benefit plan provisions that differentiate on the basis of age or disability must be carefully scrutinized to ensure they do not run afoul of the law."

The section examines the legal standards that apply to claims of discrimination in health and life insurance benefits, long-term and short-term disability benefits, severance benefits, pension or other retirement benefits, and early retirement incentives. The limited circumstances in which the law permits employers to provide lower benefits to older employees than to younger workers and the specific requirements of the Americans with Disabilities Act are set forth.

Ms. Castro added: "Issuing this new section is a major step in EEOC's continuing efforts to update and streamline its Compliance Manual in order to aid our investigators and attorneys in handling claims involving discrimination in employee benefits while also enhancing our customer service." The new Compliance Manual section replaces former Section 627: Employee Benefit Plans and seven other Commission policy statements.

This is the second issuance of new sections to the Compliance Manual in recent months. In May, EEOC issued a new section on "threshold" issues, the factors considered by the Commission in determining who can pursue a legal claim of employment discrimination. The full text of the both new sections, as well as other information about the Commission, is available on the agency's web site at www.eeoc.gov.

Case 1:02-cv-00032    Document 121    Filed 11/28/2003    Page 49 of 49