1  Tony H. Ashtiani
   P.O.Box 12723
2  Tamuning Guam 96931
   671-688-4844
3  671-653-5575



FILED
DISTRICT COURT OF GUAM
NOV 28 2003
MARY L. M. MORAN
CLERK OF COURT
107

4

5                **UNITED STATES DISTRICT COURT**

6                     **DISTRICT OF GUAM**

7

8  Tony H. Ashtiani,                  )
                                      )
9          Plaintiff,                 )  Civil Case No.: **02-00032**
                                      )
10         Vs.                        )
                                      )  **AFFIDAVIT OF TONY H. ASHTIANI**
11 Continental Micronesia Inc,        )  **IN SUPPORT OF OPPOSITION TO**
                                      )  **DEFENDANTS' MOTION FOR SUMMARY**
12 Dba, Continental Micronesia,       )  **JUDGMENT.**
                                      )
13 Continental Airlines,              )
                                      )     **(Fed R. Civ. P. 56)**
14         Defendant.                 )
                                      )
15                                    )
                                      )
16 ─────────────────────────

17

18              **AFFIDAVIT OF Tony H. ASHTIANI**

19

20      1.   My name is Tony H. Ashtiani Plaintiff, <u>pro</u> <u>se</u> in

21 the above-entitled action. I am over 18 years of age. I reside

22 at 191 Chalan Cabesa Yigo, Guam. U.S.A. I am fully competent to

23 make this affidavit and I have personal knowledge of the facts

24 stated in this affidavit. To my knowledge, all of the facts

25 stated in this affidavit are true and correct.

2. All exhibits referred and herein attached have been reviewed and thus I have personal knowledge of these documents and information contained therein.

3. Ashtiani received only one evaluation from CAL and none at CMI.**EXHIBIT A.**

4. Pacific employer by CARLSMITH in reference to Written Performance Evaluation. **EXHIBIT B.**

5. Plaintiff was receiving racial slurs by uncivilized individuals and Ashtiani was not used to this type of treatment.

6. The name-calling effected Ashtiani "racial harassment is a form of racial discrimination which includes racial jokes, ethnic slurs offensive and derogatory comments or other verbal or physical conduct based on an individual race or color. Such conduct may create an intimating, hostile, or offensive working environment, or interference with the individual's work performance.

> Federico Costales, Director of EEOC'S Miami office said, Subjecting workers to harassment because of their race can be costly to businesses not only in monetary terms, but also in terms of increased absenteeism and health care costs, and lower productivity and employee moral. **EXHIBIT C.**

7.  Instances of "nearly identical": in September 1998, Plaintiff's father had passed away and I had returned from a long journey, while Ashtiani was dealing with stress related to loss of love one, CMI had asked me to provide proof of my fathers' death. Luckily, I had brought some pictures from the funeral that had dates on the left bottom corner of the pictures, I submitted them to Mr. Atalig and he then turned them to human resources. Mr. Jay Gatdula's father had passed away and he proceeded to off island funeral as well. After a month later I asked him if CMI required him to provide any evidence of his father's death. He stated to me "NO BRO". I will never forget that day.

8.  Instance of "nearly identical": while Mr. Joby Okada was off for over a month for a sick grandmother plaintiff was not able to receive the same terms and condition as his comparator. I am grateful that CMI allowed Mr. Joby Okada to take such time off to attend his loving grand mother. Although, Plaintiff was deprived of the same conditions for his own biological son.

> In order for two or more employees to be considered similarly situated for purpose of creating inference of disparate treatment in Title VII case, plaintiff must prove that all relevant aspects of employment situation are "nearly identical" to those of nonminority employees who he alleges were treated more favorably. Civil Rights Act of 1964, § 701 et seq., as amended, <u>42 U.S.C.A. § 2000e</u> et seq. <u>*Payne v. Illinois Cent, Gulf R.R.*</u> 665 F. Supp. 1308

AFFIDAVIT OF TONY H.ASHTINAI

Case 1:02-cv-00032   Document 122   Filed 11/28/2003   Page 3 of 29

**09.**    P-138 shows that Mr. Okada was off from NOV 27 1999 and the shift schedule for month of December 99 shows that he was off the whole month of DEC -99. **JOINT EXHIBTI D.**

**10.**    On the other hand Ashtiani has not solely rested on statistics alone but able to provide individual instances.

> Even if United's contentions were true McAlester's case does not rest soley on statistics but <u>also rests upon individual</u> instances of discriminatory treatment *McAlester v.United Airlines.851 F.2d 1249*

**11.**    <u>Ashtiani was qualified for his position because</u> Mr. Herrera had assign Plaintiff to work on two (2) aircraft by him self, then a third ( 3rd ) one later with the crew, On Jun 26, 2001 Plaintiff's last day at work indication of constructive termination to force employee to resign.  **EXHIBIT E.**   Ashtiani <u>was qualified for his position because</u> of Mr. Bennett "letter of Commendation" **EXHIBIT F.** Ashtiani <u>was qualified for his position because</u> Mr. Fabian Therrell states Tony is one the brightest mechanic I have worked with. **EXHIBIT G.**

In fact since defendant states that plaintiff was not qualified, thus per Federal Aviation Administration Rules (FARs) Defendant is required by law to ground all their aircrafts that plaintiff worked on, that includes all the mechanics that plaintiff knows were with or without leave of absences including a mechanic that just returned to work after 7 months of leave.

AFFIDAVIT OF TONY H.ASHTINAI

**12.** Trade days off were non-accountable absences Accordingly, defendant may not rehash their specific reason for termination. **JOINT EXHIBIT H.** ("Every one trade days")

**13.** There is no need to call supervisor when calling sick. Mr. Vince Diaz statement **EXHIBITS I.** Mr. Fabian Therrell statement "I have never, till this very day been told supervisor must take the call". **EXHIBIT J.**

**14.** Plaintiff production of document # 338 was produced intentionally to show Mr. Mendoza's pattern of practice, wrote a letter on Nov 14 1999 and was aware of the other party trade day cancellation but he concealed the information. Please note that plaintiff underlined dates and defendant over looked it. then submitted as exhibit, the letter was written 6 days prior to the event. Also see Kimball's statement.

**15.** Defendants mot at 3 Ashtiani however failed to appear for work on Jun 17, 18, and 19, 2001. and failed to secure approval for his absences on these days. This is false DOCUMENT # 000253 approved by Herrera. **EXHIBIT K**. Defendant re-negotiating the stated reason of termination after 3 years.

**16.** Definition of Accountable absences **EXHIBIT L.**

**17.** Mr. Herrera audit attendance indicates that Ashtiani since 2000 to May 15, 2001 had one (1) sick. **EXHIBIT M.**

18. Thus, Mr. McKinzie has provided the Court manufactured document for year 2001 and is using all the days off that is enjoyed by my co workers of different race and nationality like vacation and holidays against me as attendances (Noted that the crew worked (4 days long shift and 3 days off). due to work schedule and trade days are non-accountable attendances.

