ORIGINAL

CARLSMITH BALL LLP

ELYZE McDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendants
Continental Micronesia, Inc.
dba Continental Micronesia
and Continental Airlines, Inc.

FILED
DISTRICT COURT OF GUAM
DEC - 5 2003
MARY L. M. MORAN
CLERK OF COURT
110

IN THE DISTRICT COURT OF GUAM

TONY H. ASHTIANI,

Plaintiff,

vs.

CONTINENTAL MICRONESIA, INC. dba CONTINENTAL MICRONESIA and CONTINENTAL AIRLINES, INC.,

Defendants.

CIVIL CASE NO. CIV02-00032

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT CONTINENTAL MICRONESIA, INC.'S MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE ALL UNAUTHENTICATED EVIDENCE PROFERRED BY ASHTIANI; AFFIDAVIT OF WILLIAM HERRERA; AFFIDAVIT OF GLENN MENDOZA; SUPPLEMENTAL AFFIDAVIT OF DIXON McKINZIE**

## I. INTRODUCTION

Plaintiff Tony H. Ashtiani has not provided any genuine issues of material fact to defeat Defendant Continental Micronesia Inc.'s Motion for Summary Judgment. Instead, what is most evident from his Opposition to Continental's motion is the complete lack of any shred of admissible evidence to support any single one of his eight claims. Ashtiani throws theories and irrelevant and unauthenticated facts in his Opposition, in the hopes of discrediting Continental's evidence and in the hopes that "something can be developed at trial in the way of evidence to support [his] claim."

T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). However, such retorts are insufficient to sustain his burden to defeat Continental's Motion for Summary Judgment, and such inadmissible evidence should not be considered by the Court. In its motion and in this reply, Continental demonstrates a lack of sufficient genuine issues of material fact to proceed to trial on any of Ashtiani's claims and moves to strike all inadmissible and unauthenticated evidence proferred by Ashtiani.

## II. CONTINENTAL'S ADDITIONAL AFFIDAVITS

To supplement the factual information presented by Continental in its Motion for Summary Judgment, Continental provides attached hereto Affidavits of Glenn Mendoza and William Herrera, two of Ashtiani's supervisors during the months of June and July 2001. Continental submits these Affidavits solely as additional means of authentication of the exhibits attached to the motion, exhibits which have already been properly authenticated by Dixon McKinzie, Continental's Director of Human Resources, through his Affidavit filed on November 21, 2003. See Barthelemy v. Air Line Pilots Ass'n, 897 F.2d 999, 1018 (9th Cir. 1990) (corporate officers presumed to know certain information about their corporation). These Affidavits would have been submitted at the time of the filing of the motion, except both affiants were off-island on the date the Motion was filed. See Affidavit of Glenn Mendoza at ¶ 2; Affidavit of William Herrera at ¶ 2. Furthermore, these Affidavits do not present any new evidence, and may be properly considered by the Court. See Litton Induss., Inc. v. Lehman Bros. Kuhn Loeb, Inc., 767 F. Supp. 1220 (S.D.N.Y. 1991), rev'd on other grounds by 967 F.2d 742 (2nd. Cir. 1992).

## III. SUPPLEMENTAL FACTUAL BACKGROUND

Continental also presents additional information on how similarly situated individuals were treated no differently from Ashtiani. In particular, two individuals in Continental's maintenance department were also disciplined for two consecutive "no-shows." First, Bruce Lee, a Chinese-

American, was deemed a "no show" in May 2000 and was initially terminated. See Supplemental Affidavit of Dixon McKinzie (hereinafter "McKinzie Supp. Aff.") at ¶ 3. However, upon investigation and receiving an explanation (death in the family and qualified FMLA leave), Lee's termination was retracted. Id. Second, Edwin Antonio, a Filipino-American, was also regarded as a "no show," however, he was only issued a written warning as he had no prior disciplinary action in his file, unlike Ashtiani's extensive disciplinary history, which was more fully discussed in Continental's Motion for Summary Judgment. Id.

## IV. SUMMARY JUDGMENT: BURDENS OF PROOF

In this case, in which Ashtiani holds the burden of proof at trial, Continental may succeed on this motion for summary judgment by demonstrating an absence of evidence to support Ashtiani's case. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once this burden is satisfied, **Ashtiani cannot rest upon the mere allegations and denials in his pleadings,** but must instead set forth *specific material facts*[1] showing a genuine issue for trial. Fed. R. Civ. P. 56(e); First Nat. Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In other words, Ashtiani "must ultimately persuade the Court . . . that [he] will have sufficient admissible evidence to justify going to trial." Independent Cellular Tel., Inc. v. Daniels & Assocs., 863 F. Supp. 1109, 1114 (N.D. Cal. 1994). He must provide "significant probative evidence tending to support" his complaint. 391 U.S. at 290.

## V. CONTINENTAL'S MOTION TO STRIKE[2] ALL UNAUTHENTICATED EVIDENCE PROFERRED BY ASHTIANI

### A. REQUIREMENT OF AUTHENTICATION

In meeting their burden of proof, each party must provide admissible evidence. Fed. R. Civ.

[1] A material issue of fact affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth. S.E.C. v. Seaboard Corp., 677 F.2d 1301, 1306 (9th Cir. 1982). On the other hand, an immaterial factual dispute does not bar summary judgment. British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir. 1978).

[2] A Motion to Strike need not be a formal motion, but is proper if timely and stated as a proper objection setting forth grounds for the objection. See Lugue v. Hercules, Inc., 12 F. Supp. 2d 1351, 1358 (7th Cir. 1986).

P. 56(e). In order to be admissible, evidence must be authenticated, meaning that it be attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence. Orr v. Bank of Am., NT & SA, 285 F.3d 764, 774 (9th Cir. 2002). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and to defeat summary judgment. Thornhill Pub. Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979). Moreover, hearsay statements contained within affidavits are inadmissible. Fong v. American Airlines, Inc., 626 F.2d 759, 762-63 (9th Cir. 1980). Finally, production during the discovery phase does not authenticate a document. 285 F.3d at 773.

