Tony H. Ashtiani
P.O.Box 12723
Tamuning Guam 96931
671-688-4844
671-653-5575

FILED
DISTRICT COURT OF GUAM
DEC 05 2003
MARY L. M. MORAN
CLERK OF COURT

# UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| | |
|---|---|
| **Tony H. Ashtiani,**<br>Plaintiff,<br>Vs.<br>**Continental Micronesia Inc,**<br>**Dba, Continental Micronesia,**<br>**Continental Airlines,**<br>Defendant | Civil Case No.: **02-00032**<br>**REPLY TO DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT. AFFIDAVIT OF TONY H. ASHTIANI & DECLARATION OF TONY H.ASHTIANI. CERTIFICATE OF SERVICE.**<br>**(Fed R. CIV. P. 56)** |

Plaintiff Tony H. Ashtiani pro se litigant files this reply in respond to defendants' opposition to plaintiff's motion for partial summary judgment. Undersigned respectfully moves the Court for an Order, pursuant to Fed R. Civ P. 56 for Partial Summary Judgment against defendant Continental Micronesia Inc., and its' parent company Continental Airlines. Plaintiff humbly prays that this Court render a judgment for the plaintiff for liability set forth in plaintiff's [Second Amended] complaint filed on May 15 ,2003.

ORIGINAL

In support of his reply to defendants' opposition presenting Defendants' produced documents, exhibits, other documents, and accompanying memorandum of law all filed contemporaneously herewith demonstrate that with respect to the issue there is no genuine issue of material fact and plaintiff is entitled to judgment as matter of law.

## STANDARD FOR GRANTING SUMMARY JUDGMENT.

1) Pursuant to FRCP 56, It is well settled that if there are no material questions of fact existing in a legal matter, the court may make a determination of the issues and enter judgment in favor of the moving party. *Celotex corp. V. Catrett,* 477 U.S. 317, 106 S. Ct. 2548 (1986);

> A party seeking summary judgment **always bears the initial responsibility** of informing the court of the basis for its motion, and **identifying** those portions of the pleadings, depositions, **answers to interrogatories**, and admissions on file, together with the affidavits, **if any**, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex corp. V. Catrett,* 477 U.S. 317, 106 S. Ct. 2548 (1986);
>
> The burden on the moving party may be discharged by showing, that is, **pointing out to the court**, that there is an absence of evidence to support the nonmoving party's case.

2) Plaintiff pointing out to the Court that Defendant in its motion served that court respond to request for production document which is absence in Rule 56. Federal Rule of Civil Procedure **Rule 56** states; ("pleadings, depositions, **answer to interrogatories**, and admissions on file," can.. in a affidavit **shall be attached thereto or served therewith**.") plaintiff submitted answer to interrogatories attached to affidavit to the respected Court as stated in rule 56.

3) Defendant in its opposition complaints that plaintiff failed to provide adequate exhibits to the affidavits. Ashtiani has provided exhibits to affidavits in his motion and his opposition, further more plaintiff will also submit affidavit with exhibits attached in his reply. Even then, if defendant allegations were true. Fed Rules of Civil Procedure **Rule 56**. ("Motion for summary judgment may be made pursuant to Fed. R. Civ. P. 56 **with or without** supporting affidavits".)

> But unlike the Court of Appeals **we find no express or implied requirement in Rule 56 that the moving party support its motion with affidavits** or other similar materials *negating* the opponent's claim. On the contrary, Rule 56(c), which refers to **"the affidavits, *if any*"** (emphasis added), suggests the absence of such a requirement. And if there were any doubt about the meaning of Rule 56(c) in this regard, such doubt is clearly removed by Rules 56(a) and (b), which provide that claimants and defendants, respectively, may move for summary judgment ***"with or without supporting affidavits"*** (emphasis added). The import of these subsections is that, regardless of whether the moving party accompanies its summary judgment motion with affidavits**, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied.** *Celotex Corp. v. Catrett, 477 U.S. 317*

4) Above case was also cited in defendants' motion. Thus, plaintiff in his pleading was concentrating to provide a good explanation to the fact finder of the respected district Court. Defendant states mot at 6. "production during the discovery phase does not authenticate a document". If defendant is using plaintiff's documents through rule 34. then it is well established that plaintiff can also use the produced documents by the defendant under the rule 34. Accordingly:

> **Defendant Mr. McKinzie under the advise of Continental legal team and attorneys of record in the ordinary civil case should not be treated more favorably than parties that are not under the advise of counsel as *pro se* litigants.**

5) Further more, defendant argues that the courts should not inject itself into the summary judgment proceedings.

> ***Moore*** supported its ruling with another nonprisoner case from the Fifth Circuit requiring the district court to afford a *pro se* civil rights litigant a **meaningful opportunity to remedy defects in summary judgment materials.** (citing *Barker v. Norman*, 651 F.2d 1107, 1129 (5th Cir. 1981
>
> Moreover, we read the pleadings of a pro se plaintiff liberally and **interpret** them "to raise the **strongest arguments that they suggest.**" Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994).

6) Defendant here, violated plaintiff's rights to procedural due process and movant (defendant) has failed the duty to Provide Pro Se litigant notice of motion.

> Absent a clear indication that the **pro se** litigant understands the nature and consequences of Fed. R. Civ. P. 56, **he** or she **must be** so **informed by the movant** in the notice of motion McPherson v. Coombe 174 F. 3d 276.

7) The CMI Attendance policy in reference to no show. states "without notification". **EXHIBIT A.**

8) CMI and IBT states Two (2) consecutive days "without notifying" the company of the reason for his absence. **EXHIBIT B.**

9) I received a letter on July 12, 2001 via certified mail containing defendant's CMI letter dated July 03, 2001. stating two defenses as specific reasons for cause of termination. **EXHIBIT C.**

**A. No call/ No show On Jun 23, 24 2001.**

10) Mr. Joe Pangelinans' Declaration **EXHIBIT D.**

11) Mr. Joe Pangelinans' Declaration **Exhibit E.**

12) Mr. Joe pangelinan states that "I had informed Mr.Mendoza that duty supv. On duty that Tony Ashtiani would not be in on Jun 23, 24 2001 at approx 1300, shift starts at 1330".

13) Mr. Mendoza On June 23, 2001 at 16:38 (Approx 3 and ½ Hours after he was informed by Mr. Pangelinan. sends a e-mail "TONY DID NOT SHOW UP FOR ANY OF HIS DAYS". **EXHIBIT F.**

14) Mr. Ron Roberts declaration 'I was told by one supervisor Bill Herrera " if Glenn would of told me Tony called in all this would not be happening."' **EXHIBIT G.**

**B. Refusal to meet to discuss the situation on Monday July 02, 2001.**

15) Plaintiff was informed to attend a meeting at 1600 on July 02, 2001.

