*orig:*

Tony H. Ashtiani
P.O.Box 12723
Tamuning Guam 96931
671-688-4844
671-653-5575

FILED
DISTRICT COURT OF GUAM

DEC 11 2003

MARY L. M. MORAN
CLERK OF COURT

*120*

# UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| | |
|---|---|
| Tony H. Ashtiani,<br><br>      Plaintiff,<br><br>      Vs.<br><br>Continental Micronesia Inc,<br><br>Dba, Continental Micronesia,<br><br>Continental Airlines,<br><br>      Defendant. | )<br>)<br>) Civil Case No.: **02-00032**<br>)<br>) **AFFIDAVIT OF TONY H. ASHTIANI**<br>)<br>)<br>)<br>)   **(Fed R. Civ. P. 56)**<br>)<br>)    **56 (C) and 56 (e).**<br>)<br>)<br>) |

_____

Guam U.S.A          ) SS:

Municipality of Hagatna  )

    I make this affidavit in pursuant to Federal Rules of Civil Procedure.

             **Rule 56 (C).** "The adverse party **prior to the day of hearing** may serve opposing affidavits".

             **Rule 56 (e).** "Sworn or **certified copies** of all papers or **parts** thereof referred to in an affidavit shall be attached thereto or served therewith."

I, Tony H. Ashtiani, being first fully sworn, depose and say:

**1.** All the statement made in this affidavit is based on my personal knowledge.

**2.** All exhibits referred and herein attached have been reviewed and thus I have personal knowledge of these documents and information contained therein.

**3.** I am plaintiff pro se in the above entitled action.

**4.** After Ashtiani provided that the specific reason for the termination was pretext.

**5.** After Ashtiani provided exhibits and Supreme Court case that defendants reason unworthy of believe is enough.

**6.** After Ashtiani provided the statistics and specific instances of disparate treatment.

**7.** On December 5, 2003 Defendant provided two additional affidavits of Mr. Mendoza and Mr. Herrera, which state they were both off island on November 21, 2003, which was the day of filing motion for summary judgment.

**8.** Ashtiani called supervisor every day and even if defendant allegations were true, employee is not required to call on day to day basis as the union contract states such notification shall be necessary only "**once**" **EXHIBIT A.**

**9.** Mr. Herrera acknowledges notification of the illness of my son and he was well aware of duration **EXHIBIT B.** and even

1  then Dr. appellanes on his certificate on JUL 02, 2001 states
2  patient is symptomatic.

3      **10.** In order to absence any doubt paragraph **B.** states
4  "except for sickness" **EXHIBIT C.**

5      **11. "SICK"** Defined (a) due to illness of the Employee or
6  his/her . . . . dependent child. **EXHIBIT D.**

7      **12. "Medical Verification"** Supervision will advise the
8  employee when a written medical verification by a doctor is
9  required . . . . . **EXHIBIT E.**

10      **13.** I respectfully defeat affidavit of Mr. Glenn Mendoza
11  by the following exhibit that Mr. Herrera has signed the
12  authorization for June 16-19, 2001 this document was produced by
13  the defendant production document # 000253 **EXHIBIT F**. Those days
14  were authorized and now after I have proved Jun 23, 24 2001 as
15  pretext. Supervisors are in a disparate attempt to rehash the
16  specific reason stated in termination letter after two and half
17  years.

18

19      **14.** I respectfully defeat affidavit of Mr. William Herrera
20  in paragraph 13 and **EXHIBIT F.** Further more, I defeat e-mail
21  dated Jun 18, 2001 and other e-mails and correspondences by CMI.

22

23      **15.** First and most important, I became aware of the alleged
24  e-mails when I visited my P-FILE during the EEOC investigation
25  on February 08 2002, as my file had gotten thicker from my

previous inspection. **EXHIBIT G.** and statement by Mr. Martinez **EXHIBIT H.**

    **16.** A common man in good faith would not start e-mail "I just wanted something in writing", because of the false statements and its contents, I examined the document more carefully. **EXHIBIT I.**

    **17.** I compared it with other e-mails of CMI **EXBIBIT J.**

**A.** E-mails addresses had the last name first.

**B.** All last names and first names were separated by comma.

**C.** All addressees' name were last name first, first name last.

    **18.** During a close examination it was noted that name Baltazar Atalig was different in <u>EXHIBIT I</u> compare to other e-mails.

    **19.** I did not want to speculate so, I asked a friend whom is very sharp individual on computers to type in the same format as <u>EXHIBIT I</u> at CMI and send the email while I was on the phone with him. He informed me that monitor screen shows the followings.

**A.** Name <u>Baltazar Atalig</u> is under line

**B.** Verify name and spelling    and    <u>flashing on screen</u>

**C. Unable to deliver Message**    and    <u>flashing on screen</u>

**20.** I asked him to try it again, and he confirmed that the message can not be sent at all, this is due to the fact the name search in email format does not recognizes the name under alphabetical order as **B**altazar. It was also determined that it can only be sent in that format only if it is followed by @csair.com After reviewing the document compare to others he concluded that it was typed on word processor then printed.

