Tony H. Ashtiani
P.O.Box 12723
Tamuning Guam 96931
671-688-4844
671-653-5575

FILED
DISTRICT COURT OF GUAM
DEC 19 2003
MARY L. M. MORAN
CLERK OF COURT



# UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| | |
|---|---|
| Tony H. Ashtiani, | ) Civil Case No.: **02-00032** |
| Plaintiff, | ) |
| vs.. | ) **AFFIDAVIT OF TONY H. ASHTIANI TO** |
| | ) **AUTHENTICATE EXHIBITS ON** |
| Continental Micronesia Inc, | ) **RECORDS IN SUPPORT OF** |
| Dba, Continental Micronesia, | ) **OPPOSITION TO DEFENDANTS'** |
| Continental Airlines, | ) **MOTION TO STRIKE ASHTIANIS'** |
| | ) **EXHIBITS.** |
| Defendant. | ) |
| | ) **EXHIBITS 1 thru 55** |
| | ) |

Guam U.S.A        ) SS:

Municipality of Hagatna  )

**I , Tony. H. Ashtiani, being first fully sworn, depose and say:**

1. All the statements made in this affidavit are based on my personal knowledge.

2. All exhibits referred to herein and attached are records from CMI produced during meetings, production of documents, declarations, statements of my co-workers at own will to assist me. Declaration of Mark Williams. USC 28 & 1746. Evidence ; Documentary. Matthew & Bender forms states "A declaration under penalty of perjury may always be substituted for a sworn affidavit."

3.    I am over 18 years of age and fully competent to make this affidavit.

# ORIGINAL

4.     Attached hereto as Exhibit (1) and (1A) is a declaration of Vince Diaz Clearly stating that mechanics took sick calls and passed down verbally to supervisor and that mechanics that called another mechanic for sick calls were not considered no call/ no show, and were not reprimanded. This was in house policy at CMI maintenance department. Also See Vince Diaz's Affidavit.

5.     Attached hereto as Exhibit (2) and (2A) is Joe Pangelinan's original declarations stating that Ashtiani did call on Jun 23 2001 due to his son's illness.

6.     Attached hereto as Exhibit (3) and (3A) is Joe Pangelinan's original declarations stating he passed verbally to Glenn Mendoza that Ashtiani would not be in Jun 23, and 24, 2001.

7.     Attached hereto as Exhibit (4) and (4A) is Ron Roberts original declarations stating "I was told by one supervisor if Glenn would of told me Tony called in all this would not be happening".

8.     Attached hereto as Exhibit (5)  is a true and correct copy of Ashtiani's first and only evaluation On Jun ,09, 1992  authored by Paul Richards inspection supervisor at Lax airport ,Continental Airlines.

9.     Attached hereto is Exhibit (6) is a true and correct copy of The pacific employer published by Carlsmith Ball, law firm representing defendant stating the importance of written performance evaluation.

10.    Attached hereto Exhibit (7) is a true and correct copy of attendance audit by William Herrera for year 2000 to May ,15 ,2001 showing Ashtiani had (1) sick day and it is erroneously accelerated to level 3.

11.  Attached hereto is Exhibit (8)  is a true and correct copy of Steve Martinez's Facsimile with electronic digital signature on top of page (Fed Rule Evid 901 (b)(4),(9)) as and admissible evidence under the rule dated June 10, 2002, in reference to fabricated attendance record by CMI.

12.  Attached hereto as Exhibit (9) is a true and correct copy of Fabian Therrell's statement dated October 06, 2002, that trade days are non accountable attendance.  Admissible evidence because signature is of defendant's employee.

13.  Attached hereto as Exhibit (10) is a true copy and correct copy of Perfect attendance rewards program that Trade days are non-accountable attendances.

14.  Attached hereto as Exhibit (11) is a true and correct copy of Form P-138 showing Joby Okada starting to take time off from Nov 28, 1999 for sick grandmother (Okada as my comparator) time off was signed by Glenn Mendoza.

15.  Attached hereto as Exhibit (12) is a true and correct copy of swing shift schedule indicating that Joby Okada continued his absences for over 30 days for whole month of December 1999 as comparative worth Ashtiani was unable to take the same time off for his own biological son.

16.  Attached hereto as Exhibit (13) is a declaration of Attorney Mark Williams in reference to meeting on Jul 02 2001.

17.  Attached hereto as Exhibit (14) is a true and correct copy of Ashtiani's letter to CMI requesting information in reference to a Meeting On July ,02,2001.

18.  Attached hereto as Exhibit (15) is a true and correct copy of GCA Title 22 clearly states (d) "Representative Includes **any** person chosen by an employee to represent him".

19. Attached hereto as Exhibit (16) is a true and correct copy of Teresa Sage On July 02, 2001. Defendants production of document (# 000929)  11 minutes after meeting

20. Attached hereto as Exhibit (17) is a true and correct copy of defendants production of documents (# 000225) requesting plaintiff's pay check on Jun 28 2001 prior to the meeting on Jul 02 2001. admissible evidence corporate letter head under rule 901(b)(4)(9).

21. Attached hereto as Exhibit (18) is a true and correct copy of unauthorized employment practices Civil rights federal statute 42 USC SEC 2000e2 (703)(2)(D) clearly states "Nothing in this Subsection shall construed to authorize or permit the denial to **any person** of the due process of law requires by the constitution."

22. Attached hereto as Exhibit (19) is a true and correct copy of list of minorities among majorities from December 1999 to July 2001.

23. Attached hereto as Exhibit (20) is a true and correct copy of 3 minorities that were terminated in the period from December 1999 to July 2001. indicating while 9.2 percent of minorities occupied the work force they received 100 percent of all terminations.

25. Attached hereto as Exhibit (21) is a true and correct copy of letter dated April 22, 1994 acting DC-10 Chief pilot Craig Brownrigg commending Ashtiani  for outstanding work performance.

26. Attached hereto as Exhibit (22)  is a true and correct copy of letter dated August 28, 1994 DC-10 captain Steve Bowman commending Ashtiani for his outstanding dedication and leadership.

27. Attached hereto as Exhibit (23) is a true and correct copy of letter dated February 20 1997 from director Jim Bennett commending Ashtiani for his commitment to CMI.

28.   Attached hereto as Exhibit (24) is a true and correct copy of statement dated September 15 2002 of Fabian Therrell stating that Ashtiani is a hard worker and that Sherman Thompson was forced to lie to EEOC.

29.   Attached hereto as Exhibit (25) is a true and correct copy of statement dated May 20, 2002 of Fabian Therrell stating that " I have never, till this very day, been told a supervisor must take the call."

30.   Attached hereto as Exhibit (26) is a true and correct copy of CMI e-mail dated December 02 ,1999 admitting that Management is well aware to respond within two days to reply back to FMLA certificate.

31.   Attached hereto as Exhibit (27) is a true and correct copy of CMI produced document # 000254 dated October 30 2001 (4) months after my termination indicating that Ashtiani was No- show on June 23-24 2001. which is pretext due to declarations exhibits provided 1,2,3, and also See affidavit of Vince Diaz.

32.   Attached hereto as Exhibit (28) is a true and correct copy of new letter in EEOC web cite by EEOC director "Subjecting workers to harassment because of their race can be costly to business, not only in monetary terms, but also in terms of increased absenteeism and health care costs, and lower productivity and employee morale.

33.   Attached hereto as Exhibit (29) is a true and correct copy of shift turn over log dated April ,03, 2002, indicating Tony Rodriguez mechanic called to Roger Ruiz lead not in supervisory capacity of CMI.

34.   Attached hereto as Exhibit (30) is a true and correct copy of shift turn over log dated May 14, 2002, indicating Junior Martinez mechanic called to Victor Saclot another mechanic not in supervisory capacity of CMI.

35.     Attached hereto as Exhibit (31) is a true and correct copy of shift turn over log dated May 27, 2002, indicating Marlon Raqueno mechanic called another mechanic Fabian Therrell Also not in supervisor capacity.

36.     Attached hereto as Exhibit (32) is a true and correct copy of letter from dated June 14, 2002 to Continental Airlines requesting information of statistics.

37.     Attached hereto as Exhibit (33) is a true and correct copy of Continental Airlines respond dated June 18 2002 to EEOC intentionally delaying respond and placing July 3, 2002 as Ashtinai's termination date was July 3, 2001.

38.     Attached hereto as Exhibit (34) is a true and correct copy of Continental Airlines respond dated July 10, 2002 moving beginning dates Six months ahead to January 1, 2000 and moving ending dates to July 3, 2001 as to conceal statistical data from EEOC. Corporate letter head.

39.     Attached hereto as Exhibit (35) is a true and correct copy of Ashtiani's benefit confirmation sheet dated May 06 ,2001, indicating employee was being deducted for 500,000 Accidental Death and dismemberment.  Corporate letter head.

40.     Attached hereto as Exhibit (36) is a true and correct copy of the cover letter indicating Ruben Warner Associates, inc and indicate 31 days as Statute of limitations. Corporate letter head

41.     Attached hereto as Exhibit (37) is a true and correct copy of the envelope that was intentionally delayed as in cover letter in Exhibit (36)  indicates statute of limitation of 31 days and this envelope containing the letter was post dated 38 days after the date of termination.  Envelope has corporate logo.

42.     Attached hereto as Exhibit (38) is a true and correct copy of Ruben Warner Associate, Inc located at bottom of the page and that the amount 500,000 was different size that 50,000. Corporate Letter head.

43.     Attached hereto as Exhibit (39) is a true and correct copy of insurance directory phone numbers by zip codes which I searched on the internet on January 2 , 2002.

44.     Attached hereto as Exhibit (40) is a true and correct copy of fax cover sheet as page (1) by Ruben Warner received on January 03 2002.

45.     Attached hereto as Exhibit (41) is a true and correct copy of fax by Ruben Warner as page (2). Following day I spoke to a insurance sales and marketing employee I was informed that this insurance policy is invalid for Non US. Residents (Guam residents). Noted that 250,000 numbers were same size as the 50,000 and that CMI had tampered with this document.

46.     Attached here to as Exhibit (42)  is a true and correct copy of Ruben Warner Associates, inc and it was brought to attention of CMI human resources benefit specialist and policy number was changed and it was initialed by Annie Duenes..

47.     Attached hereto as Exhibit (43) is a true and correct copy of  EEOC issue new guidance on discrimination in employee benefits.

48.     Attached hereto as Exhibit (44) is a true and correct copy of  Notice of discrimination dated January 10, 2002.

49.     Attached hereto as Exhibit (45) is a true and correct copy of my visit to PMC regarding my son and I was unable to see Mathew's own pediatric in earlier week because Dr. Wolff was off island , I did call the nurse and  was told to give him Motrin.

50.    Attached hereto as Exhibit (46) is a true and original of my spouse and I visit to CMI clinic dated July ,5 ,2003 when my son was sick again because he keeps sucking his thumb, as Dr. Tobias notes indicates "No sucking thumb".

51.    Attached hereto as Exhibit (47) is a true and original of my spouse and I visit to CMI clinic dated September ,24, 2003 Matthew had flu and was sick again and Dr. Lom had also indicated Motrin , which is exactly what I was told to do by PMC nurse when I called to make appointment or walk in , I was told to administrate Motrin and don't bring him because of measles outbreak among children at clinic.

51.    Attached hereto as Exhibit (48) is a true and correct copy of shift schedule on June 26 2001 my last day at work. Which I was assigned to work on two aircrafts by myself and on the second aircraft my assignment states that belly  load stretcher kit in forward Bin (Cargo bay). I followed my assignment. Usually there are two men assigned to this task by supervisor. These sheets are 11 by 14 inches and have no dates, only the back side has dates, sheets are reduced on copy machine and handed out to mechanics.

52.    Attached hereto as Exhibit (49) is a true and correct copy of Charles Salzberg M.D., indicating my Jun 26, 2001, injury lifting heavy object by myself.

53.    Attached hereto as Exhibit (50) is a true and correct copy of international brother hood of teamsters grievance form dated December 19, 1999 against Glenn Mendoza, punishing minorities to max for no apparent reasons and simply threatening employer is a protected activity.

54.    Attached hereto as Exhibit (51) is a true and correct copy of CMI letter authored by maintenance manager Keith Higgins stating less pay for minorities transferring from

Continental Airlines to CMI . There is no provision in EPA (Equal Pay Act) that allows union contract to supersedes Federal Laws.

55.    Attached hereto as Exhibit (52) is a true and correct copy of EEOC fax from asking charging party to request for Notice of Right to Sue and CP declined.

55.    Attached hereto as Exhibit (53) is a true and original of undated letter of Larry Kimball to EEOC Raymond Griffin describing desperate treatment of different class of employees at CMI. Admissible signed by defendant employee.

56.    Attached hereto as Exhibit (54) is a true and correct copy of defendants production of documents (#000325) dated February 1993 of Mr. James Lujan's discussion of attendance sheet in regards to Ashtiani even though Lujan referred to me by racial slurs, he liked me because I was hard worker, he always commended me for my DC-10 Knowledge

57.    Attached hereto as Exhibit (55) is a true and correct copy of November 2001 Continental Times indicating all DC-10-10 and DC-10-30 parked in Mojave Desert.  All DC-10 were exited on or about September 2001 (6 weeks after Ashtiani's termination).

**I declare under penalty of perjury that the forgoing is true and accurate to the best of my knowledge.**

Further Affiant sayeth nauth.

Executed this _19 TH_ day of December , 2003. at _Hagatna_ , Guam.


**SUBSCRIBED AND SWORN** to before me, this _17th_ day of December 2003, by Tony H. Ashtiani.

BENJAMIN G. GALARPE
NOTARY PUBLIC
In and for Guam, U.S.A
My Commission Expires: August 9, 2005
P. O. Box 821, Hagatna, Guam 96982

# DECLARATION

DECLARATION OF Vince Diaz:

I, Vince Diaz declare as follows:

I am an aircraft mechanic at CMI.

Mechanics other than supervisor in the maintenance Department took sick call messages from other employees.

Messages of incoming sick calls were either noted in the shift turner log, or on the message board or passed on verbally to the supervisor on duty.

I have personal knowledge mechanics that called another mechanic for sick calls were not considered No-call/ No- show, and were not reprimanded . This was the in house policy at CMI maintenance department.

I declare that I have first hand knowledge of the forgoing facts. That I have read the forgoing statement and that the information contained herein is true and correct to the best of my knowledge and belief, and that if called as a witness, I could testify competently thereto. I further hereby declare that this declaration is executed under penalty of perjury at _____TOTO_____, Guam. On ___12|15|03___ .


Vince Diaz
_____
Printed Name                                        Signature

EXH (1)

# DECLARATION

DECLARATION OF Vince Diaz:

I, Vince Diaz declare as follows:

I am an aircraft mechanic at CMI.

Mechanics other than supervisor in the maintenance Department took sick call messages from other employees.

Messages of incoming sick calls were either noted in the shift turner log, or on the message board or passed on verbally to the supervisor on duty.

I have personal knowledge mechanics that called another mechanic for sick calls were not considered No-call/ No- show, and were not reprimanded . This was the in house policy at CMI maintenance department.

I declare that I have first hand knowledge of the forgoing facts. That I have read the forgoing statement and that the information contained herein is true and correct to the best of my knowledge and belief, and that if called as a witness, I could testify competently thereto. I further hereby declare that this declaration is executed under penalty of perjury at ____TOTO____, Guam. On __12/15/03__.


Vince Diaz
_____
Printed Name

Signature

EXHiBiT
(1 A)

# DECLARATION

DECLARATION OF JOE . PANGELINAN.

I, Joe Pangelinan declare as follows:

My name is Joe Pangelinan, at my own will I testify that Tony Ashtiani did call on June 23, 2001 at approx. 1250 p.m. that Tony informed me he will not be in due to illness of his son and he would not be in on June 23 and 24 , 2001.

If you have any questions please contact me at Cell 687-2303. Hm. 789-1946.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at _AGANA_ , Guam. on this _17_ day of November 2003.

_JOSEPH M. PANGELINAN_

Printed Name

Signature

EXHIBIT (2)

# DECLARATION

DECLARATION OF JOE . PANGELINAN.

I, Joe Pangelinan declare as follows:

My name is Joe Pangelinan, at my own will I testify that Tony Ashtiani did call on June 23, 2001 at approx. 1250 p.m. that Tony informed me he will not be in due to illness of his son and he would not be in on June 23 and 24 , 2001.

If you have any questions please contact me at Cell 687-2303. Hm. 789-1946.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at _AGANA_ , Guam. on this _17_ day of November 2003.

_JOSEPH M. PANGELINAN_

Printed Name

Signature

ExHibiT
(2A)

# DECLARATION

DECLARATION OF JOE . PANGELINAN.

I, Joe Pangelinan declare as follows:

In addition to previous declaration, I had informed Mr. Mendoza that duty supervisor on duty that Tony Ashtiani would not be in on Jun 23 & 24 2001 at approx 1300, shift starts at 1330.

In reference to Mr. Sherman Thompson's statement everyone in the dept knew Tony Ashtiani was of Iranian descent on several occasion Mr. Sherman Thompson would talk Politics about Iran with Tony Ashtiani. Sherman Thompson on different occasions would refer to Tony Ashtiani as his "Persian Brother" or "Iranian Brother." Sherman Thompson is misleading the investigator on Tony Ashtiani knowledge of his nationality.

My personal view on the situation is Mr. Tony Ashtiani is a very respectable and knowledgeable individual in our dept. Please consider his case.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at _____, Guam. on this _____ day of November 2003.

_____
Printed Name

_____
Signature

ExHibiT (3)

# DECLARATION

DECLARATION OF JOE . PANGELINAN.

I, Joe Pangelinan declare as follows:

In addition to previous declaration, I had informed Mr. Mendoza that duty supervisor on duty that Tony Ashtiani would not be in on Jun 23 & 24 2001 at approx 1300, shift starts at 1330.

