Tony H. Ashtiani
P.O.Box 12723
Tamuning Guam 96931
671-688-4844
671-653-5575

FILED
DISTRICT COURT OF GUAM
JAN 09 2004
MARY L. M. MORAN
CLERK OF COURT

135

# UNITED STATES DISTRICT COURT

## DISTRICT OF GUAM

| | |
|---|---|
| **Tony H. Ashtiani,** Plaintiff, | Civil Case No.: **02-00032** |
| Vs. | |
| **Continental Micronesia Inc, Dba, Continental Micronesia, Continental Airlines,** Defendant | **PLAINTIFF'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S MOTION TO STRIKE AFFIDAVIT OF TONY H. ASHTIANI. AND ATTACHED EXHIBITS 1-55 ON DECEMBER 19, 2003. AND MOTION TO STRIKE "SHAM" AFFIDAVITS AND ATTACHED EXHIBITS BY DEFENDANT IN ATTEMPT TO OBSTRUCT JUSTICE.** |

Plaintiff Pro se field reply and opposition expeditiously on Dec 31, 2003 due to General Order in effect. This supplemental opposition presented to Court in pursuant to Fed R. Civ. P. 15. Defendant has Served plaintiff Motion to strike on December 26, 2003 and is claiming plaintiff's Motion is untimely. Defendant in continues search to harass pro se plaintiff while defendant is also doing the same by serving opposition within 14 days of service.



ORIGINAL

Defendant reason for untimely ness is nothing but short of a <u>MYTH</u> asserted therein, because plaintiff made a clerical error as Cross-Motion rather Counter Motion.

*Opposition defined.* Act of opposing or resisting; Also, a position confronting another or placing in contrast; that which is or <u>furnishes an obstacle to some result</u>. Black Law Dictionary (West Group, Sixth Edition).

**LR 7.1 <u>Motion Practice</u>.**

LR 7.1 (1),(2) Whether motion set or not for oral argument "the opposing party shall have <u>fourteen (14)</u> days from the date of the filing of the motion to serve and file an opposition.. . . ."

LR 7.1 (C) <u>Moving Papers.</u> There shall be served and filed with the motion. **(1)** a memorandum in support thereof containing the points and authorities upon which the moving party relies: **(2)** the **evidence** upon which the moving party relies: **(3) any affidavit** permitted by the Federal Rules of Civil Procedure: and **(4)** the proposed order granting the relief requested in the motion.

Plaintiff filed his documents timely within fourteen (14) days form the date of defendants motion, Therefore, All moving papers, evidence, exhibits, affidavits are timely within the provision of the local rules.

Plaintiff has no intention of "sneaking new exhibits" stated by defendant is merely false, Rather plaintiff finds summary judgment is about facts, and Rule writer in Federal Rules of civil procedure promoting further affidavits which rule 56 (c) states ("The adverse party prior to the day of hearing may serve opposing affidavits.") Rule 56 (c) written *before* Rule 56 (e) and with that in mind Rule writer once again promotes further testimony and affidavits ("Form of Affidavits; Further Testimony; Defense Required"), ("The Court may permit affidavits to be supplemented or opposed by depositions, answer to interrogatories, or further affidavits").

The legal language in Rule 56 promotes new evidence through further affidavits to the trier of fact.

The Supreme Court held ("If the moving party satisfies his initial burden, the opposing party may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists. Fed.R.Civ.P. 56(e). In addition, the dispute must be genuine. The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") *Matsushita Elec. Indus.Co. v. Zenith Radio Corp.,* 475 U.S. 574,586, 106 S.Ct .1348 1356. **EXHIBIT A.**

Defendant citing a 1985 case Jacobson v. Filler 790 F.2d 1362(9th Cir.1985) 3 years after cited case (9th Circuit) has better

understanding to their previous opinion about a complaint filed by *Panahi*. Now imagine their opinion as important as Motion for Summary judgment filed by pro se civil rights litigants, in particular that Panahi and Ashtiani have English as their second to their mother language.

Defendant had duty to provide plaintiff with notice in <u>plain</u> English language of all necessary documents and how the formal contents should be, specifically that defendant knew that English is a second language to Ashtiani. ("In sum, absent a clear indication that the *pro se* litigant understands the nature and consequences of Rule 56 as is required under ***<u>Vital</u>*** and which we reiterate today--he or she must be so informed by the movant in the notice of motion" ) *McPherson v. Coombe* 174 F.3d 276.

