IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

\* \* \*

FILED
DISTRICT COURT OF GUAM

JAN 2 6 2004

MARY L. M. MORAN
CLERK OF COURT

TONY H. ASHTIANI,                    )
                                     )
            Plaintiff,               )
                                     )
     vs.                             ) CASE NO. CV02-00032
                                     )
CONTINENTAL MICRONESIA, INC.,        )
dba CONTINENTAL MICRONESIA, and )
CONTINENTAL AIRLINES, INC.,          )
            Defendants.              )
_____)

TRANSCRIPT OF PROCEEDINGS

BEFORE

THE HONORABLE JOHN S. UNPINGCO

Chief District Judge

**PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
and
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**FRIDAY, DECEMBER 12, 2003**

Wanda M. Miles
Official Court Reporter
District Court of Guam



**APPEARANCES:**


FOR THE PLAINTIFF:

TONY S. ASHTIANI
Pro se litigant
P.O. Box 12723
Tamuning, Guam  96931



FOR THE DEFENDANT CONTINENTAL AIRLINES, ETC:

CARLSMITH BALL, LLP
Attorneys At Law
BY:  ELYZE McDONALD, ESQ.
Bank of Hawaii Building, Suite 401
134 West Soledad Avenue
Hagatna, Guam 96910

1    HAGATNA, GUAM; FRIDAY, DECEMBER 12, 2003; 11:07 A.M.

2                              * * *

3          THE CLERK:  Civil case 02-00032, Tony H.

4    Ashtiani versus Continental Micronesia, Inc., et

5    cetera, et al., motion for partial summary judgment,

6    and motion for summary judgment.

7          Counsel, please state your appearances.

8          MS. McDONALD:  Your Honor, Elyze McDonald for

9    defendant Continental Micronesia, Inc., with Mr. Dixon

10   McKinzie, who is the Human Resources Director of

11   Continental.

12         MR. ASHTIANI:  Your Honor, Tony H. Ashtiani,

13   *pro se* litigant.

14         THE COURT:  Okay.  Let's start with the

15   defense motion.

16         MS. McDONALD:  Thank you, Your Honor.

17         May it please the court.

18         First I'd like to thank the court for its

19   order granting me to appear telephonically.  As you've

20   noticed since giving that order, based on a family

21   emergency that brought me to Guam, so I'm able to make

22   it here for the motion hearing.

23         I want to start off just by stating what the

24   undisputed facts are in this case, and then attempt to

25   talk about both motions.

1          The first undisputed fact is that attendance

2    procedures at Continental are governed both by

3    Continental attendance policy and by the union

4    agreement between Continental and the International

5    Brotherhood of Teamsters.  Both documents say that if

6    an employee is going to be absent for work, he needs

7    to call in and talk to his supervisor.  That's an

8    undisputed fact.

9          The second undisputed fact is that

10   Mr. Ashtiani did not call in for work on two

11   consecutive days, June 23rd and 24th, 2001.  In those

12   two documents, the two attendance policies, two days no

13   reporting to work and not showing up for work is cause

14   for discipline, not to exclude termination.  And it

15   says that in both documents.

16         The last undisputed fact is that Continental

17   discharged Mr. Ashtiani on July 3rd, 2001.  And as

18   you'll see from our Exhibit C, it was for the basis

19   that he didn't show up and call in to report his

20   absence to his supervisor for June 23rd and June 24th.

21         With that in mind, the standard that the Court

22   needs to engage in analyzing this motion is that the

23   plaintiff, in order to defeat summary judgment, needs

24   to provide significant probative evidence for his case

25   that any genuine issue of material fact exists.

1    There are eight causes of action in this case,

2    as you can see from the second amended complaint, but

3    the central cause of action is discrimination on the

4    basis of race. And in that, the Supreme Court has

5    prescribed a formula, as you're aware, with McDonnell

6    Douglas formula where the plaintiff first has to show a

7    pattern in each case of discrimination, then the burden

8    shifts to defendant to show a non-discriminatory,

9    legitimate reason for the termination, and then the

10    burden shifts back to the plaintiff to show pretext.

