ORIGINAL

CARLSMITH BALL LLP

ELYZE MCDONALD
DAVID LEDGER
Bank of Hawaii Bldg., Suite 401
134 West Soledad Avenue, P.O. Box BF
Hagåtña, Guam 96932-5027
Tel No. 671.472.6813

Attorneys for Defendant
Continental Micronesia, Inc. dba
Continental Micronesia and
Continental Airlines, Inc.



FILED
DISTRICT COURT OF GUAM
FEB 17 2004
MARY L. M. MORAN
CLERK OF COURT
167

IN THE DISTRICT COURT OF GUAM

| | |
|---|---|
| TONY H. ASHTIANI, | CIVIL CASE NO. CV02-00032 |
| Plaintiff, | |
| vs. | **DEFENDANTS' TRIAL BRIEF** |
| CONTINENTAL MICRONESIA, INC. dba CONTINENTAL MICRONESIA and CONTINENTAL AIRLINES, INC., | |
| Defendant. | |

4839-8023-3216.3.013280-00079

# TABLE OF CONTENTS

**Page**

I. FACTUAL CONTENTIONS .................................................................................................. 1

    A.      General Statement of Case................................................................................. 1

    B.      The Pattern of Ashtiani's Absenteeism ............................................................. 1

    C.      Ashtiani's son's illness and attempts to obtain leave under the family
               medical leave act .................................................................................................. 3

    D.      Insurance Policy for Accidental Death and Dismemberment ................................ 4

II. LEGAL BRIEF ..................................................................................................................... 4

    A.      Issues of Law ....................................................................................................... 4

    B.      Evidentiary Problems: Direct Examination of Mr. Ashtiani .............................. 12

III. ATTORNEYS FEES ......................................................................................................... 15

IV. ABANDONMENT OF ISSUES........................................................................................ 15

**Page**

**Cases**

Beaulieu v. Northrop Grunman Corp., 161 F. Supp. 2d 1135, 1148 (D. Haw. 2000) ...................................................................................................................... 7

Bergene v. Salt River Project Agricultural Improvement and Power Dist., 272 F.3d 1136, 1144 (9th Cir. 2001) ................................................................................ 8

Blough v. Hawkins Market, Inc., 51 F. Supp. 2d 858, 865-66 (N.D. Ohio 1999)..................... 7

Braunling v. Countrywide Home Loans, Inc., 220 F.3d 1154 (9th Cir. 2000)............................ 10

Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978) ............................................. 15

Ellis v. Cassidy, 625 F.2d 227, 230-31 (9th Cir. 1980) ............................................................ 15

Folkerson v. Circus Circus Ents., Inc., 107 F.3d 754, 755 (9th Cir. 1997) ............................... 6

Gantt v. Sentry Ins., 824 P.2d 680 (Cal. 1992).......................................................................... 8

Green v. Ralee Eng'g Co., 960 P.2d 1046 (Cal. 1998) .............................................................. 8

Harris v. Plastics Mf'g Co., 617 F.2d 438, 440 (5th Cir. 1980)................................................. 15

Hine v. Dittrich, 278 Cal. Rptr. 330, 333 (Ct. App. 1991) ........................................................ 7

Hott v. VDO Yakazi Corp., 922 F. Supp. 1114, 1124 (W.D. Va. 1996)..................................... 5

Inland Mediation Bd. v. City of Pomona, 158 F. Supp. 2d 1120 (C.D. Cal. 2001)..................... 9

Johnson v. Hondo, Inc., 125 F.3d 408, 418 (7th Cir. 1997) ...................................................... 7

McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973) ................................................. 4

Moss v. ITT Continental Baking Co., 468 F. Supp. 420, 421-22 (E.D. Va. 1979) ..................... 15

Oates v. Discovery Zone, 116 F.3d 1161, 1171 (7th Cir. 1997).................................................. 5

Padilla v. Carrier Air Conditioning, 67 F. Supp. 2d 650 (E.D. Tex. 1999 ................................ 7

Pickett v. Colonel of Spearfish, 209 F. Supp. 2d 999 (D.S.D. 2001) ......................................... 7

Sengupta v. Morrison-Knudsen Co., Inc., 804 F.2d 1072, 1075 (9th Cir. 1986) ........................ 4

Shoemaker v. Myers, 276 Cal. Rptr. 303 (Cal. 1990) ................................................................ 9

