1  Tony H. Ashtiani
   P.O.Box 12723
2  Tamuning Guam 96931
   671-688-4844
3  671-653-5575

FILED
DISTRICT COURT OF GUAM

FEB 20 2004

MARY L. M. MORAN
CLERK OF COURT

173

# UNITED STATES DISTRICT COURT

## DISTRICT COURT OF GUAM

Tony H. Ashtiani,                        )
                                         )  Civil Case No.: **02-00032**
          Plaintiff,                     )
                                         )
     Vs.                                 )
                                         )
Continental Micronesia Inc,              )
                                         )
Dba, Continental Micronesia,             )
                                         )
Continental Airlines,                    )
                                         )
          Defendant.                     )
                                         )
                                         )
                                         )

# PLAINTIFF'S TRIAL BRIEF

# ORIGINAL

# TABLE OF CONTENTS

|   |   |   | PAGES |
|---|---|---|---|
| A. | FACTUAL CONTENTS. | ------------ | 1 TO 11 |
| B. | LEGAL BRIEF. | ------------ | 12 TO 18 |
| C. | ATTORNEY FEES. | ------------ | 18 |

i

# TABLE OF AUTHORITIES

*Gruenberg v Aetna Ins. Co*.

(1973) 9 Cal.3d 566, 573-574,108 Cal.Rptr.480

Robinson v. Shell Oil Company,

70 F.3d 325

*Payne v. Illinois Cent. Gulf R.R., W.D. Tenn.*

1987,665 F. Supp. 1308.

*Lindsey v. Angelina Corp.*

 508 F. Supp 363,366

*Texas Dep't of Community Affair*

450 U.S at 256

*Smith v. Wade,*

461 U.S. 30, 56 (1983);

*Garza v. City of Omaha,*

814 F.2d 553, 556, 43 EPD Par. 37,072 (8th Cir. 1987)

ii

**STATUTES**

Civil Rights Act of 1964 as amended

USCA 42 & 1981

Civil Rights Act of 1964, § 701 et seq., as amended

USCA 42 SEC. 2000e-2. *[Section 703]*

Section 102 of the 1991 Civil Rights Act


**LOCAL RULES OF THE COURT**

Local Rule 16.7(b)


**FED RULES OF CIV. P.**

26(a)(3)


**FED RULES OF EVIDENCE**

803(6)

901(b)(4)

901(b)(9)

1  Tony H. Ashtiani
   P.O.Box 12723
2  Tamuning Guam 96931
   671-688-4844
3  671-653-5575

4

5              **UNITED STATES DISTRICT COURT**

6                    **DISTRICT COURT OF GUAM**

7

8  **Tony H. Ashtiani,**                )
                                        ) Civil Case No.: **02-00032**
9            Plaintiff,                 )
                                        )
10      Vs.                             )
                                        )      **PLAINTIFF'S TRIAL BRIEF**
11 **Continental Micronesia Inc,**      )
                                        )
12 **Dba, Continental Micronesia,**     )
                                        )
13 **Continental Airlines,**            )
                                        )
14           Defendant.                 )
                                        )
15                                      )
                                        )
16 _____

17

18

19        Plaintiff  Ashtiani  hereby  respectfully  submits  its

20 trial  brief  in  the  above-entitled  matter  per  LR  16.7(b)  and

21 pursuant  to  the  scheduling  order  of  this  Court  dated  on  May 21

22 2003. Rule  26(a)(3)  disclosure  shall  be  made  not  later  than  30

23 days before trial.

24

25

## A. Factual Contention

Tony H. Ashtiani is a Middle eastern from the country of Iran. For 17 years he was a certified Aircraft Mechanic for Continental Airlines and was stationed in (LAX) Los Angles International Airport as a DC-10 Inspector and was offered company leave of absence to assist Continental Micronesia Inc., (CMI) on their wide body fleets.

On or about mid 1992, Ashtiani transferred from LAX all in pure good faith with clean hands to give his best to Guam maintenance department on DC-10 Fleets, however shortly after his transfer plaintiff noticed that employee of Continental Airlines with higher seniorities were receiving lesser pay of their counter parts of majority at CMI in same job classification. Thus, from the day one transferees were treated less favor with pay differential based on direct evidence, Then came the Maintenance supervisor whom referred to minorities by racial slurs, Ashtiani was referred by James Lujan (Maintenance supervisor) names like "Camel Jockey" on numerous occasion. I brought in food from home like chicken soup and was asked by Lujan if it was camel meat soup, he also kept asking me if I drove my car or my camel to work, and many other similar unpleasant slurs. I will always remember his comments about the

time when my spouse was pregnant and he stated to me again in front of many mechanics if my child was going to look half palauan and half camel, Lujan as a supervisor in an official capacity failed to maintain an atmosphere free of racial and ethnic intimidating and insult rather promoted it as a maintenance supervisor in major airline.