19. Plaintiff is providing the Court Mr. Martinez's statement referring to Mr. McKinzie document when we saw it on February 08, 2002 during EEO investigation **1.)** "unpunched document was created after your termination to fill in the missing information the company wanted to show as your attendance record." **2.)** "I do find it unusual that your file has two record sheets, and especially since the two have different information on them." **EXHIBIT N.**

**Respectfully submitted,**

Dated: this 28TH day of November 2003.

Case 1:02-cv-00032    Document 122    Filed 11/28/2003    Page 6 of 29

I declare under penalty of perjury that the forgoing is true and accurate to the best of my knowledge.

_F. Ashtiani_

Tony H. Ashtiani,

Pro <u>Se</u>, litigant

I sign this affidavit in support of Plaintiff' opposition to defendants' motion for Summary Judgment.

_F. Ashtiani_

TONY H. ASHTIANI

**SUBSCIBED AND SWARN TO BEFORE ME** On This ̲2̲8̲t̲h̲ day of November 2003 at Hagatna, Guam U.S.A. by Tony H. Ashtiani.



_Benjamin F. Galarpe_

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2005
P. O. Box 821, Hagatna, Guam 96932

CV 02-00032 PAGE 7 of 7

AFFIDAVIT OF TONY H.ASHTINAI

# Continental

**Employee Evaluation/Progress Report**

☐ New Hire  ☑ Upgrade  ☐ Transfer  ☐ Annual

**TECHNICAL SERVICES DIVISION**

R. V. HARDISTY

EMP. NAME _Tony Ashtiani_   EMP. NUMBER _05463_   EVALUATION PERIOD: FROM: _4-27-92_ TO: _6-3-92_

STATION _LAX_   DEPT. _Inspection_   JOB CLASS _Inspector_

### (✓) MARK GRADING AS IT APPLIES TO INDIVIDUAL BEING EVALUATED

**WORK QUALITY**
☐ ERRORS IMPAIR VALUE OF WORK
☐ WORK REQUIRES CONSTANT INSPECTION
☑ WORK IS USUALLY RELIABLE AND ACCURATE
☐ RARELY ANY ERRORS IN WORK

**WORK ABILITY**
☐ WORK NOT FINISHED IN TIME ALLOWED
☐ USUALLY WORK NOT FINISHED IN TIME ALLOWED
☑ USUALLY WORK COMPLETED IN TIME ALLOWED
☐ WORK ALWAYS COMPLETED IN TIME ALLOWED

**WORKING WITH OTHERS**
☐ ANNOYS OTHERS
☐ DOES NOT FIT EASILY INTO THE CREW
☑ ACCEPTABLE TO ASSOCIATES
☐ PROMOTES GOOD FEELING

**UNDERSTANDING OF JOB**
☐ REQUIRES REPEATED INSTRUCTION/DEMONSTRATION BY SUPERVISOR
☐ REQUIRES DETAILED EXPLANATION OF PROBLEM AND METHOD
☑ UNDERSTANDS READILY IF PROBLEM AND METHOD ARE OUTLINED
☐ REQUIRES LITTLE OR NO HELP TO UNDERSTAND

**USE OF TIME**
☐ WASTES TIME WALKING AROUND AND TALKING TO OTHERS
☐ NEEDS PRODDING OCCASIONALLY
☑ WORKS STEADILY
☐ HABITUALLY DRIVES SELF

**JOB KNOWLEDGE** - How well does employee know job?   U   P   (S)   VG   EX

**DEPENDABILITY** - How well employee works without supervision in relation to when supervisor is present   U   P   S   (VG)   EX

**EXPRESSION** - How well employee effectively expresses thoughts and ideas. (Make distinction between oral and written, if different)   U   P   (S)   VG   EX

**COOPERATION/GENERAL ATTITUDE** - Cooperation and all around attitude displayed towards work, fellow employees, and conformance to company policy and procedures   U   P   S   (VG)   EX

**JUDGEMENT AND COMMON SENSE** - Judgement and common sense displayed in reaching wise decisions in emergencies or embarrassing situations as well as in routine work   U   P   S   (VG)   EX

**INITIATIVE** - Alertness in pointing out faults or possible improvements, making suggestions, going ahead without being told, etc.   U   P   S   (VG)   EX

BRIEFLY OUTLINE WHAT EMPLOYEE DOES TO FIT OR IMPROVE SELF FOR PRESENT JOB _I Find Tony at the reader Printer Looking up Limits, Asks other Inspectors For help when needed and myself if I'm available To help._

WHAT APPEAR TO BE EMPLOYEE'S THREE STRONGEST POINTS _Appears To be aggresive, Questions Mechanics on The Job & has good attitude_

WHAT APPEAR TO BE EMPLOYEE'S (THREE IF POSSIBLE) WEAKEST POINTS _if Tony Continues as he is Today he will be a good Inspector._

**000115**

ADDITIONAL COMMENTS _____

IN ANY CASE, WHAT SHOULD EMPLOYEE DO TO IMPROVE _Continue To work as he is now Doing_

**ATTITUDE:** ☑ FRIENDLY  ☑ COOPERATIVE  ☐ GRATEFUL  ☐ FAIR DESIRE TO IMPROVE  ☐ BELLIGERENT  ☐ CRITICAL

☐ NOT INTERESTED  ☑ STRONG DESIRE TO IMPROVE  ☐ EMPLOYEE NOT CONVINCED EVALUATION WAS ACCURATE

I acknowledge examination of this report.

_T. Ashtiani_   _Paul Richard    Inspection Supv._
(Employee Signature)   (Signature/Title of Evaluator)

_6/9/92_   _6-9-92_
(Date)   (Date of Interview)

DISTRIBUTION: ADMIN. FILE (WHITE)   EMPLOYEE (YELLOW)   STATION FILE (PINK)

cies; operational procedures; performance standards; and corporate goals.

✔ Effective Communication Systems. Employees perform best when they know what to expect and what is expected of them. To maximize employee performance, you need to develop communication lines to keep everyone informed and coordinated. Consider using one or more of the following communication systems: meetings (management, department, team, general staff); personnel policies and handbooks; employee newsletters; company bulletin boards; occasional memorandums or letters to employees; and suggestion or question boxes.

**Give Employees an Opportunity to Meet the Performance Standards.** Employees need to know whether they are performing up to company expectations or not. Consequently, it's important to establish mechanisms which give employees periodically feedback on how they are doing. Think about:

✔ Employee Compensation. Employers tend to think of compensation in terms of "compliance" (with wage and hour requirements) and "competition" (with respect to recruitment and retention of qualified workers, and staving off unionization). But compensation can also be used as a tool to reward performance and other conduct that is consistent with the company's goals. Remember, sometimes you get more with a "carrot" than a "stick."