B. THE COURT SHOULD NOT PROVIDE ANY LENIENCY TO ASHTIANI AS A PRO SE LITIGANT

The Ninth Circuit disapproves affording pro se litigants any leniency in a civil case:

> **[*P*] *ro se* litigants in the ordinary civil case should not be treated more favorably than parties with attorneys of record.** Trial courts generally do not intervene to save litigants from their choice of counsel, even when the lawyer loses the case because he fails to file opposing papers. A litigant who chooses *himself* as legal representative should be treated no differently. . . . it is not for the trial court to inject itself into the adversary process on behalf of one class of litigant.

Jacobsen v. Filler, 790 F.2d 1362, 1364-65 (9th Cir. 1985) (footnotes omitted). In Jacobsen, during summary judgment proceedings, the pro se plaintiff failed to provide a written opposition or any supporting evidence, arguing that he was unaware of these requirements. The Ninth Circuit rejected the idea that a court inject itself into the summary judgment proceedings by affording a pro se litigant leniency in complying with the rules, especially when the Supreme Court and its Advisory Committee "already apprise litigants of their summary judgment obligations." Id. at 1366.

Accordingly, Ashtiani should not receive any special treatment or leniency by his blatant failure and/or neglect to comply with the rules pertaining to motions for summary judgment and for authentication of evidence in support of his Opposition.

## C. THE COURT SHOULD STRIKE ALL UNAUTHENTICATED EVIDENCE PROFERRED BY ASHTIANI

Continental moves to strike and strenuously objects to the Court's consideration of all unauthenticated evidence, declarations, and exhibits proferred by Ashtiani. Attached to his Opposition to Continental's Motion, Ashtiani provides Exhibits A through Y, all of which, except for those authenticated by Continental,[3] remain completely unauthenticated by any person with personal knowledge of the contents of the documents. Ashtiani also provides "Declarations" by Joe Pangelinan, Ron Roberts and Attorney Mark Williams. Close review of the first two documents reveals that the notary only notarizes certified *copies* of the Declarations held by Ashtiani as a custodian. Thus, the statements themselves were not sworn before a notary and are therefore not proper for supporting the Opposition. See Miller Studio, Inc. v. Pacific Import Co., 39 F.R.D. 62, 65 (S.D.N.Y. 1965). In addition, Williams' Declaration is completely unsworn.

Ashtiani also provides his own Affidavit in support of his Opposition, with attached Exhibits A through N. Continental strenuously objects to the Court's consideration of and moves to strike Exhibits B through E, G through K, and N. Exhibits B and C are presumably excerpts from legal newsletters and have no relevance to this case. Ashtiani has not shown how he has personal knowledge of Exhibit D, which pertains to another Continental employee.[4] Exhibit E is an undated copy of a shift log, of which Ashtiani has not demonstrated the true date of such document, and thus it cannot be used in support of the assertions stated in his Opposition and Affidavit. Exhibits G through J and N are statements made by other persons, which constitute pure hearsay. See Fed. R. Evid. 802. Ashtiani also fails to authenticate Exhibit K, of which he is not the author.

[3] Continental's Exhibits C and O have been properly authenticated and have been also attached to Ashtiani's Opposition as Exhibits A and S, respectively. Continental has no objection to the Court's consideration of these documents.

[4] Affidavits must not only be based on personal knowledge, but must also show that affiant possesses the knowledge asserted. Doza v. American Ins. Co., 314 F.2d 230 (8th Cir. 1963).

Lastly, Ashtiani submits an unsworn Declaration of Kathleen P. Sgambelluri, a review of which reveals it is not only an improper submission under Rule 56, it has absolutely no relevance to the facts of this case.

## VI. ASHTIANI HAS NOT PRESENTED ANY GENUINE ISSUES OF MATERIAL FACT TO DEFEAT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

### A. DISCRIMINATION ON THE BASIS OF RACE

#### 1. Ashtiani's Prima Facie Case

Ashtiani provides insufficient evidence to demonstrate that he was performing his job well enough to rule out the possibility that he was fired for inadequate job performance. For proof of satisfactory performance, he refers the Court to his complaint, and to unauthenticated evidence inferring he is qualified because he was given assignments when he appeared for work on June 26, he received a letter of commendation in 1997, and because a co-worker says he is a bright person. See Opp'n at 11; Ashtiani Aff. at 4. Even considering this inadmissible evidence, the undisputed fact remains that Ashtiani failed to show up for work for two consecutive days without approval, and thus was performing inadequately. In essence Ashtiani does not fulfill his prima facie case of unlawful discrimination based on race as he fails to proffer any evidence that he performed adequately with regard to his attendance. On this basis alone, the Court may grant summary judgment in favor of Continental on this count.

#### 2. Ashtiani Provides No Evidence that Continental's Legitimate, Non-discriminatory Reasons for Terminating Him Were Pretextual

Even if the Court determines Ashtiani has satisfied his prima facie case, Ashtiani must also "tender a genuine issue of material fact as to pretext in order to avoid summary judgment." Steckl v. Motorola, Inc., 703 F.2d 392, 393 (9th Cir. 1983). In order to prove pretext, Ashtiani must have provided sufficient evidence showing pretext either (1) indirectly, that Continental's reason for terminating him was false or unbelievable, or (2) directly, that the true motivation for his discharge

was a discriminatory one. See Chuang v. University of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000); Nidds v. Schindler Elevator Corp., 113 F.3d 912, 918 (9th Cir. 1996). However, Ashtiani has not demonstrated that the reasons for termination were pretextual as opposed to being legitimate, non-discriminatory reasons.