16) Declaration of Mark Williams .**EXHIBIT H.** (please note that this happened at 10:30 a.m.)

17) Accordingly, Ashtiani requested information and ubmitted a letter to human resources on July 02, 2001 at 11:05 a.m. Defendants' production of document (000928) **EXHIBIT I.**

18) It was not until 11 minutes after the meeting at 16:11 that Ms. Teresa Sage response to my letter and states " I Have received your letter". She states "you need to contact Zar as soon as possible". Defendants Production of Document (000929) **EXHIBIT J.**

19) Plaintiff respectfully directs the attention of the Court that, this meeting was nothing but a "staged theatre" as Mr. Zar Atalig On June 28, 2001 (3 days prior to the meeting) had requested plaintiff's final pay check Defendants' production of documents (000225) **EXHIBIT K.**

20) This document (000225) critical pivoting point under FRCP rule (56), Genuine issue of facts, upsetting indeed, indicates ill will, malice, and recklessness with no regards to plaintiffs' rights to adequate fair hearing to clear his name.

21) Defendant has violated plaintiff's right protected by **42 U.S.C. SEC 2000e-2 (703)(2)(D).** Consequently, plaintiff prays for partial summary judgment.

**UNLAWFUL EMPLOYMENT PRACTICES.**

**42 U.S.C. SEC 2000e-2 (703)(2)(D)**

> Nothing in this Subsection shall be construed to authorize or permit the denial to any person of the due process of law requires by the constitution. **EXHIBIT L**
>
> The Supreme Court's statement in Aikens and Burdine is clear: **a plaintiff can prevail either by proving that discrimination more likely motivated the decision or that the employer's articulated reason is unworthy of belief.** See, e.g., *Bruno v. W.B. Saunders Co.*, 882 F.2d 760, 766, 51 EPD Par. 39,244 (3d Cir. 1989) **(simply disproving defendant's reason is enough),** *CBS, Inc. v. Bruno*, 493 U.S. 1062 (1990); MacDissi v. Valmont Industries, 856 F.2d 1054, 1059, 47 EPD Par. 38,261 (8th Cir. 1988) plaintiff need not also prove intentional discrimination; such an approach **"unjustifiably multiplies the plaintiff's burden").**

**C. Defendant allegation of sick calls required supervisor approval**

22) Even if sick calls required supervisor approval: Plaintiff also prepared for this defense of defendants as Plaintiff requested from his Co-worker to bring out similar situation sick calls from the same classification as plaintiff of different race and nationality in comparative worth capacity.

23) On April 03, 2002 Tony. R. Calls Roger. (non Supv).

24) On April 14 2002 Junior. M. Calls Victor. (non Supv).

25). On April 27, 2002 Marlon R. Calls Fabian. (non Supv).

**JOINT EXHIBITS M.**

26) These above employees did call non-supervisors and did not receive any authorization from supervisor prior to their

absences of not coming to work, and Ashtiani among all the employees of CMI needs authorization from supervisor for his absences.

**CONTSTRUCTIVE TERMINATION**

**SIXTH CAUSE OF ACTION**

27) Plaintiff had called work on Jun 23rd of 2001, prior to the shift start. Defendants' maintenance supervisor acting in official capacity of the defendant withheld and concealed the information and regarded the plaintiff as two consecutive days no-call/no-show.

> A **constructive discharge** occurs when the employer has given the employee the option to remain employed by the company but has placed such intolerable, difficult, or unpleasant conditions on the employee's continued employment that a reasonable person in the employee's circumstances would resign rather than remain employed. *Rulon-miller v international business machines Corp.(1984)162 Cal. APP. 3d 241,208 Cal.Rprt.254*

28) In addition, supervisor assigned the plaintiff to work by him self to lift heavy object into the cargo bay, is also unsafe to push back aircraft assign only to one mechanic. This is indication of constructive discharge forcing plaintiff to resign two months prior to DC-10 exiting the fleet. **EXHIBIT N**

**WRONGFUL TERMINATION**

**SEVENTH CAUSE OF ACTION**

29) Plaintiff asserts that wrongful termination occurred due to the fact supervisors in coordinated effort withheld information from each other or they knew and did not tell the truth acted in ill will, false motive, malice and willful misconduct.

LENGTH OF SERVICE

> In which the fact that an airline employee had worked for the airline for **18 years** was a factor to which **the court pointed in**

**holding that**, under the circumstances of the case, the covenant of good faith and fair dealing required the airline to have good cause to terminate the employee. *Clearly v. American Airlines* (1980) 111 Cal App 3d 443,168 Cal Rptr 722

LACK OF GOOD FAITH DEALING DEFINED

To find the defendant liable for breach of the covenant of good faith and fair dealing, you do not have to find that the employer intentionally acted in bad faith. Bad faith implies dishonesty, fraud, and concealment.. *Gruenberg v Aetna Ins. Co*. (1973) 9 Cal.3d 566, 573-574,108 Cal.Rptr.480

**Negligent Supervisor**

**SECOND CAUSE OF ACTION**

30) Negligent supervisor assigned the plaintiff to work by him self which is also unsafe to push back aircraft assign only to one mechanic. This is also indication of constructive discharge forcing plaintiff to resign two months prior to DC-10 exiting the fleet.

**Unlawful Discrimination Based upon Race and National Origin**

**THIRD CAUSE OF ACTION**

(Prima facie case of racial discrimination established by showing that plaintiff was (1) A member of a protected class; (2) qualified for the position from which he or she was discharged; (3) discharged; and (4) that after plaintiff's discharge, "the position remained open and the employer continued to seek applicants from persons of complainant's *qualifications*"). See *McDonell Douglas v. Green*, 411 U.S. 792, 801, 92 S.Ct.