**21.** This discrepancy is seen through out some emails for instance production of document 001053 in those that were **CC:** some first name first, therefore, unable to send message too, noted that some of these documents were signed by Mr. Herrera on JAN 24 2002. Seven (7) months after my termination. **EXHIBIT K.**

**22.** Signature in EXHIBIT B and K and many other documents dated **JAN 24 2002**, this is rather important to respondent CMI.

**A.** NOTICE OF CHARGE OF DISCRIMINATION.          **Jan/10/2002**

**B.** STATEMENT OF RESPONDENTS' POSITION.          **Feb/08/2002**

These dates appear in NOTICE OF DISRIMINATION. **EXHIBIT  L.**

**23.** CMI had started this malice and reckless act of conspiracy by typing documents and passing it as e-mail as to compel paper trail due to incoming investigation, because I did not see these documents in October, OR November 2001.

**24.** On November 20th 1999, my co-worker and I had a trade day incident, Mr. Mendoza had asked me to give him my co-workers

name and I refused accordingly, he did punish me for trade day incident as severe as no-show Mr. Roberts was a union witness, **EXHIBIT M.** please note that Mr. Mendoza was well aware that there was a trade day cancellation and wrote the letter On November 14, 1999, and the event was 6 days ahead. When I asked him, Mr. Mendoza had no logical explanation accordingly, I grieved him because I knew of many other trade days incidents that Mr. Mendoza would cover up.

> Rule **56 (e)** "Sworn or **certified copies** of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

**25.** Pursuant to Rule 56 (e) certified copy of Mr. Larry Kimball's statement herewith attached as **EXHIBIT N.**

**26.** I proceeded to grieve him through the union as my **first** and **only** grievance in 17 years of employment, because I do not complain unless extremely been wronged by the supervisor. **EXHIBIT O.**

**27.** I threaten to report Mr. Mendoza to EEOC because he was treating the minorities among the majority very poorly. Accordingly, per the EEOC guidelines I was marked as a "public policy enforcer" or "opposition". After grievance filed and meeting with Mr. McKinzie which resulted in failure to investigation, I was retaliated and was subjected to many forms of harassment through work assignment and hostile work environment which resulted in trade days (non-accountable attendances) due to employer was subjecting me to extreme

1 pressure inflicting intentional stress, even if defendant

2 successes in its allegation of absenteeism.

3          plaintiff stressful situation resulted in high absenteeism
4          and he was placed on probation. *Rowelt v.Anheuser-*
         *Busch* 832 F.2d 194, (1st Cir. 1987)

5

6     **28.** I respectfully defeat Mr. Dixon McKinzie's affidavit by

the following  paragraphs 29,30,31,32 and 33.

7     **29.** Unlike Mr. McKinzie's qualities, I am not gifted to be

8 creative with the truth.

9     **30.** Unlike Mr. McKinzie , I fear Rule 56 (g) and the idea

10 of being untruthful to the United States District Court "offending

11 party . . . . may be adjudged guilty of contempt." because I do not have law firm

12 to protect me. So I tell the truth, Mr. Bruce Lee has been

13 discharged at CMI, because of his termination, he is currently

14 working for Sears and I saw him pull up with a Sears truck at 76

15 Union Station at airport road.

16     **31.** It is note worthy, that Mr. McKinzie in his affidavit

17 states "Lee's termination was retracted".

18     **32.** Mr. Mahdi (African American) came to CMI from

19 Continental Airlines as a 727 mechanic, he was subjected to many

20 forms of harassment and discrimination.

21     **33.** Mr. Mahdi was terminated after Boeing 727 exited the

22 CMI fleets and Ashtiani was terminated after DC-10 exiting the

23 CMI fleet, Mr. Mahdi just like Ashtiani was a CAL employee and

24 victim of constructive discharge whether terminated or forced to

25 resign.

AFFIDAVIT OF TONY H.ASHTINAI

I declare under penalty of perjury that forgoing is true and accurate to the best of my knowledge.

Further the affiant sayeth naught.

Executed this _11TH_ day of December , 2003 at Hagatna Guam.

   **Respectfully submitted,**

                                         _F. Ashti_

                                         Tony H. Ashtiani

                                         Pro Se, Litigant

**SUBSCIBED AND SWARN TO BEFORE ME** On This _11th_ day of December 2003 at Hagatna, Guam U.S.A. by Tony H. Ashtiani.



                          _Benjamin G. Galarpe_
                          BENJAMIN G. GALARPE
                          NOTARY PUBLIC
                          In and for Guam, U.S.A
                          My Commission Expires: August 9, 2005
                          P. O. Box 821, Hagatna, Guam 96982

## ARTICLE 18

## ABSENCE FROM DUTY

A.    Unless otherwise provided by special departmental bulletin, an employee hereunder who is prevented from reporting for duty shall notify the supervisor on duty prior to the start of his shift and shall give the reason for his inability to report for duty. Such notification shall be necessary only once in any continuous period of absence providing that the employee has notified his immediate supervisor of the approximate duration of his absence and the date on which he will return to work.



B.    An employee hereunder shall not be absent from duty without prior permission in writing, except for sickness, injury, or other cause beyond the control of the employee.