In reference to Mr. Sherman Thompson's statement everyone in the dept knew Tony Ashtiani was of Iranian descent on several occasion Mr. Sherman Thompson would talk Politics about Iran with Tony Ashtiani. Sherman Thompson on different occasions would refer to Tony Ashtiani as his "Persian Brother" or "Iranian Brother." Sherman Thompson is misleading the investigator on Tony Ashtiani knowledge of his nationality.

My personal view on the situation is Mr. Tony Ashtiani is a very respectable and knowledgeable individual in our dept. Please consider his case.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at _AGANA_ , Guam. on this _17_ day of November 2003.


JOSEPH M. PANGELINAN
_____
Printed Name

_____
Signature

EXHIBIT
(3A)

# DECLARATION

DECLARATION OF RON ROBERTS .

I, Ron Roberts declare as follows:

During the month of December on or about 11th, 2001. I Ronald Roberts went to Mr. Jim Hammer's office to talk to him about man power. Because of the recent layoff of Aircraft Mechanics when I asked Mr. Hammer about bringing back Mr. Wong (Ed), because we were told, by Mr. John Carbullido who took a year leave of absents. John was told by Mr. Hammer he was recalling Ed Wong. But this was only to keep John Happy until he left. Mr. Hammer had no intentions of bring anyone back, In fact, Mr. Hammer had told me we were still 6 people over-manpower. So I asked Mr. Hammer about Tony Ashtiani who I feel was wrongfully released from the Company because of two supervisor's not communicating with each other. I was told by one supervisor Bill Herrera "If Glenn would of told me Tony Called in all this would not be happening."

Mr. Hammer told me that after the recent event of 9-11 "That Tony Ashtiani would never work around these aircraft again if he could do anything about it because he could not trust people like Mr. Ashtiani." End of statement.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at _Yigo_____, Guam. on this _20th_ day of November 2003.


RON  ROBERTS

Printed  Name

Signature

EXHIBIT (4)

# DECLARATION

DECLARATION OF RON ROBERTS .

I, Ron Roberts declare as follows:

During the month of December on or about 11th, 2001. I Ronald Roberts went to Mr. Jim Hammer's office to talk to him about man power. Because of the recent layoff of Aircraft Mechanics when I asked Mr. Hammer about bringing back Mr. Wong (Ed), because we were told, by Mr. John Carbullido who took a year leave of absents. John was told by Mr. Hammer he was recalling Ed Wong. But this was only to keep John Happy until he left. Mr. Hammer had no intentions of bring anyone back, In fact, Mr. Hammer had told me we were still 6 people over-manpower. So I asked Mr. Hammer about Tony Ashtiani who I feel was wrongfully released from the Company because of two supervisor's not communicating with each other. I was told by one supervisor Bill Herrera "If Glenn would of told me Tony Called in all this would not be happening."

Mr. Hammer told me that after the recent event of 9-11 "That Tony Ashtiani would never work around these aircraft again if he could do anything about it because he could not trust people like Mr. Ashtiani." End of statement.

If called as a witness, I would and could testify competently testify thereto to all facts within my personal knowledge except where stated upon information and belief. I further hereby declare that this declaration is executed under penalty of perjury at YIGO _____, Guam. on this 20th day of November 2003.


RON ROBERTS                           Ren Robert (signature)

Printed Name                          Signature

GUAM, U. S. A.,

**CERTIFIED COPY**

On this 26th day of November, 2003, I certify that the preceding or attached document, and the duplicate retained by me as a notarial record, are true, exact, stated portion of the "DECLARATION OF RON ROBERTS", presented to me by the document's custodian TONY H. ASHTIANI, held in my copy

Mr Roberts signed Two declaration , This Document was Typed by notery Public as Error, (Elder Gentleman) and I stopped him when I noticed it is original. Exhibit (4A) is Also Declaration of Mr. Ron Roberts .

Dec, 18, 2003 . Tony. Ashtiani .   T. ASH (signature)

EXHibiT (4A)

# Continental

RECEIVED
JUN 09 1992

## Employee Evaluation/Progress Report

**TECHNICAL SERVICES DIVISION**
R. V. HARDISTY

☐ New Hire   ☑ Upgrade   ☐ Transfer   ☐ Annual

EMP. NAME Tony Ashtiani   EMP. NUMBER 05963   EVALUATION PERIOD: FROM: 4-27-92 TO: 6-3-92

STATION LAX   DEPT. Inspection   JOB CLASS Inspector

### (✓) MARK GRADING AS IT APPLIES TO INDIVIDUAL BEING EVALUATED

**WORK QUALITY**
☐ ERRORS IMPAIR VALUE OF WORK
☐ WORK REQUIRES CONSTANT INSPECTION
☑ WORK IS USUALLY RELIABLE AND ACCURATE
☐ RARELY ANY ERRORS IN WORK

**WORK ABILITY**
☐ WORK NOT FINISHED IN TIME ALLOWED
☐ USUALLY WORK NOT FINISHED IN TIME ALLOWED
☑ USUALLY WORK COMPLETED IN TIME ALLOWED
☐ WORK ALWAYS COMPLETED IN TIME ALLOWED

**WORKING WITH OTHERS**
☐ ANNOYS OTHERS
☐ DOES NOT FIT EASILY INTO THE CREW
☑ ACCEPTABLE TO ASSOCIATES
☐ PROMOTES GOOD FEELING

**UNDERSTANDING OF JOB**
☐ REQUIRES REPEATED INSTRUCTION/DEMONSTRATION BY SUPERVISOR
☐ REQUIRES DETAILED EXPLANATION OF PROBLEM AND METHOD
☑ UNDERSTANDS READILY IF PROBLEM AND METHOD ARE OUTLINED
☐ REQUIRES LITTLE OR NO HELP TO UNDERSTAND

**USE OF TIME**
☐ WASTES TIME WALKING AROUND AND TALKING TO OTHERS
☐ NEEDS PRODDING OCCASIONALLY
☑ WORKS STEADILY
☐ HABITUALLY DRIVES SELF

**JOB KNOWLEDGE** - How well does employee know job?   U   P   ⓢ   VG   EX

**DEPENDABILITY** - How well employee works without supervision in relation to when supervisor is present   U   P   S   (VG)   EX

**EXPRESSION** - How well employee effectively expresses thoughts and ideas. (Make distinction between oral and written, if different)   U   P   ⓢ   VG   EX

**COOPERATION/GENERAL ATTITUDE** - Cooperation and all around attitude displayed towards work, fellow employees, and conformance to company policy and procedures   U   P   S   (VG)   EX

**JUDGEMENT AND COMMON SENSE** - Judgement and common sense displayed in reaching wise decisions in emergencies or embarrassing situations as well as in routine work   U   P   S   (VG)   EX

**INITIATIVE** - Alertness in pointing out faults or possible improvements, making suggestions, going ahead without being told, etc.   U   P   S   (VG)   EX

BRIEFLY OUTLINE WHAT EMPLOYEE DOES TO FIT OR IMPROVE SELF FOR PRESENT JOB  I find Tony at the reader Printer Looking up Limits, Asks other Inspectors For help when needed and Myself if I'm available to help.

WHAT APPEAR TO BE EMPLOYEE'S THREE STRONGEST POINTS  appears to be aggresive, Questions Mechanics on The Job & has good attitude

WHAT APPEAR TO BE EMPLOYEE'S (THREE IF POSSIBLE) WEAKEST POINTS  If Tony Continues as he is Today he will be a good Inspector.

**000115**

ADDITIONAL COMMENTS _____

IN ANY CASE, WHAT SHOULD EMPLOYEE DO TO IMPROVE  Continue To work as he is now Doing

**ATTITUDE:**   ☑ FRIENDLY   ☑ COOPERATIVE   ☐ GRATEFUL   ☐ FAIR DESIRE TO IMPROVE   ☐ BELLIGERENT   ☐ CRITICAL
☐ NOT INTERESTED   ☑ STRONG DESIRE TO IMPROVE   ☐ EMPLOYEE NOT CONVINCED EVALUATION WAS ACCURATE

I acknowledge examination of this report.

T. Ashtiani
(Employee Signature)

6/9/92
(Date)

Paul Richard   Inspection Supv.
(Signature/Title of Evaluator)

6-9-92
(Date of Interview)

Exhibit (5)

DISTRIBUTION: ADMIN. FILE (WHITE)   EMPLOYEE (YELLOW)   STATION FILE (PINK)

cies; operational procedures; performance standards; and corporate goals.

✔ Effective Communication Systems. Employees perform best when they know what to expect and what is expected of them. To maximize employee performance, you need to develop communication lines to keep everyone informed and coordinated. Consider using one or more of the following communication systems: meetings (management, department, team, general staff); personnel policies and handbooks; employee newsletters; company bulletin boards; occasional memorandums or letters to employees; and suggestion or question boxes.

**Give Employees an Opportunity to Meet the Performance Standards.** Employees need to know whether they are performing up to company expectations or not. Consequently, it's important to establish mechanisms which give employees periodically feedback on how they are doing. Think about:

✔ Employee Compensation. Employers tend to think of compensation in terms of "compliance" (with wage and hour requirements) and "competition" (with respect to recruitment and retention of qualified workers, and staving off unionization). But compensation can also be used as a tool to reward performance and other conduct that is consistent with the company's goals. Remember, sometimes you get more with a "carrot" than a "stick."

✔ Written Performance Evaluations. This can be a powerful communication tool. It gives the company an opportunity to identify the areas in which an employee is doing well, as well as the areas that need improvement. However, like all tools, it must be consistently and uniformly implemented if it is to be effective. Supervisors and managers must *complete* the forms and provide frank feedback.

✔ Internal Grievance Procedures. Grievance procedures give employees an opportunity to voice their concerns about workplace issues or situations they do not agree with. The procedures also gives management a chance to see an issue from the employee's point of view (which can be useful for performance issues), and resolve it before it erupts into union organizing, an administrative agency complaint, or a lawsuit.

**Taking Corrective Action.** Before taking any corrective action, you need to determine whether the problem is really the employee's fault. In other words, have you defined the procedures, standards and rules that apply to the employee? If not, the problem may not be the employee's fault and it may be necessary for you to redefine the company's procedures, standards and rules.

If, however, you determine the problem is specific to the employee, then counseling may be appropriate. Remember "counseling" is educating an employee on how to do their job correctly or how to meet performance standards. Employees who <u>cannot</u> do something should be counseled.

Once you are certain the employee has been informed of the applicable requirements and performance standards for his/her job, and he/she has been given a reasonable opportunity to achieve, termination may be appropriate. If you have the "fundamentals" in place, and you have made efforts to communicate with the employee about his/her performance deficiencies, you should have documentation to support your decision to terminate the employee for his/her failure or refusal to meet performance standards. Although there is no guarantee that a properly documented termination will discourage an employee from suing, the documentation will help the company to prove that it has a "legitimate, nondiscriminatory reason" for terminating the employee for poor performance.

*EXHIBIT*
*(6)*

©2003 Carlsmith Ball LLP. *The Pacific Employer* is copyrighted by Carlsmith Ball LLP. It is a violation of federal copyright law to photocopy or reproduce this newsletter, in any form, in whole or in part, without the written consent of Carlsmith Ball LLP.

Please note that the contents of this newsletter are for general information purposes only.
It does not constitute legal advice or a legal opinion. Readers should retain the services of qualified counsel for legal advice.

Case 1:02-cv-00032    Document 143    Filed 12/19/2003    Page 19 of 76

# ATTENDANCE AUDIT

**Date:** 5/14/2001

**To:** Tony Ashtiani

**From:** William A. Herrera

**RE:** QUARTER ATTENDANCE AUDIT

---

An attendance audit for the quarter of 2000 ending May 13, 2001 shows the following:

1) Accountable incidents____1____.

2) Sick days____1____.

3) Tardy____0____.

This is to inform you of your standing of level __3__ as of this date.

William A. Herrera

CMI Maintenance Supervisor



**000025**

EXHIBIT
(7)

June 10, 2002

Mr. Tony Ashtiani

Dear Tony:

Per your request the following is a statement as to what we discovered when we met at the CMI HR Dept on Feb. 08, 2002.

Upon arriving at HR we asked to review your personnel file. Upon review, as observed by Robbi Crisostomo, we found two "EMPLOYEE ABSENTEE RECORD Calender Year 2001" forms in your P-file. One form had been punched for three ring binder purposes, and the other had no punch marks in it. The punched document had three weeks of attendance reords missing from it while the unpunched document was completely filled in. We both commented to each other how odd that they would have two copies of the same thing for one employee.

Upon closer review we found that the two documents were different in detail. The unpunched document had much more detail on it, including worked holiday on 01/01/01, as well as indications of days where Tony apparently reported to work late. The punched document had no such notation on it. Also, the unpunched document shows the period from 6/17/01 thru 6/24/01 as "No Call/No Show" whereas the punched document merely shows those days as absence without leave, presumably indicating no sick leave to be paid.

While we cannot know for sure why the two documents are different, it would appear to me that the unpunched document was created after your termination to fill in the missing information the Company wanted to show as your attendance record. I believe the punched document came from Maint Dept records, where all employees attendance records are normally kept. The unpunched document appears to be an after termination review of your attendance, including more detail on your lates, and therefore a higher attendance incident record.

Although I have not reviewed all employees records, I do find it unusual that your file has two record sheets, and especially since the two have different information on them.

At that same meeting, we also did a rather thorough exam of your "Absence from Duty Report" records, or P-138. We found the following on these P-138 records. One P-138 was prepared on 6/111/01 for sick leave on 6/09-10. This appears normal. Another P-138 was also prepared for sick leave from 6/3-8 and also for PB (personal business) on 6/11-12. This strikes me as odd as the form was signed on 6/11, but it was for PB actually through 6/12. I would think that normally this would be prepared after the fact, rather than before the event had ended, as you never know if things will change until they have actually been completed. Filling out a form for what may happen tomorrow seems premature, until you can actually verify that PB was indeed used on 6/12/01. Then, we

EXHIBIT
(8)

384

discovered two P-138s prepared on 10/30/01. One indicates that Tony was out from 6/16-19 due to "Son Ill", but does not indicate whether this is PB, No Call/No Show, or Absence Without Leave. The second P-138 prepared on 10/30/01 is for the absence on 6/23-24. This indicates reason for absence as No Show.

First, this is unusual since the Company is required to fill out these forms within 10 working days of the incident, or within 10 days of when the employee returns. This clearly was not done. Or, another possibility is that P-138s were filled out in the appropriate time frame, but that new ones were done months later. Could it be that the original ones showed information that was not helpful to the Company's termination? We may never know, but I remain suspicious of the P-138s filled out so late after the incidents took place.

Second, the indications on these P-138s is inconsistent with other Company documents. These P-138s show an excused/unpaid leave from 6/16-19, and a No Show from 6/23-24. The punched EMPLOYEE ABSENTEE RECORD for CY2001 shows PB for 6/16 and W (or Absence without leave) from 6/17-24. The unpunched EMPLOYEE ABSENTEE RECORD for CY2001 shows PB for 6/16 and W (or Absence without leave) from 6/17-24, and further indicates the 6/17-24 were No Call/No Show. However, the Company letter of termination indicates No Call/No Show only on 6/23-24. Lastly, the duty roster shows Tony on PB for the entire 6/11 thru 6/24, except for 6/17, which Bill Herrera changed to No Call/No Show.

This difference between the various documents is highly unusual, and causes one to wonder if the 10/30/01 P-138 was to try to make records agree with the termination letter, rather than reflect the actual reason for absence.

It should be noted that there was only one "EMPLOYEE ABSENTEE RECORD" for CY2000.

I hope this letter clarifies what we discovered at HR on 2/8/01. Please let me know if you have any further questions.

Sincerely,

Stephen Wm. Martinez
Business Representative

ExHibiT
(8)

385

06 OCT 02


MR. TIMOTHY A. RIERA
EEOC DIRECTOR
300 ALA MONA BLVD, ROOM 7-127
HAWAII LOCAL OFFICE
HONOLULU HAWAII 96850


DEAR MR. RIERA


I'M WRITING THIS STATEMENT IN REGARDS TO TONY ASHTIANI'S
ALLEGED ATTENDANCE AT CONTINENTAL MICRONESIA DURING THE
YEARS 2000-2001.

I PERSONALLY PROFFERED TONY'S TRADE DAYS OFF. THERE WERE NO
INTERFERRENCE IN THE OPERATIONAL NEEDS.

THIS WAS A UNION OPTION, AND EVERY ONE TRADES , IF SOME ONE
TRADED DAYS OFF 365 DAYS IN A YEAR THEY STILL BE ELIGIBLE FOR THE
PERFECT ATTANDANCE AWARD TRADE DAYS ARE CONSIDERED NON-
ACCOUNTABLE ATTANDANCES.

WHILE EVERY ONE WAS TRADING OFF WITH EACH OTHER INCLUDING
TONY A. MANAGEMENT HAD NO COMPLAINTS.


THANK YOU


FABIAN THERRELL
Tele # 671- 647- 5387


483

EXHIBIT
(9)

# PERFECT ATTENDANCE REWARDS PROGRAM

## Non Accountable Absences

1. Any absence that is documented by medical certification under the Family/Medical Leave Act
2. Vacations
3. Holidays
4. Trade Days Off
5. Personal Emergency (critical illness or death in the immediate family)
6. Jury Duty and/or Witness service on behalf of Continental Micronesia
7. Compensatory Time Off
8. Declared Adverse Weather Day
9. Military/Reserve Leave
10. A.U.T.O.'s – Authorized Unpaid Time Off (WOP)

## Accountable Absences

1. Lates
2. No Shows
3. Sick Leave
4. Medical Leave
5. Maternity Leave
6. Occupational Injury
7. Educational Leave
8. Company Offered Leave of Absence
9. Furloughs
10. Personal Leave of Absence

## Eligibility

All full time and part time employees of CMI (except management over grade 45).