Whether pro se is prisoner or non prisoner whether is Civil right of 1983 or 1964 as amended , In core ("it is about recognition of social rights of equality of opportunity of person regardless of race") Inmates or non inmates both have access to law library and legal material 6th Amendment of U.S Constitution section 2575, Plaintiff access to library does not constitutes defendant failure to give notice of motion as Ashtiani filed his Notice of Motion to defendant. ("In civil rights cases where plaintiff appears pro se, court must construe pleadings liberally and must afford plaintiff

benefit of any doubt") *Panahi v. Los Angeles Police Dept.* 839F.2d 621 (9th cir ,1988).

("The Court, however, is mindful that *pro se* litigants should be given special latitude in responding to such a motion"). *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir.1988) ("special solitude should be afforded to *pro se* litigants generally, when confronted with motions for summary judgment") accordingly, plaintiff may submit affidavits and additional material in accordance with Rule 56(e), Employee, appearing pro se, brought Title VII action against his former employer. The District Court, Block, J., held that, because employee was appearing pro se, he would be allowed to submit affidavits and additional material"). *Gonzalez v. Long* 889 F.Supp 639 ,In ruling on summary judgment motion, Court construes pro se complaint more liberally than it would complaint of represented party.

On other hand, defendant is asking the Court that any pleading from the plaintiff which is presented to the fact finder that is damaging to defendant should not be allowed. Once again defendant has chosen the double edged sword because plaintiff is appearing pro se.

Summary judgment serves as vehicle with which court can determine whether further exploration of facts is necessary. Defendant has provided such vehicle to plaintiff to submit more facts.

Defendant complaints that affidavits and exhibits should have been before the defendant so that they could respond to them at the hearing, and find themselves above the law even above the order by Court and appear in person while the order states "appear telephonically". Disobeying the court order since the Court is aware of this issue, I see no need of my addressing it.

Defendant can always file a Motion for rehearing to explain its exhibits that will not meet Rule 901(b)(4) and 901(b)(9) and 803(6).

**Rule 1008. Functions of Court and Jury;** (" When the admissibility of other evidence of contents of writing, recording, or photographs under these rules depends upon the fulfillment of a condition has been fulfilled is ordinary for the Court to determine in accordance with provisions of Rule 104.**(a)** Whether the asserted writing ever existed, or **(b)** whether another writing, recording, or photographs produced at the trial is the original, or **(c)** whether other evidence of contents correctly reflects the contents, the issue is for the trier fact to determine as in the case of other issue of fact.")

**II. DEFENDANT'S ABSOLUTE OBLIGATION TO PROVIDE REASONS TO THE COURT FOR ITS FAILURE TO DEPRIVE MINORITIES BENEFITS AND THEIR FEDERAL STATUTE RIGHTS AND (GCA).**

**A.** DISCRIMINATION IN ITS EMPLOYEE'S BENIFITS INCLUDING ASHTIANI.

**B.** EMPLOYEE CHOOSING REPERSENTATIVE OF ITS OWN CHOOSING.

**C.** PROFF THAT PLAINTIFF'S STATISTICS ARE INACCURATE.

**A. <u>DISCRIMINATION IN EMPLOYEES'S BENIFITS INCLUDING ASHTIANI</u>**

It has been a decade that defendant has taken advantage of minorities including locals of their insurance benefits and ERISA *(JOHN PRUDEC V. CMI)* and defendant is deaf in both ears to hear cry of the little children of its deceased employees at funerals and has turned a blind eye that these deceased employees have been deducted after taxes for years in their insurance policies.

In Civil Rights Act of 1964 the burden of proof is always on plaintiff, and I have done so every step of the way, Defendant here has denied fair hearings and discriminated against plaintiff's benefits which the intentional delay of mailing and sequence of the events has been explained in exhibits (35) through (43) defendant under the umbrella of title VII is required by statute to come forth with a legitimate non discriminatory reasons and has failed to do so as to reason for discrimination in <u>insurance benefits</u>.