11    In a discharge case, the Ninth Circuit has

12    said that the plaintiff needs to show that he was doing

13    his job well enough throughout the possibility that he

14    was discharged for some other reason. And the fact is

15    that he failed to show up for work and talk to his

16    supervisor to get approval for two consecutive days.

17    And under the rules of Continental and International

18    Brotherhood of Teamster, he violated that policy by

19    not doing that. That in itself shows that he was not

20    performing adequately at work.

21    So the burden then shifts to Continental to

22    show a legitimate, non-discriminatory reason. And

23    that's the same reason; he didn't show up for work,

24    he didn't report his absence and get approval from the

25    supervisor. It's the same reason for why he wasn't

1    performing adequately.

2            So then the burden shifts back to Ashtiani, to

3    Mr. Ashtiani to show pretext.  And the Ninth Circuit

4    has two rules:  You have to show direct evidence of

5    discrimination, of which Mr. Ashtiani has not provided,

6    or you provide indirect evidence that the reason that

7    Continental furnished for terminating him was false.

8    He hasn't provided any evidence that Continental's

9    reason was false.

10           And I wanted to discuss just briefly the

11   evidence that he has provided.  None of it meets the

12   standard required under the summary judgment, or a

13   clear majority of it.  His affidavits, he has only

14   provided affidavits by himself that are sworn.  The

15   other affidavits are not sworn testimony, they're not

16   admissible before the Court.

17           He's provided declarations from people, and

18   if you read the notarization on the declarations, the

19   notary is only notarizing that he has brought to the

20   notary a copy of a document that somebody else has

21   signed.  This is not legitimate for a summary judgment,

22   in support of a position for summary judgment.

23           He has provided doctor's reports that are

24   illegible.  He has provided statistical studies with

25   no information who did the study, what is it studying,

1    what was the base, what, you know, what was his back-

2    ground in being able to provide this sort of study.

3    This is evidence that the court should not consider.

4    And as you've seen from reply, we have requested a

5    motion to strike all the unauthenticated evidence.

6           Every other count, Your Honor, is superfluous

7    to this discrimination case.  A lot of it has

8    absolutely no basis in the law, and there's no -- he

9    hasn't provided any authenticated evidence in support

10   of any of his other claims.

11          So unless the Court has any questions on

12   particular pieces of evidence, or on any count,

13   Continental will rest for now, and wait for

14   Mr. Ashtiani's response.

15          THE COURT:  Okay.

16          MS. McDONALD:  Thank you.

17          THE COURT:  Mr. Ashtiani.

18          MR. ASHTIANI:  May I?

19          THE COURT:  Yes.

20          MR. ASHTIANI:  Thank you, Your Honor.

21          Your Honor, first good morning.

22          And I'd like to say good morning to defense.

23          And that first and most, Your Honor, I want

24   to apologize because last time I was here arguing my

25   motion, I sat down on that table in front of my tables

1  and I did not know to stand here, but now I know

2  because I watched other arguments.

3         Your Honor, I filed a partial summary judgment

4  because I selected those cause of action that I could

5  meet the elements.

6         THE COURT:  Okay, let me steer you a little

7  bit, Mr. Ashtiani.  There's some important things that

8  we're looking at, right now we're looking at the

9  defendant's motion, and when they done I'll turn to

10  your motion.

11         MR. ASHTIANI:  Yes, Your Honor.  The only

12  difference --

13         THE COURT:  So I need you to respond.  There

14  are some legitimate questions being raised here.

15         MR. ASHTIANI:  Okay, Your Honor.

16         THE COURT:  And one of the legitimate

17  questions being raised is the evidence you have

18  submitted that are unauthenticated.  Okay.  And

19  unauthenticated evidence is evidence that really is

20  of dubious value, and that's why most courts say it's

21  inadmissible.  Okay.  There's no safeguard for the

22  truth in it.  Let me give you an example here.

23         When you submit an affidavit, you swear under

24  oath that the statements you're going to make are true

25  and correct.  Okay.  That's a safeguard for the truth.

1  But when you submit, say, what somebody has written to

2  a notary to notarize, there's no safeguard for the

3  truth because it is you submitting somebody else's

4  declaration. You can't vouch for that person's

5  truthfulness; the notary can't vouch for that person's

6  truthfulness. The net result is that that kind of `

7  evidence is very suspect and often not allowed into

8  court.