Smith v. Continental Ins. Co., 747 F. Supp. 275, 284 (D.N.J. 1990) ......................................... 15

State v. Harvey, 603 P.2d 661, 665-66 (Mont. 1979)................................................................. 13

Stevenson v. Superior Court, 66 Cal. Rptr. 2d 888 (1997)......................................................... 8

Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981)..................................... 5

Transpacific Export Co. v. Oka Towers Corp., 2000 Guam 3, ¶ 23............................................ 12

# TABLE OF AUTHORITIES
## (continued)

**Page**

**Statutes**

22 G.C.A. § 9101 et seq............................................................................................... 6

22 G.C.A. § 9104 ......................................................................................................... 6

22 G.C.A. § 9106 ......................................................................................................... 6

29 U.S.C. § 2611 ........................................................................................................ 11

29 U.S.C. § 2613 ........................................................................................................ 11

Family Medical Leave Act, 29 U.S.C. § 2601 et seq................................................ 11

**Other Authorities**

Rest. 2d Torts § 46 ..................................................................................................... 10

**Rules**

Fed. R. Evid. 103 ................................................................................................. 13, 14

Fed. R. Evid. 103(c)................................................................................................... 13

Fed. R. Evid. 611(a)................................................................................................... 13

4839-8023-3216.3.013280-00079

## I. FACTUAL CONTENTIONS

### A. General Statement of Case

The undisputed facts in this case demonstrate that Plaintiff Tony H. Ashtiani, a former airplane mechanic at Continental, failed to show up for work on June 23 and 24, 2001, and failed to seek approval for those absences from a supervisor. Under an Agreement between Continental and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter "IBT Agreement"), which bound Ashtiani as an IBT member, Ashtiani was required to notify a supervisor on duty prior to the start of his shift that he would not be reporting in for work and to give the reason for his inability to report for duty. As a consequence for failing to call in or show up for work for two consecutive days, an employee could be discharged for cause. Moreover, Continental also maintains and enforces its own attendance policy, under which a "no show" is considered the most serious type of absenteeism. Under Continental's Attendance Policy, absence without notification for two consecutive days may result in discharge. Because Ashtiani failed to show up for work on June 23 and 24, 2001, and failed to seek approval for those absences from a supervisor, Continental terminated him on July 3, 2001.

There is absolutely no shred of evidence or even an inference that race or discriminatory motives had any influence or impact or any role whatsoever in the decision to terminate Ashtiani's employment. Continental had a legitimate business reason for his termination - his absenteeism. Ashtiani can provide no proof of such reason being pretextual.

### B. The Pattern of Ashtiani's Absenteeism

In 2001, prior to his termination, Ashtiani worked only 61 days. On June 3, 2001, Ashtiani left work early on the basis that his son was ill. Ashtiani later requested, and was granted, "sick" time for June 4 and 5, 2001, again, because of his son's condition. After his

regularly scheduled days off on June 7 through June 9, Ashtiani requested "personal business" time off, which was later approved by one of his supervisors, William Herrera. Herrera also approved days off from June 10 through 12.

On June 16, Ashtiani called supervisor Glenn Mendoza for approval of a "personal business" day, which Mendoza approved. Ashtiani, however, failed to appear for work on June 17, 18, and 19, 2001, and failed to secure approval for his absences on those days. As he did not report his absences to a supervisor, as required under the IBT Agreement and Continental's Attendance Policy, he was subject to discipline.

On June 19, Ashtiani called Herrera and expressed interest in taking a formal Leave of Absence from the company. Herrera informed Ashtiani that he needed to consult with the Human Resources department to formally apply and obtain such leave. During that conversation, Ashtiani did not request for, and Herrera did not grant, any further time off from work.

On June 23, Ashtiani again failed to show up to work and failed to notify his supervisor on duty - Glenn Mendoza - that he will not be coming in to work. Ashtiani claims that he called in to work on June 23 and spoke to Joseph Pangelinan, another aircraft mechanic, and asked Pangelinan to inform Mendoza that he would not be in to work on that day. Joseph Pangelinan was not Ashtiani's supervisor, nor did he have any supervisory capacity at Continental. Furthermore, a phone call to another aircraft mechanic to relay a message that one will not be in to work does not constitute proper Continental protocol for reporting such absence. Rather, as the IBT Agreement requires, the employee must speak directly with a supervisor and provide the reasons for his non-appearance at work.