I endured it all and performed my duty on DC-10 fleets, and certainly was not a sideline player on the bench when it came to fixing planes, Ashtiani among pilots and his colleagues was known to be knowledgeable mechanic, funny and well liked by his peers and even after 3 years of plaintiff's constructive and wrongful termination has passed, Ashtiani's former co-workers from all walks of life including Local Guamanians were willing to help my family and I with their declaration and affidavit against their active employer CMI, I am grateful to every each and every one of them.

In Mid 1998 with new management in place at CMI which include Mr. Bill Meehan, Mr. James Hammer and Mr. Dixon Mckinzie, I became subject to severe differential treatment when my father had passed away and was asked to prove it, plaintiff was able to provide pictures of funeral services with dates at

lower bottom corner while my comparator was not subject to such treatment.

Defendant retaliating against plaintiff for having complained to management or threatening to file a charge with EEOC in a grievance filed with Human Resources Director Mckinzie, whom failed to investigate an individual responsible for EEO and affirmative action when plaintiff was subject to disparate treatment.

Therefore, as a form of retaliation defendant reserved plaintiff the dirtiest and most distasteful tasks. Similarly situated majorities were favored with more pleasant and easier tasks, and Plaintiff was required to do that work which other employees declined to perform, and if plaintiff had not completed the assigned task at the end of the shift, he would be faced with verbal reprimand or hostile lead man or supervisor calling minorities worthless, useless, or other non constructive and degrading statements (Also reference Larry Kimball's statement) that lead man referred to white guys as "useless" so that they will not receive adequate training.

Upon plaintiff's complaining of discrimination, defendant's treatment of plaintiff in every respect became

worse. Defendant supervisor had intentionally made working condition intolerable for plaintiff forcing plaintiff to resign, if not resigned termination was at sight, because of the plaintiff's race, national origin, and in retaliation for threatening to file a charge of discrimination.

Defendant states that the problems experienced by plaintiff while in defendant's employment resulted from a personal problem that can be proven patently false at trial, because plaintiff during his years of service is known to worked very hard for defendant, Ashtiani was and is friendly to every one including the new management, and in fact plaintiff will prove based on direct evidence prior to arrival of new management, Ashtiani had worked over an average of 2800 hours every year, this is 35% over 40 hours a week. This shows Continental believed Ashtiani was a skillful and a very good DC-10 mechanic since they were the ones that asked plaintiff to always work these extra hours. Ashtiani was happy to come through parking lot and pick up his time card and punch in and go right to work.

The previous management treated Ashtiani with "respect and dignity" that he deserved and I for one sincerely did the same for all of them, not even once I said no to them when they

asked me to come in to change or rig a DC-10 engine or make repairs to out of service DC-10s because that was my loving job and I enjoyed watching the finished product of my work lift off the ground with many passengers to its destination safely. At times even after I punched out my time card I would wait and watch the airplane that I worked on taxi in position for take off and make certain all systems were go.

However, when new management which included Meehan, Hammer, Mckinzie mistrusted me with my late father passing away and started asking for proof, the most important element in life "trust" was gone, because I only had one father and he only died once during my 17 years of my employment.

After many forms of retaliation and disparate treatments Ashtiani a mechanic whom loved to come through the parking lot and go to work was transformed to an employee that was uncertain about defendants treatment towards him on daily basis. I started to trade days off and worked on cars as a relief from the hostile work environment, trade days were non-accountable attendances, and it was union option. Supervisor allowed every one trade with each other, however defendant was setting me up to trade days off and later used it against me as

attendances. This was also entrapment by defendant as part of defendants long scheme of conspiracy plan.

However when management realized that I would not resign due to many years in service, they attempt to set me up on delaminated fiberglass panel on DC-10 that flew from Honolulu to make me look bad. Plaintiff will prove this at trial based on direct evidence and comparative worth with photographs.

While William Herrera, Maintenance Supervisor was calling me in to the office every week and trying to blame me for this minor fiber glass panel delaminating as scheme of conspiracy of constructive discharge, "by end of the day" after three months, there was not any form of reprimand what so ever, because Herrera was well aware that I performed my duty with dedication at all times and I knew the aircraft too well.

Once again Mr. Kimball has said it well in his statement that minorities were always subject to maximum punishments and were to blame. Nevertheless defendant was in search of reason to terminate plaintiff because the last DC-10 departure was near and plaintiff skill was no longer needed.

Defendant vigorously attempt to push plaintiff out with 17 years of employment, as my retirement was approaching,

during this time I was suffering from massive stress and depression by defendants continuous harassing and disparate treatment, while all this was going on, my 3½ year old son became ill, I was more than happy to attend to him as a relief from my hostile and stressful working condition created by defendant six weeks prior to departure of the last DC-10.