✔ Written Performance Evaluations. This can be a powerful communication tool. It gives the company an opportunity to identify the areas in which an employee is doing well, as well as the areas that need improvement. However, like all tools, it must be consistently and uniformly implemented if it is to be effective. Supervisors and managers must *complete* the forms and provide frank feedback.

✔ Internal Grievance Procedures. Grievance procedures give employees an opportunity to voice their concerns about workplace issues or situations they do not agree with. The procedures also gives management a chance to see an issue from the employee's point of view (which can be useful for performance issues), and resolve it before it erupts into union organizing, an administrative agency complaint, or a lawsuit.

**Taking Corrective Action.** Before taking any corrective action, you need to determine whether the problem is really the employee's fault. In other words, have you defined the procedures, standards and rules that apply to the employee? If not, the problem may not be the employee's fault and it may be necessary for you to redefine the company's procedures, standards and rules.

If, however, you determine the problem is specific to the employee, then counseling may be appropriate. Remember "counseling" is educating an employee on how to do their job correctly or how to meet performance standards. Employees who <u>cannot</u> do something should be counseled.

Once you are certain the employee has been informed of the applicable requirements and performance standards for his/her job, and he/she has been given a reasonable opportunity to achieve, termination may be appropriate. If you have the "fundamentals" in place, and you have made efforts to communicate with the employee about his/her performance deficiencies, you should have documentation to support your decision to terminate the employee for his/her failure or refusal to meet performance standards. Although there is no guarantee that a properly documented termination will discourage an employee from suing, the documentation will help the company to prove that it has a "legitimate, nondiscriminatory reason" for terminating the employee for poor performance.

©2003 Carlsmith Ball LLP. *The Pacific Employer* is copyrighted by Carlsmith Ball LLP. It is a violation of federal copyright law to photocopy or reproduce this newsletter, in any form, in whole or in part, without the written consent of Carlsmith Ball LLP.

Please note that the contents of this newsletter are for general information purposes only.
It does not constitute legal advice or a legal opinion. Readers should retain the services of qualified counsel for legal advice.

530

among several racial harassment suits involving nooses in the workplace which have been filed by EEOC against Florida employers in the past two years."

Federico Costales, Director of EEOC's Miami office said, "Subjecting workers to harassment because of their race can be costly to businesses, not only in monetary terms, but also in terms of increased absenteeism and health care costs, and lower productivity and employee morale. It is imperative for employers to implement effective anti-discrimination policies and procedures to prevent discrimination and to address and remedy it when it occurs."

Charges of racial harassment filed with EEOC have more than doubled over the past decade from 2,849 charge filings in Fiscal Year 1991 to approximately 6,550 charge filings in FY 2000, about 8% of all charges filed with the agency. Racial harassment is a form of race discrimination which includes racial jokes, ethnic slurs, offensive or derogatory comments, or other verbal or physical conduct based on an individual's race or color. Such conduct may create an intimidating, hostile, or offensive working environment, or interferes with the individual's work performance, in violation of Title VII of the Civil Rights Act of 1964.

In addition to enforcing Title VII, which prohibits employment discrimination based on race, color, religion, sex or national origin, EEOC enforces the Age Discrimination in Employment Act; the Equal Pay Act; Title I of the Americans with Disabilities Act, which prohibits employment discrimination against people with disabilities in the private sector and state and local governments; prohibitions against discrimination affecting individuals with disabilities in the federal government; and sections of the Civil Rights Act of 1991. Further information about the Commission is available on the agency's Web site at www.eeoc.gov.

FORM: P-138CM
M&E#: 00-0703-3-1415
REV: 02/95

# Continental Micronesia 

**Employee Number:** _A 1 0 1_

## ABSENCE FROM DUTY REPORT

**Date Prepared:** _3 Nov 99_

**INSTRUCTIONS**

1. SICK LEAVE: Immediately upon return to work or at the end of each pay period whichever first occurs.
2. OCCUPATIONAL INJURY LEAVE: Immediately when injury necessitates absence from duty.
3. **VACATION: Prior to the start of the vacation period; OR when a paycheck is desired before the start of the vacation period, this form must be <u>received</u> in Payroll FOURTEEN (14) CALENDAR days <u>prior</u> to the date the check is desired.**
4. OTHER: Immediately upon return to work or at the end of each pay period whichever first occurs.
   **Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee**

---

**SICK LEAVE**

### (Attach Doctor's Certificate When Requesting)

I, _____ , employed at _____ and _____
　　　　　PRINT NAME　　　　　　　　　　　　　　WORK LOCATION　　/　　COST CENTER

Employee Number _____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE _____ TOTAL HOURS _____

BRIEF DESCRIPTION, NATURE OF ABSENCE _____

Signature of Employee _____ ACKNOWLEDGED _____

**CIRCLE REGULAR DAYS OFF:　S　M　T　W　T　F　S**　　　　SUPERVISOR　　　　DATE

---

**OCCUPATIONAL INJURY LEAVE**

### (Attach Doctor's Certificate When Requesting)

I, _____ , employed at _____ and _____
　　　　　PRINT NAME　　　　　　　　　　　　　　WORK LOCATION　　/　　COST CENTER

Employee Number _____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE _____ TOTAL HOURS _____

Signature of Employee _____ ACKNOWLEDGED _____

**CIRCLE REGULAR DAYS OFF:　S　M　T　W　T　F　S**　　　　SUPERVISOR　　　　DATE

---

**VACATION**

I, _____ , employed at _____ and _____
　　　　　PRINT NAME　　　　　　　　　　　　　　WORK LOCATION　　/　　COST CENTER

Employee Number _____ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicated below.

VACATION (HOURS) _____

DEFERRED HOLIDAYS (HOURS) _____

DATES OF VACATION (FROM) _____ (TO) _____ TOTAL HOURS _____

MY PAYCHECK TO BE ISSUED ON _____ is herewith requested for _____
　　　　　　　　　　　　　　　　　( DATE )　　　　　　　　　　　　　　　　( DATE )

Signature of Employee _____ ACKNOWLEDGED _____

**CIRCLE REGULAR DAYS OFF:　S　M　T　W　T　F　S**　　　　SUPERVISOR　　　　DATE

---

**OTHER**

### (Personal Business, Authorized Leave, Jury Service, etc.)

I, _IKADA JOEY_ , employed at _P X_ and _____
　　　PRINT NAME　　　　　　　　　　　　　　WORK LOCATION　　/　　COST CENTER

Employee Number _A 1 0 1_ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicted below.