First, Ashtiani points to evidence that his supervisor, Baltazar Atalig, ordered his final paycheck on June 28, prior to his July 3 termination. Even construing this unauthenticated evidence in favor of Ashtiani, Continental had justification to terminate Ashtiani immediately after his "no shows," regardless of whether the decision to terminate him occurred on June 28 or July 3. Continental's justification is not proven false by this evidence, nor can any discriminatory motive be inferred on the face of the document.

Ashtiani also points to unauthenticated evidence that another Continental employee, Joby Okada, did not follow the same reporting procedures that he did. See Ashtiani Aff. at 3-4. However, this does not demonstrate pretext. Ashtiani has the burden of proving that Okada was similarly situated to himself. See Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 143 (2000) ("ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff"); 225 F.3d at 1127; Smith v. Stratus Computer, Inc., 40 F.3d 11, 16 (1st Cir. 1994); Mitchell v. Toledo Hosp., 964 F.2d 577, 589 (6th Cir. 1992). Ashtiani, however, provides no evidence that Okada was similarly situated with Ashtiani, whether with regard to Okada's position, whether he called his supervisors (unlike Ashtiani), and whether he obtained approval from his supervisors (also unlike Ashtiani).

Overall, Ashtiani has not produced any evidence - direct or indirect - that Continental's reasons for termination were false. Ashtiani fails to dispute the fact that he was absent for two consecutive days and did not obtain approval for his absences from a supervisor. Ashtiani only

states that he spoke with co-worker Joe Pangelinan, who in turn, informed supervisor Glenn
Mendoza of Ashtiani's absence. This does not constitute a "different version of the truth." Ashtiani
indeed does not claim, or provide any evidence, that he complied with Continental and union
procedures governing reporting an absence from work.

Second, he has not provided sufficient probative evidence to demonstrate that Continental
intentionally discriminated against *him*. He provides no evidence showing any discriminatory
motive on the part of anyone at Continental, primarily because such motive does not exist.
Whatever unauthenticated circumstantial evidence he has provided contains no inference of
discrimination on Continental's behalf.

To the contrary, any pretext is soundly defeated if Continental shows that it acted similarly
with regard to other similarly situated employees. See Snead v. Metropolitan Prop. & Cas. Ins. Co.,
237 F.3d 1080, 1094 (9th Cir. 2001). In this case, evidence shows Continental disciplined other
similarly-situated employees for consecutive "no shows." See McKinzie Supp. Aff. at ¶ 3.

In conclusion, Ashtiani fails to introduce any evidence creating a genuine issue of fact with
regard to pretext. Summary judgment is therefore proper in favor of Continental on both the prima
facie case and with regard to the non-rebuttal of Continental's legitimate, non-discriminatory
justification for the termination.

B.     CONSTRUCTIVE TERMINATION

Ashtiani provides no evidence to dispute the fact that he was terminated, and not compelled
to resign. As a matter of law, he was not constructively terminated, and summary judgment is
appropriate in favor of Continental on this count.

C.     WRONGFUL TERMINATION

Ashtiani provides no evidence that he was terminated for acting in furtherance of public
policy. Rather, Ashtiani construes his "Wrongful Termination" claim as a claim for the violation of

the duty of good faith and fair dealing, and cites Clearly v. American Airlines, 168 Cal. Rptr. 722 (1980) and Gruenberg v. Aetna Ins. Co., 9 Cal.3d 566 (1973). However, California law holds that there is no cognizable claim of the duty of good faith and fair dealing in the employment context. See Guz v. Bechtel Nat. Inc., 100 Cal. Rptr. 2d 352 (Cal. 2000) (disapproving Clearly). In addition, at least one Guam case has similarly dismissed the tort of good faith and fair dealing as not cognizable under Guam law. See Flores v. Hawaiian Rock Prods. Guam, CV812-02 (Super. Ct. Guam, Decision and Order dated Aug. 8, 2003 at 9) ("there is no local case law indicating that a plaintiff can maintain a wrongful termination claim by alleging a breach of the covenant of good faith and fair dealing"). Thus, there is no recognized tort of good faith and fair dealing even if the Court were to construe Ashtiani's claim for wrongful termination into a claim alleging breach of good faith and fair dealing. In any event, Ashtiani cannot succeed under either cause of action.

D. NEGLIGENT SUPERVISION

Ashtiani fails to rebut the argument that Guam law bars his negligent supervision claim. Instead, Ashtiani restates the allegations in his complaint. He provides no caselaw or evidence to support his claim. Such is insufficient to defeat the Motion for Summary Judgment.

E. INTENTIONAL DISCRIMINATION AND RETALIATION POST 9/11

Neither statute nor facts nor any caselaw support Ashtiani's retaliation claim, as it is based on events occurring *after* he was terminated, and therefore cannot constitute retaliation. Ashtiani provides no opposition to Continental's argument that no cause of action exists to support his claim that Continental lied to the EEOC. In any event, Continental did not engage in any "cover-up" or obstruction, contrary to Ashtiani's allegations. In particular, he claims that Continental withheld information pertaining to Mahdi Ali and Bruce Lee, former Continental employees, in response to a letter from the EEOC requesting a list of all mechanics who were "no-shows" for two consecutive days between June 1999 to June 2001. As Ashtiani's own Exhibit Q demonstrates, Continental does

inform the EEOC of Lee's termination. Continental was also under no obligation to disclose anything pertaining to Ali, who *resigned* from Continental. See McKinzie Supp. Aff. at ¶ 4.

F.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Ashtiani provides no response to Continental's argument that his claim is barred under Guam's Worker's Compensation Law. Furthermore, Ashtiani does not satisfy his burden of providing genuine issues of material fact demonstrating that Continental intentionally inflicted emotional distress. Instead, Ashtiani restates allegations in his complaint that he has suffered distress; provides an unauthenticated and *illegible* doctor's report, dated three months after his termination; and fails to demonstrate any causation between whatever emotional distress he has allegedly suffered and Continental's termination of him. In all, Ashtiani has not provided sufficient evidence to proceed to trial on this claim.