31) Elements (1) and (3) is uncontested and for element (2) see **JOINT EXHIBITS O.**

32) Plaintiff satisfying element **(4)** of prima facie case within the framework of *McDonell Douglas v. Green.* Mr. Vince Diaz's (certified copy of original) clearly states:

"2 Employees were hired as A&P'S after H. Ashtiani's termination." A&P's(Airframe & power plant) Mechanic. **EXHIBIT P.**

**INTENTIONAL DISCRIMINATION ,INTENTIONAL RETALIATION POST 9/11**

**FOURTH CAUSE OF ACTION.**

33) Plaintiff moves to secure discrimination occurred Continental legal department in Houston, Texas., Covering-up discrimination with no regards for the rights of minorities in Guam despite the joint statement from the EEOC AND DEPARTMENT OF JUSTICE post 9/11. Defendants opposition mot at 15. retaliation and discrimnation post 9/11. "However, no such of action exist" **A)** "As of May 18 ,2003 fourth post 9/11 discrimination lawsuit filed by EEOC". **B)** "Harassment began prior to September 11, 2001 but continued to intensify thereafter". **EXHIBIT Q.**

**Intentional Infliction of Emotional Distress**

**FIRST CAUSE OF ACTION**

34) Ashtiani had complaint to Dr. Chenet on October 03, 2001. and it was brifly noted by Dr. Chenet "37 year old male is in for decrease energy, elev fatigue, chronic fatigue syndrom, depression over loss of job at Contininatal as aircraft mechanic. **EXHIBIT R.**

Emotional distress are available in a wrongful discharge action under the public policy.

Plaintiff's psychiatrist testified that the plaintiff was suffering from anxiety, stress, and depression. The court found that this was an adequate basis for the award. Rowlett v. Anheuser-Busch, 832 F.2d 194, 44 EPD Par. 37,428 (1st Cir. 1987).

**CONCLUSION**

35) For all of the reasons set forth above, the plaintiff respectfully asks of Honorable Chief Judge John S. Unpingco of United States District Court of Guam and prays more that plaintiff's motion to be granted.

**Submitted respectfully**, This 5th day of December 2003.

Tony H. Ashtiani

Pro Se, Litigant



# TTENDANCE POLICY

Regular attendance and punctuality are essential factors in insuring the personal success of each Employee, the success of the Department to which we are assigned and the successful achievement of Continental Micronesia's Corporate Goals. Excessive absenteeism and lateness places an unfair burden on our fellow Employees and has a profound adverse effect on our ability to achieve our personal success and the continued success of Continental Micronesia. This attendance program is designed to assist each Employee by setting forth a standard for acceptable attendance so each Employee knows what is expected of them. It is also designed to assist our Management team in monitoring and managing Employee attendance and punctuality in a fair and consistent manner.

Eight (8) incidents within a twelve month period is normally considered to be excessive and can subject the Employee to serious disciplinary action.

## A. DEFINITIONS

1. **ACCOUNTABLE ABSENCES** are defined as an instance when an Employee is absent from work (a) due to sickness involving the Employee or his/her spouse or dependent child, (b) is late reporting for duty of more than 5 minutes, (c) is unable to report with prior notice to supervisor, (d) fails to report (no show) without prior notification to supervisor, and (e) departs early without authorization.

2. **NO SHOW** is the most serious type of absenteeism. When an Employee fails to show for work, it creates a hardship on the operation and other Employees. More than one incident of no show may result in an acceleration of discipline. Two (2) consecutive days (or duty assignments) absence from duty without notification may result in discipline that does not exclude termination.

3. **SICK** is an incident due to the illness of the Employee or his/her spouse or dependent child. Absence due to sickness is considered one incident even if it extends for consecutive days. The Employee must notify his/her supervisor in advance of each shift or duty assignment unless a doctor has prescribed a certain number of days free from work and the supervisor has been provided this information.

4. **LATE REPORT** – An employee is considered late for disciplinary purposes if he/she reports for work more than 5 minutes late. Three incidents of reporting five or less minutes late within a six month period will trigger the issuance of one Late incident to the Employee's attendance record and will disqualify the Employee from participation in the ATTENDANCE INCENTIVE AWARDS PROGRAM.

5. **PATTERNS AND TRENDS OF ABSENCE** – An Employee's attendance record will be reviewed to determine attendance patterns and trends. Patterns and trends may include absenteeism consistently falling in conjunction with an Employee's scheduled days off, scheduled vacation, holidays, surrounding day trade off, or when absenteeism frequently occurs on the same days of the month. In some cases, the attendance guidelines may be accelerated to promote attendance improvement by the Employee.

## ARTICLE 18

## ABSENCE FROM DUTY

A. Unless otherwise provided by special departmental bulletin, an employee hereunder who is prevented from reporting for duty shall notify the supervisor on duty prior to the start of his shift and shall give the reason for his inability to report for duty. Such notification shall be necessary only once in any continuous period of absence providing that the employee has notified his immediate supervisor of the approximate duration of his absence and the date on which he will return to work.

B. An employee hereunder shall not be absent from duty without prior permission in writing, except for sickness, injury, or other cause beyond the control of the employee.

1. An employee may be discharged for cause if he is absent from work for two (2) consecutive days without notifying the Company of the reason for his absence. However, he shall not be discharged if a satisfactory reason is given for not notifying the Company.

2. It is the employee's responsibility to initiate the Absence from Duty report and submit to his immediate supervisor for processing on each absence from duty for any cause whatsoever. Such report should be submitted prior to the employee taking any scheduled time off. However, it must be submitted prior to the employee returning to his first scheduled shift. The only exceptions to the prior approval are occupational injury or sickness. All other items listed in Article 9, Paragraph D must have prior approval or he will not receive any pay for such absence until such document is submitted regardless of other provisions of this Agreement.

C. When it is necessary for an employee to be absent from duty because of death in his immediate family (wife, husband, child, mother, father, sister, brother, grandparents of employee, his mother-in-law or his father-in-law, grandchildren and dependents living in the employee's household), he shall have four (4) twenty-four (24) hour work periods to be taken within ten (10) twenty-four (24) hour periods starting from the time of death, during which he will not be required to report for duty and shall not suffer any loss of his base pay. **If the above defined death in the immediate family occurs, the employee taking such time off will be allowed at that time up to and including a maximum of forty (40) hours of unused vacation days or earned unused sick leave in conjunction with the above referenced four (4) days bereavement time. Such use of sick time will not count for attendance/disciplinary purposes.**

44

21

To: Hamid (Tony) Ashtiani

From: William A. Herrera

Subject: Disciplinary Action

Date: July 3, 2001

At the end of our discussion on June 26, 2001 with Prudencio Aguilo and IBT Representative, Mike Pablo present, you were advised that you would be contacted for a meeting on Monday. I had also advised you to contact me by Tuesday, 1600 if you had not heard from me. The meeting was scheduled to discuss your no-call/no-show of your shifts of June 23 and 24, 2001.