　　1.    An employee may be discharged for cause if he is absent from work for two (2) consecutive days without notifying the Company of the reason for his absence. However, he shall not be discharged if a satisfactory reason is given for not notifying the Company.

　　2.    It is the employee's responsibility to initiate the Absence from Duty report and submit to his immediate supervisor for processing on each absence from duty for any cause whatsoever. Such report should be submitted prior to the employee taking any scheduled time off. However, it must be submitted prior to the employee returning to his first scheduled shift. The only exceptions to the prior approval are occupational injury or sickness. All other items listed in Article 9, Paragraph D must have prior approval or he will not receive any pay for such absence until such document is submitted regardless of other provisions of this Agreement.

C.    When it is necessary for an employee to be absent from duty because of death in his immediate family (wife, husband, child, mother, father, sister, brother, grandparents of employee, his mother-in-law or his father-in-law, grandchildren and dependents living in the employee's household), he shall have four (4) twenty-four (24) hour work periods to be taken within ten (10) twenty-four (24) hour periods starting from the time of death, during which he will not be required to report for duty and shall not suffer any loss of his base pay. **If the above defined death in the immediate family occurs, the employee taking such time off will be allowed at that time up to and including a maximum of forty (40) hours of unused vacation days or earned unused sick leave in conjunction with the above referenced four (4) days bereavement time. Such use of sick time will not count for attendance/disciplinary purposes.**

42

# fmla-refusal

**Date:** 6/11/2001

**From:** William A. Herrera

**RE:** TONY ASHTIANI

---

This will serve as a memo for record concerning Tony Ashtiani's refusal of FMLA. Tony had called in sick for the last 4-½ days to care for his son-who is ill. I spoke to him this morning at 1115 hours and he told me his situation and requested PBs for the rest of the week. I informed him of the FMLA program, but he declined and stayed with the PB request. I acknowledge the PB for the remaining week, but charged sick for the days claimed earlier.

*William Herrera* 1/24/02

6/11/2001

**001047**

EXHIBIT Q

## ARTICLE 18

### ABSENCE FROM DUTY

A.    Unless otherwise provided by special departmental bulletin, an employee hereunder who is prevented from reporting for duty shall notify the supervisor on duty prior to the start of his shift and shall give the reason for his inability to report for duty. Such notification shall be necessary only once in any continuous period of absence providing that the employee has notified his immediate supervisor of the approximate duration of his absence and the date on which he will return to work.

B.    An employee hereunder shall not be absent from duty without prior permission in writing, except for sickness, injury, or other cause beyond the control of the employee.

    1.    An employee may be discharged for cause if he is absent from work for two (2) consecutive days without notifying the Company of the reason for his absence. However, he shall not be discharged if a satisfactory reason is given for not notifying the Company.

    2.    It is the employee's responsibility to initiate the Absence from Duty report and submit to his immediate supervisor for processing on each absence from duty for any cause whatsoever. Such report should be submitted prior to the employee taking any scheduled time off. However, it must be submitted prior to the employee returning to his first scheduled shift. The only exceptions to the prior approval are occupational injury or sickness. All other items listed in Article 9, Paragraph D must have prior approval or he will not receive any pay for such absence until such document is submitted regardless of other provisions of this Agreement.

C.    When it is necessary for an employee to be absent from duty because of death in his immediate family (wife, husband, child, mother, father, sister, brother, grandparents of employee, his mother-in-law or his father-in-law, grandchildren and dependents living in the employee's household), he shall have four (4) twenty-four (24) hour work periods to be taken within ten (10) twenty-four (24) hour periods starting from the time of death, during which he will not be required to report for duty and shall not suffer any loss of his base pay. **If the above defined death in the immediate family occurs, the employee taking such time off will be allowed at that time up to and including a maximum of forty (40) hours of unused vacation days or earned unused sick leave in conjunction with the above referenced four (4) days bereavement time. Such use of sick time will not count for attendance/disciplinary purposes.**

42



# **A**TTENDANCE POLICY

Regular attendance and punctuality are essential factors in insuring the personal success of each Employee, the success of the Department to which we are assigned and the successful achievement of Continental Micronesia's Corporate Goals. Excessive absenteeism and lateness places an unfair burden on our fellow Employees and has a profound adverse effect on our ability to achieve our personal success and the continued success of Continental Micronesia. This attendance program is designed to assist each Employee by setting forth a standard for acceptable attendance so each Employee knows what is expected of them. It is also designed to assist our Management team in monitoring and managing Employee attendance and punctuality in a fair and consistent manner.

Eight (8) incidents within a twelve month period is normally considered to be excessive and can subject the Employee to serious disciplinary action.

## A.    *D*EFINITIONS

1.    **ACCOUNTABLE ABSENCES** are defined as an instance when an Employee is absent from work (a) due to sickness involving the Employee or his/her spouse or dependent child, (b) late reporting for duty of more than 5 minutes, (c) is unable to report with prior notice to supervisor, (d) fails to report (no show) without prior notification to supervisor, and (e) departs early without authorization.