EXHIBIT 487
(10)

# Continental Micronesia



**Employee Number:** _A 11 ( 1_

## ABSENCE FROM DUTY REPORT

**Date Prepared:** _C 3 Nov 99_

**INSTRUCTIONS**

1. SICK LEAVE: Immediately upon return to work or at the end of each pay period whichever first occurs.
2. OCCUPATIONAL INJURY LEAVE: Immediately when injury necessitates absence from duty.
3. VACATION: Prior to the start of the vacation period; OR when a paycheck is desired before the start of the vacation period, this form must be **received** in Payroll FOURTEEN (14) CALENDAR days **prior** to the date the check is desired.
4. OTHER: Immediately upon return to work or at the end of each pay period whichever first occurs.

Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee

**(Attach Doctor's Certificate When Requesting)**

**SICK LEAVE**

I, _____ , employed at _____ and _____
PRINT NAME     WORK LOCATION  /  COST CENTER

Employee Number_____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE_____ TOTAL HOURS _____

BRIEF DESCRIPTION, NATURE OF ABSENCE _____

Signature of Employee _____ ACKNOWLEDGED _____

CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S    SUPERVISOR    DATE

**(Attach Doctor's Certificate When Requesting)**

**OCCUPATIONAL INJURY LEAVE**

I, _____ , employed at _____ and _____
PRINT NAME     WORK LOCATION  /  COST CENTER

Employee Number_____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE_____ TOTAL HOURS _____

Signature of Employee _____ ACKNOWLEDGED _____

CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S    SUPERVISOR    DATE

**VACATION**

I, _____ , employed at _____ and _____
PRINT NAME     WORK LOCATION  /  COST CENTER

Employee Number_____ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicated below.

VACATION (HOURS) _____

DEFERRED HOLIDAYS (HOURS) _____

DATES OF VACATION (FROM) _____ (TO) _____ TOTAL HOURS _____

MY PAYCHECK TO BE ISSUED ON _____ is herewith requested for _____
( DATE )     ( DATE )

Signature of Employee _____ ACKNOWLEDGED _____

_EXHIBIT (11)_

CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S    SUPERVISOR    DATE

**(Personal Business, Authorized Leave, Jury Service, etc.)**

**OTHER**

I, _IKHIDA, JOEY_ , employed at _1 1 × _ and _____
PRINT NAME     WORK LOCATION  /  COST CENTER

Employee Number_N.101_ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicted below.

DATE OF ABSENCE _3 NOV 99_ TOTAL HOURS _8.0_

REASON FOR ABSENCE _Illness in Family Lv, Grandchild_

If because of death in the immediate family, what relation to the employee? _____

Signature of Employee _____ ACKNOWLEDGED _____ _11.03_

CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S    SUPERVISOR    DATE

Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee

SWINGSHIFT SCHD DEC 99

| SWINGSHIFT 1430-2300 | 1 W | 2 T | 3 F | 4 S | 5 S | 6 M | 7 T | 8 W | 9 T | 10 F | 11 S | 12 S | 13 M | 14 T | 15 W | 16 T | 17 F | 18 S | 19 S | 20 M | 21 T | 22 W | 23 T | 24 F | 25 S | 26 S | 27 M | 28 T | 29 W | 30 T | 31 F |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ROGER RUIZ | | | | | | D | C | C | C | C | C | C | D | D | | | | C | C | C | C | C | C | C | D | D | C | C | D | | |
| RAY CEPEDA | | | | D | D | D | D | C | C | | D | D | | | | | | D | D | D | D | D | D | D | C | D | D | D | D | D | |
| ARLEN WONG | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| MARTY MORGAN | TS | TS | TS | TS | | | | | TS | TS | TS | | | | | TS | TS | TS | TS | TS | | TS | TS | TS | TS | | | | | | |
| HECTOR AGUILO | | | | | | D | D | D | D | | | | D | | | | | | | | | | | | | | | | | | |
| JOBY OKADA | D | PB | PB | PB | PB | VB | | D | PB | PB | PB | PB | D | D | D | PB | PB | PB | PB | PB | | D | PB | PB | PB | PB | PB | | D | PB | PB |
| TORY BORJA | D | | | TO | | | | D | D | D | D | D | D | D | D | D | | | | D | D | D | V | V | V | MW | V | | D | V | V |
| TOM PEREZ | D | | DAT | DAT | DAT | DAT | D | | | | | | TW | TP | | TO | | | | | | | | | | | | | | | PB |
| GUS QUICHICHO | D | D | | | | | | | | | | | TP | TW | | TW | | | | | | | | | | | | | MW | |
| HERMAN ADA | D | D | | PH | | | | | D | D | | | D | D | D | D | D | D | D | D | D | D | D | D | D | D | D | D | D | D | MW |
| MARK BERNSTIEN | D | D | | | | D | | D | D | D | | | | | D | D | D | | | | D | D | D | D | | | | | D | D | |
| TONY ABHTIANI | D | D | | | | D | D | | | | | | | | D | D | D | | | | D | D | D | D | | | | | D | D | D |
| TONY DIONES | TO | D | D | | | D | | D | D | D | | | | | D | D | D | V | TO | TP | | V | D | D | | | D | | D | D | D |
| DAVE MENDIOLA | V | V | V | D | D | V | V | V | | V | D | D | V | | V | V | V | V | V | V | V | V | V | D | | | V | V | V | V | V |
| GEORGE SINGEO | V | V | V | D | V | V | | V | D | D | | | V | | V | V | D | D | V | V | V | V | V | D | D | | V | D | D | D | D |
| HARRY BROUDUS | S | | | D | D | V | DAT | | | | | | TP | D | D | D | D | D | D | H | FA | | | FA | FA | FA | | D | D | D | |

EARLY SWINGS 1300-2130

| EARLY SWINGS 1300-2130 | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ELMNER MIRANDA | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| JOHN CARBULIDO | | | | D | D | | D | D | D | | | | D | D | | | | | | D | | | | | | | D | D | D | D | D |
| STEVE SOLL | | | | | | | | | | | | | | | D | D | | | | | | | | | | | | | | | |
| ROD RUIZ | D | | | D | D | D | D | D | D | | | | D | D | D | | D | | TW | | D | | | D | D | D | D | D | D | D | |
| RYAN GUMATAOTAO | DAT | D | DAT | D | D | | DAT | | D | D | | | TW | D | | | D | | DAT | DAT | DAT | D | D | | | | D | D | D | V | V |
| MIKE PABLO | | D | D | D | D | VB | D | D | D | D | D | | | | | | D | | | | | | | | PB | FA | | D | D | D | D |

TS= TEMP SUPVR
R= RESCUE
TW= TRADE WORK
TO= TRADE OFF
V= VACATION
DAT= DAY AT A TIME

EL= EMERGENCY LV
PL= PATERNITY LV
PB/PC= PERSONAL BUSINESS
D= DAY OFF
T= TRAINING

F= FLT MX SUPVR
OI= OCCUPATIONAL INJURY
S= SICK LV
ST= SHIFT TRADE
LM= LEADMAN
C - COORDINATOR

# DECLARATION

**DECLARATION OF MARK E. WILLIAMS**

I, Mark E. Williams, declare as follows:

②        JULY
        On ~~June~~ 2, 2001 at approximately 10:30 a.m., Guam time, I contacted Ms. Teresa Sage of the Continental Airlines Human Resources Office by phone and advised her of this office's representation of Mr. Tony Ashtiani, and requested information regarding the subject matter of the pending hearing or conference between the Management of Continental Airlines and Mr. Ashtiani involving Mr. Ashtiani's disciplinary action, and his related appeal/grievance of such action. I further requested information necessary for the preparation of Mr. Astiani and this office for such conference or hearing. However, Ms. Sage refused to provide any such requested information or to acknowledge this office's representation of Mr. Ashtiani. Instead, Ms. Sage directed me to contact Continental's legal office in Houston, which we were unable to do by phone as the office in Houston was apparently closed at that hour.

        I declare that I have firsthand knowledge of the foregoing facts, that I have read the foregoing statement and that the information contained herein is true and correct to the best of my knowledge and belief, and that if called as a witness, I could testify competently thereto. I further hereby declare that this declaration is executed under penalty of perjury at _Hagafna Cvou_ on _5/20/02_

{Date}

_MARK E. WILLIAMS_
**Printed Name**

_Cantell_
**Signature**

EXHIBIT
(13)

313.

July 01, 2001

**TONY ASHTIANI**

**P.O. BOX 12723**
**TAMUNING, GUAM 96931**
**CELL: 671- 688-4844**
**CELL: 671- 687-8182**
**TEL : 671- 653-8008**
**FAX : 671- 653-5575**
**(e-mail) ashtiani@ite.net**

TO :   **Ms .TERESA SAGE**
       **HUMAN RESOURCES DEPT.**
       **LABOR RELATIONS**

RE:    **MEETING**

   PLEASE BE ADVISE AS PER THE AGREEMENT BETWEEN CMI AND IBT , ARTICLE 24 ITEM F. LETTER VIA CERTIFIED MAIL WHICH WOULD INCLUDE THE FOLLOWING INFORMATION.

   **1) THE CONTENTS OF THE MEETING?**
   **2) THE NUMBERS OF PERSONS WHICH WILL ATTEND (CMI)?**
   **3) WHO WILL BE ATTENDING THIS MEETING (PROVIDE LIST OF NAMES)?**
   **4) WHICH ARTICLES WILL BE DISCUSSED?**
   **5) WHICH STEPS OF ARTICLE 24 WILL BE DISCUSSED?**

   SINCE THIS MEETING HAS DIRECT EFFECT ON ME I AM ENTITLED TO SUCH BASIC ANSWERS ALSO PROPER AND ADEQUATE TIME TO PREPARE.

   YOUR COOPERATION IN THIS MATTER IS KINDLY APPRECIATED .

   SINCERELY YOURS

   JUl/02/01
   11:05 AM

RECEIVED
7/2/01
11:12 AM

EXHIBIT
(14)

**000928**

not include any individual employed in the domestic service of a family or person at his home or any individual employed by his parent or spouse, or any person employed in ·an executive or supervisory capacity, or any individual employed by any employer employing less than two individuals, or any individual subject to the jurisdiction of the National Labor Relations Act, as amended from time to time; provided, that the term *employee* includes any individual subject to the jurisdiction of the National Labor Relations Act, as amended from time to time, but over whom the National Labor Relations Board has declined to exercise jurisdiction or has indicated by its decisions and policies that it will not assume jurisdiction.

(d) *Representative* includes any person chosen by an employee to represent him.

(e) *Collective bargaining* is the negotiating of an employer and a majority of his employees in a collective bargaining unit (or their representatives) concerning representation of terms and conditions of employment of such employees in a mutually genuine effort tot reach an agreement with reference to the subject under negotiation.

(f) *Collective bargaining unit* means all of the employees of one employer (employed within the territory), except that where a majority of such employees engaged in a single craft, division, department or plant have voted by secret ballot to constitute such group a separate bargaining unit, they shall be so considered. Two or more collective bargaining units may bargain collectively through the same representative where a majority of the employees

EXHIBIT
(15)

| | |
|---|---|
| **From:** | Sage, Teresa |
| **Sent:** | Monday, July 02, 2001 4:11 PM |
| **To:** | 'ashtiani@ite.net' |
| **Subject:** | Meeting |
| **Importance:** | High |

Tony,

I have received your letter. As a matter of fact, Bill Herrera has been trying to reach you to confirm the meeting that was scheduled for 1600 today. I understand he e-mailed you last week when he set it up. With regard to the information you refer to in your letter, I'm afraid you have misunderstood the contract. We welcome the chance to clarify during the meeting with you.

You need to contact Bill or one of the Tech Ops supervisors or Zar as soon as possible.

*Regards,*

*Teresa Sage*
tsage@csair.com
Employee Relations
(671) 642-8852 - *Office*
(671) 649-5006 - *Fax (private)*
(671) 720-8202 - *Pager*
*Co mail:* GUMHR

**000929**

EXHIBIT
(16)

1



# Continental Micronesia

## INTER-DEPARTMENTAL MEMORANDUM
June 28, 2001

TO:      Beatriz A. Camacho,
         Payroll Department

FROM:    Adrienne B. Cruz

SUBJECT: Final Paycheck – Tony Ashtiani

---

Enclosed is the Hours Summary, and Punch Detail Report for the aforementioned subject. Should you have any inquiries or require additional information, please do not hesitate to contact me.

Please be advised that this memorandum is countersigned and approved by our Manager.

BALTAZAR ATALIG, Manager - Aircraft Maintenance

From the desk of:
*Adrienne B. Cruz*
**Administrative Specialist**
Phone:  [671] 642-8904
Fax:    [671] 649-5248
E-mail: acruz@csair.com
Boardmail:    GUMMX

# 000225

EXHIBIT
(17)

erits underly-
red doctrinal
ployee is not
rmining pre-
te both First
act-freedom
that asserted
in sense that
ld. Ganzy v.
3.D.N.Y.1998,
ights ⟺ 153

**religious ex-**

42 U.S.C.A.
the statute
al institution
of individuals
erform work
by such edu-
om require-
ic employees
efits allowed
v. Fremont
l.1984, 609
2d 1362.

**sitions, reli-**

employee is
purposes of
first Amend-
ring jurisdic-
y a minister
t of Appeals
ut instead to
Alicea-Her-
of Chicago,
698. Civil
nal Law ⟺

athedral's di-
nd part-time
elementary
al exception,
were barred
se, notwith-
ate say over
nd fact that
quired to be
itions were
ntation, and
was integral
l belief, and
in most, if
of cathedral
an Catholic-
C.A.4 (N.C.)

2000, 213 F.3d 795. Civil Rights ⟺ 143;
Constitutional Law ⟺ 84.5(7.1)

Free Exercise Clause barred forme[r]
church choir director's Title VII race dis-
crimination action against church, sin[ce]
position was within "ministerial excep-
tion," prohibiting undue interferen[ce]
with personnel decisions of churches a[nd]
religious leaders; prior to being hir[ed]
choir director had been asked her denom[i-]
ination, job description emphasized m[u-]
sic ministry role over musical perfor-
mance, and choir director was authorized
to perform ceremonies of church a[nd]
performed tasks of traditional religio[us]
significance. Miller v. Bay View Unit[ed]
Methodist Church, Inc., E.D.Wis.20[00,]
141 F.Supp.2d 1174. Civil Rights ⟺
143; Constitutional Law ⟺ 84.5(12)

Lesbian church youth minister's activi-
ties while employed at church were "min-
isterial" in nature, so that ministerial ex-
ception applied to preclude adjudication
of sex discrimination suit, civil rights
conspiracy claim, and civil action for ne-
glect to prevent civil rights conspiracy
between youth minister and church; al-
though youth minister planned and orga-
nized many activities which were secular
in nature, those activities were aimed a[t]
achieving a spiritual purpose, and yout[h]
minister served traditionally religious
function necessary to fulfill the church's
spiritual and pastoral mission. Bryce v.
Episcopal Church in Diocese of Colorado,
D.Colo.2000, 121 F.Supp.2d 1327, af-
firmed 289 F.3d 648. Civil Rights ⟺
143; Civil Rights ⟺ 199.1; Conspiracy
⟺ 7.5(1); Conspiracy ⟺ 17

**18.  Foreign corporation exemption**

Foreign entity which falls within excep-
tion to Foreign Sovereign Immunities Act
(FSIA) is liable under Title VII in same
manner and to same extent as private
employer would be in like circumstances.
Mukaddam v. Permanent Mission of Sau-
di Arabia to United Nations, S.D.N.Y.
2000, 111 F.Supp.2d 457, reargument de-
nied 136 F.Supp.2d 257. Civil Rights ⟺
143

Exemption for overseas operations of
foreign companies did not preclude
counting employees of French company
for purposes of determining whether the
minimum-employee threshold was met
for purposes of Title VII claim against
allegedly related American employer, and
therefore leave to amend to allege that
American employer and French company

---

[si]ngle, integrated business enter-
[prise c]ould not be denied on basis of
[FSIA.] Wildridge v. IER, Inc., N.D.Tex.
[2001,] F.Supp.2d 429.  Civil Rights ⟺
[143; Fed]eral Civil Procedure ⟺ 851

[Japan's] foreign subsidiary was not
[an empl]oyer within the meaning of Title

VII of the Civil Rights Act of 1964, in
absence of any evidence that Congress
intended Title VII to apply to employment
practices of foreign corporations outside
the United States. Lavrov v. NCR Corp.,
S.D.Ohio 1984, 600 F.Supp. 923. Civil
Rights ⟺ 143

## § 2000e–2.  Unlawful employment practices

**Employer practices**

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or
otherwise to discriminate against any individual with respect to
his compensation, terms, conditions, or privileges of employ-
ment, because of such individual's race, color, religion, sex, or
national origin; or

(2) to limit, segregate, or classify his employees or applicants
for employment in any way which would deprive or tend to
deprive any individual of employment opportunities or otherwise
adversely affect his status as an employee, because of such
individual's race, color, religion, sex, or national origin.

**Employment agency practices**

It shall be an unlawful employment practice for an employment
agency to fail or refuse to refer for employment, or otherwise to
discriminate against, any individual because of his race, color, reli-
gion, sex, or national origin, or to classify or refer for employment
any individual on the basis of his race, color, religion, sex, or
national origin.

**Labor organization practices**

It shall be an unlawful employment practice for a labor organiza-
tion—

(1) to exclude or to expel from its membership, or otherwise
to discriminate against, any individual because of his race, color,
religion, sex, or national origin;

(2) to limit, segregate, or classify its membership or applicants
for membership, or to classify or fail or refuse to refer for
employment any individual, in any way which would deprive or
tend to deprive any individual of employment opportunities, or
would limit such employment opportunities or otherwise ad-
versely affect his status as an employee or as an applicant for
employment, because of such individual's race, color, religion,
sex, or national origin; or

EXHIBIT
(18)

(**B**) A practice described in subparagraph (A) may not be challenged in a claim under the Constitution or Federal civil rights laws—

(**i**) by a person who, prior to the entry of the judgment or order described in subparagraph (A), had—

(**I**) actual notice of the proposed judgment or order sufficient to apprise such person that such judgment or order might adversely affect the interests and legal rights of such person and that an opportunity was available to present objections to such judgment or order by a future date certain; and

(**II**) a reasonable opportunity to present objections to such judgment or order; or

(**ii**) by a person whose interests were adequately represented by another person who had previously challenged the judgment or order on the same legal grounds and with a similar factual situation, unless there has been an intervening change in law or fact.