**B. <u>EMPLOYEE CHOOSING REPERSENTATIVE OF ITS OWN CHOOSING</u>**

<u>*Defendant for last 35 years has misled the locals and Ashtiani for last 12 years that no attorneys are allowed in human resources building of CMI at any hearings*</u> and as of yet defendant has not come

forward for a legitimate non- discriminatory reason for its failure to provide plaintiff a fair hearing:

**1.** Nothing in this subsection shall be construed to authorize or permit the denial to any person of the due process of law required by the constitution. 42 & 2000e-2 (2)(D)

**2.** Representative includes any person chosen by an employee to represent him. GCA 22.

**C. DEFENDANT'S BURDEN TO PROFF THAT PLAINTIFF'S STATISTICS ARE INACCURATE.**

> The burden then shifts to United to rebut the presumption of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). United has the evidentiary burden of articulating a reasonably specific, legitimate, non-discriminatory reason for its termination of McAlester. Rebuttal can proceed along two fronts. **First, proof that plaintiff's statistics are inaccurate** *McAlester v. United Air Lines, Inc*. 851 F.2d 1249 **EXHIBIT B**

**III. MOTION TO STRIKE "SHAM" AFFIDAVITS BY DEFENDNAT MCKINZIE, HERRERA, MENDOZA, AND Ms. WILSON IN OBSTRUCTION OF JUSTICE.**

The Ninth circuit requires the district Court to make a finding of the fact that the affidavit is a **"sham"**. *Kennedy v. Allied Mut. Ins.Co.* 952 F.2d 262 (9th cir 1991)

Ashtiani submitting corporate records of (3) individual instances at different dates of (3) different mechanics calling (3) Non-supervisory individuals exhibits (29),(30),(31) and *affidavit of Vince Diaz* the conclusion is inescapable.

("While the qualified witness testifying as to document sought to be introduced under business records exception to hearsay rule need not be the person who prepared the record and need not have personal knowledge of the entries in the record, the qualified witness must have knowledge of the procedure under which the records were created"). Fed.Rules Evid.Rule 803(6), *Overton v. City of Harvey* 29 F.Supp.2d 894

**EXHIBIT C.**

Defendant complains that these shift logs are dated after Ashtiani's termination , while this is even so better of proof which indicates that after Ashtiani's termination they changed the policy, and even then Plaintiff will submit copy of the shift log dated Jun 19 2001 before and *not after* Ashtiani's termination. *See* Declaration.

**SOURCE:**

Corporate documents shift turn over logs Admissible Rule 803(6)

***June 19, 2001*** Sherman Thompson Calls Frank Taijeron Non-Supervisory Exhibit (056 ) Authenticated

See Ashtiani's Declaration

**SOURCE:**

Corporate documents shift turn over logs

Admissible Rule 803(6)

April 03, 2002, Rodriguez calls Ruiz

Non-Supervisory Exhibit (29)

May 14, 2002, Martinez calls Saclot

Non-Supervisory Exhibit (30)

May 27, 2003, Raqueno calls Therrell

Non-Supervisory Exhibit (31)

**Undisputed Fact:**

*Vince Diaz Affidavit at 3,4,5*

"Mechanics other than supervisor in the maintenance Department took sick call Messages from other employees."

"Message of incoming calls were either noted in the shift turn over log, or on the message board or passed on verbally to the supervisor on duty."

"I have personal knowledge mechanics whom called another mechanic for sick calls were not considered No-call/ No- Show and were not reprimanded. This was in house policy at CMI Maintenance Dept."

**"Sham" affidavit** ; Mckinzie at P 16 "As the IBT Agreement and Continental's Attendance policy state,"When reporting an absence an absence from work, an employee must Speak directly to supervisor . A phone call to non supervisory personal, such as to another mechanic does not constitute proper Continental protocol for reporting such absence".

> **If after a hearing on the issue it does find a sham**, then it shall rule anew on the motion for summary judgment. If it finds to the contrary, i.e., that the actions were the result of an honest discrepancy, a mistake, or the result of newly discovered evidence, then it shall entertain the respective cross-motions (including the **new** Jamison declaration) on the other grounds **advanced** by the parties. C.A.9 (Cal.) ,*1991.Kennedy v. Allied Mut. Ins.* Co.952 F.2d 262 **EXHIBIT D.**

**IV. EXHIBITS INADMISSABLE UNDER 901 (b)(4)(9) AND RULE 803(6)AND IS OBSTRUCTION OF JUSTICE .**

Defendants exhibits E,F,J,K,(L(2)EACH) ,M,N, (Q(2)EACH) Are fabricated and are not true e-mails and that were typed and printed it also does not meet the Fed Rules of evidence. RULE 901(b)(9) and 901(b)(4). Defendant's e-mails do not have any respond from Plaintiff and that they all are inconsistence with their last name first name last as CMI computers are unable to send those types of e-mails and that they will flash on the screen "unable to send".