9       Now, that being the case, do you have any --

10  besides the information you have submitted, is there

11  any other information that, or evidence that you have

12  that is authenticated?

13       MR. ASHTIANI: Your Honor --

14       THE COURT: Safeguards for the truth?

15       MR. ASHTIANI: Your Honor, all the evidence

16  that I have submitted are basically on my personal

17  knowledge, which is in the Rule 56 that says based on

18  the personal knowledge, which I have done those in each

19  paragraphs.

20       THE COURT: Okay.

21       MR. ASHTINAI: In lieu of that, Your Honor,

22  Rule 56(e) states that certified copy attached to the

23  affidavit part of, which I've done that also; I took

24  in these original documents that were signed by the

25  employees, and I have given it to the notary, I showed

1  him the certified copy -- I showed him the original

2  copy and he has certified those copies of the original.

3  THE COURT: Yes, but that certification goes

4  only to the fact this is an accurate copy of the

5  original.

6  MR. ASHTIANI: Right.

7  THE COURT: It does not go to the contents of

8  the document. That's the issue here. It is what is

9  stated in the documents that we are interested in, in

10 terms of assessing how truthful those contents are.

11 MR. ASHTIANI: Your Honor, all these

12 individuals that had given their statements, they're

13 very credible individuals, and I do not see any

14 difference between their affidavit which I have

15 submitted, with the affidavit that Mr. McKinzie has

16 submitted, all the facts that he had stated that, is

17 that I'm submitting my facts, based on my personal

18 knowledge. So, basically, I do not really see the

19 difference between his affidavit and the affidavit

20 that I have submitted.

21 THE COURT: Okay.

22 MR. ASHTIANI: And basically, Your Honor, it's

23 the fact that the two days no-call no-show. We have

24 evidence of the shift schedule that there has been many

25 individuals that have called in and they have called in

1   to another mechanic; they do not directly have to talk

2   to a supervisor.

3        Now what is before the court is that that

4   application has applied to a certain race and

5   nationality of the majority, and Ashtiani among all

6   the employees, they must call in direct to the

7   supervisor.  That is a disparate treatment, Your Honor,

8   under the strict impact.

9        THE COURT:  But in order for you to show that

10  in a court of law, you have to get an affidavit from

11  these other mechanics that called in to another

12  mechanic, not a supervisor; they're the ones that have

13  to make a sworn statement that on such and such a date

14  I called in sick or whatever, I told this mechanic and

15  the mechanic related to the supervisor or whatever, and

16  I was never reprimanded and no adverse action was given

17  to me for having done this procedure, or for having

18  been absent from work, or both.  Okay?

19       MR. ASHTIANI:  Yes.

20       THE COURT:  That's the kind of proof we need.

21  Now absent that kind of proof -- what you know is fine,

22  but, you know, you need to understand you're also the

23  party at interest here, that is that, you're the one

24  with the most to lose, should you lose.  Okay.  So,

25  there is of course some caution that needs to be given

1  whether to believe everything you say.

2      MR. ASHTIANI:  Uh-huh.

3      THE COURT:  Okay.  And so that's what we're

4  after here.

5      MR. ASHTIANI:  Your Honor, Mr. McKinzie also

6  has interest in this party, and in his affidavit we do

7  not know that the documents presented before us if it's

8  authenticated in reference to the e-mails.

9      And, Your Honor, if I may, please, I knew that

10 this thing might come up, and what the defendant is

11 basically saying that these are hearsay documents under

12 Rule 803, and that in the United case, Your Honor,

13 United asserts the court here in failing to admit these

14 exhibits as exception to the hearsay rule under Federal

15 Rules of Evidence 801, 803 and 803(a)(c).   Even if

16 United exhibits are admissible as exception to the

17 hearsay rule, the trial court still has the duty to

18 balance the probative value of the evidence against its

19 potential for unfair prejudice under Federal Rules of

20 Evidence 403.

21      THE COURT:  Well, what exception to the

22 hearsay rule are you advocating for those documents

23 you're trying to get in?

24      MR. ASHTIANI:  Basically, Your Honor, some of

25 those documents can be self-authenticated, which I have

1    done, and it's under the exception of the rule, Rule

2    803 or 802.