On June 24, once again Ashtiani failed to call in to or report for work. On that day, Herrera called Ashtiani, who stated that he thought he was given time off until June 25. Neither Herrera nor Mendoza had ever approved June 23 and 24 as further days off. As Ashtiani failed to receive authorization to take those days off, under Continental's attendance policy and the IBT Agreement, he was subject to discipline, including termination.

Finally, on June 25, Ashtiani appeared for work. On June 26, Herrera met with Ashtiani and his union representative to discuss the absences on June 23 and 24. At that meeting, Ashtiani explained that he believed he was permitted to take those days off. He was then suspended pending further investigation. On June 27, Herrera emailed Ashtiani regarding a further meeting on July 2 pertaining to his absences, and requesting confirmation of his attendance at the meeting. Ashtiani failed to confirm, and failed to appear at that meeting. Continental then terminated Ashtiani on July 3, 2001, for his no-shows on June 23 and 24, 2001. Ashtiani appealed his termination and was offered reinstatement, which he declined.

C.   **Ashtiani's son's illness and attempts to obtain leave under the family medical leave act**

Ashtiani attributes his absences to his son's illness. Ashtiani was initially offered to apply for a leave of absence under the Family Medical Leave Act ("FMLA") on June 11, but Ashtiani declined that offer. Ashtiani was once again offered to apply for FMLA leave on June 26 by Herrera, at which point he accepted the FMLA forms. Ashtiani made no attempt to return the FMLA forms until July 10, 2001, after his discharge on July 3, 2001.

One form included a physician's certification from Dr. Appellanes that indicated that Ashtiani's son was not observed in Dr. Appellanes' clinic during the month of June but was only observed on July 2, 2001, that "the patient right now is asymptomatic," and that the patient does not require assistance with medical, personal, safety, or transportation needs. Absent from

the certification is any indication that Ashtiani's son suffered from a serious health condition.

### D. Insurance Policy for Accidental Death and Dismemberment

Lastly, in reference to Ashtiani's claim that Continental fraudulently sold an accidental death and dismemberment policy, Continental offered its employees insurance for accidental death and dismemberment, the carrier of which plan is AIG Life Insurance Company. For this benefit, Ashtiani paid $12.50 per month for a $500,000.00 policy. Ashtiani claims that a personal investigation revealed that the insurance policy was not valid in Guam. However, Ashtiani proceeds on false information, as AIG does recognize and honor accidental death and dismemberment claims for Guam subscribers.

## II. LEGAL BRIEF

### A. Issues of Law

#### 1. Ashtiani Cannot Satisfy the Elements for His Title VII Claim

Under McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), a plaintiff claiming to be a victim of racial discrimination must demonstrate in a prima facie case (1) that he belongs to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; (4) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. Adopting the McDonnell Douglas factors to a discriminatory discharge context, an employee claiming discharge or termination on the basis of race must demonstrate (1) that he was within the protected class; (2) that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance; and (3) that his employer sought a replacement with qualifications similar to his own, thus demonstrating a continued need for the same services and skills. Sengupta v. Morrison-Knudsen Co., Inc., 804 F.2d 1072, 1075 (9th Cir. 1986).

4839-8023-3216.3.013280-00079

Only if Ashtiani proves all elements of his prima facie case does the burden shift to Continental to produce evidence that Ashtiani was terminated for legitimate, non-discriminatory reasons. See Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253-54 (1981). The burden then shifts back to Ashtiani to show Continental's reason was a pretext for discrimination. Id. at 265.

Within his prima facie case, Ashtiani must show that he was doing his job well enough to rule out the possibility that he was fired for inadequate job performance. However, Ashtiani's absenteeism demonstrates inadequate job performance. See, e.g., Oates v. Discovery Zone, 116 F.3d 1161, 1171 (7th Cir. 1997) ("an employee's 'performance is not necessarily confined to an appraisal of his or her substantive work," but rather includes whether he follows established attendance policies).

In this case, Ashtiani failed to follow Continental procedures for calling in to work to report his non-attendance. Ashtiani simply and blatantly failed to report for work or to follow the correct notification procedures for absences on June 23 and 24. While Ashtiani claims that on June 23, he reported his absence to Joe Pangelinan, Pangelinan was not his supervisor, and thus that phone call did not qualify as a call-in to report an absence under the terms of the IBT Agreement. However, without even considering the "no-shows" on June 23 and 24, the basis of the termination, Ashtiani failed to show up for or call in to work on June 17 through June 19, which provides additional justification for Continental's decision to terminate him under its attendance policy and the IBT Agreement.