It is worthy of note that CMI intentionally and continuously harassed plaintiff even during illness of his son. I have only one son and he is the light of my eye and there is nothing that I deprive him as a father; it is the equal love that I have for both of my children named Matthew and Emily. My family and I reside in only a 480 Sq/ft container home on my land, but yet I provide my kids with a good education in a private school. When Continental terminated me I failed to provide a concrete home for my family.

Plaintiff during the sickness of his child was only obligated to call his supervisor once per the union contract yet as responsible individual and a 17 year mechanic I called every day either to supervisor if available, or left a message with my co workers. Defendant intentionally ignored my calls and set me for termination as evident through declarations and affidavit of

my co workers for two consecutive days as no call no show on June 23 and 24 2001.

In order to absence any doubt that Herrera was setting me up to force to resign (constructive discharge) On June 26, 2001 defendant last attempt to make me throw in the towel, Herrera assigned me to (two) aircrafts by myself which one required a belly load a stretcher kit which this box is very heavy for one man, on the third aircraft I was assigned with other mechanics. Assigning one mechanic to depart two aircrafts full of passengers is very dangerous and unsafe and Herrera as supervisor is well aware of the safety guidelines. Herrera that same evening suspended me then terminated my employment on July 03, 2001. On June 26 2001 Continental Airlines purposely and intentionally through its supervisor Herrera put the safety of over 250 passengers in danger. This was done by assigning only one mechanic Ashtinai to two aircrafts to force him to resign, There fore, there shall not be a United States of America flag carrier that jeopardizes the safety of 250 Human lives on board in exchange for forcing to resigning of an employee. Defendant is liable for punitive damages for putting those lives in danger.

Plaintiff after his termination received a letter from CAL regarding his pension that stated only eight (8) years worked at parent company was counted as vested years and 9 years employment at CMI will not be counted towards plaintiff retirement plan. I was given a false promise in written Agreement that there will not be any lost of benefits during company leave from CAL. Further more plaintiff was also being deducted for a Accidental death and dismemberment insurance, and received an envelope that was intentionally delayed 38 days while statute of limitation of conversion of that insurance was 31 days and even if, it was not intentionally delayed and was responded within 31 days, the insurance was not being honored to residents of Guam and was valid only in 50 states, which was the reason for intentional delay in the first place.

Several months after my termination 9/11 tragedy occurred and many innocent lives were loss, Plaintiff as a middle eastern national was very sad and my symphothy is with those families that loss their love ones on that tragic day. On or about May 2002 Ron Roberts gave me a statement which later was transformed into a declaration, in that declaration by Roberts it was stated that Continental Airlines Director Hammer in official capacity stated "After the recent event of 9/11 that Tony Ashtiani would never work around these aircraft again if he

could do anything about it because he could not trust people like Mr. Ashtiani". Again here is a Director that is responsible for an atmosphere free of racial intimidation. This despicable, cold, callus, and racial remarks certainly emotionally and damaging to a mind of a common man that is fighting his wrongful termination.

I was confused and extremely stressed by defendant's constructive discharge and untruthful promise tampering with my retirement vested years and my insurance benefits including Hammers racial remarks. It is worthy of note that plaintiff has lived and worked in the United States for the last 25 years and has been a Naturalized United States Citizen for the past 11 years.

This Law Suit with eight causes of action brought forth in United States District Court of Guam is a direct result of many years of bigotry and discovering immoral activities at Human Resources Department which were also towards many of locals ,Pacific islanders and minorities like Ashtiani, whom never taught that defendant would discharge plaintiff.

////

////

## B. Legal Brief

This is a civil action brought against Continental Micronesia Inc, and its Houston based parent company Continental Airlines for covering up discrimination in particular here on Guam, where defendant operates a Hub for its profitable and least competitive Asian Pacific Rim flights.

Plaintiff must not only show defendant's reason is a sham, but it is a sham to cover discrimination and despite the smoking gun there is a thick cloud of smoke dissipating from the gun. However that cloud is been hovering for a quite some time in particular of family less, friend less of those with no political ties in Guam targeted by corporation like defendant as evident through pattern of practice exhibited in statistics.

Defendant committing acts under color of laws of United States of America and for conspiring for the purpose of impending and hindering those rights as guaranteed under the Constitution of The United States with intent to deny equal protection of the law and other rights and liberties and for refusing or neglecting to prevent such deprivation and denial of those rights to its Pacific Islanders employees and economic disadvantage minority employees like Ashtiani.

Defendant deprived plaintiff of equal protection of the law in violation of The Fourteen Amendment that controls due process analysis in non-diversity, and in broader view the Fifth Amendment is broader than that under the parallel clause of the Fourteen Amendments. Thus, whereas the Fourteen Amendment dictates that a defendant gives sufficient notice and adequate time in preparation and an opportunity to clear one's name.