DATE OF ABSENCE _3 Nov 99_ TOTAL HOURS _8.0_

REASON FOR ABSENCE _Illness in family cv, Sranun Still a_

If because of death in the immediate family, what relation to the employee? _____

Signature of Employee _____ ACKNOWLEDGED _____

**CIRCLE REGULAR DAYS OFF:　S　M　T　W　T　F　S**　　　　SUPERVISOR　　　　DATE

**Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee**

**Legend:**

TS= TEMP SUPVR
R= RESCUE
TW= TRADE WORK
TO= TRADE OFF
V= VACATION
DAT= DAY AT A TIME

EL= EMERGENCY LV
PL= PATERNITY LV
PB/PC= PERSONAL BUSINESS
D= DAY OFF
T= TRAINING

F= FLT MX SUPVR
O= OCCUPATIONAL INJURY
S= SICK LV
ST= SHIFT TRADE
LM= LEADMAN
C= COORDINATOR

**SWINGSHIFT 1430-2300**

- ROGER RUIZ (737)
- RAY CEPEDA
- ARLEN WONG
- MARTY MORGAN
- HECTOR AGUILO
- JOBY OKADA
- TORY BORJA
- TOM PEREZ
- GUS GUICHICHO
- HERMAN ADA
- MARK BERNSTIEN
- TONY ASHTIANI
- TONY DIONES
- DAVE MENDIOLA
- GEORGE SINGEO
- HARRY BROUDUS

**EARLY SWINGS 1300-2130**

- ELNNER MIRANDA
- JOHN CARBULIDO
- STEVE SOLI
- ROD RUIZ
- RYAN GUIMATAOTAO
- MIKE PABLO

| | ✓ | | | | | | |
|---|---|---|---|---|---|---|---|
| L. C. ... | ✓ | | | | | | |
| JUNIOR M. | ✓ | | | | | | |
| DAVE M. | ✓ | | | | | | |
| UNKER M | ✓ | | | | | | |
| MIKE P | ✓ | | | | | | |
| LARRY P | ✓ | | | | | | |

## UNUSUAL OCCURRENCES

| NAME | TIME | ASSIGNMENTS | | REMARKS |
|---|---|---|---|---|
| | | | 911/942 | 17 NRT |
| DALE F | 1435-1545 | JL 1141 | 943 | 21 SPN |
| TONY A. | | 227 ON GATE 7/✓ PAPERWORK | 952/967 | 14 NRT |
| UNIC/BURLIN | 1530-1630 | 249 | 973/944 | 16 KIK |
| VIC/DAVE | 1535-1640 | JL1146 — DISPATCH  HELP DC-10 | 958/946 | 18 KIK |
| SCOTT/MARLON | 1905-1715 | JL 1052 | 949/963 | 8 NRT |
| MIKE NTR | 1505-1715 | 063  SV LAV INOP / SOM OB IT'S | 916/973 | 17 NGO |
| JOE K/LANNER | 1540-1715 | 235 | | 1D. DPS |
| UNIC/BURLIN | 1525-1740 | 201 (AH INTRY)  R&R THC 470 KM | 953 | 19 ROR |
| VIC/DAVE | OUG-1815 | 246  SV FORM COCKPIT/OV ENTER  420/945 | | 20 SPN |
| TONY A. | 1520-1815 | 228  BELLY LOAD -5 / LH  END | 942/911 | 18 NNL |
| SCOTT/MARLON | 1645-1900 | 236 (JORDIN/MANNY) | 985 | 10 HKG |
| JOE K/LANNER | 1800-1910 | 227 | | |
| | | TY | | |
| | | | 001 | 9 OTS |
| MIKE NTR | 1905-T | 062  SV A/C PLA OIL | | |
| TONY A. | | SV INSIDE NCP MEMO CHKN/ CTR PNL RADIO MNFM LIGHT VERY DIM | | |
| UNIC/BURLIN | +OUTSIDE | 6" TIRE OUT INOP / FWD COMPT TRIM WLU INOP AUTO | | |
| | | RCH INST. OP ITS | | |
| BV CRUN | 1710-0810 | 232  GATES PANY FAN WBLC/R+R 470  K TRCK 952 | | |
| | | L1 +L2  HEAT CRACK | | |
| JOE K/LANNER | 1715-0645 | 250  5; A/C PLA OIL | 957 | 14 MNL 86 3 |
| | | SOFTWARE UPGRADE | | |
| SCOTT/MARLON | 2000-0630 | 074  ✓  A/C PLA OIL | 073 | 8 NRT 961 |
| VIC/DAVE | | SV INSIDE / JUG FUN UNITS INOP / 2 H2O CLIMB ABOVE LAV | | |
| | OUTSIDE | AFTER T/O  LAV J DUMP MNLC INOP / SCOT & ZE INFO | | |
| | | RCH IT INST THP  C92 | | |

336.



# Continental
# Micronesia

*Fly with the warmth of Paradise*

February 20, 1997

RECEIVED

JUN 0 3 1997

BILL MEEHAN

To:       Hamid Ashtiani / Employee Number A1966

From:    Jim Bennett / Director, Technical Services - Japan

Subject:  Commendation


Tony;

We here in Japan Technical Services. Would like to thank you for your assistance in moving diverted Flight 840 (Aircraft N781) from Narita back to Guam. And after working all afternoon on N781, when asked to remain in Narita and assist with our out of service DC10-30. You readily volunteered. Thus helping to return this A/C to service before curfew. All this shows the dedication of our staff in Technical Services to "Keeping them flying". Your commitment to the tasks at hand is commendable.

Again thanks for the assistance from all departments in Japan. Especially our passengers.


JGB/ms

cc:  B. Meehan
      Personal File

**000049**

Regional Office:  5F, Sanno Grand Bldg., 2-14-2, Nagata-cho, Chiyoda-ku, Tokyo 100, Japan
Branch Offices in Japan:  Sapporo  Sendai  Nagoya  Osaka  Fukuoka  Okinawa

# FABIAN THERRELL

20MAY02

TO: Raymond J. Griffin Jr:

I'M WRITING THIS OF MY OWN FREE WILL TO SHEAD SOME LIGHT ON THE FALSE
STATEMENTS MADE BY THE COMPANY IN THEIR DEALINGS WITH TONY ASHTIANI.