G.    VIOLATION OF THE FAMILY MEDICAL LEAVE ACT

Ashtiani did qualify for leave under FMLA because (1) his son did not suffer from a serious health condition, (2) Ashtiani did not provide a health care provider's certification required under 28 U.S.C. § 2613, (3) the untimely certification submitted after he was terminated did not fulfill the requirements under section 2613, and (4) Ashtiani did not meet the eligibility requirements under 28 U.S.C. § 2611. In response, Ashtiani's Opposition offers absolutely no evidence to the contrary. Ashtiani fails to demonstrate sufficient evidence that Continental violated the FMLA, and summary judgment is therefore appropriate in favor of Continental.

H.    SALES OF FRAUDULENT INSURANCE POLICIES

Ashtiani restates the allegations in his Complaint, and offers no authenticated or admissible evidence in support of his claim that Continental engaged in fraud with regard to AIG insurance policies offered to Continental employees. Instead, Ashtiani rehashes suspicions that that the policy was invalid. Not only are such suspicions unfounded, see Affidavit of Jeanne Wilson filed in

Support of Defendant Continental's Motion for Summary Judgment, but they are insufficient evidence to defeat Continental's motion.

## VII.  CONCLUSION

The basic undisputed and central fact pertinent to this case is that Ashtiani failed to obtain approval for his absences, and thereby violated Continental attendance policies.  Ashtiani has provided no evidence to raise any inference that discrimination motivated that decision.

For this reason and all the foregoing reasons mentioned in Continental's Motion for Summary Judgment and it this Reply, the Court should strike all of Ashtiani's unauthenticated evidence and grant summary judgment in favor of Continental on all counts.

DATED: Hagåtña, Guam, December 5, 2003.

CARLSMITH BALL LLP

ELYZE MCDONALD
DAVID LEDGER
Attorneys for Defendants
Continental Micronesia, Inc.
dba Continental Micronesia
and Continental Airlines, Inc.

CARLSMITH BALL LLP

ELYZE MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendant
Continental Micronesia Inc. dba
Continental Micronesia and
Continental Airlines, Inc.

IN THE DISTRICT COURT OF GUAM

TONY H. ASHTIANI,

Plaintiff,

vs.

CONTINENTAL MICRONESIA, INC. dba CONTINENTAL MICRONESIA and CONTINENTAL AIRLINES, INC.,

Defendant.

CIVIL CASE NO. CV02-00032

**AFFIDAVIT OF WILLIAM HERRERA**

GUAM, U.S.A. )
) ss:
Municipality of Hagåtña )

I, WILLIAM HERRERA, being first duly sworn, depose and say:

1. All the statements made in this Affidavit are based on my personal knowledge, and all exhibits referred to herein are business records that I have authored and that Continental keeps in its ordinary course of business.

2. I was off-island on November 21, 2003.

3. I was one of Tony H. Ashtiani's supervisors in June and July 2001.

4. I approved and granted Ashtiani "sick" time off on June 3 through June 5, 2001, and "personal business" time off on June 7, 9, 11 and 12, 2001. Attached hereto as Exhibits H and I are true and correct copies of Absence from Duty Reports exhibiting such approval for the days mentioned above.

5. Ashtiani, however, failed to show up for work or to secure approval for his absences on June 17-19, 2001. Attached hereto as Exhibit K are true and correct copies of emails authored by myself regarding these no-shows.

6. On June 19, 2001, Ashtiani expressed interest in taking a formal leave of absence from Continental. As I did not have the authority to grant such leave, I directed Ashtiani to contact the Human Resources department. In no way did I tell him not to come in until June 25, 2001, but rather expected that he show up for work unless he had secured approval from a supervisor. Attached hereto as Exhibit M is a true and correct copy of a Memo pertaining to the June 19 conversation.

7. I emailed Ashtiani on June 27, 2001 regarding a meeting on July 2, 2001, to which I received no response. Attached hereto as Exhibit O is a true and correct copy of that email.

8. Ashtiani refused to accept FMLA forms until June 26, 2001. Attached hereto as Exhibit Q are true and correct copies of business correspondence reflecting such initial refusal and subsequent acceptance of the FMLA forms.

9. Attached hereto as Exhibit L is a true and correct copy of notes taken by me regarding the events surrounding Ashtiani's attendance at Continental in June and July 2001.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Further the Affiant sayeth naught.

Executed this 5TH day of December, 2003 at Tamuning, Guam.

WILLIAM HERRERA

SUBSCRIBED AND SWORN to before me, this 5th day of December 2003,

by William Herrera.



NOTARY PUBLIC

EUNICE J. MENDIOLA
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: April 8, 2006
257 Assumption Drive Piti, Guam 96915

FORM: P-138CM
FILE#: 00-0703-3-1415
REV: 02/95

# Continental Micronesia

**Employee Number:** 05963

# ABSENCE FROM DUTY REPORT

**Date Prepared:** 6/11/01

1. SICK LEAVE: Immediately upon return to work or at the end of each pay period whichever first occurs.
2. OCCUPATIONAL INJURY LEAVE: Immediately when injury necessitates absence from duty.
3. **VACATION: Prior to the start of the vacation period; OR when a paycheck is desired before the start of the vacation period, this form must be received in Payroll FOURTEEN (14) CALENDAR days prior to the date the check is desired.**
4. OTHER: Immediately upon return to work or at the end of each pay period whichever first occurs.

**Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee**

**(Attach Doctor's Certificate When Requesting)**

I, Tony Ashtiani (PRINT NAME), employed at GUMMX (WORK LOCATION) and ________ (COST CENTER)

Employee Number 05963, hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE 6/3 – 6/8 – 2001 TOTAL HOURS ~~30~~ 26.45

BRIEF DESCRIPTION, NATURE OF ABSENCE Son Sick

Signature of Employee For Tony ACKNOWLEDGED [signature] (SUPERVISOR) 6/11/01 (DATE)

**CIRCLE REGULAR DAYS OFF:** S M T W T F S

OCCUPATIONAL INJURY LEAVE

**(Attach Doctor's Certificate When Requesting)**

I, ________ (PRINT NAME), employed at ________ (WORK LOCATION) and ________ (COST CENTER)

Employee Number ________, hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE ________ TOTAL HOURS ________

Signature of Employee ________ ACKNOWLEDGED ________ (SUPERVISOR) (DATE)

**CIRCLE REGULAR DAYS OFF:** S M T W T F S

VACATION

I, ________ (PRINT NAME), employed at ________ (WORK LOCATION) and ________ (COST CENTER)

Employee Number ________, hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicated below.

**000257**

VACATION (HOURS) ________

DEFERRED HOLIDAYS (HOURS) ________

DATES OF VACATION (FROM) ________ (TO) ________ TOTAL HOURS ________

MY PAYCHECK TO BE ISSUED ON ________ (DATE) is herewith requested for ________ (DATE)

Signature of Employee ________ ACKNOWLEDGED ________ (SUPERVISOR) (DATE)

**CIRCLE REGULAR DAYS OFF:** S M T W T F S

OTHER

**(Personal Business, Authorized Leave, Jury Service, etc.)**

I, Tony Ashtiani (PRINT NAME), employed at GUMMX (WORK LOCATION) and ________ (COST CENTER)

Employee Number ________, hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicted below.

DATE OF ABSENCE 6/11 – 6/12 2001 TOTAL HOURS 20

REASON FOR ABSENCE PB

If because of death in the immediate family, what relation to the employee? ________

Signature of Employee For Tony ACKNOWLEDGED [signature] (SUPERVISOR) 6/11/01 (DATE)

**CIRCLE REGULAR DAYS OFF:** S M T W T F S

**Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Empl**

**EXHIBIT H**

IM: P-138CM
:#: 00-0703-3-1415
': 02/95

# Continental Micronesia

Employee Number: 05963

## ABSENCE FROM DUTY REPORT

Date Prepared: 6/11/01

1. SICK LEAVE: Immediately upon return to work or at the end of each pay period whichever first occurs.
2. OCCUPATIONAL INJURY LEAVE: Immediately when injury necessitates absence from duty.
3. **VACATION: Prior to the start of the vacation period; OR when a paycheck is desired before the start of the vacation period, this form must be received in Payroll FOURTEEN (14) CALENDAR days prior to the date the check is desired.**
4. OTHER: Immediately upon return to work or at the end of each pay period whichever first occurs.

**Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee**

**(Attach Doctor's Certificate When Requesting)**

I, Tony Ashtiani (PRINT NAME), employed at GUMMY (WORK LOCATION) and ____ (COST CENTER)

Employee Number 05963, hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE Sick 6/9 - 6/10 2001 TOTAL HOURS 20

BRIEF DESCRIPTION, NATURE OF ABSENCE Sick

Signature of Employee For Tony ACKNOWLEDGED [signature] (SUPERVISOR) 6/11/01 (DATE)

**CIRCLE REGULAR DAYS OFF: S M T W T F S**

**INJURY LEAVE**

**(Attach Doctor's Certificate When Requesting)**

I, ____ (PRINT NAME), employed at ____ (WORK LOCATION) and ____ (COST CENTER)

Employee Number ____, hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE ____ TOTAL HOURS ____

Signature of Employee ____ ACKNOWLEDGED ____ (SUPERVISOR) (DATE)

**CIRCLE REGULAR DAYS OFF: S M T W T F S**

I, ____ (PRINT NAME), employed at ____ (WORK LOCATION) and ____ (COST CENTER)

Employee Number ____, hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicated below.

**VACATION (HOURS)** ____

**DEFERRED HOLIDAYS (HOURS)** ____

DATES OF VACATION (FROM) ____ (TO) ____ TOTAL HOURS ____

MY PAYCHECK TO BE ISSUED ON ____ (DATE) is herewith requested for ____ (DATE)

Signature of Employee ____ ACKNOWLEDGED ____ (SUPERVISOR) (DATE)

**CIRCLE REGULAR DAYS OFF: S M T W T F S**

**(Personal Business, Authorized Leave, Jury Service, etc.)**

I, ____ (PRINT NAME), employed at ____ (WORK LOCATION) and ____ (COST CENTER)

Employee Number ____, hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicted below.

DATE OF ABSENCE ____ TOTAL HOURS ____

REASON FOR ABSENCE ____

**000256**

If because of death in the immediate family, what relation to the employee? ____

Signature of Employee ____ ACKNOWLEDGED ____ (SUPERVISOR) (DATE)

**CIRCLE REGULAR DAYS OFF: S M T W T F S**

EXHIBIT I

**Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Empl**

**Cruz, Adrienne**

**From:** Herrera, William A
**Sent:** Monday, June 18, 2001 9:32 PM
**To:** Cruz, Adrienne
**Cc:** Babauta, Benjamin C; Tydingco, Bertha S; Mendoza, Glenn R; Baltazar Atalig
**Subject:** Tony Ashtiani

*Adrienne,*
*I just wanted something in writing concerning Tony Ashtiani and his current status of 2 days No-Call/No-Show. I e-mailed him earlier today and left numerous messages on his answering machine. I had Mike Pablo call him again at 2100 and he too left a message to call us and talk to a Supervisor. Crew scheduling shows that his wife is off for the rest of the month-I was checking to see if I can talk to her to get better information as to his disposition. I am writing this to you to serve as a memo for record to ensure I have tried to cover all the bases as far as trying to get a hold of Tony. Let me know if you have any other ideas anything short of going to his house to ensure he okay.*
*Bill*