After numerous attempts, starting with my e-mail sent on June 27 to the address you had provided and also voice messages left on the answering machine associated with telephone number 653-5575, we have been unable to set a formal meeting date. Because of the faxed received at 1701 on July 3, 2001 it is apparent that you don't want to meet to complete this investigation. With the information that I have available and based on no reasonable explanation for not securing authorization for your absences on June 23 and 24, 2001 I have made the decision to terminate your employment with Continental Micronesia effective July 3, 2001.

Because your refusal to meet and discuss this situation any further, it is with regret that I am reduced to sending this certified letter concerning your status with Continental Micronesia. Your final paycheck is available and may be retrieved from the Human Resources department by contacting Robbi Crisostomo, 642-8727 or Teresa Sage, 642-8852.

Should you elect to appeal this termination, you may do so in accordance with Article 24 of the current bargaining agreement between Continental Micronesia, Inc. and The International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

William A. Herrera

Cc: Baltazar Atalig
Employee Relations
Union Representative
P-file

C

323

21

## DECLARATION

DECLARATION OF JOE . PANGELINAN.

I, Joe Pangelinan declare as follows:

My name is Joe Pangelinan, at my own will I testify that Tony Ashtiani did call on June 23, 2001 at approx. 1250 p.m. that Tony informed me he will not be in due to illness of his son and he would not be in on June 23 and 24 , 2001.

If you have any questions please contact me at Cell 687-2303. Hm. 789-1946.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at AGANA, Guam. on this 17 day of November 2003.

JOSEPH M. PANGELINAN

Printed Name

Signature

D

**CERTIFIED COPY**

**GUAM, U. S. A.,**

**On this 18th day of November, 2003, I certify that the preceding or attached documents and the duplicate retained by me as a notarial record, are true, exact, copies of "DECLARATION OF JOE PANGELINAN", presented to me by the document's custodian TONY H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.**

BENJAMIN S. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 200[illegible]
P. O. Box 821, Hagatna, Guam 9693[illegible]

# DECLARATION

DECLARATION OF JOE . PANGELINAN.

I, Joe Pangelinan declare as follows:

In addition to previous declaration, I had informed Mr. Mendoza that duty supervisor on duty that Tony Ashtiani would not be in on Jun 23 & 24 2001 at approx 1300, shift starts at 1330.

In reference to Mr. Sherman Thompson's statement everyone in the dept knew Tony Ashtiani was of Iranian descent on several occasion Mr. Sherman Thompson would talk Politics about Iran with Tony Ashtiani. Sherman Thompson on different occasions would refer to Tony Ashtiani as his "Persian Brother" or "Iranian Brother." Sherman Thompson is misleading the investigator on Tony Ashtiani knowledge of his nationality.

My personal view on the situation is Mr. Tony Ashtiani is a very respectable and knowledgeable individual in our dept. Please consider his case.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at AGANA, Guam. on this 17 day of November 2003.

JOSEPH M. PANGELINAN
Printed Name

Signature

E

**CERTIFIED COPY**

**GUAM, U. S. A.,**

**On this 18th day of November, 2003, I certify that the preceding or attached documents and the duplicate retained by me as a notarial record, are true, exact, copies of "DECLARATION OF JOE PANGELINAN", presented to me by the document's custodian TONY H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.**

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2005
P. O. Box 821, Hagatna, Guam 96932

## Herrera, William A

**From:** Mendoza, Glenn R
**Sent:** Saturday, June 23, 2001 16:38
**To:** Babauta, Benjamin C; Herrera, William A
**Cc:** Atalig, Baltazar

TO DAYS/SWINGS 23JUN01
201- NLG DIP CW BY DAYS. AC TO DO 973. NO PLA.

227- GOOD TA AC. PUT LITE BULBS 4551 FOR MNL MX. IT'S IN THE COCKPIT. NO PLA.

228- SCK WIP, NO PLA. ONE DIP FOR NO1 ENG NO8 BLADE SLOT CONVEX TE SIDE WITHIN LIMITS, NEED TO DO INSP PER ECRA 7221-0164. SPN PLA NO1 ENG HIGH STAGE BLEED, SWINGS WIP.

232- GOOD DISP, CHECKING ON AOG FOR INFO FOR SHIPPING ON PANEL 29-5221-3-0024 DUE IN 03JUL PER AOG ROBERT..

235- COMING IN AT 2255. WILL TRY AND MEET TO PUT OIL. NO PLA.

236- GOOD DISP.

GOOD TA AC. NO PLA.

246- SCK WIP, NO PLA.

249- SWAPPED WITH 250, SENT SCK-3 PAPERWORK AND PARTS TO SPN TO CW.

250- SWINGS WIP FOR CONDUIT DIP, SCK WIP. ETR 0200 24JUN.

063- CAME IN WITH COFFEE AND OVEN INOP CW, DID NOT WORK CARGO DUE RAMP LOADING.

083- SCK WIP, WORKING PLA AT THIS TIME. FAULT ISO PANEL, A/C DOOR OIL, FWD CARGO LOADING SYS INOP.

PLS SEE IDI FOR EA FOR OXY GEN INSP.

BILL, TONY DID NOT SHOW UP FOR ANY OF HIS DAYS, HE DID TALK TO JOE P. ABOUT SOME MEETING YOU AND HIM ARE TO ATTEND ON MONDAY. SEE NOTE IN YOUR MAILBOX. ALSO RYAN G. HAS BEEN SICK THIS WHOLE WEEK. HE CALLED ME ON FRIDAY AND SAID HE WAS GOING TO SEE A DOCTOR THAT DAY, I TOLD HIM TO MAKE SURE HE HAD A DOC. NOTE. I DID OFFER FMLA BUT HE DECLINED.

PER MARTY EA FOR OXY GEN INSP MY BE DONE IF YOU FEEL YOU HAVE THE TIME AND MANPWR. IF NOT HE CAN HAVE IT DONE AT BCK, NO BIG RUSH ON THIS. PER MARTY.

ZAR, I WOULD LIKE TO TAKE ONE WEEK VAC STARTING 12-15JUL, THIS IS THE WEEK I MOVED IN MAY DUE TO BILL WAS ALSO ON VAC.

000931

**DECLARATION**

DECLARATION OF RON ROBERTS .