2.    **NO SHOW** is the most serious type of absenteeism. When an Employee fails to show for work, it creates a hardship on the operation and other Employees. More than one incident of no show may result in an acceleration of discipline. Two (2) consecutive days (or duty assignments) absence from duty without notification may result in discipline that does not exclude termination.

3.    **SICK** is an incident due to the illness of the Employee or his/her spouse or dependent child. Absence due to sickness is considered one incident even if it extends for consecutive days. The Employee must notify his/her supervisor in advance of each shift or duty assignment unless a doctor has prescribed a certain number of days free from work and the supervisor has been provided this information.

4.    **LATE REPORT** – An employee is considered late for disciplinary purposes if he/she reports for work more than 5 minutes late. Three incidents of reporting five or less minutes late within a six month period will trigger the issuance of one Late incident to the Employee's attendance record and will disqualify the Employee from participation in the ATTENDANCE INCENTIVE AWARDS PROGRAM.

5.    **PATTERNS AND TRENDS OF ABSENCE** – An Employee's attendance record will be reviewed to determine attendance patterns and trends. Patterns and trends may include absenteeism consistently falling in conjunction with an Employee's scheduled days off, scheduled vacation, holidays, surrounding day trade off, or when absenteeism frequently occurs on the same days of the month. In some cases, the attendance guidelines may be accelerated to promote attendance improvement by the Employee.



3. Medical Verifications – Supervision will advise the Employee when a written medical verification by a doctor is required which includes:

     a.    Diagnosis/Prognosis

     b.    Date and time of visit

     c.    Date of next visit, if applicable

     d.    Medication prescribed

     e.    Anticipated date Employee will return to work

The verification must be submitted to the supervisor on or before report time of the Employee's first duty assignment following the absence. Failure to provide such verification may result in the Employee being withheld from duty.

M: P-138CM
#: 00-0703-3-1415
: 02/95

# Continental Micronesia

**Employee Number:** 0963

## ABSENCE FROM DUTY REPORT

**Date Prepared:** 10/20/01

1. SICK LEAVE: Immediately upon return to work or at the end of each pay period whichever first occurs.
2. OCCUPATIONAL INJURY LEAVE: Immediately when injury necessitates absence from duty.
3. **VACATION: Prior to the start of the vacation period; OR when a paycheck is desired before the start of the** vacation period, this form must be underlined received in Payroll **FOURTEEN (14) CALENDAR** days underline prior to the date the check is desired.
4. OTHER: Immediately upon return to work or at the end of each pay period whichever first occurs.
   Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee

---

### (Attach Doctor's Certificate When Requesting)

I, _____ , employed at _____ and _____
    PRINT NAME                          WORK LOCATION    /    COST CENTER

Employee Number_____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE_____ TOTAL HOURS _

**000253**

BRIEF DESCRIPTION, NATURE OF ABSENCE _____

Signature of Employee _____ ACKNOWLEDGED _____
                                                              SUPERVISOR               DATE
**CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S**

---

### (Attach Doctor's Certificate When Requesting)

I, _____ , employed at _____ and _____
    PRINT NAME                          WORK LOCATION    /    COST CENTER

Employee Number_____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE_____ TOTAL HOURS _

Signature of Employee _____ ACKNOWLEDGED _____
                                                              SUPERVISOR               DATE
**CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S**

**INJURY LEAVE**

---

I, _____ , employed at _____ and _____
    PRINT NAME                          WORK LOCATION    /    COST CENTER

Employee Number_____ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicated below.

VACATION (HOURS) _____

DEFERRED HOLIDAYS (HOURS) _____

DATES OF VACATION (FROM) _____ (TO) _____ TOTAL HOURS _____

MY PAYCHECK TO BE ISSUED ON _____ is herewith requested for _____
                              ( DATE )                                      ( DATE )

Signature of Employee _____ ACKNOWLEDGED _____
                                                              SUPERVISOR               DATE
**CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S**

---

### (Personal Business, Authorized Leave, Jury Service, etc.)

I, _Teny Ahtani_ , employed at _Guam V_ and _____
    PRINT NAME                          WORK LOCATION    /    COST CENTER

Employee Number _0963_ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicted below.

DATE OF ABSENCE_Jun 16-19, 2001_ TOTAL HOURS _40_

REASON FOR ABSENCE _Son ill_

If because of death in the immediate family, what relation to the employee? _____

Signature of Employee _For Employee_ ACKNOWLEDGED _____
                                                              SUPERVISOR               DATE
**CIRCLE REGULAR DAYS OFF:   S   M   T   (W)   T   (F)   S**

**OTHER**

Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee

**RESPONSE:** Not all facts supporting this response have been discovered, and thus this response may be supplemented under Federal Rule of Civil Procedure 26.

**REQUEST NO. 9: Please** produce a copy of all documents and communications to and from your Supervisors while employed with CMI.

**RESPONSE:** This response may be supplemented under Federal Rule of Civil Procedure 26. Plaintiff in his course of his employment had a personal file located in Human resources department that had kept accurate events of communication by plaintiff and his supervisors however after plaintiff several visits to his files during the EEOC investigation Plaintiff had noticed several times that documents were added and expunged, file would get thinner or thicker at any given time. Plaintiff mentioned that to Mr. Crisostomo on Feb 08, 2002. Document requested are discoverable in the CMI human resources department.