(**2**) Nothing in this subsection shall be construed to—

(**A**) alter the standards for intervention under rule 24 of the Federal Rules of Civil Procedure or apply to the rights of parties who have successfully intervened pursuant to such rule in the proceeding in which the parties intervened;

(**B**) apply to the rights of parties to the action in which a litigated or consent judgment or order was entered, or of members of a class represented or sought to be represented in such action, or of members of a group on whose behalf relief was sought in such action by the Federal Government;

(**C**) prevent challenges to a litigated or consent judgment or order on the ground that such judgment or order was obtained through collusion or fraud, or is transparently invalid or was entered by a court lacking subject matter jurisdiction; or

(**D**) authorize or permit the denial to any person of the due process of law required by the Constitution.

(**3**) Any action not precluded under this subsection that challenges an employment consent judgment or order described in paragraph (1) shall be brought in the court, and if possible before the judge, that entered such judgment or order. Nothing in this subsection shall preclude a transfer of such action pursuant to section 1404 of Title 28.

(Pub.L. 88–352, Title VII, § 703, July 2, 1964, 78 Stat. 255; Pub.L. 92–261, § 8(a), (b), Mar. 24, 1972, 86 Stat. 109; Pub.L. 102–166, Title I, §§ 105(a), 106, 107(a), 108, Nov. 21, 1991, 105 Stat. 1074–1076.)

*EXHIBIT
(18)*

**GUAM STATION**

# Continental Micronesia Inc.

Subsidiary of

# Continental Airlines

Race / national origin     <u>Vs.</u>     Termination

**<u>Statistical study</u>**

**<u>December  1999    TO      July  2001</u>**

(19 months period)

**<u>List of Minorities among the majorities</u>**

| Name | National-Origin | Status |
| --- | --- | --- |
| Don Ching | Chinese | |
| Bruce Lee | Chinese | (terminated) |
| Lin Horng Yi | Chinese | |
| Ali Mahdi | African American | (terminated) |
| Fabian Therell | African American | |
| Sherman Thompson | African American | |
| Harry Broudus | African American | |
| Tony Ashtiani | Iranian | (terminated) |
| Patrick Ahmed | Sudanese | |
| Joe Nguyen | Vietnamese | |

EXHiBiT
(19)

GUAM STATION

## Continental Micronesia Inc.

Subsidiary of

# Continental Airlines

Race     <u>Vs.</u>     Termination

### <u>Statistical study</u>

### <u>December 1999 TO July 2001</u>

(19 months period)

| Name | National-Origin | Division |
|------|-----------------|----------|
| Ali Mahdi | AFRICAN AMRICAN | Maintenance Dept. |
| Bruce Lee | CHINESE | Maintenance Dept. |
| Tony H. Ashtiani | IRANIAN | Maintenance Dept. |

There are **90** employees in Maintenance Dept , See Mr. McKinzie's Declaration.

They were **92** employees in Maintenance division at the time of discharge.

**10** minorities among the majority made up **9.2 %** of the work force.

Among the **9.2 %** of all the minorities **3 0ut of 10** were terminated.

Minorities made **<u>9.2%</u>** of the work force and they received **<u>100%</u>** of the termination.

EXHIBIT (20)

# Continental 

Continental Airlines, Inc.
Flight Operations
Terminal Box 11
Honolulu International Airport
Honolulu HI 96819

TO:     Bud Perry

DATE:   April 22, 1994

SUBJ:   Tony Ashtiani
================================================================

Dear Bud:

I am writing to inform you of the outstanding support I received recently from one of your mechanics, Mr. Ashtiani.

I was the captain on Flt. 961 the 23 of March GUM/NRT. ship #042. Shortly before departure Mr. Ashtiani advised me of a possible problem with the #3 engine which was on a H.O.C. watch. Throughout the delay Mr. Ashtiani kept me informed of the situation, took me down to the #3 engine and showed me the cracked gearbox (the cause of the excessive leak).

Could you please convey to Mr. Ashtiani my appreciation for professionalism throughout the delay.

Sincerely,

Craig Brownrigg
Acting Chief Pilot (Continental)
Guam

EXHIBIT
(21)

AUGUST 28, 1994

CONTINENTAL MICRONESIA
MAINTENANCE
INTERNATIONAL AIRPORT
TAMUNING, GUAM

DEAR SIR:

I WOULD LIKE TO RECOGNIZE YOUR MECHANIC **TONY ASHTRAINI** FOR HIS
CONTINUING DEDICATION TO HIS DUTIES AS A LINE MECHANIC FOR
CONTINENTAL MICRONESIA.

ON AUGUST 5, 1994 I WAS THE CAPTAIN ON A DC10-10 OPERATING FLIGHT 973
FROM GUAM TO NAGOYA. JUST AS WE WERE BEGINNING TO PUSH OFF THE
GATE IN GUAM TONY SAW A PROBLEM IN THE AREA OF THE RIGHT MAIN GEAR.
HE INSISTED ON STOPPING THE PUSH BACK AND CHECKING OUT WHAT HE SAW.
THE AIRCRAFT WAS LEAKING FUEL FROM AN INSPECTION PLATE ON THE WING
SURFACE ALLOWING IT TO FLOW DOWN ONTO THE WHEEL AND BRAKE
ASSEMBLY. AS A RESULT OF HIS OBSERVATION WE CORRECTED THE PROBLEM
AND ADDED GREATLY TO SAFETY OF OUR FLIGHT OPERATION.

I HAVE WORKED WITH TONY ON OTHER OCCASIONS AND I HAVE OBSERVED HIM
TO BE A REAL TEAM LEADER WHO IS AN EXPERT ON THE AIRCRAFT AND A REAL
ASSET TO THE MAINTENANCE DEPARTMENT. I WOULD LIKE TO TAKE THIS
OPPORTUNITY TO PERSONALLY THANK HIM, AND TO ALERT HIS SUPERVISOR
OF HIS OUTSTANDING DEDICATION AND KNOWLEDGE. I LOOK FORWARD TO
WORKING WITH TONY IN THE FUTURE.

SINCERELY,

*Steve Bowman*

STEVE BOWMAN
CAPTAIN DC10

CC: OPERATIONS

EX HibiT
(22)



# Continental Micronesia

*Fly with the warmth of Paradise*

February 20, 1997

**RECEIVED**

**JUN 0 3 1997**

**BILL MEEHAN**

To:      Hamid Ashtiani / Employee Number A1966

From:    Jim Bennett / Director, Technical Services - Japan

Subject:    Commendation

Tony;

We here in Japan Technical Services. Would like to thank you for your assistance in moving diverted Flight 840(Aircraft N781) from Narita back to Guam. And after working all afternoon on N781, when asked to remain in Narita and assist with our out of service DC10-30. You readily volunteered. Thus helping to return this A/C to service before curfew. All this shows the dedication of our staff in Technical Services to "Keeping them flying". Your commitment to the tasks at hand is commendable.

Again thanks for the assistance from all departments in Japan. Especially our passengers.

JGB/ms

cc:  B. Meehan
      Personal File

EXHIBIT
(23)

**000049**

Regional Office:  5F, Sanno Grand Bldg., 2-14-2, Nagata-cho, Chiyoda-ku, Tokyo 100, Japan
Branch Offices in Japan:  Sapporo  Sendai  Nagoya  Osaka  Fukuoka  Okinawa

15 SEP 02

EEOC Director T. Riera

My Name Is Fabian Therrell. I'm
Writing This Statement Of My
Own Free Will, I Have Been
Promised Nothing, I Have Nothing To
Gain or Loose.
I've Read The Statement Given
By Sherman Thompson. Its Full Of
Lies! Everyone In Guam Line
Maintanance Knows ~~Sherman~~ Tony Is From
Iran. This Includes Sherman.
He Would Call Tony The Iranian
Stallion ot Persain Brother. Not A
Bad Thing But It Was Well Known.
Also, I've Work With Tony As Long
As Anyone On Guam, And Tony Is
A Very Hard Worker. He Fixes Airplanes "
More Than I Have. I Believe
Sherman's Statement Was Forced, Or
There Was A Hidden Motive Behind It.

671 · 647 · 5387
Fabian11¢ @ netpci. com
F. Therrell

EXHibiT
(24)

# FABIAN THERRELL

20MAY02

TO: Raymond J. Griffin Jr:

I'M WRITING THIS OF MY OWN FREE WILL TO SHEAD SOME LIGHT ON THE FALSE
STATEMENTS MADE BY THE COMPANY IN THEIR DEALINGS WITH TONY ASHTIANI.

MY NAME IF FABIAN THERRELL I AM AN AIRCRAFT MECHANIC WITH CONTINENTAL.
I'VE BEEN WITH THE COMPANY 14 YEARS, 8 YEARS GUAM BASED.
I'M THE HIGHEST SENORITY MECHANIC ON DAYSHIFT LINE MAINTANCE.
I FILL IN FOR THE LEAD MECHANIC DURING HIS WEEKEND, VACATION AND
OTHER ABSENCES.  THE SICK CALL PROCEDURE, AS I SEE IT, IS VERY SIMPLE.
CALL WORK, LET SOMEONE KNOW YOU WILL NOT BE COMING IN.  GET THEIR
NAME JUST TO COVER YOUR BASES, AND DON'T WORRY ABOUT IT AFTER THAT.
THE SHIFT LOG HAS A SECTION FOR "SICK CALLS" TO BE LOGGED IN.
THE LOG ALSO STATES THE TIME OF THE CALL AND WHO TOOK THE CALL.
I HAVE NEVER, TILL THIS VERY DAY , BEEN TOLD A SUPERVISOR MUST TAKE THE
CALL.  I HAVE RECEIVED SICK CALLS IN THE PAST, LOGGED THEM IN MYSELF,
AND NEVER HAD MANAGEMENT QUESTION ME ABOUT IT.
A SUPERVISOR IS ALWAYS ON DUTY, BUT THEY LIKE ALL HUMANS HAVE ISSUES
SOMETIMES.  AT ANY GIVEN TIME A SUPERVISOR COULD BE OUT AT AN AIRCRAFT,
LATE TO WORK TO ATTEND  A FAMILY FUNCTION, HAVING A SMOKE, OR IN
THE REST ROOM.  IF SOMEONE CALLS IN SICK, ITS NOT THE POLICY THAT HE/SHE
MUST CONTINUE TO CALL UNTIL A SUPERVISOR TAKES THE MESSAGE.

I'M TOLD THAT  MR. ASHTIANI'S TRADE DAYS DURING THE YEAR 2000 WERE
ALSO CALLED INTO QUESTION.   I PERSONALLY PROFERED 95% OF THE
TRADE DAYS OFF THAT TONY TOOK.  THESE TRADES WERE NO SECRET!
 THE HOLIDAY SEASON WAS NEAR, PEOPLE WANTED TO WORK EXTRA DAYS.
IT WAS A WIN, WIN SITUATION FOR EVERYONE CONCERNED.
SUPERVISORS KNEW THAT TONY'S TRADES HAD EXCEEDED THE DAYS ALLOTTED
BY THE COLLECTIVE BARGINING AGGREMENT WITH THE TEAMSTERS,
BUT THEY DIDN'T CARE.  SOMETIMES IT WORKED TO THEIR ADVANTAGE.
I REMEMBER SOME OCCASIONS WHEN THE SWINGSHIFT LEAD MECHANIC,
WOULD VOLUNTEER TO WORK FOR TONY.  TONY IS ONE OF THE BRIGHTEST
MECHANICS I'VE WORKED WITH.  BUT EVERY SUPERVISOR LIKES HAVING HIS
PRIMARY LEAD MECHANIC WORK EXTRA DAYS, HAVING HIM WORK EXTRA
DAYS AT STRAIGHT TIME IS A GIFT.  EVERYONE WAS HAPPY,  NO ONE EVER COMPLAINED.
THE COMPANY WAS NEVER SHORT MAN HOURS BECAUSE OF TONY'S ABSENCE.

RECENTLY THERE WAS AN INCIDENT AT WORK THAT I THOUGHT WAS VERY
INTERESTING.  MR. BALDEREDEAN AHMED (ANOTHER MECHANIC OF MIDDLE
EASTERN ANCESTRY) WAS STUCK IN CAIRO.  IT WAS KNOWN BY EVERYONE THAT
HE WAS GOING TO PICK UP HIS NEW WIFE IN SUDAN, STOP IN CAIRO TO VISIT THE

EXHiBiT
(25)
480

P.O. BOX 27763 • BARRIGADA, GUAM • 96921
PHONE: 671-647-5387 • FAX: 671-649-5380

EMBASSY FOR HER U.S. ENTRY PAPERS AND RETURN TO GUAM AS SOON AS
POSSIBLE.  TRADE DAYS AND VACATION DAYS WE SET UP IN ADVANCE.
NO ONE SAW A PROBLEM, THIS HAPPENS ALL THE TIME.  DURING MR. AHMED'S
STAY IN CAIRO ANTI-AMERICAN FEELINGS IN EGYPT REACHED A BOILING POINT.
THE EMBASSY WAS BESIEGED WITH PROTESTERS.  ANYONE WITH CABLE
T.V. COULD WATCH THIS ON CNN.  ALL OF A SUDDEN MR. AHMED'S
TRADE DAY PRIVILIDGES WERE REVOKED, AND HE WAS THREATENED THAT
HE WOULD BE CONSIDERED A NO CALL NO SHOW.  I HAVE NEVER IN
MY 14 YEARS WITH CONTINENTAL AIRLINES SEEN ANYTHING LIKE THIS!
AND IT'S MY VERY STRONG OPINION, THAT THIS COULD NEVER HAPPEN
TO A GUAM BASED MECHANIC OF CHAMORRO ANCESTRY!
THIS IS MY STATEMENT.  ANY QUESTIONS?  FEEL FREE TO CONTACT ME.


SINCERELY


FABIAN THERELL

EXHIBIT
(25)

481

## Babauta, Benjamin C.

**From:** McKinzie, Dixon
**Sent:** Thursday, December 02, 1999 9:14 AM
**To:** Babauta, Benjamin C.; Tydingco, Bertha S.; Perez, Frank; Mendoza, Glenn R.; Lujan, James; Cruz, Tony; Herrera, William A.
**Cc:** Halaby, Dimitri; Atalig, Baltazar
**Subject:** FW: MAHDI ALI

FYI, my numbers are below.

*Dixon*
dmckinzie@csair.com
Office: (671) 642-8877
**Pager:** **(671) 476-8562**
**Cell:** **(671) 687-6354**
Fax: (671) 642-8343 (private)

-----Original Message-----
**From:** **Halaby, Dimitri**
**Sent:** Thursday, December 02, 1999 7:14 AM
**To:** Benjamin Babauta; Bertha Tydingco; Frank Perez; Glenn Mendoza; James Lujan; Tony Cruz; William Herrera
**Cc:** Atalig, Baltazar; McKinzie, Dixon; Perez, Clarissa; Johnston, Billy
**Subject:** FW: MAHDI ALI

All Supv,

Mr. Mahdi Ali was given the required FMLA documents yesterday 01 Dec. He has 15 days to complete and return to us. When you receive the documents, contact Dixon McKeinzie immediately, call him on his cell or page him if you have to. The company has 2 days to reply back. Until then, keep accurate documentation of events and always have union rep present when discussing sensitive issues with Mr. Mahdi

*Dimitri C. Halaby*
Aircraft Maintenance Manager
Tel: 671-642-8653
Cell: 671-688-1545
*"Just Another Day in Paradise"*



-----Original Message-----
**From:** Lujan, James
**Sent:** Thursday, December 02, 1999 1:17 AM
**To:** Halaby, Dimitri
**Subject:** RE: MAHDI ALI

Page 1

*EXHibiT*
*(Z6)*
*473*



YES ,MR. ALL DID CALL IN SICK. I DID INFORM BERT THAT I FORGOT TO WRITE IT IN THE TURN
OVER SHEET.

----Original Message----
**From:**     Halaby, Dimitri
**Sent:**     Monday, November 29, 1999 7:36 AM
**To:**  Lujan, James
**Subject:**  FW: MAHDI ALI
**Importance:**  High

Jim,

Please let me know if Ali infact called you. I
today.


*Dimitri C. Halaby*
Aircraft Maintenance Manager
Tel: 671-642-8653
Cell: 671-688-1545
*"Just Another Day in Paradise"*

----Original Message----
**From:**     Tydingco, Bertha S.
**Sent:**     Thursday, November 25, 1999 10:58 PM
**To:**  Atalig, Baltazar; Halaby, Dimitri
**Cc:**  Blas, Adrienne; Babauta, Benjamin C.; Mendoza, Glenn R.; Lujan, James; Herrera, William
**Subject:**  MAHDI ALI
**Importance:**  High

ZAR OR DIMITRI,

ALI HAD FAXED HIS DOCTOR'S EXCUSE THURSDAY EVENING.  WHATEVER THE CASE
MAYBE
HE HAD INFORMED GLEN THAT HE CALLED IN SICK FOR THURSDAY AND LEFT A MESSAGE
WITH JAMES LUJAN.  WE NEED TO FIND OUT FROM JAMES IF THIS IS A TRUE STATEMENT,
CAUSE
JAMES DID NOT TURN OVER ANY THING TO ME WHEN I RELEIVED HIM THAT NIGHT.  ALSO,
WHY DID
ALI REPORT BACK TO WORK IF HE KNEW HE WAS STILL SICK WITH A STIFF NECK AND
THEN TO
COVER HIS BUTT HE HAD THE DOCTOR WRITE HIM OUT AN EXCUSE TO COVER HIM ALL
THE WAY
TO FRIDAY THE 26TH OF NOV.  I SERIOUSLY THINK SOMEONE NEEDS TO CK ON THIS
DOCTOR EXCUSE
ISSUE.