**Rule 901 (b)(4). Distinctive characteristics and the like**. Appearance, contents, substance, internal patterns, or other distintictive characteristics, taken inconjuction with circumstances.

**Rule 901 (b)(9). Process OR System.** Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

"(The district court held that the affidavits and emails were inadmissible hearsay and that Stevens had the opportunity to depose the affiants but chose not to do so)" *STEVENS Shipping and Terminal Company v. JAPAN RAINBOW*, II MV 334 F.3d 439 (5th Cir 2003) **EXHIBIT E.**

> The district court did not commit clear error in declining to admit the affidavits and email correspondence under the residual exception to the hearsay rule. *See Magouirk v. Warden, Winn Correctional Center*, 237 F.3d 549, 554 (5th Cir.2001). Based on the foregoing, we affirm the district court. AFFIRMED. **EXHIBIT F**

Furthermore, even if the email were admissible as a business record, the document contains **second and third-hand hearsay.** Plaintiff was not even aware of these emails until after defendant was charged with discrimination by EEOC. negate the likelihood of deliberate or conscious misrepresentation." Fed.R.Evid. 803 "underlying theory".

Plaintiff also asserts that attendance records were also manufactured evidence during EEOC investigation and not admissible because of Mr. Martinez's FAX which has electronic signature.

Defendant will not be able to survive its motion due to its erroneous exhibits provided to the district court. plaintiff has demonstrated *prima facie* against defendant it also has provide the "mosaics" and has brought intent of discrimination from up in the air

and has landed it on ground. *Overton v. City of Harvey* 29 F.Supp.2d 894

**V. CONCLUSION AND RELIEF SOUGHT.**

For all the forgoing reasons because of defendants dishonesty, malice and recklessness in attempt to deceive United States District Court by slipping exhibits that are e mails sent look alike, for that sole reason alone that defendant is deceiving the Court should be held contempt to the full extend of the law to the maximum punishment under Federal laws. Plaintiff asserts that this is obstruction of justice because affidavits were under oath as sworn testimony. This malice act has continuously made plaintiff intentional emotional stress. These types of actions by defendant shall not be tolerated, if CMI is doing these kinds of slipping of erroneous exhibits to the Federal Court, now imagine what they have been capable of doing to a common man like me.

**Submitted respectfully,.**

This 9th day of January 2004.

Tony H. Ashtiani

Pro Se, Plaintiff

that were in the possession of the Plan Administrator,' no such records were appended to Jamison's declaration."[4] Based on Kennedy's original statement that he and his brother were the only two beneficiaries under the Plan, the court concluded:

> The mixed issue of law and fact as to whether the Plan was established and operated in compliance with the provisions of Title I of ERISA, 29 U.S.C. Section 1001, *et seq.*, proves to be dispositive of this case.
>
> ....
>
> Upon careful consideration of the pleadings, depositions, answers to interrogatories, documents and declarations submitted by both parties, as well as the oral arguments heard on October 10, 1989, this court finds that there is no triable issue of material fact regarding the Plan's compliance with the provisions of ERISA, as the [Kennedys] have failed to present evidence sufficient to put in dispute the lack of participation in the Plan by a non-owner employee of Regency.
>
> As such, the Court finds that as a matter of law, the Plan was not in compliance with ERISA and that the bond issued by Allied is not subject to interpretation under Title I of ERISA.

Judgment for Allied was entered on January 4, 1990.

## III

### *Standard of Review*

The district court's grant of summary judgment is reviewed de novo. *New Hampshire Ins. Co. v. Vieira*, 930 F.2d 696, 697 (9th Cir.1991). Viewing the evidence in the light most favorable to the non-moving party, this court must determine whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. *Id.* "Summary judgment is appropriate where no genuine issue of material fact exists and a party is entitled to prevail in the case as a matter of law." *Bhan v. NME Hospitals*, 929 F.2d 1404, 1409 (9th Cir.1991).