3          THE COURT:  Are they business records, are

4    they --

5          MR. ASHTIANI:  Basically, Your Honor, those

6    documents that I have submitted, they came out of

7    Continental Micronesia maintenance office, which

8    basically says that these employees had called in

9    another mechanic, not the supervisor, and that's what

10   I have submitted.  And I have sworn, subscribed sworn

11   before the notary that those documents are legitimate

12   document, Your Honor.

13         THE COURT:  Okay.

14         MR. ASHTIANI:  Furthermore, Your Honor,

15   balancing the probative value of the evidence against

16   its potential of prejudice is a discretionary decision

17   for the trial judge, which will be not overturned

18   unless it's clearly erroneous.

19         Your Honor, I have not submitted any erroneous

20   evidence; I have submitted what has come from the

21   maintenance office, from my co-worker, and I have asked

22   them that if they can bring any samples that any

23   mechanic has called another mechanic, not the

24   supervisor, which I have done so.

25         THE COURT:  Well, but you're misreading the

1  rule.  The rule is whether the, when the judge admits

2  the evidence, the judge has made an error in admitting

3  the evidence.  It is not whether the evidence is

4  erroneous in and of itself, it's the substance of the

5  evidence; whether it's erroneous is not what's at

6  issue.  What is at issue is whether the judge abused

7  his discretion, that is, he did something that he

8  shouldn't have done.

9          But, go ahead.

10          MR. ASHTIANI:  Okay, Your Honor.  And I just

11  want to tell you that those documents that I have

12  submitted, they're all -- they're all legitimate

13  document, there's nothing that I have turned in, and

14  I respectfully ask the court to examine it and check

15  into it in going through this.

16          THE COURT:  Thank you.

17          MR. ASHTIANI:  Thank you, Your Honor.

18          THE COURT:  Anything else?

19          MR. ASHTIANI:  Not at this point, Your Honor.

20          THE COURT:  Thank you.

21          Response, if necessary, or do you stand by

22  your earlier argument, Ms. McDonald?

23          MS. McDONALD:  May I just make one point, Your

24  Honor?

25          THE COURT:  Yes.

1          MS. McDONALD:  Mr. Ashtiani raises his

2    unauthenticated evidence that other employees were

3    allowed to call in and report absences for work but

4    didn't have to speak to a supervisor.  This still

5    doesn't fulfill the burden that he has to show that

6    Continental's reason for terminating him was false,

7    that's the pretext argument.  So, while it may have

8    some issue with respect to the *prima facie* case, it

9    still does not fullfil his case to demonstrate pretext

10   on Continental's behalf.

11          Thank you, Your Honor.

12          THE COURT:  Thank you.

13          Let's switch now to the plaintiff's motions

14   for summary judgment.  Mr. Ashtiani, give me your best

15   shot on that.

16          MR. ASHTIANI:  Thank you, Your Honor.

17          Your Honor, if I, may it please the court, to

18   indicate that as far as the attendance, Your Honor, I

19   do not understand what is the sales of a fraudulent

20   insurance to the employees has to do with attendance.

21   Okay.  That is basically a discrimination here, because

22   they're denying benefits to one employee that has paid

23   for the benefits and then they turn around, give a

24   document that has been whited out.  And it has happened

25   to other families here, that they have checked a

1    legitimate claim against the insurance company.

2            That has nothing to do with attendance, Your

3    Honor; that is something that, a cause of action needs

4    to be looked at.  And I have been asked to provide the

5    name of the witnesses and supplement my answer, and I

6    have not done so because I'd like to maintain my

7    confidentiality into the names of those witnesses.

8            And they're bringing up issues that is

9    irrelevant, Your Honor, to the attendance issue, and

10   those things need to be looked at.

11           Your Honor, in regards to my own motion, I

12   have been denied a fair hearing, as you're well aware,

13   and that is within my constitutional rights.  And

14   that's due process.  Any man has the right to a fair

15   hearing.  And that I was not given a fair hearing.  And

16   prior to the hearing they had requested my final check.

17   That indication, Your Honor, that is a violation of

18   this Title 7, which we have before you.