Additionally, his non-attendance constitutes a legitimate, nondiscriminatory reason for Continental's decision to terminate his employment. See, e.g., Hott v. VDO Yakazi Corp., 922 F. Supp. 1114, 1124 (W.D. Va. 1996) (excessive absenteeism constitutes a legitimate

Case 1:02-cv-00032   Document 189   Filed 02/17/2004   Page 9 of 19

business reason for termination of employment). Ashtiani has no evidence, and indeed, none exists, that such reasons were pretextual.

### 2. Ashtiani Cannot Satisfy the Elements of His Retaliation Claim

Ashtiani's claim entitled "Intentional Discrimination and Intentional Retaliation post 9/11" is not actually a discrimination and retaliation claim, but rather a claim that Continental lied to the EEOC during the EEOC proceedings. However, no such cause of action exists. Furthermore, Ashtiani has not suffered any harm, as the same issues brought before the EEOC are being litigated in this forum.

Furthermore, the elements of retaliation are (1) the plaintiff engaged in conduct protected by Title VII of the Civil Rights Act of 1964; (2) the plaintiff was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the employer's action. Folkerson v. Circus Circus Ents., Inc., 107 F.3d 754, 755 (9th Cir. 1997). Even if Ashtiani is asserting that Continental "retaliated" against him, as a matter of law, because the alleged retaliatory activity - lying to the EEOC - occurred after Ashtiani was terminated, Continental could *not* have subjected Ashtiani to adverse employment action.

In sum, Ashtiani's retaliation claim is wholly unsustainable by the law and by the facts of this case.

### 3. Ashtiani Cannot Demonstrate Negligent Supervision

Under his claim of negligent supervision, Ashtiani alleges that Continental failed to protect him from the negligent acts of his supervisors. However, Guam's Worker's Compensation Laws bar Ashtiani's claim of Negligent Supervision. See 22 G.C.A. § 9101 et seq. Under the worker's compensation law, an employee who receives a personal injury arising out of or in the course of his employment is entitled to compensation. 22 G.C.A. § 9104. Employer liability under the worker's compensation law is exclusive and in place of all other

liability of the employer to the employee. 22 G.C.A. § 9106. In this case, Ashtiani's negligent supervision claims, which are considered personal injuries arising out of the course of employment, are barred by the Guam's Worker's Compensation law.

Other jurisdictions routinely dismiss negligence claims barred by state worker's compensation laws, based on exclusivity provisions within such legal frameworks. See, e.g., Johnson v. Hondo, Inc., 125 F.3d 408, 418 (7th Cir. 1997) (negligent supervision claim barred by Wisconsin Worker's Compensation Act); Pickett v. Colonel of Spearfish, 209 F. Supp. 2d 999 (D.S.D. 2001); Beaulieu v. Northrop Grunman Corp., 161 F. Supp. 2d 1135, 1148 (D. Haw. 2000); Blough v. Hawkins Market, Inc., 51 F. Supp. 2d 858, 865-66 (N.D. Ohio 1999); Padilla v. Carrier Air Conditioning, 67 F. Supp. 2d 650 (E.D. Tex. 1999.

Guam's Worker's Compensation Law works no differently. Acts of negligence committed in the workplace constitute work injuries arising from the conditions of employment. See 161 F. Supp. 2d at 148. The proper and exclusive remedy for an injured employee is to seek compensation under Guam's Worker's Compensation law. As Ashtiani failed to follow this procedure, his Negligent Supervision claim is barred.

Moreover, Ashtiani's Negligent Supervision claim is no more than a wrongful termination claim couched in the language of negligence. Such a claim cannot stand independently, as the alleged negligence is simply part of the allegedly discriminatory conduct resulting in Ashtiani's termination. See Hine v. Dittrich, 278 Cal. Rptr. 330, 333 (Ct. App. 1991) (a plaintiff "can no more turn a contractual wrongful discharge action into a negligent supervision tort claim than could a terminated employee plead negligence simply because the employer negligently failed to follow prescribed procedures before the firing").