This case involves differential treatment here at CMI which over the many years has taken its toll, many of the legal issues are governed by the Civil Rights Act of 1964 as amended and USCA 42 & 1981, intentional breach of contract pursuant to an agreement that was between CAL mechanics that were on company offered leave to assist its sister company due to shortage of mechanics.

Ashtiani through dedication and hard work in his motion for partial summary judgment proceeding provided numerous direct evidence of prima facie case of discrimination and retaliation.

Defendant retaliated against plaintiff by intolerable job assignment during his last two years of his employment intolerable by any common man. To state prima facie case of retaliation under Title VII, plaintiff must show: (1) that he

engaged in protected activity, (2) that employer took adverse action against him, and (3) that causal link exists between protected activity and employer's adverse action. Civil Rights Act of 1964, § 701 et seq., as amended.

Defendant misrepresentation of facts is a direct result of defendants failure to provide job performance evaluation progress and inform plaintiff of areas as where plaintiff excel and areas where he needed improving, because the reality of life is that there is no perfect employer nor a perfect employee and tools are tangible to remedy any alleged deficiencies, defendant failed to reach for that tool.

Defendant made the material misrepresentation and concealed facts with knowledge of the falsity of the representation made in exhibits which were notes and emails that were manufactured in anticipation of EEOC investigation those emails and memos failed to meet Federal Rules of Evidence Rule 803(6) and 901(b)(4) and 901(b)(9) and defendant boldly exhibited this conduct during motion for summary judgment in the United States District Court.

To find the defendant liable for breach of the covenant of good faith and fair dealing, you do not have to find that the employer intentionally acted in bad faith. However,

lack of Bad faith implies dishonesty, fraud, and concealment. Good faith and fair dealing may be found where an employer acts unreasonably or without giving equal consideration to the employee's rights and interest as it gives to its own interest. The employer is liable for breach of its duty to act in good faith and fairly if its conduct showed either a lack of good faith or a lack of fair dealing toward plaintiff. *Gruenberg v Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573-574, 108 Cal.Rptr.480

Malice and wonton acts by defendant was during plaintiff's employment but also continued as adverse action after employee and employment relationship had ended. In *Robinson v. Shell Oil Company,* 70 F.3d 325 The Supreme Court unanimously held that Title VII prohibited respondents from retaliating against former employees as well as current employees for participating in any proceeding under Title VII Or opposing any practice made unlawful by the Act. Thus defendant retaliated and continues to retaliate.

The individual disparate treatment case can be direct evidence of a discriminatory motive for the adverse action. However, such cases generally require indirect evidence from which an interference of discriminatory intent can be drawn, namely, comparative evidence demonstrating that the treatment of

the plaintiff differs from the accorded to other wise "similarly situated" individuals who are not within the plaintiff's protected group. Ashtiani will attempt to show that the policy or practice in question was not applied in the same manner to other individuals not in their protected class.

It shall be an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin. USC 42 SEC. 2000e-2. *[Sec703]*

Plaintiff intends to prove his case by demonstrating "In order for two or more employees to be considered similarly situated for purpose of creating inference of disparate treatment in Title VII case, plaintiff must prove that all relevant aspects of employment situation are "nearly identical" to those of non-minority employees who he alleges were treated

more favorably". *Payne v. Illinois Cent. Gulf R.R., W.D. Tenn.* 1987,665 F. Supp. 1308.

*Lindsey v. Angelina Corp.* 508 F. Supp 363,366 pretext shown by demonstrating that employer acted contrary to its own policy, Or that defendant departed from its normal policies (in house policy) which would imply a differential in treatment from other similarly situated persons. *Quoting Texas Dep't of Community Affair* 450 U.S at 256 Defendant proffered reason "Unworthy of credence".

Under Section 102 of the 1991 Civil Rights Act, a complainant is entitled to punitive damages if he or she establishes that the employer engaged in discrimination "with malice or with reckless indifference to the federally protected rights of an aggrieved individual." … proof of an after- the-fact justification would not shield an employer from an order requiring it to pay punitive damages.

Additionally, plaintiffs may recover punitive damages when "the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983);

*Garza v. City of Omaha*, 814 F.2d 553, 556, 43 EPD Par. 37,072 (8th Cir. 1987) (punitive damages "may be awarded where the defendant exhibits oppression, malice, gross negligence, willful or wanton misconduct, or reckless disregard for the civil rights of the plaintiff").

### C. Attorney Fees.

Plaintiff is appearing as (non-attorney) pro se before District Court against defendant and is unreasonable to ask for a fee that one not entitled to that fee.

**Respectfully submitted**. This  20th  day of February, 2004.

Tony H. Ashtiani

Pro se, plaintiff