MY NAME IF FABIAN THERRELL I AM AN AIRCRAFT MECHANIC WITH CONTINENTAL.
I'VE BEEN WITH THE COMPANY 14 YEARS, 8 YEARS GUAM BASED.
I'M THE HIGHEST SENORITY MECHANIC ON DAYSHIFT LINE MAINTANCE.
I FILL IN FOR THE LEAD MECHANIC DURING HIS WEEKEND, VACATION AND
OTHER ABSENCES. THE SICK CALL PROCEDURE, AS I SEE IT, IS VERY SIMPLE.
CALL WORK, LET SOMEONE KNOW YOU WILL NOT BE COMING IN. GET THEIR
NAME JUST TO COVER YOUR BASES, AND DON'T WORRY ABOUT IT AFTER THAT.
THE SHIFT LOG HAS A SECTION FOR "SICK CALLS" TO BE LOGGED IN.
THE LOG ALSO STATES THE TIME OF THE CALL AND WHO TOOK THE CALL.
I HAVE NEVER, TILL THIS VERY DAY , BEEN TOLD A SUPERVISOR MUST TAKE THE
CALL. I HAVE RECEIVED SICK CALLS IN THE PAST, LOGGED THEM IN MYSELF,
AND NEVER HAD MANAGEMENT QUESTION ME ABOUT IT.
A SUPERVISOR IS ALWAYS ON DUTY, BUT THEY LIKE ALL HUMANS HAVE ISSUES
SOMETIMES. AT ANY GIVEN TIME A SUPERVISOR COULD BE OUT AT AN AIRCRAFT,
LATE TO WORK TO ATTEND A FAMILY FUNCTION, HAVING A SMOKE, OR IN
THE REST ROOM. IF SOMEONE CALLS IN SICK, ITS NOT THE POLICY THAT HE/SHE
MUST CONTINUE TO CALL UNTIL A SUPERVISOR TAKES THE MESSAGE.

I'M TOLD THAT MR. ASHTIANI'S TRADE DAYS DURING THE YEAR 2000 WERE
ALSO CALLED INTO QUESTION. I PERSONALLY PROFERED 95% OF THE
TRADE DAYS OFF THAT TONY TOOK. THESE TRADES WERE NO SECRET!
THE HOLIDAY SEASON WAS NEAR, PEOPLE WANTED TO WORK EXTRA DAYS.
IT WAS A WIN, WIN SITUATION FOR EVERYONE CONCERNED.
SUPERVISORS KNEW THAT TONY'S TRADES HAD EXCEEDED THE DAYS ALLOTTED
BY THE COLLECTIVE BARGINING AGGREMENT WITH THE TEAMSTERS,
BUT THEY DIDN'T CARE. SOMETIMES IT WORKED TO THEIR ADVANTAGE.
I REMEMBER SOME OCCASIONS WHEN THE SWINGSHIFT LEAD MECHANIC,
WOULD VOLUNTEER TO WORK FOR TONY. TONY IS ONE OF THE BRIGHTEST
MECHANICS I'VE WORKED WITH. BUT EVERY SUPERVISOR LIKES HAVING HIS
PRIMARY LEAD MECHANIC WORK EXTRA DAYS, HAVING HIM WORK EXTRA
DAYS AT STRAIGHT TIME IS A GIFT. EVERYONE WAS HAPPY, NO ONE EVER COMPLAINED.
THE COMPANY WAS NEVER SHORT MAN HOURS BECAUSE OF TONY'S ABSENCE.

RECENTLY THERE WAS AN INCIDENT AT WORK THAT I THOUGHT WAS VERY
INTERESTING. MR. BALDEREDEAN AHMED (ANOTHER MECHANIC OF MIDDLE
EASTERN ANCESTRY) WAS STUCK IN CAIRO. IT WAS KNOWN BY EVERYONE THAT
HE WAS GOING TO PICK UP HIS NEW WIFE IN SUDAN, STOP IN CAIRO TO VISIT THE

P.O BOX 27763 • BARRIGADA, GUAM • 96921
PHONE: 671-647-5387 • FAX: 671-649-5380

480

EMBASSY FOR HER U.S. ENTRY PAPERS AND RETURN TO GUAM AS SOON AS
POSSIBLE.  TRADE DAYS AND VACATION DAYS WE SET UP IN ADVANCE.
NO ONE SAW A PROBLEM, THIS HAPPENS ALL THE TIME.  DURING MR. AHMED'S
STAY IN CAIRO ANTI-AMERICAN FEELINGS IN EGYPT REACHED A BOILING POINT.
THE EMBASSY WAS BESIEGED WITH PROTESTERS.  ANYONE WITH CABLE
T.V. COULD WATCH THIS ON CNN.  ALL OF A SUDDEN MR. AHMED'S
TRADE DAY PRIVILIDGES WERE REVOKED, AND HE WAS THREATENED THAT
HE WOULD BE CONSIDERED A NO CALL NO SHOW.  I HAVE NEVER IN
MY 14 YEARS WITH CONTINENTAL AIRLINES SEEN ANYTHING LIKE THIS!
AND IT'S MY VERY STRONG OPINION, THAT THIS COULD NEVER HAPPEN
TO A GUAM BASED MECHANIC OF CHAMORRO ANCESTRY!
THIS IS MY STATEMENT.  ANY QUESTIONS?  FEEL FREE TO CONTACT ME.


SINCERELY


FABIAN THERELL

481

06 OCT 02

MR. TIMOTHY A. RIERA
EEOC DIRECTOR
300 ALA MONA BLVD, ROOM 7-127
HAWAII LOCAL OFFICE
HONOLULU HAWAII 96850

DEAR MR. RIERA

I'M WRITING THIS STATEMENT IN REGARDS TO TONY ASHTIANI'S
ALLEGED ATTENDANCE AT CONTINENTAL MICRONESIA DURING THE
YEARS 2000-2001.

I PERSONALLY PROFFERED TONY'S TRADE DAYS OFF. THERE WERE NO
INTERFERRENCE IN THE OPERATIONAL NEEDS.

THIS WAS A UNION OPTION, AND EVERY ONE TRADES , IF SOME ONE
TRADED DAYS OFF 365 DAYS IN A YEAR THEY STILL BE ELIGIBLE FOR THE
PERFECT ATTANDANCE AWARD TRADE DAYS ARE CONSIDERED NON-
ACCOUNTABLE ATTANDANCES.

WHILE EVERY ONE WAS TRADING OFF WITH EACH OTHER INCLUDING
TONY A. MANAGEMENT HAD NO COMPLAINTS.

THANK YOU

FABIAN THERRELL
Tele # 671- 677- 5387

483

# PERFECT ATTENDANCE REWARDS PROGRAM

## Non Accountable Absences

1. Any absence that is documented by medical certification under the Family/Medical Leave Act
2. Vacations
3. Holidays
4. Trade Days Off
5. Personal Emergency (critical illness or death in the immediate family)
6. Jury Duty and/or Witness service on behalf of Continental Micronesia
7. Compensatory Time Off
8. Declared Adverse Weather Day
9. Military/Reserve Leave
10. A.U.T.O.'s – Authorized Unpaid Time Off (WOP)

## Accountable Absences

1. Lates
2. No Shows
3. Sick Leave
4. Medical Leave
5. Maternity Leave
6. Occupational Injury
7. Educational Leave
8. Company Offered Leave of Absence
9. Furloughs
10. Personal Leave of Absence

## Eligibility

All full time and part time employees of CMI (except management over grade 45).