*William A. Herrera*
*CMI Maintenance Supervisor*
*(671 )632-8910/8912*
*wherrera@csair.com*

**000020**

**EXHIBIT K**

  
 

**Subject:** CONTACT WORK
**Date:** Mon, 18 Jun 2001 17:29:56 +1000
**From:** "Herrera, William A" <wherrera@csair.com>
**To:** "'ashtiani@ite.net'" <ashtiani@ite.net>
**CC:** "Cruz, Adrienne" <acruz@csair.com>, Baltazar Atalig <batalig@csair.com>, Benjamin Babauta <bbabauta@csair.com>, Bertha Tydingco <btydingco@csair.com>, Frank Perez <fperez@csair.com>, Glenn Mendoza <gmendoza@csair.com>, James Lujan <jlujan2@csair.com>, William Herrera <wherrera@csair.com>

Tony,
It is imperative that you call work and talk to a supervisor. Glenn tried to contact you yesterday and I have been trying to reach you for several hours today. I need to know you are alright due to the fact that you have been a no call-no show for the last two days and the contact numbers you have provided have gone unanswered. Again, please call the maintenance department ASAP.
Bill

William A. Herrera
CMI Maintenance Supervisor
(671 )632-8910/8912
wherrera@csair.com

000021

| | |
|---|---|
| **From:** | Herrera, William A |
| **Sent:** | Tuesday, June 19, 2001 14:47 |
| **To:** | Herrera, William A |
| **Subject:** | MEMO FOR RECORD |

*Tony called me at 1107 today, he indicated that he is considering a Leave of Absence request. I wished him good luck in that endeavor, however I need to see him on Monday, June 25, 2001 to settle or clarify the 081 incident involving the delaminated/separated wing root panel.*

*William A. Herrera*
*CMI Maintenance Supervisor*
*(671)632-8910/8912*
*wherrera@csair.com*

[signature] 1/24/02

Robbie,
Remember - I do administative on weekdays, to get things.

001050

3

EXHIBIT M

**From:** Herrera, William A
**Sent:** Wednesday, June 27, 2001 19:06
**To:** Herrera, William A; 'ashtiani@ite.net'
**Cc:** Cruz, Adrienne; Crisostomo, Robbi; Sage, Teresa; Atalig, Baltazar; Babauta, Benjamin C; Tydingco, Bertha S; Mendoza, Glenn R
**Subject:** RE: Meeting

*Tony,*

*I have scheduled a meeting at HR on Monday July 2, 2001 at 1600 (4 p.m.) please respond acknowledging this. You need to be there at the scheduled time and you may have a union representative present as well.*

*If you have any questions feel free to address them to myself or the supervisor on duty.*

*William A. Herrera*
*CMI Maintenance Supervisor*
*(671 )632-8910/8912*
*wherrera@csair.com*

[signature] 11/24/02

001023

Original Exhibit I

**EXHIBIT O**

# fmla-refusal

**Date:** 6/11/2001

**From:** William A. Herrera

**RE:** TONY ASHTIANI

---

This will serve as a memo for record concerning Tony Ashtiani's refusal of FMLA. Tony had called in sick for the last 4-½ days to care for his son-who is ill. I spoke to him this morning at 1115 hours and he told me his situation and requested PBs for the rest of the week. I informed him of the FMLA program, but he declined and stayed with the PB request. I acknowledge the PB for the remaining week, but charged sick for the days claimed earlier.

[signature] 1/24/02

**From:** Herrera, William A
**Sent:** Tuesday, June 26, 2001 21:22
**To:** Atalig, Baltazar
**Cc:** Crisostomo, Robbi; Benjamin Babauta; Bertha Tydingco; Glenn Mendoza; William Herrera
**Subject:** FMLA-Tony Ashtiani

*Attention all concern,*

*Tony Ashtiani has received and accepted FMLA paperwork for his absence for the month of June 2001. I will forward the original paperwork to Adrienne for disposition.*

*William A. Herrera*
*CMI Maintenance Supervisor*
*(671 )632-8910/8912*
*wherrera@csair.com*

1/24/02

**001053**

5

To: Tony Ashtiani

June 26, 2001

From: William A. Herrera

Subject: Attendance

We are currently investigating your attendance for the period June 3 through June 19, 2001. Because of the possibility that FMLA may apply, we are including FMLA forms to have completed by your physician. In keeping with our policy for FMLA, these forms must be returned within 15 days of receipt in order for FMLA to apply.

William A. Herrera

TONY HAS TAKEN THE FMLA FORMS AS OF 1900 THIS DATE.

TONY ASHTIANI

Pete Aguilo

Mike Pablo
IBT SHOP STEWARD

000017

**June 11, 2001:**
My second day back from days off. I talked to Tony around 1105 and he requested 2 days of Personal Business (P.B.). to take care of his son who was sick, due to his wife having flights with layovers this month. I offered him FMLA-he declined stating that he did not want the company paying him sick leave to take care of his child. I authorized the two days P.B.
**Ref: 1**

**June 18, 2001:**
First day back from days off, Glenn mentions that Tony has not shown up for work the last couple of days. I tried calling his home and cell throughout the afternoon, but was not successful. I sent e-mail in the evening (1730) stating that he has been considered no show and advised him to call the maintenance department ASAP to find out what was going on.
I made several phone calls to his cell and home numbers, but was unsuccessful. I asked Mike Pablo the shift union steward to try and get a hold of him at 2100. He was not able to talk to him either. I went to crew scheduling to see if they had another number available for Cathy (Tony's spouse) so I can use it to get a hold of Tony-the same numbers I had been using was given.
I sent e-mail to Adrienne at 2130 to let her know what I did earlier today.
**Ref: 2, 2a**