I, Ron Roberts declare as follows:

During the month of December on or about 11th, 2001. I Ronald Roberts went to Mr. Jim Hammer's office to talk to him about man power. Because of the recent layoff of Aircraft Mechanics when I asked Mr. Hammer about bringing back Mr. Wong (Ed), because we were told, by Mr. John Carbullido who took a year leave of absents. John was told by Mr. Hammer he was recalling Ed Wong. But this was only to keep John Happy until he left. Mr. Hammer had no intentions of bring anyone back, In fact, Mr. Hammer had told me we were still 6 people over-manpower. So I asked Mr. Hammer about Tony Ashtiani who I feel was wrongfully released from the Company because of two supervisor's not communicating with each other. I was told by one supervisor Bill Herrera "If Glenn would of told me Tony Called in all this would not be happening."

Mr. Hammer told me that after the recent event of 9-11 "That Tony Ashtiani would never work around these aircraft again if he could do anything about it because he could not trust people like Mr. Ashtiani." End of statement.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at Yigo, Guam. on this 20th day of November 2003.

RON ROBERTS

Printed Name

Signature

**CERTIFIED COPY**

GUAM, U. S. A.,

On this 26th day aof November, 2003, I certify that the proceding or attached document, and the duplicate retained by me as a notarial record, are true, exact, stated portion of "DECLARATION OF RON ROBERTS", presented to me by the document's custodian TONI H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2005
P. O. Box 821, Hagatna, Guam 96932



H

DECLARATION

DECLARATION OF MARK E. WILLIAMS

I, Mark E. Williams, declare as follows:

On ~~June~~ JULY 2, 2001 at approximately 10:30 a.m., Guam time, I contacted Ms. Teresa Sage of the Continental Airlines Human Resources Office by phone and advised her of this office's representation of Mr. Tony Ashtiani, and requested information regarding the subject matter of the pending hearing or conference between the Management of Continental Airlines and Mr. Ashtiani involving Mr. Ashtiani's disciplinary action, and his related appeal/grievance of such action. I further requested information necessary for the preparation of Mr. Astiani and this office for such conference or hearing. However, Ms. Sage refused to provide any such requested information or to acknowledge this office's representation of Mr. Ashtiani. Instead, Ms. Sage directed me to contact Continental's legal office in Houston, which we were unable to do by phone as the office in Houston was apparently closed at that hour.

I declare that I have firsthand knowledge of the foregoing facts, that I have read the foregoing statement and that the information contained herein is true and correct to the best of my knowledge and belief, and that if called as a witness, I could testify competently thereto. I further hereby declare that this declaration is executed under penalty of perjury at Hagatna Guam on 5/20/02

~~(Date)~~

MARK E. WILLIAMS
~~Printed Name~~

[signature]
~~Signature~~

CERTIFIED COPY

GUAM, U. S. A.,

On this 3rd day of December, 2003, I certify that the preceding or attached document, and the duplicate retained by me as a notarial record, are true, exact, stated portion of "DECLARATION OF MARK E. WILLIAMS" presented to me by the document's custodian TONY H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.

[signature]

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2005
P. O. Box 821, Hagatna, Guam 96982

313.

July 01, 2001

**TONY ASHTIANI**

**P.O. BOX 12723**
**TAMUNING, GUAM 96931**
**CELL: 671- 688-4844**
**CELL: 671- 687-8182**
**TEL : 671- 653-8008**
**FAX : 671- 653-5575**
**(e-mail) ashtiani@ite.net**

I

TO : Ms .TERESA SAGE
HUMAN RESOURCES DEPT.
LABOR RELATIONS

RE: MEETING

PLEASE BE ADVISE AS PER THE AGREEMENT BETWEEN CMI AND IBT, ARTICLE 24 ITEM F. LETTER VIA CERTIFIED MAIL WHICH WOULD INCLUDE THE FOLLOWING INFORMATION.

1) THE CONTENTS OF THE MEETING?
2) THE NUMBERS OF PERSONS WHICH WILL ATTEND (CMI)?
3) WHO WILL BE ATTENDING THIS MEETING (PROVIDE LIST OF NAMES)?
4) WHICH ARTICLES WILL BE DISCUSSED?
5) WHICH STEPS OF ARTICLE 24 WILL BE DISCUSSED?

SINCE THIS MEETING HAS DIRECT EFFECT ON ME I AM ENTITLED TO SUCH BASIC ANSWERS ALSO PROPER AND ADEQUATE TIME TO PREPARE.

YOUR COOPERATION IN THIS MATTER IS KINDLY APPRECIATED .

SINCERELY YOURS

[signature]

JUL/02/01
11:05 AM

RECEIVED
7/2/01
11:12 AM

000928

## Sage, Teresa

**From:** Sage, Teresa
**Sent:** Monday, July 02, 2001 4:11 PM
**To:** 'ashtiani@ite.net'
**Subject:** Meeting

**Importance:** High

Tony,

I have received your letter. As a matter of fact, Bill Herrera has been trying to reach you to confirm the meeting that was scheduled for 1600 today. I understand he e-mailed you last week when he set it up. With regard to the information you refer to in your letter, I'm afraid you have misunderstood the contract. We welcome the chance to clarify during the meeting with you.

You need to contact Bill or one of the Tech Ops supervisors or Zar as soon as possible.

***Regards,***
*Teresa Sage*
tsage@csair.com
Employee Relations
(671) 642-8852 - *Office*
(671) 649-5006 - *Fax (private)*
(671) 720-8202 - *Pager*
*Co mail:* GUMHR

000929



INTER-DEPARTMENTAL MEMORANDUM
June 28, 2001

TO: Beatriz A. Camacho,
Payroll Department

FROM: Adrienne B. Cruz

SUBJECT: Final Paycheck - Tony Ashtiani

Enclosed is the Hours Summary, and Punch Detail Report for the aforementioned subject. Should you have any inquiries or require additional information, please do not hesitate to contact me.

Please be advised that this memorandum is countersigned and approved by our Manager.

BALTAZAR ATALIG, Manager - Aircraft Maintenance

K

From the desk of:
*Adrienne B. Cruz*
Administrative Specialist
Phone: [671] 642-8904
Fax: [671] 649-5248
E-mail: acruz@csair.com
Boardmail: GUMMX

000225

    (i) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had-

(I) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

(II) a reasonable opportunity to present objections to such judgment or order; or

(ii) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

(2) Nothing in this subsection shall be construed to-

(A) alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened;

(B) apply to the rights of parties to the action in which a litigated or consent judgment or order was entered, or of members of a class represented or sought to be represented in such action, or of members of a group on whose behalf relief was sought in such action by the Federal Government;

(C) prevent challenges to a litigated or consent judgment or order on the ground that such judgment or order was obtained through collusion or fraud, or is transparently invalid or was entered by a court lacking subject matter jurisdiction; or

(D) authorize or permit the denial to any person of the due process of law required by the Constitution.