**REQUEST NO. 10:** Please produce any and all documents evidencing or reflecting any lawsuits in which you have been a party, including, without limitation, any and all pleadings, discovery, depositions, and other documents of any kind evidencing such lawsuits.

**RESPONSE:** Plaintiff objects to this request because it is irrelevant and immaterial. Plaintiff has been named in GCA violation in regards to domestic violence as defendant. further more plaintiff has sued Baby Johns used cars for property damage in small claims court and received compensation.

**REQUEST NO. 11:** Please produce a copy of any documents, notes or records of any kind that you made or kept while employed by CMI concerning the facts made the basis of this lawsuit.

**RESPONSE:** Facts supporting the Answer to this request have not been discovered, and thus this response may be supplemented under Federal Rule of Civil Procedure 26.Plaintiff objects to this request in the ground That it is vague, overboard, and ambiguous.

**REQUEST NO. 12:** Please produce any and all documents evidencing or reflecting your receipt of any compensation from any source other than CMI.

**RESPONSE:** This response may be supplemented under federal rule of Civil Procedure 26. Plaintiff objects to this request on the ground that it is vague, overboard, and ambiguous, although plaintiff had received payments for compensation of his on call service.

**REQUEST NO. 13:** Please produce any tape recordings, audio, video or both, that you obtained and/or produced regarding the facts made the basis of this lawsuit.

**RESPONSE:** Plaintiff objects to this request on the ground that is unreasonably burdensome, oppressive, or vexatious, Facts supporting the Answer to this request have not been discovered, and thus this response may be supplemented under Federal Rule of Civil Procedure 26.

**REQUEST NO. 14:** Please produce any and all notes, memoranda or other documents which are mentioned, discussed or referred to in any of the interrogatories served toghethr with this request for production.

June 10, 2002


Mr. Tony Ashtiani


Dear Tony:

Per your request the following is a statement as to what we discovered when we met at the CMI HR Dept on Feb. 08, 2002.

Upon arriving at HR we asked to review your personnel file. Upon review, as observed by Robbi Crisostomo, we found two "EMPLOYEE ABSENTEE RECORD Calender Year 2001" forms in your P-file. One form had been punched for three ring binder purposes, and the other had no punch marks in it. The punched document had three weeks of attendance records missing from it while the unpunched document was completely filled in. We both commented to each other how odd that they would have two copies of the same thing for one employee.

Upon closer review we found that the two documents were different in detail. The unpunched document had much more detail on it, including worked holiday on 01/01/01, as well as indications of days where Tony apparently reported to work late. The punched document had no such notation on it. Also, the unpunched document shows the period from 6/17/01 thru 6/24/01 as "No Call/No Show" whereas the punched document merely shows those days as absence without leave, presumably indicating no sick leave to be paid.

While we cannot know for sure why the two documents are different, it would appear to me that the unpunched document was created after your termination to fill in the missing information the Company wanted to show as your attendance record. I believe the punched document came from Maint Dept records, where all employees attendance records are normally kept. The unpunched document appears to be an after termination review of your attendance, including more detail on your lates, and therefore a higher attendance incident record.

Although I have not reviewed all employees records, I do find it unusual that your file has two record sheets, and especially since the two have different information on them.

At that same meeting, we also did a rather thorough exam of your "Absence from Duty Report" records, or P-138. We found the following on these P-138 records. One P-138 was prepared on 6/111/01 for sick leave for 6/09-10. This appears normal. Another P-138 was also prepared for sick leave from 6/3-8 and also for PB (personal business) on 6/11-12. This strikes me as odd as the form was signed on 6/11, but it was for PB actually through 6/12. I would think that normally this would be prepared after the fact, rather than before the event had ended, as you never know if things will change until they have actually been completed. Filling out a form for what may happen tomorrow seems premature, until you can actually verify that PB was indeed used on 6/12/01. Then, we

*384*

discovered two P-138s prepared on 10/30/01. One indicates that Tony was out from 6/16-19 due to "Son III", but does not indicate whether this is PB, No Call/No Show, or Absence Without Leave. The second P-138 prepared on 10/30/01 is for the absence on 6/23-24. This indicates reason for absence as No Show.

First, this is unusual since the Company is required to fill out these forms within 10 working days of the incident, or within 10 days of when the employee returns. This clearly was not done. Or, another possibility is that P-138s were filled out in the appropriate time frame, but that new ones were done months later. Could it be that the original ones showed information that was not helpful to the Company's termination? We may never know, but I remain suspicious of the P-138s filled out so late after the incidents took place.

Second, the indications on these P-138s is inconsistent with other Company documents. These P-138s show an excused/unpaid leave from 6/16-19, and a No Show from 6/23-24. The punched EMPLOYEE ABSENTEE RECORD for CY2001 shows PB for 6/16 and W (or Absence without leave) from 6/17-24. The unpunched EMPLOYEE ABSENTEE RECORD for CY2001 shows PB for 6/16 and W (or Absence without leave) from 6/17-24, and further indicates the 6/17-24 were No Call/No Show. However, the Company letter of termination indicates No Call/No Show only on 6/23-24. Lastly, the duty roster shows Tony on PB for the entire 6/11 thru 6/24, except for 6/17, which Bill Herrera changed to No Call/No Show.