BERT

EXHIBIT
(26)

474

ORM: P-138CM
&E#: 00-0703-3-1415
EV: 02/95

# Continental Micronesia 

**Employee Number:** 05963

## ABSENCE FROM DUTY REPORT

**Date Prepared:** 10/30/01

1. SICK LEAVE: Immediately upon return to work or at the end of each pay period whichever first occurs.
2. OCCUPATIONAL INJURY LEAVE: Immediately when injury necessitates absence from duty.
3. VACATION: Prior to the start of the vacation period; OR when a paycheck is desired before the start of the vacation period, this form must be <u>received</u> in Payroll FOURTEEN (14) CALENDAR days <u>prior</u> to the date the check is desired.
4. OTHER: Immediately upon return to work or at the end of each pay period whichever first occurs.
   Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee

---

### SICK LEAVE

**(Attach Doctor's Certificate When Requesting)**

I, _____, employed at _____ and _____
  PRINT NAME                                WORK LOCATION  /  COST CENTER

Employee Number_____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE_____   TOTAL HOURS   **000254**

BRIEF DESCRIPTION, NATURE OF ABSENCE _____

Signature of Employee _____ ACKNOWLEDGED _____
                                                          SUPERVISOR          DATE

CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S

---

### OCCUPATIONAL INJURY LEAVE

**(Attach Doctor's Certificate When Requesting)**

I, _____, employed at _____ and _____
  PRINT NAME                                WORK LOCATION  /  COST CENTER

Employee Number_____ , hereby certify that I was absent due to sickness for the period of the time indicated below and that I was unable during such period to perform my regularly assigned duties.

DATE OF ABSENCE_____   TOTAL HOURS _____

Signature of Employee _____ ACKNOWLEDGED _____
                                                          SUPERVISOR          DATE

CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S

---

### VACATION

I, _____, employed at _____ and _____
  PRINT NAME                                WORK LOCATION  /  COST CENTER

Employee Number_____ , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicated below.

VACATION (HOURS) _____

DEFERRED HOLIDAYS (HOURS) _____

DATES OF VACATION (FROM) _____ (TO) _____   TOTAL HOURS _____

MY PAYCHECK TO BE ISSUED ON _____ is herewith requested for _____
                               ( DATE )                                    ( DATE·)

Signature of Employee _____ ACKNOWLEDGED _____
                                                          SUPERVISOR          DATE

CIRCLE REGULAR DAYS OFF:   S   M   T   W   T   F   S

---

### OTHER

**(Personal Business, Authorized Leave, Jury Service, etc.)**

I, Tony Astiani, employed at GUMMX and _____
  PRINT NAME                     WORK LOCATION  COST CENTER

Employee Number 05963 , hereby certify that I will be on vacation in accordance with my approved vacation schedule for the period of time indicted below.

DATE OF ABSENCE Jun 23-24, 2001   TOTAL HOURS 20

REASON FOR ABSENCE No Show

If because of death in the immediate family, what relation to the employee? _____

Signature of Employee For Employee   ACKNOWLEDGED _____ 10/30/01
                                                  SUPERVISOR      DATE

CIRCLE REGULAR DAYS OFF:   S   M   T   (W)   (T)   (F)   S

Distribution: White copy - Payroll • Yellow copy - Division Head File • Pink copy - Supervisor File • Gold copy - Employee

EXHIBIT
(27)

among several racial harassment suits involving nooses in the workplace which have been filed by EEOC against Florida employers in the past two years."

Federico Costales, Director of EEOC's Miami office said, "Subjecting workers to harassment because of their race can be costly to businesses, not only in monetary terms, but also in terms of increased absenteeism and health care costs, and lower productivity and employee morale. It is imperative for employers to implement effective anti-discrimination policies and procedures to prevent discrimination and to address and remedy it when it occurs."

Charges of racial harassment filed with EEOC have more than doubled over the past decade from 2,849 charge filings in Fiscal Year 1991 to approximately 6,550 charge filings in FY 2000, about 8% of all charges filed with the agency. Racial harassment is a form of race discrimination which includes racial jokes, ethnic slurs, offensive or derogatory comments, or other verbal or physical conduct based on an individual's race or color. Such conduct may create an intimidating, hostile, or offensive working environment, or interferes with the individual's work performance, in violation of Title VII of the Civil Rights Act of 1964 .

In addition to enforcing Title VII, which prohibits employment discrimination based on race, color, religion, sex or national origin, EEOC enforces the Age Discrimination in Employment Act; the Equal Pay Act; Title I of the Americans with Disabilities Act, which prohibits employment discrimination against people with disabilities in the private sector and state and local governments; prohibitions against discrimination affecting individuals with disabilities in the federal government; and sections of the Civil Rights Act of 1991. Further information about the Commission is available on the agency's Web site at www.eeoc.gov.

EXHIBIT
( 28)

FORM: 40.0061CM
DATE: 04-01-01
M&E: 00-0703-3-1309

**Continental Micronesia** 

## TECHNICAL SERVICES DIVISION
### SHIFT LOG

SUPERVISOR SIGNATURE: _____ DATE: 4/3?/02 SHIFT: SWING STATION: Gum

### PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|---|---|---|---|
| Tony R. | 1228 | Roger | Sick |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

### SHIFT NOTES

| ACFT | TIME | SHIFT NOTES |
|---|---|---|
|  |  | ~~Hosp.~~ = R&R STRETCHER INSTL T-952/03 SEAT 5-7 DOOR plus 5 SMALL MED 02 |
|  |  | ~~----~~ CLEANER FTR T-400 N-236 (DOS) FAK-3 |
|  |  | ~~----~~ RESB √ MEL BOOK ONBOARD AIRCRAFT FOR possible ATA CHAPTER - 32, 33, 34 + 38 MISSING. INSPECTED A/c AS Follows:- N-240 - OK    N-246 -OK    N-227 -OK N-236 - OK    N-228 -OK    N-235 - OK N-201 - OK    N-249 -OK N-250 - OPEN N-232 - OPEN |
|  |  | ~~----~~ 2 ea CDL NON-ROUTINES ON N-250 As Follows ① RH SIDE KRUEGER FLAP 3 + 4 SEALS TORN ② LH SIDE FLAP SEALS 1 + 2 TORN KRUEGER |
| 058 MIKE/JOOS | 9 OK | SV = DONE   Ple = + ⊖   Pla = ⊖ OIL = ⊖   Fup = ⊖   Box = ⊖ N/e = + ⊖   LAV SHROUDS = DONE |
| 249 LONE/VIC Tony R. | 18 | SV = DONE   Ple = ~~OPEN~~   Pla = ⊖ OIL = ~~----~~   Fup = ⊖   Box = ⊖ HF MOD = ~~----~~ LAV SHROUDS = REMOVED RESB # 4 TIRE CHANGE DUE WORN = DONE |
| 052 DAVID/GEORGE | 8 OK | SV = DONE   Ple = 3/ ⊖   Pla = ⊖ OIL = ⊖   Fup = ⊖   Box = ⊖ |

EXHIBIT (29)

### DELAYS:

| A/C | STA | CODE | MIN | TRIP | NOTIFIED | TIME | GROUNDED AIRCRAFT – REASON |
|---|---|---|---|---|---|---|---|
| 240 | Gum | 33 | 10 | 943 |  | A/C | N-232 VQ-1 A-26 √ |
|  |  |  |  |  |  |  | GAS FED |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |
|  |  |  |  |  |  | A/C |  |

558

Case 1:02-cv-00032   Document 143   Filed 12/19/2003   Page 46 of 76

**Continental Micronesia**

## TECHNICAL SERVICES DIVISION
### SHIFT LOG

SUPERVISOR SIGNATURE: _P. Cymbal_   DATE: 4/14/02   SHIFT: GRAVES   STATION: GUM

### PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|---|---|---|---|
| J. Martinez | 8513 | V. Sablet | Sick - Flu |
| | | | |
| | | | |
| | | | |

### SHIFT NOTES

| ACFT | TIME | SHIFT NOTES |
|---|---|---|
| 236 | | 20 SV - C/W |
| | | MX RON - open |
| | | NAV DB - C/W |
| | | NonRoutines = 2 |
| | JOB BOX | (1) #3 & #4 LE KRUGER FLAP SPN Wise Seals |
| | | (2) #2 ENG COWLING VORTEX DEVICE |
| 246 | | 20 SV - C/W   PLA - 1 |
| | | PLA - VIDEO SYST INOP < Controller coming |
| | | in on trip - 1 > |
| | | NAV - DB - C/W |
| | | Move to Gate -13 - |
| | | * Swapped out W/ A/c 228 |
| 22-7 | | 21 SV - C/W   PR - 0   PLA - 2   OIL - 1 |
| | | OIL - Door Stoppers |
| | | PLA - Kruger Flap Seals |
| | | |
| | | |
| 248 | | 15 SV 3 - ''   PLA - 0   OIL - 0   PR - 0 |
| | | Tire chg - |
| | | NAV DB - |
| | | 2 - dents INBD LWR TRLG EDGE FLAP - C/W |
| | | TRN BKL - |
| | | 11 NR |
| TNFO | -£ | MUST offer out PLT for 902/903 CNS @ 1830 |
| | | J. Martinez Called in Sick cannot make |
| | | flight |
| | | |

EXHIBIT (30)

## TECHNICAL SERVICES DIVISION
### SHIFT LOG

SUPERVISOR SIGNATURE: [signature]   DATE: 4-28-02   SHIFT: GRAVEYARD   STATION: GUM

### PERSONNEL ABSENCES

| EMPLOYEE | TIME CALLED | TAKEN BY | REASON |
|---|---|---|---|
| Maclur | 4:35 | Fabian | Sick |
| | | | |
| | | | |
| | | | |

| ACFT | TIME | SHIFT NOTES |
|---|---|---|

**236** 0110-TERM G-21   SC-OPEN   PR-∅   PLA-∅   OIL-∅

\* APU AUTO SHUTDOWN : STARTER GEN FILTER CLOGGED · OPEN
\* STAB TRIM MOTOR R+R - OPEN
\* ENG OIL SERVICE · C/W

**246** 0100-TERM G-20   SC-C/W   PR-∅   PLA-∅   OIL-∅

\* DIP - #2 ENG EEC FAULT, NEED TO CHANGE VBV - OPEN
\* FUP - DROP DEAD : RIGHT PRIMARY HEAT EXCHANGER - ∅ C/W

**240** 0440-TERM G-13   SC-OPEN   PR-∅   PLA-∅   OIL-∅

EXHIBIT
(31)

**DELAYS:**

| A/C | STA | CODE | MIN | TRIP | NOTIFIED | TIME A/C | GROUNDED AIRCRAFT – REASON |
|---|---|---|---|---|---|---|---|
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | A/C | |

555



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Honolulu Local Office

300 Ala Moana Boulevard, Room 7-127
Honolulu, HI 96850-0051
(808) 541-3120
TTY (808) 541-3131
FAX (808) 541-3390

June 14, 2002

**Via US Mail and Fax**

Continental Airlines, Inc.
Legal Department
ATTN: Louid Obdyde, Esq.
P.O. Box 4607
Mail Code HQSLG
Houston, Texas 77210

**RE: Tony Ashtiani v. Continental Micronesia, Inc.**
    **EEOC Charge No.378-A2-000115**

Dear Obdyke,

In order to continue with the investigation, our office will need the following information.

1) Provide a list of all Respondent's aircraft mechanics who were no call/no show for two consecutive days between June 1999 to June 2001. Identify by

a. name
b. ethnic identity
c. date of hire
d. date(s) of no call/no show
e. date of discharge

2) Provide all relevant documentation for each employee's discharge. If the employee was not discharged, explain why.

Provide the requested informed by June 21, 2002. If you have any questions, contact me at 808-541-3721. Thank you.

Sincerely,

Raymond J. Griffin Jr.

Investigator

**001032**

ExHibiT
(32)



# Continental
# Airlines



Continental Airlines, Inc.   Tel  713 324 5000
41st Floor  HQSLG   Fax 713 324 5161
1600 Smith Street
Houston TX 77002

June 18, 2002

VIA FACSIMILE: 808-541-3390

Mr. Raymond J. Griffin, Jr.
The Equal Employment Opportunity Commission
Honolulu Local Office
300 Ala Moana Blvd., Room 7-127
Honolulu, HI 96850

      Re:   Tony H. Ashtiani, Charging Party
            Continental Micronesia, Inc., Respondent
            Charge No. 378A200115

Dear Mr. Griffin:

     I am in receipt of your request for additional information dated June 14, 2002.  I am unable to respond by June 21 due to the fact that the company's director of human resources is out of the office until June 24, and then I will be "on the road" until July 1, 2002.  We will gather appropriate comparative information and will forward it on July 3, 2002.

     Again, I look forward to working with you in order to assist in a closing this charge with a finding of no cause for discrimination.

                  Sincerely,

                  Louis K. Obdyke
                  Senior Attorney
                  (713) 324-2218

EXHIBIT
(33)

IMANAGE 45020v1

**001034**



# Continental
# Airlines



Continental Airlines, Inc.        Tel 713 324 5000
41st Floor HQSLG              Fax 713 324 5161
1600 Smith Street
Houston TX 77002

July 10, 2002

VIA FACSIMILE: 808-541-3390

Mr. Raymond J. Griffin, Jr.
The Equal Employment Opportunity Commission
Honolulu Local Office
300 Ala Moana Blvd., Room 7-127
Honolulu, HI 96850

> Re:    Tony H. Ashtiani, Charging Party
>        Continental Micronesia, Inc., Respondent
>        Charge No. 378A200115

Dear Mr. Griffin:

In response to your June 14 request for supplemental information, CMI advises that two maintenance employees other than Mr. Ashtiani were disciplined during the time period of January 1, 2000 to the date of Mr. Ashtiani's discharge, July 3, 2001, both occurred prior to Mr. Ashtiani's discharge. Other divisions within the company have additional disciplinary actions for No Call/No Show, but checks were made only within the maintenance (Tech Ops) department as that is where Mr. Ashtiani worked.

Mr. Bruce Lee, Chinese/American, was deemed a No Call/No Show in May 2000, but upon investigation and the employee's explanation (death in the family and qualified FMLA leave), Mr. Lee's disciplinary action was retracted. A second No Call/No Show involved a mechanic assigned to fly check flights for maintenance checks, Mr. Edwin Antonio, Asian-Filipino/American. Mr. Antonio failed to show-up for a scheduled check flight and failed to call in - he was issued a written warning based on no prior disciplinary action in his file, unlike Mr. Ashtiani's extensive disciplinary history. The Guam maintenance supervisors are checking for other possible No Call/No Show disciplinary actions, but since the company does not keep a "running log" for discipline, they must look at each individual personnel file - including all those discharged during the time period (files now in storage).

001037

EXHIBIT
(34)

IMANAGE 45258v1

CMI hopes this information supports its decision to terminate Mr. Ashtiani for reasons other than his national origin, or any other discriminatory reason, and that you will be able to find no cause for discrimination.

Sincerely,

Louis K. Obayke
Senior Attorney
(713) 324-2218

001038

ExhibiT
(34)

| Name: | ASHTIANI, HAMID (TONY) | Station/Dept: | GUMMX |
|---|---|---|---|
| Address: | P.O. Box 12723 | DOH: | 1/14/1985 |
| | Tamuning, GU 96931 | DOB: | 10/6/1963 |
| SSN: | 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 | | |

**The following are your current benefit elections and monthly deductions. Please notify the Benefits Department immediately of any discrepancies. You may only change your benefit elections during Open Enrollment or within 30 days of a qualified lifestyle event.**

| Benefit Option | Benefit Summary | Per Month | Dependents | Other Info/Comments |
|---|---|---|---|---|
| Basic Life | 54,000 | Paid by CMI | | |
| Employee Supplemental Life | 162,000 | 11.34 | | |
| Spouse Supplemental Life | | | | |
| Long-Term Disability | Enrolled | 6.25 | | |
| Accidental Death and Dismemberment | 500,000 EF | 12.50 | | |
| Vision | | | | |
| Medical | Not Enrolled | | | |
| Dental | Not Enrolled | | | |
| | TOTAL | 30.09 | | |

EXHIBIT
(35)

# Continental Micronesi▮

## Benefit Summary Sheet

| | | | |
|---|---|---|---|
| **Name:** | ASHTIANI, HAMID (TONY) | | |
| **Emp#/SSN:** | A1966        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 | **Address:** | PO Box 12723 |
| **Station/Dept:** | GUMMX | | Tamuning, GU 96931 |
| **Comments:** | Term 7/2/01; benefits end 7/31/01. | **DOB:** | 10/6/1963 |
| | | **Annual:** | $53,560.00 |

The following are included in this packet (if applicable):

> **Benefit Summary Sheet**
> **Mutual of Omaha Life Insurance Conversion Information (Basic and Suplife)**
> **American International Group Conversion Information (AD and D)**

Please take a moment to review the following benefits that may be available to you upon leaving the Company:

### Retirement and 401(k) Savings Plan

Retirement and 401(k) Savings PlanIf you are vested in the CMI Retirement Plan and/or participated in the 401(k) Savings Plan, T. Rowe Price will be sending you a retirement package detailing your distribution options. You may elect to leave your account with CMI, rollover your vested account balance(s) into another qualified retirement plan or transfer your funds to an IRA, or even elect to receive a lump sum distribution. For further information on your account(s), please contact TRP directly at 1-800-322-8749. For any address updates with your CMI Retirement and/or 401(k) account, you will need to contact Annie Duenas/Rhonda Alley at 671-642-8873/8849.