> The party requesting summary judgment has the initial burden to show that there are no genuine issues of material fact. *T.W. Elec. Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 632 (9th Cir.1987). He does not necessarily need to put on evidence to negate his opponent's claim; he may simply point to portions of the pleadings, admissions, answers to interrogatories, and depositions which, along with any affidavits, show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).
>
> If the moving party satisfies his initial burden, the opposing party may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists. Fed.R.Civ.P. 56(e). In addition, the dispute must be genuine. The "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586,

4. Before judgment for Allied was entered, the Kennedys filed a motion for reconsideration of the summary judgment order under Local Rule 7.16(c), claiming that the district judge failed to "consider material facts presented to the court before the decision." The Kennedys also sought relief under Fed.R.Civ.P. 59(e), in the event the court had entered judgment for Allied prior to the hearing on the motion. The district judge apparently treated the motion as one for relief from the summary judgment order under Fed. R.Civ.P. 60(b), based on "newly discovered evidence." The new evidence consisted of a second declaration from Paul Jamison, in which he stated that Ms. Miller was indeed a fully vested participant in the Plan. The district court disregarded the new Jamison declaration, holding that the Kennedys were "precluded from offering ... evidence [that] was prepared after the decision but with due diligence could have been presented prior to decision." Because we conclude that Drake Kennedy's declaration raised a preliminary issue of fact, we need not consider whether the district court erred in refusing to consider the second Jamison declaration.



EXHIBIT A

properly find against the movant. Cooper v. Asplundh Tree Expert Co., 836 F.2d 1544, 1547 (10th Cir. [**29] 1988).

In reviewing the district judge's denial of the motion for a new trial, the initial decision to grant or deny such a motion rests with the district judge. We review the denial of a motion for new trial only for abuse of discretion. So long as a reasonable basis exists for the jury's verdict, we will not disturb the district judge's ruling. *Suggs v. State Farm Fire and Cas. Co.*, 833 F.2d 883, 886-87 (10th Cir. 1987), *cert. denied*, 486 U.S. 1007, 108 S. Ct. 1732, 100 L. Ed. 2d 196 (1988).

Our review of the record in the present case convinces us that there was sufficient evidence from which the jury could rationally conclude United discriminated against McAlester because of his race. The district judge did not abuse his discretion in denying United's motions for judgment n.o.v. or new trial.

McAlester alleged he suffered racial discrimination because he received disparate treatment under United's disciplinary procedures. *McDonnell Douglas*, 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817, establishes the model of proof for an individual disparate treatment case. A prima facie case of discriminatory termination is made by showing (i) that McAlester belongs to a racial minority; (ii) that he was discharged for violating a work rule of [**30] United; and (iii) that similarly situated non-minority employees who violated the same rule were treated differently than he was. *Brown v. A. J. Gerrard Mfg. Co.*, 643 F.2d 273, 276 (5th Cir. 1981). United did not contest the first two elements.

United asserts McAlester failed to prove intentional race discrimination because he did not show specific racial animus on the part of his supervisors. This is not McAlester's burden. While McAlester must produce evidence of discriminatory intent or motive to establish a prima facie case, it can be inferred from the mere fact of differences in treatment. *Teamsters*, 431 U.S. at 335 n.l5 (1977); *Clark v. Atchison, Topeka and Santa Fe Ry. Co.*, 731 F.2d 698, 702 (10th Cir. 1984). McAlester need not show his supervisors were personally prejudiced against him. Discriminatory treatment may be shown by gross statistical disparities and specific instances of individual discrimination. *Hazelwood*, 433 U.S. at 307-08; *Teamsters*, 431 U.S. at 338-39. McAlester presented statistical evidence of discrimination and testimony about individuals who violated similar rules where white employees were suspended, but minority employees were terminated. [**31] This evidence was sufficient to establish a prima facie case of intentional race discrimination. But, this court need not review whether McAlester made a prima facie case where the district court did not dismiss McAlester's claim on United's motion at the conclusion of McAlester's case. *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 75 L. Ed. 2d 403, 103 S. Ct. 1478 (1983).

The burden then shifts to United to rebut the presumption of discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). United has the evidentiary burden of articulating a reasonably specific, legitimate, nondiscriminatory reason for its termination of McAlester. Rebuttal can proceed along two fronts. First, proof that plaintiff's statistics are inaccurate or insignificant may dispel the plaintiff's proof of disparate result. Second, the employer may seek to provide a nondiscriminatory explanation for the apparently discriminatory result. *See Payne v. Travenol Laboratories, Inc.*, 673 F.2d 798, 817 (5th Cir. 1982), *cert. denied*, 459 U.S. 1038, 74 L. Ed. 2d 605, 103 S. Ct. 451, 103 S. Ct. 452 (1982).