19           Furthermore, Your Honor, plaintiff right and

20   the defendant's duty do not arise from express promise

21   made by either party, or from promise implied by law

22   because of benefit received or return of service, but

23   rather, from recognition of social right of equality,

24   of opportunity or person regardless of race.

25           Your Honor, I was denied to indicate what

1  had happened, and that if I would have given the

2  opportunity, none of this would have happened.  And

3  Mr. Mark Williams even indicates, hey, what is the

4  meeting about, and they do not allow him to have any

5  kind of indication what the meeting is all about.

6       Furthermore, Your Honor, in the Title 7 mostly

7  the district judges, the honorable judges had even in

8  Supreme cases are not interested to rehash what has

9  happened five years ago or neither what had happened

10 two years ago.  What the court has stated in similar

11 cases are the languages, like the specific reason and

12 the stated reason for termination.

13      And the termination letter, Your Honor, such

14 as this, which has the Continental Micronesia logo on

15 it, the specific reason for the termination were two

16 days no-call no-show.  Okay.  I can even submit a Guam

17 Cell invoice that I called in to work and my call was

18 -- and that's a legitimate document; if the court asked

19 me to provide that, I can do that.  And that the call

20 was made in, Your Honor, and that this is what the

21 legitimate complaint.

22      The defendant had oppor -- the defendant had

23 the right to write a 15-page termination letter and put

24 60 reasons that I was terminated.  But, Your Honor,

25 that's not what this letter says.  This letter says

1  Ashtiani did not call in to work for June 23, June 24,

2  which is false.  Because Joe Pangelinan declaration

3  states that Tony called in, and Ron Roberts declaration

4  states, Your Honor, that if Glenn Mendoza were to have

5  told Bill Herrera that Tony called in, none of this

6  would have happened.  That's what this letter states,

7  Your Honor.

8       And in the Supreme Court cases, Aikens

9  (phonetic) and Burdine, it's clear, plaintiff can

10  prevail either by proving the discrimination more

11  likely motivated the decision, or that employer

12  articulated reason is unworthy of belief, Your Honor.

13  I have proven that, I have proven all these three

14  reasons that they're unworthy of belief, and I have put

15  that on my motion, on the first original motion that I

16  had submitted to the court.

17       And simply disproving defendant's reason is

18  enough, which I have done so, Your Honor.  Plaintiff

19  need not also prove intentional discrimination, such

20  an approach unjustify and multiplies the plaintiff's

21  burden.  And I have been burdened with that, and I have

22  proven that.  And I have shown the statistics that

23  while 9.2 percent of the work force is minority, we

24  only were ten minorities, Your Honor, working for the

25  maintenance department.  Out of that ten, three

1  minorities were terminated. And those statistical

2  evidence, Your Honor, just like the <u>United</u> case, is a

3  very important evidence before the court.

4  Your Honor, the reason that the Supreme Court

5  cases say articulate a reason for termination is

6  because two and a half years later the defendant wants

7  to change the reason for termination. They want to

8  say, well, Ashtiani didn't call up this day, or he

9  didn't call his supervisor, or this and that. That is

10  why they indicate articulate a reason for termination,

11  specific reason for termination, so they can't change

12  that later on down the road.

13  And, Your Honor, for Mr. McKinzie, with all

14  the respect to him, that he says that Mr. Lee's

15  termination was retracted in his affidavit, now, I

16  don't understand what's, you know, if his affidavit

17  is not true, I fear, Your Honor, Rule 56(g), that bad

18  affidavit made. And he states that Mr. Lee was

19  retracted, yet Mr. Lee is working at Sears. So in his

20  affidavit he says his termination was retracted, here

21  he's not working for CMI. I don't understand that in

22  his affidavit, Your Honor. If my affidavit is not

23  admissible, then I just need to understand, I need to

24  read the rule more then.

25  But, Your Honor, them changing the rule and

1    saying that, coming out with another affidavit of

2    Mr. Herrera and Mr. Glenn Mendoza; that they were off

3    island on the day that the motion was due to be

4    submitted, that is enough to affirm that evidence of

5    guilt.

6        And it states in here, Your Honor, the trier

7    of fact can reasonably infer from the falsity of the

8    explanation that the employer is dissembling to cover

9    up a discriminatory purpose.  Such an interference is

10   consistent with the general purpose -- principle of

11   evidence law that the fact finder is entitled to

12   consider a party dishonesty about a material fact as

13   affirmative evidence of guilt.