4.    Ashtiani Was Not Constructively Terminated

To prove his claim for constructive termination, Ashtiani must demonstrate that

Continental intentionally made his working conditions so intolerable that a reasonable person would feel compelled to resign. Bergene v. Salt River Project Agricultural Improvement and Power Dist., 272 F.3d 1136, 1144 (9th Cir. 2001). As Ashtiani himself recognizes, Compl. at ¶ 44, he was terminated by Continental. He therefore was not constructively terminated, he was *actually* terminated. Ashtiani therefore has no cause of action for constructive termination.

### 5. Ashtiani Cannot Prove Wrongful Termination

Generally, a wrongful termination cause of action, also known as "retaliatory discharge," holds that an employee may not be discharged for acting in furtherance of public policy. See Gantt v. Sentry Ins., 824 P.2d 680 (Cal. 1992) (en banc) overruled on other grounds by Green v. Ralee Eng'g Co., 960 P.2d 1046 (Cal. 1998).[1] Actions "in furtherance of public policy" include: (1) refusing to violate a statute, (2) performing a statutory obligation, such as jury duty, (3) exercising a statutory right or privilege, such as union activities, or (4) reporting an alleged violation of a statute of public importance. 824 P.2d at 684. Overall, the claim must involve questions genuinely concerning public policy, as opposed to ordinary disputes between employer and employee. Stevenson v. Superior Court, 66 Cal. Rptr. 2d 888 (1997).

Ashtiani points to events occurring *prior to his discharge* that he considers evidence that he was wrongfully terminated. In discovery documents, Ashtiani states that he threatened to report Continental to the EEOC in a grievance filed in 1999, and that Mendoza withheld information to other supervisors in reference to his call to work. Neither of these events are actions "in furtherance of public policy." A *threat* to report Continental to the EEOC, as opposed to an actual report to the EEOC, does not constitute an *act* in furtherance of public policy. Also, the allegation that Mendoza withheld information to other supervisors is

---

[1] Guam law has not defined the elements of a wrongful termination claim. Continental therefore analyzes the claim within the context of California law. See Roberto v. Aguon, 519 F.2d 754 (9th Cir. 1975).

incomplete with regard to fulfilling the elements of a wrongful termination claim, as no act on

Ashtiani's behalf in furtherance of public policy occurred. Under either allegation, no public

policy concerns exist, only individual employee concerns. Accordingly, as a matter of law,

Ashtiani simply cannot fulfill the elements of a wrongful termination claim.

6. Ashtiani Cannot Prove He Sufered from Intentional Infliction of
Emotional Distress

The conduct complained of with regard to Ashtiani's claim for intentional

infliction of emotional distress includes Continental "creating a hostile work environment"

through "verbal abuse, imposition of totally unreasonable job assignment," and McKinzie's

failure to investigate Ashtiani's complaints.

First and foremost, as with the claim for Negligent Supervision, Ashtiani's claim

for Intentional Infliction of Emotional Distress is likewise barred by Guam's Worker's

Compensation Law. As already stated, the worker's compensation law provides compensation to

an employee in the event of an injury arising out of and in the course of employment. As the

worker's compensation law provides the exclusive remedy for litigating the IIED claim, such

claim is therefore barred. See Johnson, 125 F.3d 418; Beaulieu, 161 F. Supp. 2d at 1148;

Shoemaker v. Myers, 276 Cal. Rptr. 303 (Cal. 1990).[2]

Furthermore, in order to prove his claim for Intentional Infliction of Emotional

Distress, Ashtiani must demonstrate (1) acts committed by Continental amounted to extreme and

outrageous conduct transcending the bounds of decency; (2) such acts were committed

intentionally or recklessly; (3) causation; and (4) damages amounting to severe emotional

distress. Inland Mediation Bd. v. City of Pomona, 158 F. Supp. 2d 1120 (C.D. Cal. 2001). The

"extreme and outrageous conduct" complained of must exceed the bounds of what is generally

---

[2] This Honorable Court also reached the same conclusion in a similar employment case, Tolentino v. Greenhill,
CV00-00001 (Apr. 10, 2001 Order).

tolerated in a civilized society. Braunling v. Countrywide Home Loans, Inc., 220 F.3d 1154 (9th Cir. 2000). Unreasonable job assignments, verbal abuse, and a failure to investigate an employee's complaint hardly rises to the level of extreme and outrageous conduct exceeding the bounds of a civilized society. See, e.g., Rest. 2d Torts § 46, com. d (liability does not extend to insults).