487

MAY 29, 2002

TO WHOM IT MAY CONCERN:

I, VINCE DIAZ, MAKE THE FOLLOWING STATEMENT THAT,

1. EMPLOYEES, OTHER THAN SUPERVISORS, IN THE MX DEPT. TOOK SICK CALL MESSAGES FROM OTHER EMPLOYEES . . .

2. THESE MESSAGES WERE EITHER NOTED IN THE SHIFT TURNOVER LOG ON THE MESSAGE BOARD OR PASSED ON VERBALLY TO THE SUPERVISOR ON DUTY . . .

3. THIS PRACTICE IS NO LONGER USED AT WORK.

4. 2 EMPLOYEES WERE HIRED AS A & P'S AFTER H. ASHTIANI'S TERMINATION, DENNY FLORES & RICK CRUZ . . .

VINCE DIAZ

734-1383



485

# FABIAN THERRELL

20MAY02

TO:  Raymond J. Griffin Jr:

I'M WRITING THIS OF MY OWN FREE WILL TO SHEAD SOME LIGHT ON THE FALSE
STATEMENTS MADE BY THE COMPANY IN THEIR DEALINGS WITH TONY ASHTIANI.

MY NAME IF FABIAN THERRELL I AM AN AIRCRAFT MECHANIC WITH CONTINENTAL.
I'VE BEEN WITH THE COMPANY 14 YEARS, 8 YEARS GUAM BASED.
I'M THE HIGHEST SENORITY MECHANIC ON DAYSHIFT LINE MAINTANCE.
I FILL IN FOR THE LEAD MECHANIC DURING HIS WEEKEND, VACATION AND
OTHER ABSENCES.  THE SICK CALL PROCEDURE, AS I SEE IT, IS VERY SIMPLE.
CALL WORK, LET SOMEONE KNOW YOU WILL NOT BE COMING IN.  GET THEIR
NAME JUST TO COVER YOUR BASES, AND DON'T WORRY ABOUT IT AFTER THAT.
THE SHIFT LOG HAS A SECTION FOR "SICK CALLS" TO BE LOGGED IN.
THE LOG ALSO STATES THE TIME OF THE CALL AND WHO TOOK THE CALL.
I HAVE NEVER, TILL THIS VERY DAY , BEEN TOLD A SUPERVISOR MUST TAKE THE
CALL.  I HAVE RECEIVED SICK CALLS IN THE PAST, LOGGED THEM IN MYSELF,
AND NEVER HAD MANAGEMENT QUESTION ME ABOUT IT.
A SUPERVISOR IS ALWAYS ON DUTY, BUT THEY LIKE ALL HUMANS HAVE ISSUES
SOMETIMES.  AT ANY GIVEN TIME A SUPERVISOR COULD BE OUT AT AN AIRCRAFT,
LATE TO WORK TO ATTEND  A FAMILY FUNCTION, HAVING A SMOKE, OR IN
THE REST ROOM.  IF SOMEONE CALLS IN SICK, ITS NOT THE POLICY THAT HE/SHE
MUST CONTINUE TO CALL UNTIL A SUPERVISOR TAKES THE MESSAGE.

I'M TOLD THAT  MR. ASHTIANI'S TRADE DAYS DURING THE YEAR 2000 WERE
ALSO CALLED INTO QUESTION.   I PERSONALLY PROFERED 95% OF THE
TRADE DAYS OFF THAT TONY TOOK.  THESE TRADES WERE NO SECRET!
THE HOLIDAY SEASON WAS NEAR, PEOPLE WANTED TO WORK EXTRA DAYS.
IT WAS A WIN, WIN SITUATION FOR EVERYONE CONCERNED.
SUPERVISORS KNEW THAT TONY'S TRADES HAD EXCEEDED THE DAYS ALLOTTED
BY THE COLLECTIVE BARGINING AGGREMENT WITH THE TEAMSTERS,
BUT THEY DIDN'T CARE.  SOMETIMES IT WORKED TO THEIR ADVANTAGE.
I REMEMBER SOME OCCASIONS WHEN THE SWINGSHIFT LEAD MECHANIC,
WOULD VOLUNTEER TO WORK FOR TONY.  TONY IS ONE OF THE BRIGHTEST
MECHANICS I'VE WORKED WITH.  BUT EVERY SUPERVISOR LIKES HAVING HIS
PRIMARY LEAD MECHANIC WORK EXTRA DAYS, HAVING HIM WORK EXTRA
DAYS AT STRAIGHT TIME IS A GIFT.  EVERYONE WAS HAPPY,  NO ONE EVER COMPLAINED.
THE COMPANY WAS NEVER SHORT MAN HOURS BECAUSE OF TONY'S ABSENCE.

RECENTLY THERE WAS AN INCIDENT AT WORK THAT I THOUGHT WAS VERY
INTERESTING.  MR. BALDEREDEAN AHMED (ANOTHER MECHANIC OF MIDDLE
EASTERN ANCESTRY) WAS STUCK IN CAIRO.  IT WAS KNOWN BY EVERYONE THAT
HE WAS GOING TO PICK UP HIS NEW WIFE IN SUDAN, STOP IN CAIRO TO VISIT THE

P.O BOX 27763 • BARRIGADA, GUAM • 96921
PHONE: 671-647-5387 • FAX: 671-649-5380

480

EMBASSY FOR HER U.S. ENTRY PAPERS AND RETURN TO GUAM AS SOON AS
POSSIBLE.   TRADE DAYS AND VACATION DAYS WE SET UP IN ADVANCE.
NO ONE SAW A PROBLEM, THIS HAPPENS ALL THE TIME.  DURING MR. AHMED'S
STAY IN CAIRO ANTI-AMERICAN FEELINGS IN EGYPT REACHED A BOILING POINT.
THE EMBASSY WAS BESIEGED WITH PROTESTERS.  ANYONE WITH CABLE
T.V. COULD WATCH THIS ON CNN.  ALL OF A SUDDEN MR. AHMED'S
TRADE DAY PRIVILIDGES WERE REVOKED, AND HE WAS THREATENED THAT
HE WOULD BE CONSIDERED A NO CALL NO SHOW.  I HAVE NEVER IN
MY 14 YEARS WITH CONTINENTAL AIRLINES SEEN ANYTHING LIKE THIS!
AND IT'S MY VERY STRONG OPINION, THAT THIS COULD NEVER HAPPEN
TO A GUAM BASED MECHANIC OF CHAMORRO ANCESTRY!
THIS IS MY STATEMENT.  ANY QUESTIONS?  FEEL FREE TO CONTACT ME.