**June 19, 2001:**
Tony called me at 1105 to let me know he was interested in taking a Leave of Absence because he has been doing the aircraft maintenance thing for a long time and was burned out and needed a break. He wanted to submit paperwork to me to forward to our Maintenance Manager and I explained that he needed to contact the Human Resources department to submit his request, as that was the procedure to my understanding. He explained that he was going to do that on Monday.
I wished him luck in that, and reminded him of our meeting on Monday, June 25th to discuss my investigation on the incident of aircraft 081. He acknowledges and we hang up.
**Ref: 3, 3a**

**June 24, 2001:**
First day back from days off. Turnover from Glenn that Tony did not show up for work this week. I called Tony, after he didn't show up for my shift. I got a hold of him and asked him why he was not at work. He said he misunderstood what I told him on the 18th concerning the meeting I had set up for the June 25th. He said that he thought he was off until the meeting with Robbi at HR concerning his LOA request. I explained that I had nothing to do with the request and I did not tell him not to come in until Monday. I told him that he must come in tomorrow Monday, June 25, 2001.
**Ref: 4**

**June 25, 2001:**
Tony shows up for work, but the workload prevents me from meeting with him.

000987

EXHIBIT L

**June 26, 2001:**
I had a meeting with Tony, Mike Pablo and Pru Aguilo to find out about the Jun 23rd/Jun 24th absences. Tony explains that he thought he had secure the time off. I asked him who authorized it after realizing that this version was different than my conversation with him on the 24th. He stated the Glenn Mendoza had and wanted to know what the big deal was, he was just trying to take care of his son. I asked him about his LOA request and he stated that he read a section in the "Working Together" guidelines that showed the company did not have to offer him his job back if his position was already filled-shows me page 44.
I offered him FMLA again and he accepted this time.
I informed him that I was suspending him until I concluded my investigation. I took possession of his company I.D; AOA badge and Kronos card. I advised him that I should be able to contact him by Monday because I would be on days off, but if he did not hear from me by 1600 Tuesday July 3, 2001 to contact me.
**Ref: 5, 5a**

**June 27, 2001:**
Sent email message to advise Tony that I set up a meeting at HR on July 2, 2001 at 1600 after I completed my investigation. Did not get a confirmation from Tony via e-mail or telephone.
**Ref: 6**

**July 2, 2001:**
I requested the Adrienne get a hold of Tony to ensure he knows to show up for the 1600 meeting. Adrienne could not get a hold of him after several attempts.

**Ref: 7**

**July 3, 2001:**
Received fax regarding "limited" contact with me is not advised and after consulting with HR department. I signed the termination letter for Tony and requested that Adrienne send it out certified mail per the IBT agreement.
**Ref: 8**

***Reference:**
1=FMLA REFUSAL-6/11/01
2=TONY CONTACT WORK-6/18/01
2A=E-MAIL TO ADRIENNE 6/18/01
3=TONY CALLED-6/19/01
3A=LOA REQUEST FAX 6/22/01
4=MENDOZA TURNOVER 6/23/01
5=FMLA ACCEPTANCE 6/26/01
5A=SUSPENSION ADVISEMENT 6/26/01
6=EMAIL ON JUL 2 MEETING AT HR
7=ADRIENNE'S CONTACT EFFORTS 7/2/01
8=LIMITED CONTACT FAX
9=TERMINATION LETTER

[signature] 1/24/02

000988

CARLSMITH BALL LLP

ELYZE MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendant
Continental Micronesia Inc. dba
Continental Micronesia and
Continental Airlines, Inc.

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| TONY H. ASHTIANI,<br><br>Plaintiff,<br><br>vs.<br><br>CONTINENTAL MICRONESIA, INC. dba CONTINENTAL MICRONESIA and CONTINENTAL AIRLINES, INC.,<br><br>Defendant. | CIVIL CASE NO. CV02-00032<br><br>**AFFIDAVIT OF GLENN MENDOZA** |

GUAM, U.S.A. )
) ss:
Municipality of Hagåtña )

I, GLENN MENDOZA, being first duly sworn, depose and say:

1. All the statements made in this Affidavit are based on my personal knowledge, and all exhibits referred to herein are business records that I have authored and that Continental keeps in its ordinary course of business.

2. I was off-island on November 21, 2003.

3. I was one of Tony H. Ashtiani's supervisors in June and July 2001.

4. Attached hereto as Exhibit D-5 is a true and correct copy of a disciplinary report which I authored pertaining to Ashtiani.

5. Attached hereto as Exhibit J is a true and correct copy of an email written by myself to William Herrera on June 17, 2001, stating that Ashtiani failed to show up for work or to call in and obtain an approved absence on that day.

6. Ashtiani did not request directly from me, nor did I ever grant, approval for his absences on June 23 and 24, 2001. Attached hereto as Exhibit N is a true and correct copy of notes drafted by me and kept in the ordinary course of business detailing Ashtiani's absences during the month of June 2001.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Further the Affiant sayeth naught.

Executed this 5th day of December, 2003 at Tamuning, Guam.

GLENN MENDOZA

SUBSCRIBED AND SWORN to before me, this 5th day of December 2003, by Glenn Mendoza.

NOTARY PUBLIC

EUNICE J. MENDIOLA
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: April 8, 2006
257 Assumption Drive Piti, Guam 96915



TO: HAMID ASHTIANI
FR: GLENN MENDOZA
SUBJ: ATTENDANCE
DATE: 14NOV99

ON NOV 20, 1999, YOU WERE SCHEDULED TO WORK SWINGSHIFT. YOU WERE REGARDED A "NO SHOW" FOR FAILURE TO SHOW FOR WORK AND NO NOTICE GIVEN TO A SUPERVISOR. DUE TO THE SERIOUS NATURE OF THIS INCIDENT AND YOUR PASS ATTENDANCE RECORD, I WILL PLACE YOU AT THIRD INCIDENT LEVEL WHICH REQUIRES ME TO COUNSEL YOU AND PLACE THIS DOCUMENT IN YOUR PERSONAL FILE. TONY, YOUR "NO SHOW" CREATED A HARDSHIP TO THE OPERATION AND YOUR FELLOW EMPLOYEE, PLEASE REMEMBER THE STATUS YOU HOLD IN REGARDS TO SENIORITY. THE EXAMPLE YOU SET AFFECTS A GREAT NUMBER OF OUR AIRCRAFT TECHNICIANS. IF YOU HAVE ANY QUESTIONS REGARDING THIS LETTER, PLEASE ASK.