(3) Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsection shall preclude a transfer of such action pursuant to section 1404 of title 28, United States Code.

OTHER UNLAWFUL EMPLOYMENT PRACTICES

SEC. 2000e-3. *[Section 704]*

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labormanagement committee controlling apprenticeship or other training or retraining, including onthejob training programs, to discriminate against any

FORM: 40.0061CM
DATE: 04-01-01
M&E: 00-0703-3-1309

## TECHNICAL SERVICES DIVISION

SHIFT LOG

SUPERVISOR SIGNATURE: [signature] DATE: 4/3/02 SHIFT: Swing STATION: Guam

PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|---|---|---|---|
| Tony R. | 1228 | Roger | Sick |
| | | | |
| | | | |
| | | | |

| ACFT | TIME | SHIFT NOTES |
|---|---|---|
| | [struck out] | Req stretcher instr T-956/03 |
| | | Seat 5-7 DCF plus 5 small mod 02 |
| | [struck out] | Gunner FTR T-900 N-236 (DOS) FAK-3 |
| | [struck out] | Req ✓ MEL Book onboard aircraft for possible |
| | | ATA chapter – 32, 33, 34 + 38 missing. |
| | | Inspected A/C as follows – |
| | | N-240 – OK   N-246 – OK   N-227 – OK |
| | | N-236 – OK   N-228 – OK   N-235 – OK |
| | | N-201 – OK   N-249 – OK |
| | | N-250 – open |
| | | N-232 – open |
| | [struck out] | 2nd CDL non-routine on N-250 as follows |
| | | ① RH side Krueger flap 3+4 seals torn |
| | | ② LH side flap seals 1+2 torn Krueger |
| 058 | 9 | SV = Done   P/R = Ø   PLA = Ø |
| Mike/Jose | OK | Oil = Ø   Flups Ø   BOR = Ø |
| | | N/R = Ø   Lav shrouds = Done |
| 249 | 18 | SV = Done   P/R = [struck out]   PLA = Ø |
| Eric/Vic | | Oil = [struck out]   Flups = Ø   BOR = Ø |
| Tony D. | | HF mod = [struck out]   [struck out] |
| | | Lav shrouds = Removed   [struck out] |
| | | Req #4 tire change due worn = Done |
| 052 | 8 | SV = Done   P/R = 3 Ø   PLA = Ø |
| David/George | OK | Oil = Ø   Flup = Ø   BOR = Ø |

DELAYS:

| A/C | STA | CODE | MIN | TRIP | NOTIFIED |
|---|---|---|---|---|---|
| 240 | Gum | 33 | 10 | 943 | |
| | | | | | |

| TIME A/C | GROUNDED AIRCRAFT – REASON |
|---|---|
| | N-232 VQ-1 A-26 ✓ |
| | Gas Fed |

M

Continental
Micronesia

FORM: 40.0061CM
DATE: 04-01-01
M&E: 00-0703-3-1309

## TECHNICAL SERVICES DIVISION

SHIFT LOG

SUPERVISOR SIGNATURE: P Cyenka   DATE: 4/14/02 SHIFT: GRAVES   STATION: GUAM

PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|---|---|---|---|
| J. Martinez | ~~05~~13 | V. Saclof | Sick - Flu |
| | | | |
| | | | |
| | | | |
| | | | |

SHIFT NOTES

| ACFT | TIME | |
|---|---|---|
| 236 | | 20 SV - C/W |
| | | MX RON - open |
| | | NAV DB - C/W |
| | | NonRoutines = 2 |
| | JOB BOX | 1) #3 & #4 LE KRUEGER FLAP SPN WISE SEALS |
| | | 2) #2 ENG COWLING VORTEX DEVICE |
| 246 | | 20 SV - C/W PLA - 1 |
| | | PLA - VIDEO SYST INOP < Controller coming |
| | | in on trip - 1 > |
| | | NAV - DB - C/W |
| | | Move to Gate 13 - |
| | | * Swapped out w/ A/C 228 |
| 227 | | 21 SV - C/W. PR - ~~0~~ PLA - 2 OIL - 1 |
| | | OIL - Door Stoppers |
| | | PLA - Kruger flap seals |
| | | |
| | | |
| 249 | | 15 SV 3 - PLA - Ø OIL - Ø PR - Ø |
| | | Tire chg - |
| | | NAV DB - |
| | | 2-dents INBD LWR TRLG EDGE FLAP - C/W |
| | | TRNBKL - |
| | | 11 NR |
| INFO | → | MUST offer OUT FLT for 902/903 CNS @ 1850 |
| | | Jr. Martinez Called in sick. Cannot make |
| | | flights |

DELAYS:

| A/C | STA | CODE | MIN | TRIP | NOTIFIED | TIME A/C | GROUNDED AIRCRAFT – REASON |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |

Continental Micronesia

FORM: 40.0061CM
DATE: 04-01-01
M&E: 00-0703-3-1309

## TECHNICAL SERVICES DIVISION

SHIFT LOG

SUPERVISOR SIGNATURE: [signature] DATE: 4-28-02 SHIFT: GRAVEYARD STATION: GUM

PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|---|---|---|---|
| Marlon | 7:35 | Fabian | Sick |

| ACFT | TIME | SHIFT NOTES |
|---|---|---|
| 236 | 0110-TERM | G-21 SC-OPEN PR-Ø PLA-Ø OIL-Ø |
| | | *APU AUTO SHUTDOWN: STARTER GEN FILTER CLOGGED-OPEN |
| | | *STAB TRIM MOTOR R+R-OPEN |
| | | *ENG OIL SERVICE-C/W |
| 246 | 0100-TERM | G-20 SC-C/W PR-Ø PLA-Ø OIL-Ø |
| | | *DIP-#2 ENG EEC FAULT, NEED TO CHANGE VBV-OPEN |
| | | *FUP-DROP DEAD: RIGHT PRIMARY HEAT EXCHANGER-C/W |
| 240 | 0440-TERM | G-13 SC-OPEN PR-Ø PLA-Ø OIL-Ø |

DELAYS:

| A/C | STA | CODE | MIN | TRIP | NOTIFIED | TIME A/C | GROUNDED AIRCRAFT – REASON |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| L.C. | ✓ | | | | |
| Junior M | ✓ | | | | |
| Dave M. | ✓ | | | | |
| Glenn M | ✓ | | | | |
| Mike P. | ✓ | | | | |
| Eric P. | ✓ | | | | |