This difference between the various documents is highly unusual, and causes one to wonder if the 10/30/01 P-138 was to try to make records agree with the termination letter, rather than reflect the actual reason for absence.

It should be noted that there was only one "EMPLOYEE ABSENTEE RECORD" for CY2000.

I hope this letter clarifies what we discovered at HR on 2/8/01. Please let me know if you have any further questions.

Sincerely,

Stephen Wm. Martinez
Business Representative

385

## Cruz, Adrienne

| | |
|---|---|
| **From:** | Herrera, William A |
| **Sent:** | Monday, June 18, 2001 9:32 PM |
| **To:** | Cruz, Adrienne |
| **Cc:** | Babauta, Benjamin C; Tydingco, Bertha S; Mendoza, Glenn R; Baltazar Atalig |
| **Subject:** | Tony Ashtiani |

*Adrienne,*

*I just wanted something in writing concerning Tony Ashtiani and his current status of 2 days No-Call/No-Show. I e-mailed him earlier today and left numerous messages on his answering machine. I had Mike Pablo call him again at 2100 and he too left a message to call us and talk to a Supervisor. Crew scheduling shows that his wife is off for the rest of the month-I was checking to see if I can talk to her to get better information as to his disposition. I am writing this to you to serve as a memo for record to ensure I have tried to cover all the bases as far as trying to get a hold of Tony. Let me know if you have any other ideas anything short of going to his house to ensure he okay.*
*Bill*

*William A. Herrera*
*CMI Maintenance Supervisor*
*(671 )632-8910/8912*
*wherrera@csair.com*



1

## Babauta, Benjamin C.

**From:** McKinzie, Dixon
**Sent:** Thursday, December 02, 1999 9:14 AM
**To:** Babauta, Benjamin C.; Tydingco, Bertha S.; Perez, Frank; Mendoza, Glenn R.; Lujan, James; Cruz, Tony; Herrera, William A.
**Cc:** Halaby, Dimitri; Atalig, Baltazar
**Subject:** FW: MAHDI ALI

FYI, my numbers are below.
*Dixon*
dmckinzie@csair.com
Office: (671) 642-8877
Pager: (671) 476-8562
Cell: (671) 687-6354
Fax: (671) 642-8343 (private)

-----Original Message-----
**From:** Halaby, Dimitri
**Sent:** Thursday, December 02, 1999 7:14 AM
**To:** Benjamin Babauta; Bertha Tydingco; Frank Perez; Glenn Mendoza; James Lujan; Tony Cruz; William Herrera
**Cc:** Atalig, Baltazar; McKinzie, Dixon; Perez, Clarissa; Johnston, Billy
**Subject:** FW: MAHDI ALI

All Supv,

Mr. Mahdi Ali was given the required FMLA documents yesterday 01 Dec. He has 15 days to complete and return to us. When you receive the documents, contact the Dixon McKeinzie immediately, call him on his cell or page him if you have to. The company has 2 days to reply back. Until then, keep accurate documentation of  events and always have union rep present when discussing sensitive issues with Mr. Mahdi

*Dimitri C. Halaby*
Aircraft Maintenance Manager
Tel: 671-642-8653
Cell: 671-688-1545
*"Just Another Day in Paradise"*

-----Original Message-----
**From:** Lujan, James
**Sent:** Thursday, December 02, 1999 1:17 AM
**To:** Halaby, Dimitri
**Subject:** RE: MAHDI ALI

Page 1

473



YES ,MR. ALI DID CALL IN SICK. I DID INFORM BERT THAT I FORGOT TO WRITE IT IN THE TURN OVER SHEET.

-----Original Message-----
**From:** Halaby, Dimitri
**Sent:** Monday, November 29, 1999 7:36 AM
**To:** Lujan, James
**Subject:** FW: MAHDI ALI
**Importance:** High

*Jim,*

*Please let me know if Ali infact called you. I today.*

*Dimitri C. Halaby*
*Aircraft Maintenance Manager*
*Tel: 671-642-8653*
*Cell: 671-688-1545*
*"Just Another Day in Paradise"*

-----Original Message-----
**From:** Tydingco, Bertha S.
**Sent:** Thursday, November 25, 1999 10:58 PM
**To:** Atalig, Baltazar; Halaby, Dimitri
**Cc:** Blas, Adrienne; Babauta, Benjamin C.; Mendoza, Glenn R.; Lujan, James; Herrera, William
**Subject:** MAHDI ALI
**Importance:** High

ZAR OR DIMITRI,

ALI HAD FAXED HIS DOCTOR'S EXCUSE THURSDAY EVENING. WHATEVER THE CASE MAYBE
HE HAD INFORMED GLEN THAT HE CALLED IN SICK FOR THURSDAY AND LEFT A MESSAGE WITH JAMES LUJAN. WE NEED TO FIND OUT FROM JAMES IF THIS IS A TRUE STATEMENT, CAUSE
JAMES DID NOT TURN OVER ANY THING TO ME WHEN I RELEIVED HIM THAT NIGHT. ALSO, WHY DID
ALI REPORT BACK TO WORK IF HE KNEW HE WAS STILL SICK WITH A STIFF NECK AND THEN TO
COVER HIS BUTT HE HAD THE DOCTOR WRITE HIM OUT AN EXCUSE TO COVER HIM ALL THE WAY
TO FRIDAY THE 26TH OF NOV. I SERIOUSLY THINK SOMEONE NEEDS TO CK ON THIS DOCTOR EXCUSE
ISSUE.