### Medical/Dental Insurance

If you are currently covered by a CMI healthcare plan, you may continue your coverage for up to 18 months under COBRA. Please refer to the enclosed COBRA notice for further details and associated monthly premiums.

If you are interested in continuing your medical and/or dental coverage, please contact Annie Duenas/Rhonda Alley at 671-642-8873/8849. You will need to submit a completed COBRA election form along with your first premium payment. You have up to 60 days from the date you receive the COBRA notice to submit the COBRA election form; your COBRA medical and/or dental coverage dating back to your benefits end date will not be effective until the first payment has been received.

### Life Insurance

You have the option to convert your CMI Group Life Insurance coverage to an individual policy. If you are interested in converting your Basic and/or Supplemental Life Insurance, please call Annie Duenas/Rhonda Alley at 671-642-8873/8849 and request a Group Conversion Application. You must submit the Group Conversion Application and the premium to United of Omaha Life Insurance Company at the address listed on the form within 31 days from your Insurance Benefits End Date.

### Accidental Death and Dismemberment Insurance

If you've elected CMI's group Voluntary AD and D coverage, you have the option to convert your coverage to an individual policy. If you are interested in pursuing this option, please call Annie Duenas/Rhonda Alley at 671-642-8873/8849 and request an Application for Accident Insurance Under Conversion Privilege. If you decide to convert to an individual AD and D policy, you will need to calculate your annual premium and submit the Accident Insurance Under Conversion Privilege form and the premium to Reuben Warner Associates, Inc. at the address listed on the form within 31 days from the date you leave the Company.

EXHIBIT
(36)
500

## Continental Micronesia

Continental Micronesia
P.O. Box 8778
Tamuning, Guam 96931

HAMID ASHTIANI
PO BOX 12723
TAMUNING GU 96931



```
* *
1 3 5   UNITED STATES
1 6 3 4 #  00.60⁰  PB869453⁹
2 6 8 6   BARRIGADA GU  08 01
                        96921
```

PAST DATED.
38 DAYS OF
FROM LAST DAY OF
EMPLOYMENT.
RECIEWED ON
AUG/14/01

EXHIBIT
(37)

# AMERICAN 🏛 HOME
## ASSURANCE COMPANY
### NEW YORK, NEW YORK   A CAPITAL STOCK COMPANY   FOUNDED 1853

## APPLICATION FOR ACCIDENT INSURANCE UNDER CONVERSION PRIVILEGE

APPLICATION is hereby made to the American Home Assurance Company for Accident Insurance.

| Name of the Insured (Last) | (First) | (Middle Initial) | Date of Birth |
|---|---|---|---|

| Address | Amount of Principal Sum |
|---|---|

| Name of Group Policyholder | Policy Number **GTP 804 92 77** |
|---|---|

| Name and Address of Beneficiary | Relationship |
|---|---|

Date of Termination of Employment

Date _____ 19___    Signature of Applicant _____

### RATES

#### ACCIDENTAL DEATH, DISMEMBERMENT, OR LOSS OF SIGHT BENEFITS

Amounts Available: $50,000.00 to $ 500,000.00

#### ANNUAL PREMIUM PER $1,000.00 PER APPLICATION

**ALL STATES (EXCEPT NEW YORK AND MASSACHUSETTS)**

| | | (Renewal Only) |
|---|---|---|
| Ages 16 - 62 | Ages 63 - 69 | Ages 70 - 79 |
| $1.25 | $3.00 | $4.00 |

**NEW YORK STATE RESIDENTS**

| | (Renewal Only) |
|---|---|
| Ages 16 - 70 | Ages 71 - 79 |
| $1.25 | $1.25 |

**MASSACHUSETTS RESIDENTS**

| | | (Renewal Only) |
|---|---|---|
| Ages 16 - 62 | Ages 63 - 69 | Ages 70 - 79 |
| $1.20 | $3.00 | $4.00 |

#### INSTRUCTIONS FOR CONVERSION PRIVILEGE

On the date of termination of employment or during the 31 day period following termination of employment, you may convert your insurance, without a medical examination, to American Home Assurance Company's individual Insurance Policy. The individual policy will be effective either as of the date the application and payment is received by the Insurance Company or its Agent, or on the date coverage under the group policy ceases, whichever occurs later. The premium will be the same as you would ordinarily pay if you applied for an individual policy at the American Home Assurance Company. The amount of insurance benefit converted cannot exceed $500,000 nor be less than $50,000. Another form must be completed if you desire coverage for your spouse and for each dependent child 16 years of age or older. They must each have a separate application.

This form with your payment should be submitted to:

**Reuben Warner Associates, Inc.**
**100 William Street**
**New York, NY 10038**

Reuben Warner Associates, Inc. is American Home Assurance Company's Managing General Agent for individual AD&D business. Your check should be payable to Reuben Warner Associates, Inc.

EXHIBIT (28) 432

| Company | Address | ZIP | Phone |
|---|---|---|---|
| NAVIGATORS MANAGMNT CORP | 123 WILLIAM ST | 0038 | 212-406-2900 |
| NE FACIL DAK INTRNTL LT. | 111 JOHN ST | 0038 | 212-513-1446 |
| NEW YORK AUTOMOBILE INS PLAN | 125 MAIDEN LN | 10038 | 212-943-5100 |
| NEW YORK BD OF FIRE UND | 85 JOHN ST | 10038 | 212-227-3700 |
| NEW YORK LIFE INSURANCE | 8 CHATHAM SQ | 10038 | 212-349-8050 |
| NEW YORK MERCHANT BANKERS | 116 JOHN ST | 10038 | 212-528-0610 |
| NIXON-GALLAGHER CO | 111 JOHN ST | 10038 | 212-619-3750 |
| NORTHEASTERN FACILITIES | 111 JOHN ST | 10038 | 212-385-7575 |
| NUR PRACTNR PRO LBLTY GRP INC | 151 WILLIAM ST | 10038 | 212-227-0028 |
| NY PROP INS UNDERWRTNG ASSOC | 100 WILLIAM ST | 10038 | 212-208-9700 |
| NYDEC BROKERAGE CORP | 80 BEEKMAN ST | 10038 | 212-732-4042 |
| NYLUNG, GEORGE J | 80 BEEKMAN ST | 10038 | 212-964-3676 |
| OCEAN AIR CARGO CLAIMS INC | 111 JOHN ST | 10038 | 212-732-8340 |
| OLD REPUBLIC RE INC | 90 WILLIAM ST | 10038 | 212-968-7899 |
| ORIENTAL FIRE & MRNE NY | 111 JOHN ST | 10038 | 212-964-4270 |
| ORNTL FIRE & MRNE NY LIAISON | 111 JOHN ST | 10038 | 212-964-4270 |
| P C RALLI & CO | 116 JOHN ST | 10038 | 212-962-3071 |
| P W S USA INC | 40 FULTON ST | 10038 | 212-791-9350 |
| PORTER & YEE ASSOCS INC | 117 BEEKMAN ST | 10038 | 212-732-4575 |
| POST & KURTZ INC | 111 JOHN ST | 10038 | 212-766-8800 |
| PREFERRED CONCEPTS INC | 111 JOHN ST | 10038 | 212-608-9400 |
| PROFESSIONAL COVERAGE MANAGER | 130 WILLIAM ST | 10038 | 212-619-4900 |
| R D T BROKERAGE CORP | 111 JOHN ST | 10038 | 212-732-0201 |
| REINSURANCE CORP OF NY | 80 MAIDEN LN | 10038 | 212-363-4440 |
| RELIANCE GROUP HOLDINGS INC | 116 JOHN ST | 10038 | 212-608-6680 |
| RELIANCE INSURANCE | 130 WILLIAM ST | 10038 | 212-608-6990 |
| RICHARD WHILEY INC | 110 WILLIAM ST | 10038 | 212-732-1322 |
| ROEBUCK ASSOC | 45 JOHN ST | 10038 | 212-267-3224 |
| ROGER METZGER ASSOC INC | 59 JOHN ST | 10038 | 212-608-2500 |
| ROSE COMPASS SVCES | 116 JOHN ST | 10038 | 212-406-4004 |
| ROSE COMPASS SVCES INC | 111 JOHN ST | 10038 | 212-964-2600 |
| S & S AGENCY INC | 130 WILLIAM ST | 10038 | 212-227-4532 |
| S Y KUHN INSURANCE | 8 CHATHAM SQ | 10038 | 212-693-2800 |
| SAINT PAUL COMPANIES | 160 WATER ST | 10038 | 212-248-2300 |
| SAMUEL MENDALIS CO | 160 BROADWAY | 10038 | 212-269-6586 |
| SAPPERSTEIN HOCHBERG | 18 JOHN ST | 10038 | 212-233-4452 |
| SAUNDRA DEE INSURANCE BRKRGE | 45 JOHN ST | 10038 | 212-608-1008 |
| SCARFA BARON AGENCY | 116 JOHN ST | 10038 | 212-406-2424 |
| SELLNER & SELLNER | 125 MAIDEN LN | 10038 | 212-809-6166 |
| SENECA INSURANCE COMPANY INC | 111 JOHN ST | 10038 | 212-233-9000 |
| SERHEY-DAVIDSON CORP | 160 BROADWAY | 10038 | 212-964-7802 |
| SMYTH SANFORD & GERARD INC | 135 WILLIAM ST | 10038 | 212-374-1323 |
| SOLBERG CAMPBELL ASSOC INC | 111 FULTON ST | 10038 | 212-349-2626 |
| SOLBERG, ERLING J | 111 FULTON ST | 10038 | 212-349-2626 |
| SOLOMON GUTTER INSURANCE | 45 JOHN ST | 10038 | 212-285-4920 |
| SOMERSET MARINE | 123 WILLIAM ST | 10038 | 212-349-1600 |
| SOUTH CONTINENTAL OF N Y INC | 88 FULTON ST | 10038 | 212-233-2287 |
| SOUTHERN MARINE & AVIATION INC | 125 MAIDEN LN | 10038 | 212-480-4270 |
| STARR ASSOCS INC | 125 MAIDEN LN | 10038 | 212-668-9300 |
| STEPHEN WUND ASSOC | 111 JOHN ST | 10038 | 212-349-6431 |
| STRULL FLEISCH SCHMUTTER INC | 156 WILLIAM ST | 10038 | 212-964-6190 |
| SUCCESS INSURANCE AGENCY INC | 217 PARK ROW | 10038 | 212-693-1818 |
| SULCOV, ARTHUR | 156 WILLIAM ST | 10038 | 212-785-0240 |
| TFG INSURANCE | 40 FULTON ST | 10038 | 212-602-6400 |
| TILDEN, JOHN P | 123 WILLIAM ST | 10038 | 212-266-0700 |
| TOWER INSURANCE CO INC | 110 WILLIAM ST | 10038 | 212-233-1399 |
| UNIONE ITALIANA REINSURANCE CO | 127 JOHN ST | 10038 | 212-269-1951 |
| UNITED AMERICAS INSURANCE CO | 83 MAIDEN LN | 10038 | 212-514-7400 |
| UNITED STATES LIFE INS CO | 125 MAIDEN LN | 10038 | 212-709-6000 |
| VMG BROKERAGE INC | 8 CHATHAM SQ | 10038 | 212-385-9520 |
| WALSH GROUP INC | 40 FULTON ST | 10038 | 212-406-2400 |
| WARNER REUBEN ASSOCIATES INC | 100 WILLIAM ST | 10038 | 212-809-8300 |
| WEXFORD UNDERWRITING | 40 FULTON ST | 10038 | 212-962-3030 |

ZIP ⟹

EXHIBIT
(39)



**R**euben
**W**arner
Associates, Inc.

100 WILLIAM STREET • 20TH FLOOR
NEW YORK, N.Y. 10038
TEL. NO. (212) 809-8300 • FAX NO. (212) 809-9065
OUTSIDE N.Y. STATE, TOLL FREE: 1-800-421-3005

EAST HAMPTON, L.I., N.Y. (516) 758-6666
JERSEY CITY, N.J. (201) 963-3822

## TELECOPIER TRANSMITTAL

DATE: _1/3/02_

TIME: _1:05_

TRANSMITTAL TO: _Tony_

FAX. NO: _____        LOCATION: _____

THIS TELECOPY IS BEING SENT BY:
NAME: _Teri Resnick_

FAX NO. (212) 809-9065

NUMBER OF PAGES (INCLUDING COVER SHEET): _2_

IMPORTANT — IF YOU DO NOT RECEIVE ALL PAGES, PLEASE
        CALL BACK AS SOON AS POSSIBLE:
        IN NEW YORK STATE - (212) 809-8300
        OUT OF NEW YORK STATE - (800) 421-3005

THANK YOU.

EXHIBIT
(40)

*"YOUR SUCCESS IS OUR GOAL"*        (9)    510

MULTI-COMPANY GENERAL AGENTS  •  ACCIDENT-HEALTH-LIFE  •  DEALING EXCLUSIVELY WITH AGENTS & BROKERS FOR OVER 45 YEARS

# AMERICAN 🏛 HOME
# A S S U R A N C E   C O M P A N Y
### NEW YORK, NEW YORK   A CAPITAL STOCK COMPANY   FOUNDED 1853

### APPLICATION FOR ACCIDENT INSURANCE UNDER CONVERSION PRIVILEGE

APPLICATION is hereby made to the American Home Assurance Company for Accident Insurance.

| Name of the Insured (Last) | (First) | (Middle Initial) | Date of Birth |

| Address | Amount of Principal Sum |

| Name of Group Policyholder | Policy Number |

| Name and Address of Beneficiary | Relationship |

Date of Termination of Employment

Date _____ 19___     Signature
                           of
                           Applicant_____

### RATES

### ACCIDENTAL DEATH, DISMEMBERMENT, OR LOSS OF SIGHT BENEFITS

#### Amounts Available: $50,000.00 to $250,000.00

#### ANNUAL PREMIUM PER $1,000.00 PER APPLICATION

**ALL STATES (EXCEPT NEW YORK AND MASSACHUSETTS)**

|  |  | (Renewal Only) |
|---|---|---|
| Ages 16 - 62 | Ages 63 - 69 | Ages 70 - 79 |
| $1.25 | $3.00 | $4.00 |

**NEW YORK STATE RESIDENTS**

|  | (Renewal Only) |
|---|---|
| Ages 16 - 70 | Ages 71 - 79 |
| $1.25 | $1.25 |

**MASSACHUSETTS RESIDENTS**

|  |  | (Renewal Only) |
|---|---|---|
| Ages 16 - 62 | Ages 63 - 69 | Ages 70 - 79 |
| $1.20 | $3.00 | $4.00 |

### INSTRUCTIONS FOR CONVERSION PRIVILEGE

On the date of termination of employment or during the 31 day period following termination of employment, you may convert your insurance, without a medical examination, to American Home Assurance Company's Individual Insurance Policy. The individual policy will be effective either as of the date the application and payment is received by the Insurance Company or its Agent, or on the date coverage under the group policy ceases, whichever occurs later. The premium will be the same as you would ordinarily pay if you applied for an individual policy at the American Home Assurance Company. The amount of insurance benefit converted cannot exceed $250,000 nor be less than $50,000. Another form must be completed if you desire coverage for your spouse and for each dependent child 16 years of age or older. They must each have a separate application.

This form with your payment should be submitted to:

**Reuben Warner Associates, Inc.**
**100 William Street**
**New York, NY 19938**

*EXHiBiT (41)*

Reuben Warner Associates, Inc. is American Home Assurance Company's Managing General Agent for individual AD&D business.
Your check should be payable to Reuben Warner Associates, Inc.

# AMERICAN 🏛 HOME
## A S S U R A N C E   C O M P A N Y
### NEW YORK, NEW YORK   A CAPITAL STOCK COMPANY   FOUNDED 1853

**APPLICATION FOR ACCIDENT INSURANCE UNDER CONVERSION PRIVILEGE**

APPLICATION is hereby made to the American Home Assurance Company for Accident Insurance.

| Name of the Insured (Last) | (First) | (Middle Initial) | Date of Birth |
|---|---|---|---|

Address

Amount of Principal Sum

*PAI 804 92 78 and*

Name of Group Policyholder

Policy Number

Name and Address of Beneficiary

Relationship

Date of Termination of Employment

Date _____19____

Signature
of
Applicant _____

## RATES

### ACCIDENTAL DEATH, DISMEMBERMENT, OR LOSS OF SIGHT BENEFITS

Amounts Available: $50,000.00 to $ *500,000.00*

**ANNUAL PREMIUM PER $1,000.00 PER APPLICATION**

**ALL STATES (EXCEPT NEW YORK AND MASSACHUSETTS)**

| | | (Renewal Only) |
|---|---|---|
| Ages 16 - 62 $1.25 | Ages 63 - 69 $3.00 | Ages 70 - 79 $4.00 |

**NEW YORK STATE RESIDENTS**

| | (Renewal Only) |
|---|---|
| Ages 16 - 70 $1.25 | Ages 71 - 79 $1.25 |

**MASSACHUSETTS RESIDENTS**

| | | (Renewal Only) |
|---|---|---|
| Ages 16 - 62 $1.20 | Ages 63 - 69 $3.00 | Ages 70 - 79 $4.00 |

### INSTRUCTIONS FOR CONVERSION PRIVILEGE

On the date of termination of employment or during the 31 day period following termination of employment, you may convert your insurance, without a medical examination, to American Home Assurance Company's individual Insurance Policy. The individual policy will be effective either as of the date the application and payment is received by the Insurance Company or its Agent, or on the date coverage under the group policy ceases, whichever occurs later. The premium will be the same as you would ordinarily pay if you applied for an individual policy at the American Home Assurance Company. The amount of insurance benefit converted cannot exceed $500,000 nor be less than $50,000. Another form must be completed if you desire coverage for your spouse and for each dependent child 16 years of age or older. They must each have a separate application.