**[*1261]** On the first front, United extensively cross-examined McAlester's statistical expert and established the fact that statistics may be misleading, **[**32]** but it did not present its own expert to show any inaccuracies in McAlester's analysis. On the second front, United presented three supervisors involved in McAlester's termination. Each testified he did not consider McAlester's race in his decision. They also testified that they applied a neutral rule which required termination unless there were mitigating circumstances. Good-faith assertions alone are insufficient to meet United's burden, *id.* at 817, but the application of a neutral rule

EXHIBIT B

One important matter, however, is that the City cannot have its cake and eat it too. The City has submitted two pages of Overton's exhibit 5 as exhibit J in support of the City's motion for summary judgment. It makes no difference which party submitted the answers, the answers do not satisfy the basic requirements of Rule 33. Accordingly, the court also strikes exhibit J of the City's motion for summary judgment.

**3. The City's motion to strike exhibit 13**

[2] Exhibit 13 is a document written by Overton, stating that he submitted several forms to "D. Craft." Overton submitted exhibit 13 to show that he submitted the forms. The City argues that the document is inadmissible hearsay. Overton argues that it is not hearsay because it qualifies as a recorded recollection. [FN4]

FN4. Overton's specific argument was that the document "is not hearsay but a recording made by Plaintiff." (Pl.'s Memo. in Resp. to Def.'s Mot. to Strike at 3.) This court reads this as asserting that the document is admissible under Federal Rule of Evidence 803(5), which excepts recorded recollections from the rule against hearsay.

[3] Federal Rule of Evidence 803(5) provides an exception to the hearsay rule for recorded recollections. Fed.R.Evid. 803(5). For a document to be admissible under Rule 803(5), the party seeking to admit the document must show that (1) the record concerns a matter about which the witness once had knowledge but now has insufficient recollection to testify fully and accurately and (2) the witness made or adopted the record when the matter was fresh in the witness' memory and the record reflects that knowledge correctly. *Collins v. Kibort*, 143 F.3d 331, 338 (7th Cir.1998).

In this case, Overton has made no attempt to lay the proper foundation for exhibit 13's admissibility. In his deposition, Overton testified about the matter contained in the document, which shows that he does not have an "insufficient recollection to testify fully and accurately" to the matter which the document concerns. (Overton Dep. at 53-54.) Accordingly, the court grants the City's motion to strike exhibit 13.

**4. The City's motion to strike exhibits 14, 16, 17, 20, 21, 24, 25, 26, 27, 28, 30, 32, 33, 34, and 36**

Exhibits 14, 16, 17, 20, 21, 24, 25, 26, 27, 28, 30, 32, 33, 34, and 36 are various documents submitted by Overton. The City contends that the court cannot consider these documents because they constitute inadmissible hearsay. Overton contends that the documents are admissible under the business records exception to the hearsay rule. [FN5]

FN5. Overton only specifically argues that exhibits 20 and 21 are admissible under the business records exception. He argues that exhibits 14, 16, 17, 24, 25, 26, 27, 28, 30, 32, 33, 34, and 36 are admissible because they were either "received," "kept," "tendered," or "made" in the "normal course of business." The court cannot imagine what hearsay exception other than the business record exception that Overton is trying to assert as to exhibits 14, 16, 17, 24, 25, 26, 27, 28, 30, 32, 33, 34, and 36; thus, the court construes Overton as arguing that those exhibits also are admissible under the business records exception.

***902**

(Cite as: 29 F.Supp.2d 894, *902)

[4] [5] Federal Rule of Evidence 803(6) provides an exception to the hearsay rule for records of regularly conducted activity. Fed.R.Evid. 803(6). This exception is commonly referred to as the business records exception. *See, e.g., Collins*, 143 F.3d at 337. In order for a document to be admissible as a business record under Rule 803(6), the party attempting to admit the document must establish that the document was " 'kept in the course of regularly conducted business activity, and [that it] was the regular practice of that business activity to make records, as shown by the testimony of the custodian or otherwise qualified witness.' " *Id.* (quoting *United States v. Briscoe*, 896 F.2d 1476, 1494 (7th Cir.1990) (quoting *United States v. Chappell*, 698 F.2d 308, 311 (7th Cir.1983))). While the qualified witness need not be the person who prepared the record and need not have personal knowledge of the entries in the record, the qualified witness must have knowledge of the procedure under which the records were created. *Collins*, 143 F.3d at 337-38.