14       And that's what we have here, Your Honor.

15   This affidavit states that Mr. Lee's termination

16   retracted; that is not true.

17       And that the defendant has -- furthermore,

18   Your Honor, I don't know if the court is aware that I

19   did submit an affidavit yesterday, one day prior to the

20   hearing, per Rule 56(c), and that defendant is relying

21   on manufactured e-mails, on internal e-mails from each

22   other, which those e-mails could not even be sent, and

23   that needs to be looked at, Your Honor.

24       And basically that's what I have.  I do not

25   want to repeat what I have written to the court because

1   I know that this court is very thorough in looking at

2   documents.  And plaintiff rests at this time, Your

3   Honor.

4           THE COURT:  Thank you.

5           Defense?

6           MS. McDONALD:  Thank you, Your Honor.

7           The issues with regard to Continental's motion

8   for summary judgment, and Mr. Ashtiani's motion for

9   partial summary judgment are the same.  Mr. Ashtiani

10  has repeated his arguments in pretty much all the

11  documents that he's submitted.  So except for the fact

12  that in his motion for partial summary judgment he does

13  not address two issues--one is the fraudulent insurance

14  and the second is the violation of FMLA.  So his

15  bringing up the issue of fraudulent insurance is

16  misplaced at this time in the hearing.

17          For his motion for summary judgment, he has

18  to prove every element as the plaintiff in this case.

19  At this point, I'd like to incorporate all of our

20  arguments made during our motion for summary judgment

21  in response to his partial motion for summary judgment,

22  and claim that there are no genuine issues of material

23  fact, but instead, they are all in favor of

24  Continental, and that would be proper for granting

25  Continental's motion for summary judgment and denying

1    his motion for partial summary judgment.

2         He, Mr. Ashtiani brings up an issue that

3    there's this invoice about cell phone calls that he

4    made to Continental.  Well, he hasn't produced them.

5    And second of all, they don't show that he spoke to

6    supervisors, which is what was required of him under

7    Continental's attendance policy.

8         He brings up arguments regarding meetings that

9    happened after he was absent for two days and didn't

10   talk to his supervisors; those meetings are irrelevant

11   to this case.

12        He brings up Mr. Bruce Lee and wonders why

13   Mr. Lee works at Sears now.  Well, that also has

14   nothing to do with this case.  The fact is that

15   Mr. Ashtiani does not have any personal knowledge about

16   Mr. Lee's case, he was not his supervisor, he had no

17   supervisory capacity over Mr. Lee, and he does not know

18   the background behind Mr. Lee's termination and

19   subsequent retraction of that termination, and why

20   Mr. Lee no longer works for Continental right now.

21        Lastly, I'd like to just discuss the

22   supplemental affidavits that we had brought before the

23   court.  Mr. Mendoza and Mr. Herrera were not available

24   to sign those affidavits by the time we filed our

25   motion, but we believe that all the documents that we

1 submitted attached to our motion are properly

2 authenticated by Mr. McKinzie.

3          THE COURT:  Thank you.

4          MS. McDONALD:  Thank you.

5          THE COURT:  Anything else, Mr. Ashtiani?

6          MR. ASHTIANI:  No, Your Honor, plaintiff will

7 rest.

8          THE COURT:  The court will take this under

9 advisement.  Thank you very much.

10          MS. McDONALD:  Thank you, Your Honor.

11          MR. ASHTIANI:  Thank you, Your Honor.

12          (Whereupon proceedings concluded.)

13                          *  *  *

14                 CERTIFICATE OF REPORTER

15 CITY OF AGANA        )
                        ) ss.
16 TERRITORY OF GUAM    )

17          I, Wanda M. Miles, Official Court Reporter

18 of the District Court of Guam, do hereby certify the

19 foregoing pages 1-23, inclusive, to be a true and

20 correct transcript of the shorthand notes taken by me

21 of the within-entitled proceedings, at the date and

22 time therein set forth.

23          Dated this 22nd day of January, 2004.

24

25          *Wanda M. Miles*

Wanda M. Miles
Official Court Reporter
District Court of Guam