Ashtiani has not produced any evidence that he suffered severe emotional distress. A report by Dr. Alix Chenet, Ashtiani's physician, revealed no such indications of emotional distress. Furthermore, Ashtiani failed to release any other doctor's reports under the guise of psychotherapist-patient privilege. Without the release and admission of any such evidence, Ashtiani cannot demonstrate that he suffered severe emotional distress, and thus cannot prove his claim for intentional infliction of emotional distress.

7.      Continental Did Not Violate the Family Medical Leave Act

The Family Medical Leave Act, 29 U.S.C. § 2601 et seq., entitles employees to take reasonable leave for the care of a child with a serious health condition. The FMLA defines an "eligible employee" as one employed for at least 1,250 hours of service with the employer during the previous twelve-month period. 29 U.S.C. § 2611. Furthermore, a person suffers from a "serious health condition" when the illness, injury, impairment or physical or mental condition that involves inpatient care in a hospital or residential medical care facility or continuing treatment by a health care provider. Id. Importantly, the employee must follow requirements for certification for FMLA leave in order to qualify for such leave. This requires obtaining a physician's certification that the child suffers from a serious health condition, and providing that certification to the employer in a timely manner. 29 U.S.C. § 2613. To be sufficient, the certification must state, among other requirements, (1) the date on which the serious health condition commenced; (2) the probable duration of the condition; and (3) the duration of time

needed for the employee to care for the child. Id.

There are no genuine issues of material fact that Ashtiani did not qualify for FMLA and did not receive any FMLA benefits. First, Ashtiani was not entitled to FMLA leave because, first, he did not provide an adequate certification of his son's illness. The certification does not contain information such as when the son's health condition commenced, the duration of the condition, and the duration of time needed for Ashtiani to take off to care for the child. This is due in large part to Ashtiani's never having taken his son to a health care provider until July, despite his son's alleged illness. Second, Ashtiani's son did not suffer from a "serious health condition," but rather, as Doctor Appellanes' certification states, Ashtiani's son was "asymptomatic." Third, the certification was also submitted untimely on July 10, 2001, after Ashtiani was terminated.

Ashtiani furthermore did not qualify because he worked less than the amount of hours required for an employee to qualify for FMLA leave. From June 27, 2000, until June 27, 2001, Ashtiani worked approximately 80 days, which is the equivalent of 800 hours. Therefore, Ashtiani did not meet the FMLA requirement that he work 1,250 hours for the previous twelve-month period.

Continental did not violate the Family Medical Leave Act, as Ashtiani did not qualify for leave under FMLA in any respect.

        8.     <u>Ashtiani Cannot Prove Continental Sold a Fraudulent Insurance Policy</u>

To prove that Continental fraudulently sold Ashtiani an invalid insurance policy, Ashtiani must demonstrate: (1) Continental engaged in a false representation or concealment of a fact; (2) Continental knew of such falsity; (3) Continental intended to induce Ashtiani's reliance on such representation; (4) Ashtiani justifiably relied on such representation; and (5) Ashtiani suffered damages therefrom. <u>Transpacific Export Co. v. Oka Towers Corp.</u>, 2000

Guam 3, ¶ 23.

Continental did not fraudulently sell an invalid insurance policy to Ashtiani. In contrast, the insurance policy offered to Ashtiani - and to all Continental employees - is valid in Guam and recognized by AIG, the carrier. Even if the policy was not valid, Continental had no knowledge of the policy's invalidity, as the policy is ultimately issued and handled by AIG, not Continental. Continental simply acts as an intermediary in offering the policy and plan to its employees.

**B.     Evidentiary Problems:  Direct Examination of Mr. Ashtiani**

A fundamental evidentiary issue to be addressed by this Court prior to the initiation of trial is the manner in which Ashtiani may conduct the direct examination of himself, should he elect to testify during trial. The manner in which Ashtiani conducts his direct examination must conform to the Federal Rules of Evidence, particularly Rule 611:

> **Control by Court.** The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

Fed. R. Evid. 611(a). Making "the interrogation and presentation effective for the ascertainment of truth" encompasses "such concerns as whether testimony shall be in the form of a free narrative or responses to specific questions." Fed. R. Evid. 611(a)(1), advisory committee notes. Moreover, Rule 103 requires that "[i]n jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statement or offers of proof or asking questions in the hearing of the jury." Fed. R. Evid. 103(c).