SINCERELY

FABIAN THERELL

481



# Continental Micronesia

M: P-138CM
#: 00-0703-3-1415
: 02/95

Employee Number: _____

## ABSENCE FROM DUTY REPORT

Date Prepared: _____

1. SICK LEAVE: Immediately upon return to work or at the end of each pay period whichever first occurs.
2. OCCUPATIONAL INJURY LEAVE: Immediately when injury necessitates absence from duty.
3. **VACATION: Prior to the start of the vacation period; OR when a paycheck is desired before the start of the vacation period, this form must be <u>received</u> in Payroll FOURTEEN (14) CALENDAR days <u>prior</u> to the date the check is desired.**
4. OTHER: Immediately upon return to work or at the end of each pay period whichever first occurs.
   Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee

---

**(Attach Doctor's Certificate When Requesting)**

I, _____ , employed at _____ and _____
          PRINT NAME                              WORK LOCATION    /    COST CENTER

Employee Number _____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE _____ TOTAL HOURS _

**000253**

BRIEF DESCRIPTION, NATURE OF ABSENCE _____

Signature of Employee _____ ACKNOWLEDGED _____
                                                            SUPERVISOR              DATE
**CIRCLE REGULAR DAYS OFF:  S   M   T   W   T   F   S**

---

**(Attach Doctor's Certificate When Requesting)**

I, _____ , employed at _____ and _____
          PRINT NAME                              WORK LOCATION    /    COST CENTER

Employee Number _____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE _____ TOTAL HOURS _____

Signature of Employee _____ ACKNOWLEDGED _____
                                                            SUPERVISOR              DATE
**CIRCLE REGULAR DAYS OFF:  S   M   T   W   T   F   S**

---

I, _____ , employed at _____ and _____
          PRINT NAME                              WORK LOCATION    /    COST CENTER

Employee Number _____ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicated below.

VACATION (HOURS) _____

DEFERRED HOLIDAYS (HOURS) _____

DATES OF VACATION (FROM) _____ (TO) _____ TOTAL HOURS _____

MY PAYCHECK TO BE ISSUED ON _____ is herewith requested for _____
                                    ( DATE )                                    ( DATE )

Signature of Employee _____ ACKNOWLEDGED _____
                                                            SUPERVISOR              DATE
**CIRCLE REGULAR DAYS OFF:  S   M   T   W   T   F   S**

---

**(Personal Business, Authorized Leave, Jury Service, etc.)**

I, _____ , employed at _____ and _____
          PRINT NAME                              WORK LOCATION    /    COST CENTER

Employee Number _____ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicted below.

DATE OF ABSENCE _____ TOTAL HOURS _____

REASON FOR ABSENCE _____

If because of death in the immediate family, what relation to the employee? _____

Signature of Employee _____ ACKNOWLEDGED _____
                                                            SUPERVISOR              DATE
**CIRCLE REGULAR DAYS OFF:  S   M   T  (W)  T   F   S**

Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee



# A TTENDANCE POLICY

Regular attendance and punctuality are essential factors in insuring the personal success of each Employee, the success of the Department to which we are assigned and the successful achievement of Continental Micronesia's Corporate Goals. Excessive absenteeism and lateness places an unfair burden on our fellow Employees and has a profound adverse effect on our ability to achieve our personal success and the continued success of Continental Micronesia. This attendance program is designed to assist each Employee by setting forth a standard for acceptable attendance so each Employee knows what is expected of them. It is also designed to assist our Management team in monitoring and managing Employee attendance and punctuality in a fair and consistent manner.

Eight (8) incidents within a twelve month period is normally considered to be excessive and can subject the Employee to serious disciplinary action.

## A.    DEFINITIONS

1.    **ACCOUNTABLE ABSENCES** are defined as an instance when an Employee is absent from work (a) due to sickness involving the Employee or his/her spouse or dependent child, (b) is late reporting for duty of more than 5 minutes, (c) is unable to report with prior notice to supervisor, (d) fails to report (no show) without prior notification to supervisor, and (e) departs early without authorization.

2.    **NO SHOW** is the most serious type of absenteeism. When an Employee fails to show for work, it creates a hardship on the operation and other Employees. More than one incident of no show may result in an acceleration of discipline. Two (2) consecutive days (or duty assignments) absence from duty without notification may result in discipline that does not exclude termination.

3.    **SICK** is an incident due to the illness of the Employee or his/her spouse or dependent child. Absence due to sickness is considered one incident even if it extends for consecutive days. The Employee must notify his/her supervisor in advance of each shift or duty assignment unless a doctor has prescribed a certain number of days free from work and the supervisor has been provided this information.

4.    **LATE REPORT –** An employee is considered late for disciplinary purposes if he/she reports for work more than 5 minutes late. Three incidents of reporting five or less minutes late within a six month period will trigger the issuance of one Late incident to the Employee's attendance record and will disqualify the Employee from participation in the ATTENDANCE INCENTIVE AWARDS PROGRAM.

5.    **PATTERNS AND TRENDS OF ABSENCE –** An Employee's attendance record will be reviewed to determine attendance patterns and trends. Patterns and trends may include absenteeism consistently falling in conjunction with an Employee's scheduled days off, scheduled vacation, holidays, surrounding day trade off, or when absenteeism frequently occurs on the same days of the month. In some cases, the attendance guidelines may be accelerated to promote attendance improvement by the Employee.



6.  **NON-ACCOUNTABLE ABSENCES** – Absences from duty for the following reasons will not count for discipline related attendance tracking and will not disqualify the Employee from participation in the ATTENDANCE INCENTIVE AWARDS PROGRAMS.

    a.  Vacation

    b.  Holidays

    c.  Trade ~~Days Off~~

    d.  Death/Critical Illness*

    e.  Jury Duty

    f.  Approved leaves of Absence

    g.  Occupational Injury Time

    h.  Compensatory Time Off

    i.  Approved Unpaid Time Off

    j.  Company Declared Adverse Weather Time Off

    k.  Lates in accordance with Paragraph A.4. above

B.  ## $\mathcal{A}$TTENDANCE POLICY GUIDELINES

Employees incurring attendance incidents will be counseled according to the following:

**LEVEL ONE**                    **1 Accountable Incident**

Notation is to be placed on Employee's Attendance Tracking Sheet/File. A copy of the notation is placed in Employee's mail file.

**LEVEL TWO**                    **2 Accountable Incidents**

Notation is to be placed on Employee's Attendance Tracking Sheet/File. A copy of the notation is placed in Employee's mail file.

**LEVEL THREE**                    **3 Accountable Incidents**

Supervisor will personally give Employee a copy of the third incident notification on the Employee's attendance file. If the incidents indicate a potential pattern (see definition of patterns/trends), supervisor will discuss with Employee.

**LEVEL FOUR**                    **4 Accountable Incidents**

Supervisor will personally give Employee a copy of the fourth incident notification on the Employee's attendance file and will counsel Employee on the 8th incident policy to ensure the Employee understands expectations. If the incidents indicate a potential pattern (see definition of patterns/trends), supervisor will again discuss with Employee.