GLENN MENDOZA
LINE MX SUPV.

338

EXHIBIT D-5

**Crisosstomo, Robbi**

**From:** Herrera, William A
**Sent:** Monday, July 02, 2001 2:17 PM
**To:** Crisostomo, Robbi
**Subject:** FW:

-----Original Message-----
**From:** Mendoza, Glenn R
**Sent:** Sunday, June 17, 2001 15:15
**To:** Herrera, William A
**Subject:**

Per Glenn, [illegible]

BILL, TONY A. CALLED FOR AN EXTRA PB ON SAT 16JUN, I APPROVED IT. ON SUNDAY 17JUN I DID NOT GET ANY CALLS FROM HIM, HE WAS DUE TO WORK, SO FAR IT'S A NO CALL/ NO SHOW UNLESS YOU SOMETHING I DON'T KNOW. FROM WHAT I CAN SEE HE WAS SICK 3,4,5,9, AND 10JUN. ON 11 AND 12 JUN HE GOT PB. HIS WIFE CALLED ON 16JUN 1300 HRS TO ASK FOR AN EXTENSION ON HIS PB, I GRANTED IT. NOW 17 JUN NO CALL/NO SHOW. I WILL BE FLYING TO OKJ MONDAY 18JUN SEE ME IF YOU HAVE ANY QUESTIONS. GLENN

000925

**EXHIBIT J**

January 24, 2002

On 9 Jun 2001, when Tony Ashtiani's wife called work to tell us that he will not be into work, this was when I told her to have Tony call a supv asap. I told her we needed to know what was happening so we could offer FMLA or emergency leave. She said she will pass the message to Tony.

On 16 June 2001, at approx. 1320 hrs I was told by Joe P. that Tony's wife had called requesting a PB extension and that he told her it would not be a problem. I informed Joe he did not have the authorization to grant any time off and he should have told her to have Tony call me himself. Being Joe was my acting leadman and he had told Tony's wife it would not be a problem I granted the 16th of June PB off for Tony.

On 23 June 2001, at approx. 1340 hrs while I was conducting shift briefing Joe P. told me to check Bill's mailbox for a fax Tony had sent. He told me it might be the reason Tony's not in to work today. After the briefing I took the fax out of Bill's mailbox and read it. I did not know what it meant, so I assumed because it was addressed to Bill he had it under control. At approx 1650 hrs I sent an e-mail to Bill questioning the whereabouts of Tony. I was curious because of the fax he had sent concerning the LOA he was going to ask for. At approx 1745 hrs I get a phone call in my office from Tony himself. I asked him where's he's been and why didn't he come into work today. He asked me did I read his fax to Bill and I answered yes. He than told me he was to meet with Bill on Monday for the LOA. He gave me the impression Bill had given him time off until Monday. He thanked me for my help and hoped the guys enjoyed the food he offered to them.

On 24 June 2001, Bill called me at home to ask me did I give Tony Sunday 24 Jun off. I told him "no" but Tony gave me the impression Bill gave him 23rd Sat off on my shift. Bill told me he did not give Tony 23rd and 24th off and that he will call him to get to the bottom of this.

Glenn Mendoza — Date: 24 JAN 02

000973

**EXHIBIT N**

CARLSMITH BALL LLP

ELYZE MCDONALD
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendant
Continental Micronesia Inc. dba
Continental Micronesia and
Continental Airlines, Inc.

IN THE DISTRICT COURT OF GUAM

TONY H. ASHTIANI,

Plaintiff,

vs.

CONTINENTAL MICRONESIA, INC. dba CONTINENTAL MICRONESIA and CONTINENTAL AIRLINES, INC.,

Defendant.

CIVIL CASE NO. CV02-00032

**SUPPLEMENTAL AFFIDAVIT OF DIXON MCKINZIE**

GUAM, U.S.A. )
) ss:
Municipality of Hagåtña )

I, DIXON MCKINZIE, being first duly sworn, depose and say:

1. All the statements made in this Supplemental Affidavit are based on my personal knowledge.

2. I am currently the Director of Human Resources at Continental Micronesia, Inc. and acted in that capacity at all times relevant to Ashtiani's Second Amended Complaint.

3. At least two other individuals in Continental's maintenance department have been disciplined for two consecutive "no-shows." First, Bruce Lee, a Chinese-American, was deemed a "no show" in May 2000 and was initially terminated. However, upon investigation and receiving an explanation (death in the family and qualified FMLA leave), Lee's termination was retracted. Second, Edwin Antonio, a Filipino-American, was also regarded as a "no show," however, was only issued a written warning as he had no prior disciplinary action in his file, unlike Ashtiani's extensive disciplinary history.

4. Mahdi Ali was formerly employed at Continental, and resigned in January 2000. He was not terminated.

I declare under penalty of perjury that the foregoing is true and accurate to the best of my knowledge.

Further the Affiant sayeth naught.

Executed this 5th day of December, 2003 at Tamuning, Guam.

DIXON MCKINZIE

SUBSCRIBED AND SWORN to before me, this 5th day of December 2003, by Dixon McKinzie.

NOTARY PUBLIC

EUNICE J. MENDIOLA
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: April 8, 2006
257 Assumption Drive Piti, Guam 96915