UNUSUAL OCCURRENCES

| NAME | TIME | ASSIGNMENTS | | REMARKS |
|---|---|---|---|---|
| Dale | 1435-1545 | JL 1141 | 941/942 | 17 NRT |
| Tony A. | Ong - 1620 | ✓227 on Gate ✓/✓ Paperwork | 943 | 21 SPN |
| Eric/George | 1530-1630 | 249 | 932/767 | 14 NRT |
| Vic/Dave | 1535-1640 | JL1146 | 943/944 | 16 KIX |
| Scott/Marlow | 1405-1715 | JL1052 — Dispatch Help DC-10 | 945/946 | 18 KIX |
| Mike JR | 1505-1715 | 063 2Gen inop. / Scott 4B IVS | 962/963 | 8 NRT |
| Joe K/Glenn | 1540-1715 | 235 | 916/973 | 17 NGO |
| Eric/George | 1535-1740 | 201 (Air [illegible]) R&R Fak | 970/971 | 10 DPS |
| Vic/Dave | Ong - 1815 | ✓246 SV Form cockpit / on Gate | 953 | 19 ROR |
| Tony A. | 1530-1815 | 228 Bulky Load - S / [illegible] | 920/945 | 20 SPN |
| Scott/Marlow | 1645-1900 | 236 | 942/911 | 12 MNL |
| Joe K/Glenn | 1830-1910 | 227 (Jordan/Hanny) | 985 | 10 HKG |
| | | TX | | |
| | | | 001 | 9 - 072 |
| Mike JR | 1905-T | 062 SV A/C PLA O.L | | |
| Tony A. | SV inside | NCP Hyd clean / Ctr Pnl Radio | | from light very dim |
| Eric/George | + outside | 6th Tire Gas inop / Fwd Compt Temp | | VLV inop Auto |
| | | R&R inst. of ITS | | |
| BV Crew | 1710-0810 | 232 GTS prog for Lube / R&R | 970 | 16 TKK 952 |
| | | L1+L2 Heat Exchr | | |
| Joe K/Glenn | 1715-0045 | 250 S A/C PLA O.L | 957 | 14 MNL 863 |
| | | Software upgrades | | |
| Scott/Marlow | 2000-0630 | 074 ✓ A/C PLA O.L | 073 | 8 NRT 961 |
| Vic/Dave → | SV inside | / Gnd Fan used inop / 2 H2O Clims | | About 60° |
| | outside | After 7/0 / LAV J Dump Valve inop | | / Seat 4E inop |
| | | R&R IT inst Trp - 072 | | |

336

N

Continental

Continental Airlines, Inc.
Flight Operations
Terminal Box 11
Honolulu International Airport
Honolulu HI 96819

TO: Bud Perry

DATE: April 22, 1994

SUBJ: Tony Ashtiani

Dear Bud:

I am writing to inform you of the outstanding support I received recently from one of your mechanics, Mr. Ashtiani.

I was the captain on Flt. 961 the 23 of March GUM/NRT. ship #042. Shortly before departure Mr. Ashtiani advised me of a possible problem with the #3 engine which was on a H.O.C. watch. Throughout the delay Mr. Ashtiani kept me informed of the situation, took me down to the #3 engine and showed me the cracked gearbox (the cause of the excessive leak).

Could you please convey to Mr. Ashtiani my appreciation for professionalism throughout the delay.

Sincerely,

Craig Brownrigg
Acting Chief Pilot (Continental)
Guam

AUGUST 28, 1994

CONTINENTAL MICRONESIA
MAINTENANCE
INTERNATIONAL AIRPORT
TAMUNING, GUAM

DEAR SIR:

I WOULD LIKE TO RECOGNIZE YOUR MECHANIC **TONY ASHTRAINI** FOR HIS CONTINUING DEDICATION TO HIS DUTIES AS A LINE MECHANIC FOR CONTINENTAL MICRONESIA.

ON AUGUST 5, 1994 I WAS THE CAPTAIN ON A DC10-10 OPERATING FLIGHT 973 FROM GUAM TO NAGOYA. JUST AS WE WERE BEGINNING TO PUSH OFF THE GATE IN GUAM TONY SAW A PROBLEM IN THE AREA OF THE RIGHT MAIN GEAR. HE INSISTED ON STOPPING THE PUSH BACK AND CHECKING OUT WHAT HE SAW. THE AIRCRAFT WAS LEAKING FUEL FROM AN INSPECTION PLATE ON THE WING SURFACE ALLOWING IT TO FLOW DOWN ONTO THE WHEEL AND BRAKE ASSEMBLY. AS A RESULT OF HIS OBSERVATION WE CORRECTED THE PROBLEM AND ADDED GREATLY TO SAFETY OF OUR FLIGHT OPERATION.

I HAVE WORKED WITH TONY ON OTHER OCCASIONS AND I HAVE OBSERVED HIM TO BE A REAL TEAM LEADER WHO IS AN EXPERT ON THE AIRCRAFT AND A REAL ASSET TO THE MAINTENANCE DEPARTMENT. I WOULD LIKE TO TAKE THIS OPPORTUNITY TO PERSONALLY THANK HIM, AND TO ALERT HIS SUPERVISOR OF HIS OUTSTANDING DEDICATION AND KNOWLEDGE. I LOOK FORWARD TO WORKING WITH TONY IN THE FUTURE.

SINCERELY,

Steve Bowman

STEVE BOWMAN
CAPTAIN DC10

CC: OPERATIONS



Fly with the warmth of Paradise

February 20, 1997

RECEIVED
JUN 03 1997
BILL MEEHAN

To: Hamid Ashtiani / Employee Number A1966

From: Jim Bennett / Director, Technical Services - Japan

Subject: Commendation

Tony;

We here in Japan Technical Services. Would like to thank you for your assistance in moving diverted Flight 840(Aircraft N781) from Narita back to Guam. And after working all afternoon on N781, when asked to remain in Narita and assist with our out of service DC10-30. You readily volunteered. Thus helping to return this A/C to service before curfew. All this shows the dedication of our staff in Technical Services to "Keeping them flying". Your commitment to the tasks at hand is commendable.

Again thanks for the assistance from all departments in Japan. Especially our passengers.