BERT

Page 2

474

**From:** Herrera, William A
**Sent:** Tuesday, June 26, 2001 21:22
**To:** Atalig, Baltazar
**Cc:** Crisostomo, Robbi; Benjamin Babauta; Bertha Tydingco; Glenn Mendoza; William Herrera
**Subject:** FMLA-Tony Ashtiani

*Attention all concern,*

*Tony Ashtiani has received and accepted FMLA paperwork for his absence for the month of June 2001. I will forward the original paperwork to Adrienne for disposition.*

*William A. Herrera*
*CMI Maintenance Supervisor*
*(671 )632-8910/8912*
*wherrera@csair.com*

WHH 1/24/02

K

**001053**

5

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Mr. Dixon McKenzie
Human Resource Director
Continental Micronesia, Inc.
P.O. Box 8778
Tamuning, GU 96931

| PERSON FILING CHARGE |
| Ashtiani, Tony H |

THIS PERSON (check one)
- [X] CLAIMS TO BE AGGRIEVED
- [ ] IS FILING ON BEHALF OF ANOTHER

DATE OF ALLEGED VIOLATION

| Earliest | Most Recent |
|---|---|
| 07/12/2001 | 07/12/2001 |

PLACE OF ALLEGED VIOLATION
Tamuning, GU

CHARGE NUMBER
378A200115

## NOTICE OF CHARGE OF DISCRIMINATION
(See EEOC "Rules and Regulations" before completing this Form)

You are hereby notified that a charge of employment discrimination has been filed against your organization under:

- [X] **TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**
- [ ] **THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967**
- [ ] **THE AMERICANS WITH DISABILITIES ACT**
- [ ] **THE EQUAL PAY ACT (29 U.S.C, SECT. 206(d))** investigation will be conducted concurrently with our investigation of this charge.

The boxes checked below apply to your organization:

1. [ ] No action is required on your part at this time.
2. [X] Please submit by 02/08/02 a statement of your position with respect to the allegation(s) contained in this charge, with copies of any supporting documentation. This material will be made a part of the file and will be considered at the time that we investigate this charge. Your prompt response to this request will make it easier to conduct and conclude our investigation of this charge.
3. [X] EEOC has instituted a Mediation program which provides parties with an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please indicate that desire on the enclosed form and respond by 01/24/02 to Denise Bermond (45) 356-5044. If you **DO NOT** wish to participate in Mediation, you must submit a statement of your position to the Commission Representative listed below, by the above date.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

300 Ala Moana Blvd.
Room 7-127, Box 50082
Honolulu, Hawaii 96850

Emily Mauga
*(Commission Representative)*
(808) 541-3120
*(Telephone Number)*

[X] Enclosure: Copy of Charge

BASIS OF DISCRIMINATION
[ ] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [X] NAT. ORIGIN  [ ] AGE  [ ] DISABILITY  [ ] RETALIATION  [ ] OTHER

CIRCUMSTANCES OF ALLEGED VIOLATION
See enclosed Form 5, Charge of Discrimination.

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
|---|---|---|
| 01/10/2002 | Timothy A. Riera  Director | |

EEOC  FORM 131-ADR  (Test 02/00)                    **CHARGING PARTY'S COPY**



TO: HAMID ASHTIANI
FR: GLENN MENDOZA
SUBJ: ATTENDANCE
DATE: <u>14NOV99</u>

ON <u>NOV 20</u>, 1999, YOU WERE SCHEDULED TO WORK SWINGSHIFT. YOU WERE REGARDED A "NO SHOW" FOR FAILURE TO SHOW FOR WORK AND NO NOTICE GIVEN TO A SUPERVISOR. DUE TO THE SERIOUS NATURE OF THIS INCIDENT AND YOUR PASS ATTENDANCE RECORD, I WILL PLACE YOU AT THIRD INCIDENT LEVEL WHICH REQUIRES ME TO COUNSEL YOU AND PLACE THIS DOCUMENT IN YOUR PERSONAL FILE. TONY, YOUR "NO SHOW" CREATED A HARDSHIP TO THE OPERATION AND YOUR FELLOW EMPLOYEE, PLEASE REMEMBER THE STATUS YOU HOLD IN REGARDS TO SENIORITY. THE EXAMPLE YOU SET AFFECTS A GREAT NUMBER OF OUR AIRCRAFT TECHNICIANS. IF YOU HAVE ANY QUESTIONS REGARDING THIS LETTER, PLEASE ASK.