This form with your payment should be submitted to:

**Reuben Warner Associates, Inc.**
**100 William Street**
**New York, NY 10038**

*EXHIBIT*
*(42)*

Reuben Warner Associates, Inc. is American Home Assurance Company's Managing General Agent for Individual AD&D business.
Your check should be payable to Reuben Warner Associates, Inc.

*504*

*The U.S. Equal Employment Opportunity Commission*

FOR IMMEDIATE RELEASE                    CONTACT:   Reginald Welch
Tuesday, October 3, 2000                            David Grinberg
                                                    (202) 663-4900
                                         TTY:       (202) 663-4494

# EEOC ISSUES NEW GUIDANCE ON DISCRIMINATION IN EMPLOYEE BENEFITS

WASHINGTON - The U.S. Equal Employment Opportunity Commission (EEOC) today issued a new section to its Compliance Manual which provides the Commission's first comprehensive analysis of some of the most important employee benefits issues under the anti- discrimination laws.

The new Compliance Manual section analyzes benefit discrimination claims under each of the laws enforced by the Commission, clearly explaining that the laws prohibit discrimination in fringe benefits. "This guidance makes clear that employers are never allowed to consider employees' race, color, sex, national origin, or religion, nor retaliate against them, in connection with their benefits plan," said EEOC Chairwoman Ida L. Castro "The section also explains that benefit plan provisions that differentiate on the basis of age or disability must be carefully scrutinized to ensure they do not run afoul of the law."

The section examines the legal standards that apply to claims of discrimination in health and life insurance benefits, long-term and short-term disability benefits, severance benefits, pension or other retirement benefits, and early retirement incentives. The limited circumstances in which the law permits employers to provide lower benefits to older employees than to younger workers and the specific requirements of the Americans with Disabilities Act are set forth.

Ms. Castro added: "Issuing this new section is a major step in EEOC's continuing efforts to update and streamline its Compliance Manual in order to aid our investigators and attorneys in handling claims involving discrimination in employee benefits while also enhancing our customer service." The new Compliance Manual section replaces former Section 627: Employee Benefit Plans and seven other Commission policy statements.

This is the second issuance of new sections to the Compliance Manual in recent months. In May, EEOC issued a new section on "threshold" issues, the factors considered by the Commission in determining who can pursue a legal claim of employment discrimination. The full text of the both new sections, as well as other information about the Commission, is available on the agency's web site at www.eeoc.gov.

EXHIBIT (43) 415

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

| | |
|---|---|
| PERSON FILING CHARGE | |
| Ashtiani, Tony H | |

THIS PERSON (check one)

[X] CLAIMS TO BE AGGRIEVED

[ ] IS FILING ON BEHALF OF ANOTHER

DATE OF ALLEGED VIOLATION

| *Earliest* | *Most Recent* |
|---|---|
| 07/12/2001 | 07/12/2001 |

PLACE OF ALLEGED VIOLATION

Tamuning, GU

CHARGE NUMBER

378A200115

Mr. Dixon McKenzie
Human Resource Director
Continental Micronesia, Inc.
P.O. Box 8778
Tamuning, GU 96931

## NOTICE OF CHARGE OF DISCRIMINATION
*(See EEOC "Rules and Regulations" before completing this Form)*

You are hereby notified that a charge of employment discrimination has been filed against your organization under:

[X] TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

[ ] THE AGE DISCRIMINATION IN EMPLOYMENT ACT OF 1967

[ ] THE AMERICANS WITH DISABILITIES ACT

[ ] THE EQUAL PAY ACT (29 U.S.C, SECT. 206(d)) investigation will be conducted concurrently with our investigation of this charge.

The boxes checked below apply to your organization:

1. [ ] No action is required on your part at this time.
2. [X] Please submit by 02/08/02 a statement of your position with respect to the allegation(s) contained in this charge, with copies of any supporting documentation. This material will be made a part of the file and will be considered at the time that we investigate this charge. Your prompt response to this request will make it easier to conduct and conclude our investigation of this charge.
3. [X] EEOC has instituted a Mediation program which provides parties with an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please indicate that desire on the enclosed form and respond by 01/24/02 to Denise Barmard (415) 356-5044. If you DO NOT wish to participate in Mediation, you must submit a statement of your position to the Commission Representative listed below, by the above date.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

300 Ala Moana Blvd.
Room 7-127, Box 50082
Honolulu, Hawaii  96850

Emily Mauga
*(Commission Representative)*

(808.) 541-3120
*(Telephone Number)*

[X] Enclosure:  Copy of Charge

BASIS OF DISCRIMINATION

[ ] RACE   [ ] COLOR   [ ] SEX   [ ] RELIGION   [X] NAT. ORIGIN   [ ] AGE   [ ] DISABILITY   [ ] RETALIATION   [ ] OTHER

CIRCUMSTANCES OF ALLEGED VIOLATION

See enclosed Form 5, Charge of Discrimination.

*Exhibit (44)*

| DATE | TYPED NAME/TITLE OF AUTHORIZED EEOC OFFICIAL | SIGNATURE |
|---|---|---|
| 01/10/2002 | Timothy A. Riera<br>Director | for |

EEOC  FORM 131-ADR  (Test 02/00)

**CHARGING PARTY'S COPY**



**PMCare**

1772-C CHALAN PASAHERU, TAMUNING, GUAM 96913 • TEL: (671) 647-6201 • FAX: (671) 647-0045

| | |
|---|---|
| PATIENT CHART NO.: 197820514 | ☑ APPOINTMENT ☑ WALK-IN ☑ URGENT CARE | DATE: 7/02/2001 TIME: 11:47:42 |

| PATIENT'S LAST NAME | FIRST | MI | BIRTHDATE | SEX |
|---|---|---|---|---|
| ASHTIANI | MATTHEW | N. | 12/18/97 | ( ) MALE ( ) FEMALE |

| MAILING ADDRESS | CITY | ZIP | INSURANCE CARRIER | RELATIONSHIP TO INSURED |
|---|---|---|---|---|
| P.O. BOX 12723 | TAMUNING GU | 9693 | MULTI | CHILDREN |

| HOME ADDRESS | CITY | ZIP | INSURANCE I.D. NO. | EFFECTIVE DATE |
|---|---|---|---|---|
| 333 LEYANG ROAD "FLEX" | BARRIGADA GU | 9693 | 0307190348-3 | 1/01/00 P1 |

| INSURED'S NAME | EMPLOYER | SOCIAL SECURITY NO. | PRIMARY M.D. | CO-PAY |
|---|---|---|---|---|
| CATHERINE ASHTIANI | COAIRMIC | 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 | PMC CLINIC | 10.00 |

| TELEPHONE NUMBER | | OTHER INSURANCE CARRIER | INSURANCE I.D. NO. | EFFECTIVE DATE |
|---|---|---|---|---|
| HM: 853-5575 WK: 642-8800 | | | | 0/00/00 11:47:42 |

I authorize the release of my medical information/records for services rendered by PMC Isla Health System, including physician's services and supplies to my insurance earlier for payment of medical benefits. I am responsible for co-payments, deductibles and other charges not paid by my insurance. I am aware that PMC Isla System may refer any unpaid charges and related fees directly from to a collection agency to pursue payment.

PATIENT'S OR AUTHORIZED PERSON'S SIGNATURE: X T. ASHTIANI   Date: JUL/02/01

| DESCRIPTION | CODE NEW PAT | CODE EST PAT | FEE | DESCRIPTION | CODE | FEE | DESCRIPTION | CODE | FEE |
|---|---|---|---|---|---|---|---|---|---|
| **OFFICE VISITS** | | | | **INJECT/ IMMUNIZATIONS/SKIN TEST** | | | **CARDIOLOGY** | | |
| Problem focused, minor | 99201 | 99211 | | HIB | 90645/6/7 | | EKG | 93000 | |
| Expanded prob. foc. minor | 99202 | 99212 | | Dtap | 90700 | | Rhythm, strip | 93040 | |
| Detailed, low complex | 99203 | 99213 | | IPV | 90713 | | Stress test | 93015 | |
| Comprehensive, mod. complex | 99204 | 99214 | | Hep Vac B (child) | 90744 | | Holter monitor | 93230 | |
| Comprehensive, high complex | 99205 | 99215 | | Hep Vac B (adult) | 90746 | | Echo, real time | 93307 | |
| Post-op, follow up | | 99024 | | MMR | 90707 | | Echo, pulse wave | 93320 | |
| **PREVENTIVE CARE EXAMS** | | | | DT (child) | 90707 | | Doppler, color flow | 93325 | |
| Infant (0-1Yr.) Exam | 99381 | 99391 | | TD (adult) | 90718 | | Stress Echocardiogram | 93350 | |
| Child (1-4Yrs.) Exam | 99382 | 99392 | | Pneumovax | 90732 | | **RESPIRATORY** | | |
| Child (5-11 Yrs.) Exam | 99383 | 99393 | | Influenza | 90657/8/9 | | 02 /Breathing therapy | A4618 | |
| Adoles (12-17 Yrs.) Exam | 99384 | 99394 | | Varicella | 90716 | | Spirometry | 94010 | |
| Adult (18-39 Yrs.) Exam | 99385 | 99395 | | PPD | 86580 | | Nebulizer | 94664 | |
| Adult(40-64 Yrs.) Exam | 99386 | 99396 | | Epinephrine | J0170 | | Nebulizer, subsequent | 94665 | |
| Adult (65 + ) Exam | 99387 | 99397 | | Rocephin mg | J0696 | | Pulse oximetry | 94760 | |
| **CONSULT** | | | | Solumedrol 40mg | J2920 | | **ENT** | | |
| Problem focused, minor | 99241 | | | Kenalog mg | J3301 | | Hearing test | 92551 | |
| Expanded prob. foc. minor | 99242 | | | Bicillin units | | | Removal of cerumen | 69210 | |
| Detailed, low complex | 99243 | | | Lidocaine | J2000 | | **Theraphy IV** | | |
| Comprehensive, Mod complex | 99244 | | | Depo Provera 150 mg | J1055 | | Infusion therapy | 90780 | |
| Comprehensive, high complex | 99245 | | | **IV FLUIDS :** | | | Therapeutic/diagnostic | 90784 | |
| **REFERRING PHYSICIAN** | | | | | | | **LABORATORY** | | |
| **BASIC LIFE/ WK -DISABILITY** | | | | **OTHER/IMMUNIZATIONS/ MEDICATIONS** | | | Occult blood | 82270 | |
| Basic life disability exam | 99450 | | | | | | Urine pregancy test | 81025 | |
| Work related disability exam | 99455 | | | **I & D/ Repairs/Excisions** | | | Urinalysis, dipstick | 81002 | |
| **MATERNITY CARE** | | | | I & D Abscess simple | 10060 | | Blood sugar (accucheck) | 82948 | |
| 1ST OB | 99205 | | | I & D of cyst | 10040 | | Cholesterol, total | 82465 | |
| OB Per Visit | 59426 | | | Repair lac 2.5cm/less | 12001 | | **SUPPLIES** | | |
| Fetal NST | 59025 | | | Repair lac 2.6 cm-7.5 | 12002 | | Vaginal supplies/PAP | Q0091 | |
| Post partum (vaginal) | 59430 | | | BX of skin lesion | 11100 | | Other vaginal supplies | Q0111 | |
| **GYN PROCEDURES** | | | | Exc lesion.5cm or less | 11400 | | Preparation kit 1V | A4914 | |
| Colposcopy | 57452 | | | Exc lesion .6cm-1cm | 11401 | | Ear supplies | A9900 | |
| Colposcopy, w/ Biopsy | 57454 | | | Exc lesion 1.1cm - 2 | 11402 | | Gauge dressing | A6216 | |
| EMB | 58100 | | | Skin tags removal | 11200 | | Surgical tray | A4450 | |
| Endorcervical Curette | 57505 | | | Wart removal | 17110 | | **OTHER SUPPLIES:** | | |
| Exc. Lesion/cervix(polypectomy) | 57500 | | | **INJURIES/LESION** | | | | | |
| Tx of lesion vulva(warts) | 56501 | | | **SPECIFY LOCATION/SIZE/LENGHT/NUM** | | | **SERVICE SURCHARGE** | | |
| Cryocautery Init. Repeat | 57511 | | | | | | Handling Laboratory Spec | 99000 | |
| Cautery of cervix | 57510 | | | **ENDOSCOPY** | | | Serv. After Office Hrs. | 99050 | |
| LEEP | 57460 | | | EGD | 43235 | | Serv. Bet. 10pm-8am | 99052 | |
| IUD INSERTION | 58300 | | | EGD with biopsy | 43239 | | Serv on Sunday/Holiday | 99054 | |
| Diaphragm Fitting | 57170 | | | Colonoscopy | 45378 | | Office Serv. On Emergency | 99058 | |
| Post partum (ceasarian) | 59430 | | | Colonoscopy w/biopsy | 45380 | | Special Reports | 99080 | |
| **OTHER PROCEDURES:** | | | | Sigmoidoscopy | 45330 | | Prolonged O.V. Direct/1st h | 99354 | |
| Circumcision | 54150 | | | Sig with biopsy | 45331 | | Prol. O.V. direct, each add. | 99355 | |
| Vasectomy | 55250 | | | **SURGI CENTER** | | | Prol. O.V./H.V. Indirect, 1st | 99358 | |
| **OTHER PROCEDURES:** | | | | OR FIRST 30 MIN | ORRM1 | | Prol. O.V./H.V. Indirect, eac | 99359 | |
| | | | | OR EACH ADDT'L | ORRM2 | | Holding Room every hour | HOLRM | |

| CONDITION RELATED TO: | | 03 ACCIDENT | IF ACCIDENT/INJURY: | PLACE OF VISIT | | | |
|---|---|---|---|---|---|---|---|
| 01 ILLNESS | | 04 MVA | PLACE | 05 ADULT | TOTAL FEE | | EXHIBIT (45) |
| 02 PREGNANCY | | 04 WORK INJURY | WHAT KIND OF ACCIDENT | 06 PEDIA | PT. CO-PAYMENT | | |
| | | 04 SCHOOL INJURY | REMARKS | 06 OB/GYNE | PT. CO-PAYMENT BALANCE | | |
| | | | | | TOTAL DUE FROM PATIENT | | |
| ANTONIO ARELLANES, M.D. | | | | | TOTAL DUE FROM INSURANCE: | | 342 |
| PHYSICIAN/AUTHORIZED PERSON'S SIGNA | NEXT APPT DATE: | TIME: | MD. | | RECEIPT NO. | | |



**WHOLE HEALTH**

Discharge Information Form

**CMI Family Medical Center**
P.O. Box 22588
GMF, Barrigada, Guam 96921
671-642-8359

## DISCHARGE INSTRUCTIONS

Please fill out the Patient Satisfaction Survey or go
on line to www.wholehealthnet.com – click feedback

Medication given/prescribed _Tylenol as needed for fever_ #_____ Refills____
(circle) _(name, strength and frequency)_

Medication given/prescribed _Augmentin 1 ½/12-5 1 teaspoon three_ #_230u_ Refills _0_
(circle) _(name, strength and frequency)_ _a day x 14 days_

Medication given/prescribed _____ #_____ Refills____
(circle) _(name, strength and frequency)_

Medication given/prescribed _____ #_____ Refills____
(circle) _(name, strength and frequency)_

Discharge Instructions_____
_keep area clean and dry, wash area c̄ soap_
_and water 2 times a day, _
_wash hands a lot !!! no sucking thumb_

Follow-up Plans _2 weeks, if develop fever return to clinic_

I have received information about my condition, instructions for further treatment or consultation, if
necessary, and all my questions have been answered. I have been given information about how to
properly take this medication, its indications (potential benefits), contraindications (situations in which I
should not take the medication), and precautions (possible risks). I understand that should I have any
additional questions about my condition, I can call the medical clinic for information.

_Cathy Ashtiani_                  7/5/03
**Patient Signature**                          **Date**
ASHTIANI, MATTHEW
**Patient Name (PLEASE PRINT)**                **SS#**

234

I have reviewed the discharge instructions with the patient and the patient has verbally expressed
understanding of these instructions.

_Maria S. Tobias M.D._            7/5/03         EXHIBIT
**Provider Signature/Printed Name**          **Date**          (46)

Tobias, Maria S. M.D.

Form 10-3a/01



**WHOLE HEALTH**

**Discharge Information Form**

**CMI Family Medical Center**
P.O. Box 22588
GMF, Barrigada, Guam 96921
671-642-8359

**DISCHARGE INSTRUCTIONS**

Please fill out the Patient Satisfaction Survey or go
on line to www.wholehealthnet.com – click feedback

Medication given/prescribed_____ #____ Refills____
    (circle)      (name, strength and frequency)

Medication given/prescribed_____ #____ Refills____
    (circle)      (name, strength and frequency)

Medication given/prescribed_____ #____ Refills____
    (circle)      (name, strength and frequency)

Medication given/prescribed_____ #____ Refills____
    (circle)      (name, strength and frequency)

Discharge Instructions_____

    * Plenty of fluids: gatorade
    * Vit C 500 mg.
    * Motrin — for fever
    * or tylenol

Follow-up Plans_____
→ as needed    cough
    ↑ vomiting
concerns? → call !     dehydration

I have received information about my condition, instructions for further treatment or consultation, if
necessary, and all my questions have been answered. I have been given information about how to
properly take this medication, its indications (potential benefits), contraindications (situations in which I
should not take the medication), and precautions (possible risks). I understand that should I have any
additional questions about my condition, I can call the medical clinic for information.

**Patient Signature** _Cathy Ashtiani_      **Date** 9/24/03

**Patient Name** (PLEASE PRINT) _Ashtiani Matthew_      **SS#** 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

I have reviewed the discharge instructions with the patient and the patient has verbally expressed
understanding of these instructions.