ExHibiT C

78 (2d Cir.

urged cau-
1 Kennett-
2d 887 (5th
ted:

Research-
e reviewing
the issue
fidavit con-
every dis-
idavit does
refusal to
ice.... In
lving ques-
ourt should
n affidavit
statements
.

v. Michelin
5 (8th Cir.
d that the
e and the
obenko did
rent facts.
rt believed
produced
gment. In
was an at-
of the con-
therefore
nfield, 719

oed by the
Miller v.
1104 (7th
[a]n incon-
summary
onfused at
t explains
testimony
o material
the newly-
Franks v.
h Cir.1986)

ter-Rado-
lly dispose

of every case in which a contradictory affidavit is introduced to explain portions of earlier deposition testimony. Rather, the *Radobenko* court was concerned with "sham" testimony that flatly contradicts earlier testimony in an attempt to "create" an issue of fact and avoid summary judgment. Therefore, before applying the *Radobenko* sanction, the district court must make a factual determination that the contradiction was actually a "sham."

At the time the district court found Kennedy's later declaration to be an attempt to create a "sham issue of fact," we had not yet made clear that *Radobenko* does not apply to every instance when a later affidavit contradicts deposition testimony. We therefore do not know if the district court actually examined Kennedy's actions and made a finding of fact that they were a "sham." Accordingly we remand this case to the district court so that it may make that necessary determination. If after a hearing on the issue it does find a sham, then it shall rule anew on the motion for summary judgment. If it finds to the contrary, i.e., that the actions were the result of an honest discrepancy, a mistake, or the result of newly discovered evidence, then it shall entertain the respective cross-motions (including the new Jamison declaration) on the other grounds advanced by the parties. The summary judgment is therefore REVERSED and the case is REMANDED for further proceedings consistent with this opinion.




**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Scott KOENIG, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Mark KOENIG, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Jacklyn BOBBY, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Robert HUSSEY, Defendant-Appellant.**

**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Bobbi Jo BOBBY, Defendant-Appellant.**

**Nos. 89-50523, 89-50524, 89-50530, 89-50533 and 89-50547.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 13, 1991 (Nos. 89-50523, 89-50524, and 89-50530).

Submitted Aug. 13, 1991 * (Nos. 89-50533 and 89-50547).

Decided Dec. 19, 1991.

Defendants pled guilty to conspiracy to produce and use counterfeit access devices and various other crimes based on their conspiracy to use counterfeit automated teller machine (ATM) cards to withdraw funds. The United States District Court for the Central District of California, Pamela Ann Rymer, J., imposed sentences, and defendants appealed. The Court of Appeals, Wallace, Chief Judge, held that: (1) evidence supported increase of conspira-

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App.P. 34(a) and Ninth Circuit Rule 34-4.

EXHIBIT D

confirm acceptance of above," to read, "For and on behalf of Charterer's Agent, I confirm receipt of above." Manucy also interlineated, "All ILA labor and port/tug charges already committed to prior to receipt of this document." This document was dated February 20, 2001. Stevens provided $50,190.11 of stevedoring services and $35,046.54 of third parties' goods and services to the vessel.

Aware that Tokai was in financial trouble, Stevens asserts that it would not have worked the JAPAN RAINBOW II or advanced funds on its behalf but for Stevens's ability to rely on the vessel's credit and receive maritime liens against the vessel. Rather, Stevens would have demanded payment for the services up front. Stevens asserted its maritime liens by initiating this action on March 13, 2001. Stevens asserts that it did not know about the faxed notice until after it arrested the boat in New Orleans.

The parties agreed to a trial on the parties' joint stipulations, respective briefs, depositions, and exhibits, in lieu of live testimony. Each party submitted a trial brief, a bench book, and depositions. Stevens attached as exhibits to its trial memorandum the affidavits of three Stevens employees, Manucy, Coslick, and Tillman, indicating that none of the three had notice of the no-liens clause before February 20, 2001. In addition, Stevens attached a series of email correspondence between Stevens and its counsel, indicating that as of March 14, 2001, Stevens was unaware of the January 23, 2001, fax.