Continental respectfully urges the Court to exercise its discretion and to require Ashtiani to testify in a question-and-answer format, and that he submit the questions to the Court prior to trial. The Court may designate a neutral person, perhaps a court clerk, to ask the questions while Ashtiani takes the stand. Moreover, Continental asks that the Court allow defense counsel to review the questions prior to the testimony in order to limit objections. This procedure has been condoned. See, e.g., State v. Harvey, 603 P.2d 661, 665-66 (Mont. 1979) (within the sound discretion of court to control the mode and order of the presentation of evidence and to require criminal pro se defendant to testify in question-and-answer form and to give the prosecution an opportunity to object).

Several concerns underlie Continental's request. First, the question-and-answer format will limit any improper arguments and confine the proof to relevant areas. Unless this method is used, the Court has no guarantee that the pro se plaintiff will be able to limit his testimony on the stand to proper subjects for testimony, rather than raising improper arguments being presented in a narrative form. In addition, having Mr. Ashtiani provide his questions and answers prior to his direct examination will minimize the number of objections that will be made at trial, and which may be settled by the Court prior to his testimony.

Second, Ashtiani has no legal background or experience in using the Rules of Evidence. He may inadvertently introduce inadmissible evidence in front of the jury, in violation of Rule 103(a)(c). Such an act, even if done because of his lack of legal background, will make any exclusionary ruling "a pointless procedure if the excluded evidence nevertheless comes to the attention of the jury." Fed. R. Evid. 103 advisory committee notes.[3]

---

[3] The Court has already engaged in discussions about the Rules of Evidence with Mr. Ashtiani:

> MR. ASHTIANI: Furthermore, Your Honor, balancing the probative
> value of the evidence against its potential of prejudice is a discretionary decision

Allowing Mr. Ashtiani to submit his direct examination questions and answers prior to trial represents the optimal method by which the Court may control the presentation of evidence in order that it be presented effectively and not needlessly waste and consume valuable jury trial time.

## III.    ATTORNEYS FEES

The Supreme Court has held that a trial court "may in its discretion award attorneys fees to a prevailing *defendant* in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 421 (1978). See also Ellis v. Cassidy, 625 F.2d 227, 230-31 (9th Cir. 1980); Harris v. Plastics Mf'g Co., 617 F.2d 438, 440 (5th Cir. 1980); Moss v. ITT Continental Baking Co., 468 F. Supp. 420, 421-22 (E.D. Va. 1979); Smith v. Continental Ins. Co., 747 F. Supp. 275, 284 (D.N.J. 1990) ("while this court is, as it must be, solicitous of pro se litigants, pro se status will not insulate an individual when he or she, dragging opposing counsel along the way, determines to make this court her personal playground."). In the event Continental prevails, it will seek attorneys fees as permitted under Title VII, on the grounds that his lawsuit is frivolous, unreasonable, and without foundation.

---

(continued) for the trial judge, which will not be overturned unless it's clearly erroneous.

Your Honor, I have not submitted any erroneous evidence; I have submitted what has come from the maintenance office, from my co-worker, and I have asked them that if they can bring any samples that any mechanic has called another mechanic, not the supervisor, which I have done so.

THE COURT: Well, but you're misreading the rule. The rule is whether the, when the judge admits the evidence, the judge has made an error in admitting the evidence. It is not whether the evidence is erroneous in and of itself, it's the substance of the evidence, whether it's erroneous is nor what's at issue.

Dec. 12, 2003 Rep. Tr. at 13 l. 14 - 14 l. 8 (Transcript of Plaintiff's Mot. for Partial Summary Judgment and Defendant's Mot. for Summary Judgment).

Throughout the entire proceeding of this case, Ashtiani has not identified a single shred of evidence of racial or discriminatory motive in Continental's decision to terminate Ashtiani. In addition to his Title VII cause of action, Ashtiani has asserted seven additional claims, none of which have any legal or factual merit, as discussed in this Brief.

## IV. ABANDONMENT OF ISSUES

Continental has not abandoned any issues.

DATED: Hagåtña, Guam, February _17_, 2004.

CARLSMITH BALL LLP

ELYZE McDONALD
DAVID LEDGER
Attorneys for Defendant
Continental Micronesia, Inc. dba
Continental Micronesia and
Continental Airlines, Inc.