**LEVEL FIVE**            5 Accountable Incidents

Employee will be given a written letter of counseling (1st Written Warning) indicating the incidents on record and clear notification that further disciplinary action my be necessary if attendance improvement is not shown. If there is reason to believe that Employee Assistance may be needed, Supervisor should request assistance from Employee Relations/Human Resources.

**LEVEL SIX**            6 Accountable Incidents

Employee will be given a second Written Warning letter expressing the need for immediate corrective action.

**LEVEL SEVEN**            7 Accountable Incidents

Employee is placed on written termination warning. Employee Relations/Human Resources is notified of the termination warning and may request a meeting with supervisor and/or Employee for intervention purposes.

**LEVEL EIGHT**            8 Accountable Incidents

Employee is subject to discharge. Supervisor should consult with Employee Relations/Human Resources prior to discharge of Employee.

C.      **ADMINISTRATION OF POLICY**

1.      **Rolling 12 Months Calendar** – The above guidelines are administered on a rolling 12-month period from the date of the first incident. Although incidents drop off in a rolling calendar year, once an Employee has reached termination warning, termination will be considered with each absence over the next twelve months until such time as the attendance record returns to a Level Five.

    Consideration will be given to individuals with extenuating circumstances. These special situations should be reviewed by supervision and Human Resources to establish a more lenient progression if circumstances warrant. It is also possible that supervision may, in some cases, accelerate the program depending upon the severity of the incident the overall record, and the Employee's length of service.

2.      **Abuse** – Employees, including supervision, are expected to work as a team toward maintaining satisfactory attendance. Dishonesty associated with sick leave or any other absence is a serious matter. An Employee who calls in sick when they are not, who misleads the Company, who uses travel benefits without prior permission, is dishonest regarding a lost time incident, or refuses a duty assignment is subject to termination of employment.

Case 1:02-cv-00032    Document 122    Filed 11/28/2003    Page 25 of 29

3.  Medical Verifications – Supervision will advise the Employee when a written medical verification by a doctor is required which includes:

    a.     Diagnosis/Prognosis

    b.     Date and time of visit

    c.     Date of next visit, if applicable

    d.     Medication prescribed

    e.     Anticipated date Employee will return to work

The verification must be submitted to the supervisor on or before report time of the Employee's first duty assignment following the absence. Failure to provide such verification may result in the Employee being withheld from duty.

# ATTENDANCE AUDIT

**Date:** 5/14/2001

**To:** Tony Ashtiani

**From:** William A. Herrera

**RE:** QUARTER ATTENDANCE AUDIT

---

An attendance audit for the quarter of 2000 ending May 13, 2001 shows the following:

1)  Accountable incidents____1____.

2)  Sick days____1_____.

3)  Tardy_____0_____.

This is to inform you of your standing of level __3__ as of this date.

William A. Herrera

CMI Maintenance Supervisor



**000025**

June 10, 2002

Mr. Tony Ashtiani

Dear Tony:

Per your request the following is a statement as to what we discovered when we met at the CMI HR Dept on Feb. 08, 2002.

Upon arriving at HR we asked to review your personnel file. Upon review, as observed by Robbi Crisostomo, we found two "EMPLOYEE ABSENTEE RECORD Calender Year 2001" forms in your P-file. One form had been punched for three ring binder purposes, and the other had no punch marks in it. The punched document had three weeks of attendance records missing from it while the unpunched document was completely filled in. We both commented to each other how odd that they would have two copies of the same thing for one employee.

Upon closer review we found that the two documents were different in detail. The unpunched document had much more detail on it, including worked holiday on 01/01/01, as well as indications of days where Tony apparently reported to work late. The punched document had no such notation on it. Also, the unpunched document shows the period from 6/17/01 thru 6/24/01 as "No Call/No Show" whereas the punched document merely shows those days as absence without leave, presumably indicating no sick leave to be paid.

While we cannot know for sure why the two documents are different, it would appear to me that the unpunched document was created after your termination to fill in the missing information the Company wanted to show as your attendance record. I believe the punched document came from Maint Dept records, where all employees attendance records are normally kept. The unpunched document appears to be an after termination review of your attendance, including more detail on your lates, and therefore a higher attendance incident record.

Although I have not reviewed all employees records, I do find it unusual that your file has two record sheets, and especially since the two have different information on them.

At that same meeting, we also did a rather thorough exam of your "Absence from Duty Report" records, or P-138. We found the following on these P-138 records. One P-138 was prepared on 6/111/01 for sick leave on 6/09-10. This appears normal. Another P-138 was also prepared for sick leave from 6/3-8 and also for PB (personal business) on 6/11-12. This strikes me as odd as the form was signed on 6/11, but it was for PB actually through 6/12. I would think that normally this would be prepared after the fact, rather than before the event had ended, as you never know if things will change until they have actually been completed. Filling out a form for what may happen tomorrow seems premature, until you can actually verify that PB was indeed used on 6/12/01. Then, we

384

discovered two P-138s prepared on 10/30/01. One indicates that Tony was out from 6/16-19 due to "Son Ill", but does not indicate whether this is PB, No Call/No Show, or Absence Without Leave. The second P-138 prepared on 10/30/01 is for the absence on 6/23-24. This indicates reason for absence as No Show.

First, this is unusual since the Company is required to fill out these forms within 10 working days of the incident, or within 10 days of when the employee returns. This clearly was not done. Or, another possibility is that P-138s were filled out in the appropriate time frame, but that new ones were done months later. Could it be that the original ones showed information that was not helpful to the Company's termination? We may never know, but I remain suspicious of the P-138s filled out so late after the incidents took place.

Second, the indications on these P-138s is inconsistent with other Company documents. These P-138s show an excused/unpaid leave from 6/16-19, and a No Show from 6/23-24. The punched EMPLOYEE ABSENTEE RECORD for CY2001 shows PB for 6/16 and W (or Absence without leave) from 6/17-24. The unpunched EMPLOYEE ABSENTEE RECORD for CY2001 shows PB for 6/16 and W (or Absence without leave) from 6/17-24, and further indicates the 6/17-24 were No Call/No Show. However, the Company letter of termination indicates No Call/No Show only on 6/23-24. Lastly, the duty roster shows Tony on PB for the entire 6/11 thru 6/24, except for 6/17, which Bill Herrera changed to No Call/No Show.

This difference between the various documents is highly unusual, and causes one to wonder if the 10/30/01 P-138 was to try to make records agree with the termination letter, rather than reflect the actual reason for absence.

It should be noted that there was only one "EMPLOYEE ABSENTEE RECORD" for CY2000.

I hope this letter clarifies what we discovered at HR on 2/8/01. Please let me know if you have any further questions.

Sincerely,

Stephen Wm. Martinez
Business Representative

*385*