JGB/ms

cc: B. Meehan
Personal File

Regional Office: 5F, Sanno Grand Bldg., 2-14-2, Nagata-cho, Chiyoda-ku, Tokyo 100, Japan
Branch Offices in Japan: Sapporo Sendai Nagoya Osaka Fukuoka Okinawa

MAY 29, 2002

TO WHOM IT MAY CONCERN:

I, VINCE DIAZ, MAKE THE FOLLOWING STATEMENTS THAT,

1. EMPLOYEES, OTHER THAN SUPERVISORS, IN THE MX DEPT. TOOK SICK CALL MESSAGES FROM OTHER EMPLOYEES...
2. THESE MESSAGES WERE EITHER NOTED IN THE SHIFT TURNOVER LOG, ON THE MESSAGE BOARD OR PASSED ON VERBALLY TO THE SUPERVISOR ON DUTY...
3. THIS PRACTICE IS NO LONGER USED AT WORK...
4. 2 EMPLOYEES WERE HIRED AS A & P'S AFTER H. ASHTIANI'S TERMINATION, DENNIS FLORES & RICK CRUZ...

P

**CERTIFIED COPY**

GUAM, U. S. A.,

On this 3rd day of December, 2003, I certify that the preceding or attached document, and the duplicate retained by me as a notarial record, are true, exact, stated portion of "VINCE DIAZ STATEMENT", presented to me by the document's custodian TONY H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.

VINCE DIAZ

734-1383

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2006
P. O. Box 821, Hagatna, Guam 96932

345

*The U.S. Equal Employment Opportunity Commission*

FOR IMMEDIATE RELEASE
April 7, 2003

CONTACT: Lauren G. Dreilinger
EEOC Trial Attorney
(312) 353-7303
TTY: (312) 353-2421

Noelle Brennan
Supervisory Trial Attorney
(312) 353-7582

John Hendrickson
EEOC Regional Attorney
(312) 353-8551

Q

# EEOC SUES CHICAGO AREA HOSPITAL FOR POST-9/11 BACKLASH DISCRIMINATION

*Suit Says Supervisor of Muslim Worker Referred to Ramadan as 'Taliban'*

CHICAGO - The U.S. Equal Employment Opportunity Commission (EEOC) today filed its fourth post-9/11 backlash discrimination lawsuit against Norwegian American Hospital (Norwegian) for subjecting Charging Party Rashidah Abdullah to harassment, discriminatory discipline, retaliation, and termination because of her religion, Islam. According to the suit, filed under Title VII of the Civil Rights Act of 1964 in Federal District Court in Chicago, the religious discrimination and harassment began prior to September 11, 2001, but continued and intensified thereafter. Norwegian American Hospital is located on North Francisco Avenue in Chicago's Humboldt Park neighborhood and has more than 500 employees.

"Our nation's tradition of religious tolerance and our laws prohibiting discrimination and ensuring equal employment opportunity must be honored," said EEOC Chair Cari M. Dominguez. "Employers must remain vigilant in guarding against backlash discrimination directed at innocent individuals due to their religion, ethnicity, or country of origin - especially after the tragic events of September 11 and during this time of war."

EEOC's court-filed Complaint alleges that one of the hospital's managers created a religiously hostile work environment by treating Abdullah worse than other workers because of her religion and finally fired her, and that Norwegian endorsed the mistreatment. The EEOC said that its administrative investigation, which it conducted prior to filing suit, indicated that Abdullah's manager made offensive comments about her religion and religious beliefs, including referring to the Muslim holy observance of Ramadan as "Taliban." The EEOC also contends that Norwegian retaliated against Abdullah for complaining about the religious harassment and discriminatory treatment by intensifying the derogatory comments and unjustified disciplinary measures after the events of September 11, 2001.

John Hendrickson, EEOC's Regional Attorney in Chicago, said: "An employer that engages in

432

unlawful discrimination suffers a self-inflicted wound. When that discrimination is followed by retaliation, as it was in this case, the employer compounds the injury. EEOC's vigilance in preventing and remedying religious discrimination in the workplace - whether the religion involved is Christianity, Judaism, Islam or any other- has not and will not falter."

John Rowe, Director of the EEOC's Chicago District Office, add: "As the President and the federal government have repeatedly made clear since 9/11, any on-the-job backlash against our Muslim neighbors is unacceptable and will not be tolerated."

The lawsuit, which was filed after the EEOC's efforts to voluntarily conciliate the matter with the hospital proved unavailing, seeks monetary relief in the form of back pay and compensatory and punitive damages, an order requiring the company to implement measures to prevent a recurrence, and a permanent injunction against future discrimination and retaliation. The suit, which was filed in the Eastern Division of the U.S. District Court for the Northern District of Illinois and captioned *Equal Employment Opportunity Commission v. Norwegian American Hospital*, has been assigned to District Judge Zagel and designated case number 03 C 2360. The case is the EEOC's fourth lawsuit alleging backlash discrimination against employees related to the events of September 11, 2001.

Lauren Dreilinger, Chicago Trial Attorney who will lead the EEOC litigation, said: "Ms. Abdullah's supervisor made disparaging comments about her religion, including linking her faith to the Taliban, the former regime in Afghanistan, and stated that if she was unhappy with her treatment that she should leave the country. Such jibes and put downs have no place at work under any circumstances. Moreover, the harassment was especially egregious here because Abdullah's family has lived in the United States for generations."

In addition to enforcing Title VII of the Civil Rights Act of 1964, which prohibits employment discrimination based on race, color, religion, sex or national origin, the EEOC enforces Title I of the Americans with Disabilities Act, which prohibits discrimination against people with disabilities in the private sector and state and local governments; the Age Discrimination in Employment Act, which protects individuals who are 40 years of age or older; the Equal Pay Act; the Rehabilitation Act of 1973's prohibitions against discrimination affecting individuals with disabilities in the federal sector; and sections of the Civil Rights Act of 1991. Further information about the Commission is available on the agency's web site atwww.eeoc.gov.

---

*This page was last modified on April 7, 2003.*

 Return to Home Page

434

0769

| PATIENT CHECK IN | |
|---|---|
| Date | OCT 03 2001 |
| | 10:15 |
| | 110/60 |
| T-P-R | 97 69 84 20 |
| Weight | 185 # |
| Recorder | [illegible] |
| Allergy | NKA |

[illegible handwritten progress notes]

O! BP 110/80

[illegible]

DOB

[illegible]

# Guam Adult-Pediatric Clinic

612 N. Marine Drive, Suite #8, Dededo, Guam 96929
Phone: 671-633-GAPC (4272)

## Patient's Progress Record

NAME: Achtiani, Tony

D.O.B. 10/6/63

INSURANCE: Multicover

CHART #: 48767

R

572