GLENN MENDOZA
LINE MX SUPV.

338

To: Raymond J. Griffin Jr.

I am an Aircraft Mechanic employed by Continental Micronesia Inc. I have worked for this company for 8 years. During my employment here I have witnessed many actions taken by supervision which were discriminatory, I have even been the recipient of extreme racial treatment here. I have had supervisor's who would not allow me to attend trainning assignments for no other reason than my Leadman telling them that the "WHITE GUYS HERE ARE LAZY AND USELESS"! There are mechanics here that have been late to work daily for as long as I can remember that get perfect attendance records every year, they are local, and for that reason they are not reprimanded. There have been local mechanics who have not aquired sufficeint trade days prior to going off Island, who have not made it back in time for scheduled work and the Supervisors simply cover it up and don't even bother to fill the vacant slot, let alone tell someone about it, or even record it. There are two seperate rule's at CMI, one for local mechanics and one for others. When it comes to enforcing discipline for mechanics making mistakes at work, locals receive far more lenient punishments for committing the same errors as those that are not local. Take a look at the employee records here and I'm sure you'll find numerous cases where similar mistakes have been made by many mechanics and yet the local mechanics punishments are far less severe than that received by others.

Tony Ashtiani has worked for this company for many years. I believe the company has not delt fairly with him. My name is Larry Kimball and I have written this letter to help shed light on this company's discriminatory treatment of it's employee's.

_Larry Kimball_

### CERITIED COPY

GUAM,U. S. A.,

On this 10th day of December, 2003, I certify that the preceding or attached document, and the duplicate retained by me as a notarial record, are true, exact, stated portion of LARRY KIMBAL'S LETTER TO RAYMOND J. GRIFFIN, JR., presented to me by the document's custodian TONY H. ASHTIANI, held in my custody as a notarial record, and that, to the best of my knowledge, are either public records nor publicly recordable documents, certified copies of which are available from an official source other than a notary.

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2006
P. O. Box 821, Hagatna, Guam 96982



# GRIEVANCE RECORD
## TEAMSTERS LOCAL 986
## INTERNATIONAL BROTHERHOOD OF TEAMSTERS

Member's name: **TONY ASHTIANI.** Date **DEC/19/99**.

Job Class. **TECHNICIAN** /Shift **SWING'S** Dept **MAINT** Work phone **642-8910** Ext _____

Member's address **P.O. BOX 12723** City **TAMUNING. GU** Zip Code **96931**

SS# **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** Date of Hire **1/14/1985** Home Phone: **734-5575**

Name of Company against whom you are filing grievance: **CONTINENTAL. MICRONESIA. iNC.**

Grievance is filed due to a contract violation of Article **26 & 30** Section **26. PAR "C" & 30 PAR "A"**

A management person to contact: **MR. GLENN. MENDOZA**

Name(s) of witness(es) to violation: **MR. RON. ROBERTS**

Shop Steward's name **MR. JUAN. CRUZ**

**INSTRUCTIONS:** Please print or type your grievance. Write down everything you can remember. What Happened? How did it happen? Who was there when it happened? Please allow a reasonable time for your grievance to be answered by the Company within the time limits set forth in your contract.

EXPLAIN GRIEVANCE IN DETAIL: **I BELIEVE CONTINENTAL MICRONESIA INC. HAS BEEN IN VIOLATION OF FAIR STANDARD PRACTICES ACT AMONG EMPLOYEES OF OUTSIDE HERITAGE & ANCESTRY.**

**MR. MENDOZA'S LETTER DATED NOV/14/99 IS INVALID AND IS PREMEDITATED TARGETING (FORM OF HARASSMENT) LETTER WAS WRITTEN PRIOR TO DATE OF INCIDENT!**

**THIRD LEVEL INCIDENT IS NOT PROPERLY SEQUENCED NO VERBAL COUNSELING PRIOR TO FIRST LEVEL INCIDENT.**

**THERE WAS NOT A PREMEDITATED "NO SHOW" OCCURED AT ALL. THIS WAS A SIMPLE TRADE INCIDENT. A MISUNDERSTANING BETWEEN TWO CO-WORKERS.**

RELIEF REQUESTED: **1) ALL MAINTENANCE SUPVS. MUST READ AND UNDERSTAND THE FEDERAL LAWS. IN REGARDS TO DEPT. OF LABOR. FAIR. STANDARD PRACTICE**

**2) THE CONTENTS. OF COMPLAIN WILL BE FORWARDED TO U.S. EQUAL. EMPLOYMENT OPPORTUNITY COMMISION IN HONOLULU. HI.**

Member's signature **T. Ashtia.**

COMPANY'S REPLY: **GRIEVANCE IS DENIED PER IBT AGREEMENT, PAGE 61 ARTICLE 24, ITEM K, STEP 1a. ALLEGATIONS MADE WILL BE HANDLED UNDER A SEPARATE PROCESS. D. HINLEY _____**

RECORD OF ACTION BY UNION: **Presented to MR. DIMITRI @ 0746 12/21/99**

AGENT **R. Ro—** DATE **12/21/99**

BUSINESS AGENT COPY