**Provider Signature/Printed Name** Jitka Lom, M.D.      **Date** 9/24/03

EXHIBIT (47)

368

Form 10-3a/01

EXHIBIT
(48)

336.

| | ✓ | | | | | |
|---|---|---|---|---|---|---|
| L. C. | ✓ | | | | | |
| JUNIOR M. | ✓ | | | | | |
| DAVE M. | ✓ | | | | | |
| CENNER M | ✓ | | | | | |
| MIKE P | ✓ | | | | | |
| ERIC P. | ✓ | | | | | |

## UNUSUAL OCCURRENCES

| NAME | TIME | ASSIGNMENTS | | REMARKS |
|---|---|---|---|---|
| DALE | 1435-1545 | JL 1141 | 911/942 | 17 NRT |
| Tony A. | 0445-1630 | ✓ 227 on Gate ✓/✓ Paperwork | 943 | 21 SPN |
| ERIC/GEORGE | 1530-1630 | 249 | 905/967 | 14 NRI |
| VIC / DAVE | 1535-1640 | JL 1146 | 977/944 | 16 KIX |
| Scott / Marlow | 1405-1715 | JL 1052 — Dispatch Help DC-10 | 945/946 | 18 KIX |
| MIKE / JR | 1505-1715 | 063 26un/wop / sort 43 us | 941/963 | 8 NRT |
| Joe K./BENNY | 1540-1715 | 235 | 916/473 | 17 NGO |
| ERIC/GEORGE | 1525-1740 | 201 (AM paperwk) RTR FILE 970/971 | 10 DPS |
| VIC / DAVE | 0445-1815 | ✓ 246 SV FORM cockpit/on GATE 953 | 19 ROR |
| TONY A. | 1550-1815 | 228 Belly Load - 5/out FW3 920/945 | 20 SPN |
| Scott / MARLON | 1645-1900 | 236 | 942/411 | 12 MNL |
| Joe K./BENNY | 1830-1910 | 227 (Joe/Benny) | 985 | 10 MKG |
| | | TV | | |
| MIKE / JR | 1705-T | 062 SV AFC PLA OIL | 001 | 9-OTR |
| TONY A. | SV INSIDE | NCP Head cleaning Lite PNL Radio Awm Light Dim | | |
| ERIC/GEORGE + OUTSIDE | 6" TAIL GATE INOP / FWD Comp't TERM VLV INOP Auto | | | |
| | RCR INST. OP ITS | | | |
| PW CREW | 1710-0510 | 232 GATE Jump Fan LABEL/ R&R 970 No TRR 952 | | |
| | LIVELY HEAT EXCHR | | | |
| Joe K./BENNY | 1715-0645 | 250 S/ AFC PLA OIL 957 14 MNL 863 | | |
| | SOFTWARE UPGRADE | | | |
| Scott / MARLON | 2000-0630 | 074 ✓ AFC PW OIL 073 8 NRT 911 | | |
| VIC / DAVE → SV INSIDE | 1 Jump Fan HELD INOP / 2 Hyo Clima Absolt 60" | | | |
| OUTSIDE | AFTER T/O LAV + DUMP MLEC INOP / Scott 4E INOP | | | |
| | RCR IT INST. Thp - OTR | | | |

October 1, 2002

Alex Chenet, M.D.
Guam Adult Pediatric Clinic
612 N. Marine Drive, Suite 8
Dededo, GU  96929

RE:                          ASHTIANI, TONY
Date of Service:             October 1, 2002
Date of Injury:              June 26, 2001
Membership/Claim #:          03071903481

### PHYSICAL MEDICINE AND REHABILITATION CONSULTATION

Dear Dr. Chenet:

Thank you for asking me to see this patient in consultation.  I examined him on
October 1, 2002.

### COMPREHENSIVE HISTORY

### CURRENT COMPLAINTS:

1)  Neck pain.
2)  Mid back pain.
3)  Lower back pain.

### HISTORY OF INJURY:

Patient claims that on June 26, 2001, he was injured.  At that time, he was working
for Continental Airlines.  He was forced to work by himself, lifting up a very heavy
object weighing in excess of 100 lbs.  This was first considered a work injury.
Subsequently, it was discovered that patient had some degeneration of his spinal
region.   It was told to him by the third-party payor that this degeneration
represented his injury.  Interestingly, patient never previously had any pain from
his spinal region.  The question of whether or not patient had degeneration in the
past really is of inconsequence.   The reason is because he never had any
previous pain until he was injured while working on June 26, 2001.  Therefore,
even if he did have a pre-existing condition, it was at worst asymptomatic, i.e.,
without pain.  The thing that caused his pain was the injury suffered on that date.
Subsequent to the injury, patient has had physical therapy care and has been
seen for MRI for his lumbar spine.  Lumbar spine MRI of May 31, 2002 revealed
facet degenerative changes at L-5/S-1.  Subsequently, this was later defined more

EXHIBIT
(49)

435

Mailing Address: P.O. Box 1150 · Kamuela, HI 96743-1150 · 808-885-8477 · FAX: 808-885-8335

fully by Dr. Berg as being somewhat atypical for his age group, as he is in his late 30's.

He still complains of fairly significant lower back pain complaints.

## PREVIOUS SUCH PROBLEMS; PREVIOUS OR SUBSEQUENT INJURIES:

Denied.

## CURRENT SYMPTOM REVIEW:

He says on a pain scale of 1-10, his current pain is an 8-9 in severity. It hurts all the time. It has responded to chiropractic care with Dr. Larkin and some physical therapy sessions.

## MEDICAL HISTORY:

| | |
|---|---|
| ILLNESSES: | Non-contributory. |
| ALLERGIES: | No known drug allergies. |
| CURRENT MEDICATIONS: | Motrin for pain. |
| OPERATIONS: | Previous hernia surgery. |

## SOCIAL HISTORY:

The patient is married, and has two children. He has a college education. He denies smoking and drinking.

## FAMILY HISTORY:

Prostate cancer.

## REVIEW OF SYSTEMS:

| | |
|---|---|
| EYES: | Non-Contributory. |
| ENT: | Non-contributory. |
| CARDIOVASCULAR: | Non-contributory. |
| PULMONARY: | Non-contributory. |

ExHibiT
(49)

437

GI: Non-contributory.

GU: Non-contributory.

CNS: Non-contributory.

MUSCULOSKELETAL: Non-contributory.

NEUROLOGICAL: Non-contributory.

### SOURCE OF ALL FACTS SET FORTH IN THE HISTORY OF COMPLAINTS:

The history as related to me by the patient.

### RADIOGRAPHIC REVIEW

I have reviewed the MRI films and do agree with the MRI report.

### COMPREHENSIVE PHYSICAL EXAMINATION

### THORACOLUMBAR SPINE EXAMINATION

INSPECTION: No scars are noted. No scoliosis is observed. Thoracic kyphosis is normal. There is normal lumbar lordosis. Leg lengths are equal.

PALPATION: There is tenderness over the lumbar paravertebral region, worse on the right than on the left. PA palpation at L-4/5 produces moderate pain response.

### LOWER EXTREMITY EXAMINATION

Femoral, dorsalis pedis, and posterior tibialis pulses are 2+ and symmetrical bilaterally. Fabere test is negative bilaterally. Gaenslen's test is negative bilaterally.

### NEUROLOGIC EXAM

Straight leg raising test is negative bilaterally. Femoral stretch sign is negative bilaterally. There is no atrophy noted of the buttocks, thighs, or calves. Reflexes at the knees and ankles are 2+ and symmetrical. Sensation to pinprick and light touch is normal and equal bilaterally throughout the lower extremities.

### INDEPENDENT PROCEDURES

LUMBAR RANGE OF MOTION: NORMAL

EXHIBIT
(49)

436

| | | |
|---|---|---|
| Flexion | 35 °w/pain | 60 ° |
| Extension | 10 ° | 25 ° |
| Right lateral flexion | 10 ° | 25 ° |
| Left lateral flexion | 10 ° | 25 ° |

MOTOR TESTING:

| | RIGHT | LEFT |
|---|---|---|
| Hip flex motor | 5/5 | 5/5 |
| Hip ext motor | 5/5 | 5/5 |
| Hip abduction | 5/5 | 5/5 |
| Hip adduction | 5/5 | 5/5 |
| Knee flexion | 5/5 | 5/5 |
| Knee extension | 5/5 | 5/5 |
| Foot dorsiflexion | 5/5 | 5/5 |
| Foot plantar flexion | 5/5 | 5/5 |
| Foot inversion | 5/5 | 5/5 |
| Foot eversion | 5/5 | 5/5 |
| Big toe dorsiflexion | 5/5 | 5/5 |

## MEDICAL DECISION-MAKING

### IMPRESSIONS

1)  Lumbar facet syndrome.
2)  Lumbago

### DISCUSSION / RECOMMENDATIONS

My recommendations would include active physical therapy, paravertebral nerve blocks under fluoroscopic guidance.

Thank you again for this kind consultation. If I can be of any further assistance to you, please do not hesitate to contact me.

Sincerely yours,

*Charles Salzberg, MD*

Charles I. Salzberg, M.D.
Physical Medicine and Rehabilitation

CIS/ah
Cc: Netcare Life and Health

*Exhibit
(49)*

*438*



# GRIEVANCE RECORD
## TEAMSTERS LOCAL 986
## INTERNATIONAL BROTHERHOOD OF TEAMSTERS

Member's name __TONY ASHTIANI.__ Date __DEC/19/99.__

Job Class. __TECHNECIAN__ /Shift __SWING$__ Dept __MAINT__ . Work phone __642-8910__ Ext _____

Member's address __P.O. BOX 12723__ City __TAMUNING. GU__ Zip Code __96931__

SS# __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__ Date of Hire __1/14/1985__ Home Phone: __734-5575__

Name of Company against whom you are filing grievance: __CONTINENTAL. MICRONESIA, INC.__

Grievance is filed due to a contract violation of Article __26 & 30__ Section __26. PAR "C" & 30 PAR "A"__

A management person to contact: __MR. GLENN. MENDOZA__

Name(s) of witness(es) to violation: __MR. RON. ROBERTS__

Shop Steward's name __MR. JUAN. CRUZ__

**INSTRUCTIONS:** Please print or type your grievance. Write down everything you can remember. What Happened? How did it happen? Who was there when it happened? Please allow a reasonable time for your grievance to be answered by the Company within the time limits set forth in your contract.

EXPLAIN GRIEVANCE IN DETAIL: __I BELIEVE CONTINENTAL MICRONESIA INC.__
__HAS BEEN in violation OF FAIR STANDARD PRACTICES ACT__
__AMONG EMPLOYEE$ OF OUTSIDE HERITAGE & ANCESTRY.__

__MR: MENDOZA'S letter DATED NOV/14/99 is INVALID AND is__
__PREMEDITATED TARGETING (FORM OF HARASSMENT.) letter WAS__
__WRITTEN PRIOR TO DATE OF INCIDENT !__

__THIRD level INCIDENT is NOT PROPERLY SEQUENCED__
__NO VERBAL COUNSELING PRIOR TO FIRST level ACCIDENT.__

__THERE was NOT a PREMEDITATED "NO SHOW" occured__
__AT ALL. THIS WAS A simple TRADE INCIDENT.__
__A MISUNDERSTANING BETWEEN TWO CO-WORKER$.__

RELIEF REQUESTED: 1) __ALL MAINTENANCE SUP'S. MUST READ AND UNDERSTAND__
__THE FEDERAL LAWS. IN REGARDS TO DEPT OF LABOR.__
__FAIR STANDARD PRACTICE__
2) __THE CONTENTS OF COMPLAIN WILL BE FORWARDED TO__
__U.S. EQUAL. EMPLOYMENT OPPORTUNITY COMMISION IN HONOLULU. HI.__

_____ T. Ashtia. _____ EXHIBIT
Member's signature (50)

COMPANY'S REPLY: __GRIEVANCE IS DENIED PER IBT AGREEMENT PAGE 61__
__ARTICLE 24, ITEM K, STEP 1C. ALLEGATIONS MADE WILL__
__BE HANDLED UNDER A SEPARATE PROCESS. D. HALABY__ _____

RECORD OF ACTION BY UNION: __PRESENTED TO MR. DIMITRI @ 0746 12/21/99__

AGENT __R. Robert__ DATE __12/21/99__

BUSINESS AGENT COPY

## Con●●ntal Micronesia ●●



July 12, 1994

COPY

TONY ASHTIANI
Employee No. 01966CM
P.O. Box 8557
Tamuning, Guam  96931

Dear Tony:

During a recent pay review which was conducted as part of the union negotiations, it was discovered that you are currently being paid at a rate of $17.75 which is your pay seniority at Continental Airlines.  However, the union contract provides that any mechanics transferring from Continental Airlines to Continental Micronesia will be credited with their  Continental pay seniority up to a maximum of three (3) years.  You should have been placed at three year pay scale when you came to Guam.  Unfortunately, an error was made and you were credited with your full pay seniority.

This is to notify you that effective pay period ending 7/16/94, your rate of pay will be corrected to reflect the proper amount of $15.55 per hour.  In the meantime, another audit will be conducted to determine the extent of the overpayment to you by the Company.  Once we have that information, a determination regarding the overpayment will be evaluated.  You will certainly have an opportunity to be part of the resolution discussion.

If you have any questions, please feel free to contact Teresa Sage in Employee Relations. She will be happy to assist you to the extent possible at this time.

Sincerely,

Keith Higgins
Maintenance Manager

cc     Teresa Sage
       Bud Parry
       Jimmy Muraki
       Glen Mendoza

C:\WPDOCS\KH940712.003

Post-it™ routing request pad 7664

## ROUTING - REQUEST

Please
☐ READ          To _Cut P-160_
☐ HANDLE        _Personnel_
☐ APPROVE       _File_
and             _Hamid Ashtiani_
☐ FORWARD       _Emp # 01966 CM_
☐ RETURN        _C. Rate $15.55_
☐ KEEP OR DISCARD   _17.75_
☐ REVIEW WITH ME

Date _____     From ___

**000079**

EXHIBIT
(51)

Director
Equal Employment Opportunity Commission
300 Ala Moana Blvd, Room 7-127
P.O. Box 50082
Honolulu, HI 96850

Dear Director:

The undersigned would like to request a Notice of Right to Sue authorization on my charge of discrimination (EEOC Charge _____ ) because I intend to pursue this matter through private litigation.

I have not been coerced, pressured, intimidated or threatened into making this request. I have had explained to me my options, legal rights and I voluntarily elect to make this request with the full knowledge that the EEOC will terminate any and all actions in regard to my involvement in this case. I am also aware that I must file a private suit in Federal District Court within (90) days from the date of issuance of the Notice of Right to Sue.

_____          _____
Date                             SIGNATURE

                                 _____
                                 PRINT FULL NAME

                                 _____
                                 HOME ADDRESS

                                 _____
                                 CITY, STATE, ZIP CODE

                                 _____
                                 TELEPHONE NUMBER-HOME

EXHIBIT
(52)

414

To: Raymond J. Griffin Jr:

I am an Aircraft Mechanic employed by Continental Micronesia Inc. I have worked for this company for 8 years. During my employment here I have witnessed many actions taken by supervision which were discriminatory, I have even been the recipient of extreme racial treatment here. I have had supervisor's who would not allow me to attend trainning assignments for no other reason than my Leadman telling them that the "WHITE GUYS HERE ARE LAZY AND USELESS"! There are mechanics here that have been late to work daily for as long as I can remember that get perfect attendance records every year, they are local, and for that reason they are not reprimanded. There have been local mechanics who have not aquired sufficeint trade days prior to going off Island, who have not made it back in time for scheduled work and the Supervisors simply cover it up and don't even bother to fill the vacant slot, let alone tell someone about it, or even record it. There are two seperate rule's at CMI, one for local mechanics and one for others. When it comes to enforcing discipline for mechanics making mistakes at work, locals receive far more lenient punishments for committing the same errors as those that are not local. Take a look at the employee records here and I'm sure you'll find numerous cases where similar mistakes have been made by many mechanics and yet the local mechanics punishments are far less severe than that received by others.

Tony Ashtiani has worked for this company for many years. I believe the company has not delt fairly with him. My name is Larry Kimball and I have written this letter to help shed light on this company's discriminatory treatment of it's employee's.

Larry Kimball

EXHIBIT
(53)

| DATE | DISCUSSION | SUPERVISOR |
|------|------------|------------|
| 1 FEB 93 | EMPLOYEE IS ASSIGN TO VACATION RELIEF STATUS. IN 5 MONTHS THAT MR. ASHTIANI WAS ASSIGN TO SWING SHIFT, HE DID A "SUPER" JOB THAT WE ON SWING ARE GOING TO MISS AN OUTSTANDING AND WELL LIKE INDIVIDUAL. NO LATES OR TARDY AS OFF NOW, KEEP UP WITH YOUR PERFECT ATTENDANCE. | |

**ADD ATTACHMENTS IF NECESSARY**

000325

ExHibiT
(54)



# ΓΙΜΕS

RIGHT BEFORE
DC-10 being
PARKED.
I got TERMINATED.
"TIMING"??



*Hundreds of aircraft have been temporarily grounded in the Mojave desert. Many carriers, including CO, are parking planes at the airport. More planes are expected to be parked by carriers.*

7 X DC-10 RETURNED TO leasing CO.

EARL OF MIX MOTIVE I AM HITTING 40 YRS OLD. NEW TRAINING IS REQUIRES SO AS EVERY BODY AlSE MUST GET TRAINES DC-10 EXITED IN AUG/SEP-01

## GUM/JPN



A delegation representing all components of Guam's tourism industry recently traveled to eight cities in Japan to discuss the territory and convey a message that GUM remains a safe destination for Japanese travelers. After each seminar, the delegation held press conferences for local media to discuss safety issues.

✈ GUM Sales hosted a 767-ribbon cutting and open house, which was designed to market CO's new 767-400 to Guam/Saipan travel agencies, OnePass Elite members and the local news media. Guam's governor also attended the event.

NEXT GENERATION 767 JOINED THE FLEET ON GUAM. OCT-01.



EXHiBiT (55)  472