Ruby objected to the affidavits and the email correspondence as hearsay. Ruby also objected to portions of Coslick's deposition testimony either because it was hearsay or because Stevens failed to lay a foundation to show that Coslick had personal knowledge of the matters to which he testified. Although Stevens filed a reply to Ruby's objection to the affidavit and emails, Stevens never responded to Ruby's objections to Coslick's deposition testimony.

The district court sustained Ruby's objections and excluded from the trial evidence the objected-to portions of Coslick's deposition, all three affidavits, and the email correspondence. In granting the motion to strike affidavits, the district court reasoned that the parties agreed to submit depositions in lieu of stipulations for the trial on the papers. The parties did not request permission to submit affidavits. According to the district court, had the parties requested such permission, the district court would have denied the request, as the submissions were to take the place of a trial. The district court held that the affidavits and emails were inadmissable hearsay and that Stevens had the opportunity to depose the affiants but chose not to do so.

Turning to the merits of the case, the district court noted the general rule that a party who has actual knowledge of a prohibition of liens clause before supplying goods or services to a vessel cannot later claim a maritime lien for those goods or services. The district court found that the fax confirmation created a rebuttable presumption that Stevens received the notice.

The district court relied upon *Beck v. Somerset Techs., Inc.*, for the proposition that a letter placed in a U.S. Postal Service mail receptacle creates a presumption that it was actually received by the person to whom it was addressed. 882 F.2d 993, 996 (5th Cir.1989). The district court concluded that, on this record, Stevens failed to offer competent evidence to rebut the presumption that the fax was received. Having received the fax, Stevens had the requisite "actual knowledge" of the prohibition of liens clause. The district court rejected Stevens's argument that Stevens

EXHIBIT E

In the case at bar, the district court reasoned that the fax confirmation sheet created a rebuttable presumption that Zodiac delivered the notice and that Stevens received it. We agree with the district court in this case. Neither party disputes that facsimiles are a reliable and customary method of communicating in the shipping business. To quote the district court, in such an industry, "[t]he law simply cannot allow a supplier to deny knowledge of a no lien clause when it was delivered in a manner that was both customary and reliable in the shipping business." Thus, on the facts of this case, the district court did not clearly err in finding that the preponderance of the evidence showed that Stevens had actual knowledge of the prohibition of liens clause.

[8] Second, this Court need not address whether the district court erred in failing to distinguish Stevens's direct maritime liens from the liens that Stevens allegedly held as an assignee, as the record shows that Stevens failed to put forth evidence that it made payments on behalf of the assignor of the liens. *See Surgical Care Ctr. of Hammond v. Hospital Serv. Dist. No. 1,* 309 F.3d 836, 840 (5th Cir. 2002). Third, the district court did not commit clear error in declining to admit the affidavits and email correspondence under the residual exception to the hearsay rule. *See Magouirk v. Warden, Winn Correctional Center,* 237 F.3d 549, 554 (5th Cir.2001). Based on the foregoing, we affirm the district court.

AFFIRMED.




**Mary Virginia ACRIDGE, Individually and as Independent Executrix of the Estate of Louis E. Acridge, Deceased; Daniel Acridge Broyles, Plaintiffs–Appellees,**

v.

**The EVANGELICAL LUTHERAN GOOD SAMARITAN SOCIETY, et al., Defendants,**

**The Evangelical Lutheran Good Samaritan Society; Jerry L. Adams; Elaine Morrow; Sherri Lunsford Harris, Defendants–Appellants.**

**No. 02–10642.**

United States Court of Appeals, Fifth Circuit.

June 16, 2003.

Wife and son of patient with Alzheimer's dementia brought negligence action against nursing home and nursing home administrators seeking damages under Texas law for the death of patient, who died in nursing home after being beaten and stabbed by another resident. The United States District Court for the Northern District of Texas, Mary Lou Robinson, J., denied defendants' motion for summary judgment, and defendants appealed. The Court of Appeals, King, Chief Judge, held that: (1) wife could change the domicile of patient for purposes of diversity jurisdiction so long as wife was acting in patient's best interests; (2) patient's domicile was not changed by operation of law through wife's application for and receipt of state Medicaid benefits on behalf of patient; (3) New Mexico state court determination in probate proceedings that patient was domiciled in that state did not collaterally estop litigation of patient's domicile; and (4) wife was acting in the best interests of patient when she



ExHibiT F.