FILED
DISTRICT COURT OF GUAM

APR 23 2004

MARY L. M. MORAN
CLERK OF COURT

203

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

TONY H. ASHTIANI,

    Plaintiff,

       vs.

CONTINENTAL MICRONESIA, INC.,
d/b/a CONTINENTAL MICRONESIA,
and CONTINENTAL AIRLINES, INC.,

    Defendants.

Civil Case No. 02-00032

**ORDER**

Presently before the Court are the following motions: 1) Defendant Continental Micronesia, Inc.'s Motion to Strike Affidavit of Tony H. Ashtiani and Attached Exhibits 1-55, Filed on December 19, 2003, 2) Defendant Continental Micronesia, Inc.'s Motion to Strike Declaration of Tony Ashtiani and Exhibit 56 Filed January 9, 2004, 3) Defendant Continental Micronesia, Inc.'s Motion to Strike All Unauthenticated Evidence Proffered by Ashtiani, 4) Plaintiff's Motion to Strike "Sham" Affidavits and Attached Exhibits by Defendant in Attempt to Obstruct Justice, and 5) Plaintiff's Cross Motion to Strike Defendants' Exhibits. Upon consideration of the lengthy record and the relevant case law, the Court orders as follows:

1

## BACKGROUND

Plaintiff Tony H. Ashtiani ("Plaintiff") brings this action against Defendants Continental Micronesia, Inc. ("CMI"), d/b/a Continental Micronesia, and Continental Airlines, Inc. (collectively, "Defendants"). Plaintiff was an airplane mechanic under Defendants' employ for about 17 years when he was fired on July 3, 2001. In the Second Amended Complaint, filed on May 15, 2003, Plaintiff asserts eight causes of action against Defendants: 1) intentional infliction of emotional distress, 2) negligent supervision, 3) unlawful discrimination based upon race and national origin, 4) intentional discrimination and intentional retaliation post-9/11, 5) violation of Family and Medical Leave Act of 1993 ("FMLA"), 6) constructive termination, 7) wrongful termination, and 8) sales of fraudulent insurance policies by Defendant to employees[1].

On November 21, 2003, Plaintiff filed a Motion for Partial Summary Judgment and Defendants filed a Motion for Summary Judgment. On November 28, 2003, Plaintiff and Defendants filed oppositions. The parties submitted replies on December 5, 2003. The Court heard oral arguments on the motions on December 12, 2003.

In Defendants' reply, filed December 5, 2003, CMI also moves to strike any unauthenticated evidence proffered by Plaintiff, specifically Plaintiff's Opposition Exhibits B through R and T through Y, Plaintiff's Affidavit in Support of Opposition Exhibits B through E, G through K, and N, and Declaration of Kathleen P. Sgambelluri. On December 19, 2003, Plaintiff filed an opposition and a "cross motion" to strike Defendants' Motion for Summary

---

[1] Plaintiff actually phrases this eighth cause of action the following way: "Sales of Fragulanet [sic] Insuarnce [sic] Policies by Defendant to Employees."

2

Judgment Exhibits E, F, J through N, and Q. On December 24, 2003, CMI filed a reply in support of its motion to strike Plaintiff's unauthenticated evidence, an opposition to Plaintiff's cross motion, and a Motion to Strike Affidavit of Tony H. Ashtiani and Attached Exhibits 1-55, Filed on December 19, 2003. On December 31, 2003, Plaintiff, in turn, filed a reply in support of his cross motion to strike, as well as an opposition to CMI's motion to strike Plaintiff's affidavit and attached exhibits 1-55. On January 9, 2004, Plaintiff filed a Motion to Strike "Sham" Affidavits and Attached Exhibits by Defendant in Attempt to Obstruct Justice, to which CMI filed an opposition and Plaintiff a reply. On January 16, 2004, CMI filed a Motion to Strike Declaration of Tony Ashtiani and Exhibit 56 Filed January 9, 2004, to which Plaintiff filed an opposition and CMI a reply. The parties have filed numerous other motions and other pleadings. However, for the purpose of clarity, the Court only presently considers these five motions in the following order: 1) Defendant CMI's Motion to Strike Affidavit of Tony H. Ashtiani and Attached Exhibits 1-55, Filed on December 19, 2003, 2) Defendant CMI's Motion to Strike Declaration of Tony Ashtiani and Exhibit 56 Filed January 9, 2004, 3) Defendant CMI's Motion to Strike All Unauthenticated Evidence Proffered by Ashtiani, 4) Plaintiff's Motion to Strike "Sham" Affidavits and Attached Exhibits by Defendant in Attempt to Obstruct Justice, and 5) Plaintiff's Cross Motion to Strike Defendants' Exhibits, and the respective oppositions and replies thereto.

## DISCUSSION

Both Plaintiff and CMI challenge the admissibility of certain documents offered in support or opposition to summary judgment. In ruling on a summary judgment motion, a court can only consider evidence that is admissible. Orr v. Bank of Am., NT & SA, 285 F.3d 764,

3

773 (9th Cir. 2002) (citing FED. R. CIV. P. 56(e); Beyene v. Coleman Sec. Servs., Inc., 854 F.2d 1179, 1181 (9th Cir. 1988)). A "condition precedent to admissibility" is authentication, which is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). In determining whether evidence is authenticated, "'the papers supporting the movant are closely scrutinized whereas the opponent's are indulgently treated.'" United States ex rel. Austin v. W. Elec. Co., 337 F.2d 568, 574 (9th Cir. 1964) (quoting Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962)).

Since formal defects are waived if no objection is made, the Court only considers below the objections raised against the specified documents. Scharf v. United States Att'y Gen., 597 F.2d 1240, 1243 (9th Cir. 1979); United States v. Dibble, 429 F.2d 598, 603 (9th Cir. 1970) (Wright, J., concurring) ("Inadmissible affidavits are no different from inadmissible evidence. They may be stricken in the discretion of the trial judge, but will support a judgment if he elects to consider them and no objection is made."); Perez v. Alcoa Fujikura, Ltd., 969 F. Supp. 991, 998 (W.D. Tex. 1997) ("uncertified or otherwise inadmissible documents may be considered by the court in ruling on a motion for summary judgment if the documents are not challenged") (citing Jones v. Owens-Corning Fiberglas Corp., 69 F.3d 712, 718 (4th Cir. 1995); Casas Office Mach., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 682 (1st Cir. 1994)).

I.     **Defendant's Motion to Strike Affidavit of Tony H. Ashtiani and Attached Exhibits 1-55, Filed on December 19, 2003, and Defendant's Motion to Strike Declaration of Tony Ashtiani and Exhibit 56 Filed January 9, 2004.**

CMI moves the Court to strike Plaintiff's affidavit and all attached exhibits and the Affidavit of Vince Diaz, filed on December 19, 2003. CMI argues against consideration of the

4

documents because Plaintiff untimely filed them seven days after the hearing on the summary

judgment motions. While Rule 56 allows a party opposing summary judgment to file opposing

affidavits up until the day prior to the hearing, see FED. R. CIV. P. 56(c), "a court may permit

affidavits to be supplemented or opposed by ... further affidavits," FED. R. CIV. P. 56(e). Since

a court may allow a party additional time to correct evidence, the Court accepts for

consideration Plaintiff's December 19, 2003, affidavit and attached exhibits and the Affidavit

of Vince Diaz insofar as they aim to correct evidentiary deficiencies of earlier documents

submitted in opposition to Defendants' motion for summary judgment.[2] See, e.g., Canada v.

Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987) (wherein the district court below

granted the plaintiff a one-year continuance to correct defects in the evidence); Bonneau v.

Clifton, 215 F.R.D. 596, 601 (D. Or. 2003) (allowing the plaintiff to correct deficiencies in

authentication despite motion to strike).

   Here, the Affidavit of Vince Diaz and several of the exhibits attached to Plaintiff's

affidavit are submitted in an apparent attempt to remedy evidentiary defects, whereas Exhibits

5, 7, 10, 13, 15, 17 through 24, 26, 29 through 38, 40 through 47, and 49 through 55, attached

to Plaintiff's affidavit, are either documents never before seen by the Court or re-submissions

of admissible evidence. Thus, the Court will not consider Exhibits 5, 7, 10, 13, 15, 17 through

24, 26, 29 through 38, 40 through 47, and 49 through 55. Accordingly, the Court GRANTS IN

PART CMI's motion as to Exhibits 5, 7, 10, 13, 15, 17 through 24, 26, 29 through 38, 40

through 47, and 49 through 55, and DENIES IN PART CMI's motion as to the remaining

---

[2]This is also appropriate in light of Plaintiff's pro se status.

5

exhibits attached to Plaintiff's Affidavit, and as to the Affidavit of Vince Diaz, filed December 19, 2003.

CMI similarly moves the Court to strike Plaintiff's affidavit and attached Exhibit 56, filed on January 9, 2004. Since the affidavit and exhibit do not aim to correct evidentiary defects of exhibits filed by Plaintiff in opposition to Defendants' summary judgment motion, the Court will not consider these documents. Accordingly, the Court GRANTS CMI's motion.

**II.     Defendants' Motion to Strike All Unauthenticated Evidence Proffered by Ashtiani.**

CMI moves to strike the following documents: 1) Exhibits B through R and T through Y, attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, 2) Exhibits B through E, G through K, and N, attached to Plaintiff's Affidavit in support of his Opposition to Defendants' Motion for Summary Judgment, and 3) Declaration of Kathleen P. Sgambelluri, filed November 28, 2003.

**A.     Exhibits B through R and T through Y, attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment.**

CMI challenges the admissibility of Exhibits B through R and T through Y, attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment. Since these documents are not attached to an affidavit, they need not be authenticated through personal knowledge but can be authenticated in any manner permitted by Federal Rule of Evidence 901(b) or 902. Orr, 285 F.3d at 774. "For instance, documents attached to an exhibit list in a summary judgment motion could be authenticated by review of their contents if they appear to be sufficiently genuine." Id. at 778 n.24 (citing FED. R. EVID. 901(b)(4) (authenticity is satisfied by the "appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in

6

conjunction with circumstances"); United States v. Whitworth, 856 F.2d 1268, 1283 (9th Cir. 1988) (authenticating letters by the linkage between the dates of postmarks and defendant's location on the days letters mailed); United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1284-85 (9th Cir. 1983) (authenticating a diary under Rule 901(b)(4) by reviewing its contents); Alexander Dawson, Inc. v. NLRB, 586 F.2d 1300, 1302 (9th Cir. 1978) (per curiam) ("the content of a document, when considered with the circumstances surrounding its discovery, is an adequate basis for [its authentication]")).

Exhibits B and C are unsworn declarations made by Joe Pangelinan. Exhibits E and N are an unsworn declaration made by Ron Roberts.[3] For declarations or affidavits to be admissible for purposes of summary judgement, they must be based on personal knowledge, they must assert facts that would be admissible in evidence, and they must demonstrate the declarant's or affiant's competence to testify to the facts at issue. FED. R. CIV. P. 56(e). Unsworn declarations must be verified pursuant to 28 U.S.C. § 1746, which requires that the unsworn declaration contain the phrase "under penalty of perjury" and state that the document is "true" or a synonym of true. Kersting v. United States, 865 F. Supp. 669, 676 (D. Haw. 1994) (citing In re Muscatell, 106 B.R. 307, 309 (Bankr. M.D. Fla. 1989); Nissho Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988)). Here, these exhibits, while otherwise in proper form, are deficient in that they do not state that the information contained therein is "true" or a synonym of true. See id. Therefore, the declarations are not properly verified pursuant to 28 U.S.C. § 1746. Thus, the declarations are unauthenticated and will not be

_____

[3]Exhibit N is the same declaration of Ron Roberts previously labeled as Exhibit E. Apparently, Plaintiff mistakenly submitted this declaration twice.

7

1  considered.[4]

2  Exhibit D appears to be an email message from Glenn R. Mendoza ("Mendoza") to
3
4  William A. Herrera ("Herrera"). The plain content and appearance of this document does not
5  reveal sufficient genuineness. Thus, the document is unauthenticated and will not be
6  considered.

7  Exhibit F is an unsworn declaration made by Mark E. Williams. The declaration meets
8
9  the verification requirements of 28 U.S.C. § 1746 because it is made "under penalty of perjury"
10 and states that the information contained therein is "true." See Kersting, 865 F. Supp. at 676.
11 However, CMI argues that the declaration is irrelevant to the legal and factual issues in this
12
13 case. "'Relevant evidence' means evidence having any tendency to make the existence of any
14 fact that is of consequence to the determination of the action more probable or less probable
15 than it would be without the evidence." FED. R. EVID. 401; see also Hess v. Multnomah Cty.,
16 211 F.R.D. 403, 407 (D. Or. 2001). In the declaration, Williams discusses his failed attempt, as
17
18 Plaintiff's then-attorney, to acquire information from Continental Airlines regarding the July 2,
19 2001, meeting between Plaintiff and management at Continental Airlines. Williams also
20 declares that Continental Airlines Human Resources "refused to ... acknowledge [his law]
21
22 office's representation of Mr. Ashtiani." (Pl.'s Opp'n Summ. J. Ex. F.) As a result, Plaintiff
23 claims that Defendants deprived him of his right to have legal representation at the meeting.
24 (Pl.'s Opp'n Summ. J. ¶ 14.) However, Defendants claim that Plaintiff did not want to meet on
25

26

27      [4]Plaintiff resubmitted these unsworn declarations as exhibits attached to Plaintiff's affidavit, filed
       December 19, 2003. However, Plaintiff failed to correct the evidentiary deficiencies. Thus, the declarations
28     remain unauthenticated.

8

July 2, 2001, and that based on the information it had available and based on Plaintiff's unauthorized absences on June 23 and 24, 2001, Plaintiff's employment was terminated. (Defs.' Mot. Summ. J. Ex. C. )  On these facts, the information contained in Williams' declaration is relevant to the reasons underlying Plaintiff's discharge.  Therefore, the Court will consider this declaration.

Exhibit G appears to be a letter written and signed by Plaintiff and addressed to Teresa Sage.  Plaintiff clearly has personal knowledge of a document he wrote and signed.  However, "[i]n a summary judgment motion, documents authenticated through personal knowledge must be 'attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure] 56(e) ....'" Orr, 285 F.3d at 773-74 (quoting Blain's Helicopters, 831 F.2d at 925).  As this letter is not attached to an affidavit, it is not formally authenticated.  However, on December 19, 2003, Plaintiff resubmitted this document, labeling it Exhibit 14, and attached it to his affidavit.  Since "'[a] document can be authenticated [under Rule 901(b)(1)] by a witness who wrote it [or] signed it,'" id. at 774 n.8 (quoting 31 WRIGHT & GOLD, FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 7106, 43 (2000)), the document is authenticated, thus allowing the Court to consider this corrected evidence.

Exhibit H appears to be an email message written by Teresa Sage and addressed to Plaintiff.  The contents of the letter do not indicate sufficient genuineness.  However, on December 19, 2003, Plaintiff resubmitted this document, labeling it Exhibit 16, and attached it to his affidavit.  Since Plaintiff clearly has personal knowledge of correspondence to him, the Court will consider this corrected evidence.  See Hess, 211 F.R.D. at 406 (where, despite a failure to comply with Rule 56, the court exercised its discretion to consider correspondence to

9

the nonmoving party offered by that party as an exhibit, since the letter was "clearly" within the party's personal knowledge).

Exhibit I appears to be an Inter-Departmental Memorandum of CMI. Since the document bears CMI's company logo and the preprinted telephone and fax numbers and email address of the Administrative Specialist at CMI, the contents indicate sufficient genuineness. See FTC v. Hughes, 710 F. Supp. 1520, 1522-23 (N.D. Tex. 1989) (citing Japanese Elec. Prods. Antitrust Litig. v. Matsushita Elec. Indus. Co., 723 F.2d 238, 286 (3d Cir. 1983) (firm logo helps establish authenticity of memoranda); New Orleans Saints v. Griesedieck, 612 F. Supp. 59, 62 (E.D. La. 1985) (use of letterhead form shows that form was made in ordinary course of business, thus authenticating it)). Therefore, this document is authenticated.

Exhibit J appears to be a passage of Title VII of the Civil Rights Act of 1964. Although the bottom left corner of the page reveals website address www.eeoc.gov/laws/vii.html, the contents do not indicate sufficient genuineness since no logos or distinctive characteristics are featured. Therefore, the document is unauthenticated and the Court will not consider it.

Exhibit K appears to be a CMI Absence from Duty Report for Plaintiff. Since the document is dated, bears CMI's company logo, and appears to be a preprinted form, the Court is satisfied with its genuineness. See Hughes, 710 F. Supp. at 1522-23. Therefore, the document is authenticated.

Exhibit L appears to be three CMI Technical Services Division shift logs showing personnel absences. Since the documents are dated, bear CMI's company logo, and appear to be preprinted forms, the Court is satisfied that the documents are genuine. See id. Thus, the documents are authenticated.

10

Exhibit M is an unsworn statement made by Vince Diaz ("Diaz"), an aircraft mechanic at CMI. This statement fails to comply with the verification requirements of 28 U.S.C. § 1746 because it is not executed "under penalty of perjury" and does not state that the information contained therein is "true" or a synonym of true. See Kersting, 865 F. Supp. at 676. Therefore, the document is unauthenticated. However, on December 19, 2003, Plaintiff corrected Diaz's statement by filing an "Affidavit of Vince Diaz." This affidavit is sworn and states that the information therein is "true." Thus, the document has been authenticated. Due to the document's authentication and for reasons to be explained below,[5] the Court will consider this corrected evidence.

Exhibit O is a letter written by Raymond J. Griffin Jr. of the Honolulu Local Office of the U.S. Equal Employment Opportunity Commission, and addressed to "Louid Obdyde." The letter appears sufficiently genuine, as it is dated and displays an EEOC seal and letterhead and preprinted addresses and telephone and fax numbers. See Hughes, 710 F. Supp. at 1522-23. Therefore, the document is authenticated.

Exhibits P and Q are two letters written by Louis Obdyke, a Senior Attorney for Defendant Continental Airlines, and addressed to Raymond Griffin, Jr., of the EEOC. Since the letters are dated and bear Continental Airlines' letterhead and preprinted addresses and telephone and fax numbers, the documents appear sufficiently genuine. See id. Therefore, the documents are authenticated.

Exhibit R is a Patient's Progress Record apparently made by the Guam Adult-Pediatric

---

[5]CMI additionally asserts that the information in this affidavit should not be considered since it constitutes hearsay. However, the Court disagrees.

11

Clinic. The document looks sufficiently genuine since it appears to be a preprinted form containing the clinic's address and telephone number. See Hughes, 710 F. Supp. at 1522-23. Also, the document reveals a Patient Check-In affixation showing a date. Therefore, the document is authenticated.

Exhibit T is a photocopy of excerpts from "§ 825.208." Since Plaintiff fails to indicate the source of the excerpts and the contents do not reveal any distinctive characteristics, the document is unauthenticated.

Exhibit U appears to be a Benefit Confirmation Sheet form employed by CMI. The document appears to indicate Plaintiff's benefit elections and monthly deductions. The document reveals a preprinted chart with column headings such as "Benefit Option," "Benefit Summary," and "Per Month," running across the document. The document identifies Plaintiff, his address, social security number, the station he worked at, Plaintiff's date of hire, and Plaintiff's date of birth. Given these circumstances, the Court is satisfied that the document is sufficiently genuine. FED. R. EVID. 901(b)(4) Thus, it is authenticated.

Exhibit V appears to be a copy of an Application for Accident Insurance under Conversion Privilege, employed by American Home Assurance Company. Apparently, Plaintiff handwrote a request that the Court take note of "enlarged $500,000 in two places," and then compare the document to the faxed version. The document does reveal "$500,000" typed twice in a size larger than the surrounding text. While the document contains elements of genuineness, it does appear that "$500,000" might have been imposed twice onto the preprinted application form. However, the reason Plaintiff submits the document for the Court's review is that Plaintiff claims Defendants altered the application and twice inserted

12

"$500,000" when the original application contained a different dollar amount. Since the document contains American Home Assurance Company's business logo and is a preprinted form, the Court finds the document to be sufficiently genuine. See Hughes, 710 F. Supp. at 1522-23. Thus, the document is authenticated.

Exhibit W appears to be a list of businesses, with their addresses and telephone numbers. Although the document reveals website address www.insurance-y2k.com/teldirectory/brkmanh.html as a possible source of origin, it shows no logos or distinctive symbols, thus indicating insufficient genuineness. Accordingly, the document is unauthenticated and the Court will not consider it.[6]

Exhibit X appears to be a facsimile copy of an Application for Accident Insurance under Conversion Privilege, employed by American Home Assurance Company. This exhibit appears to be a facsimile copy of the same exact document as Exhibit V, except that, instead of showing two enlarged "$500,000" figures, this exhibit shows "$250,000" instead in the same size as the surrounding text. The same reasons Exhibit V above is authenticated apply here.

Exhibit Y appears to be an EEOC press release, entitled "EEOC Issues New Guidance on Discrimination in Employee Benefits." The release appears to be taken from the website www.eeoc.gov/press/10-3-00.html. Since the document contains contact names and telephone numbers, the Court is satisfied that it is sufficiently genuine. Thus, it is authenticated.

---

[6]On December 19, 2003, Plaintiff resubmitted this document, labeling it Exhibit 39, and attached it to his affidavit. However, Plaintiff has failed to prove he has personal knowledge of the document. Thus, the document remains unauthenticated.

13

**B.** **Exhibits B through E, G through K, and N, attached to Plaintiff's Affidavit in support of his Opposition to Defendants' Motion for Summary Judgment.**

CMI challenges the following exhibits attached to Plaintiff's affidavit: Exhibits B through E, G through K, and N. Authentication of a document will not occur through the mere attachment of that document to an affidavit. Dibble, 429 F.2d at 602. If a party, supporting or opposing summary judgment, introduces exhibits by attaching them to affidavits, then the party must authenticate the exhibits through personal knowledge. FED. R. CIV. P. 56(e); Orr, 285 F.3d at 778 n.24. The affiant must be "a witness with personal knowledge of the facts who attests to the identity and due execution of the document and, where appropriate, its delivery." Dibble, 429 F.2d at 602. Also, the affiant must be a person capable of admitting the exhibits into evidence. Blain's Helicopters, 831 F.2d at 925. However, "[w]hen a party opposing summary judgment fails to comply with the formalities of Rule 56, a court may choose to be somewhat lenient in the exercise of its discretion to deal with the deficiency." Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc., 5 F.3d 1255, 1261 (9th Cir. 1993) (citing Scharf v. United States Attorney Gen., 597 F.2d 1240, 1243 (9th Cir. 1979) ("courts generally are much more lenient with the affidavits of a party opposing a summary judgment motion")). Nonetheless, "discretionary leniency does not stretch so far that Rule 56(e) becomes meaningless." Id. (citing Peterson v. United States, 694 F.2d 943, 945 (3d. Cir. 1985) (Rule 56(e) violated by failure to attach key document to affidavit, making summary judgment inappropriate); Blain's Helicopters, 831 F.2d at 925 (summary judgment motion may not be defeated by unauthenticated documents)).

Exhibit B appears to be an excerpt from a publication copyrighted by defense counsel

14

Carlsmith Ball LLP and titled The Pacific Employer. Exhibit C appears to be an excerpt of an article, originating from an unnamed source, which discusses Title VII discrimination and harassment charges filed with the EEOC. CMI argues that these documents are irrelevant to the facts of this case. Since Exhibit B discusses written performance evaluations having no relation to Plaintiff or Defendants, and Exhibit C discusses overall trends in race discrimination at work and EEOC charges, the Court finds the documents irrelevant since they do not "have any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Thus, the exhibits are inadmissible and will not be considered.[7]

Joint Exhibits D purport to be an Absence from Duty Report of a CMI employee named Joby Okada and a December 1999 Swingshift Schedule of Joby Okada. The documents are unauthenticated because Plaintiff lacks personal knowledge of the exhibits, as he did not author or prepare the documents. On December 19, 2003, Plaintiff resubmitted these documents as Exhibits 11 and 12, attached to his affidavit. However, Plaintiff failed to correct the evidentiary deficiencies. Therefore, the documents remain unauthenticated and will not be considered.

Exhibit E appears to be an undated log of employee assignments, purportedly showing that Herrera had assigned Plaintiff to work on two aircrafts by himself and then a third aircraft with a crew. The document is not formally authenticated because Plaintiff neither authored nor prepared the log. However, the Court chooses to treat this evidentiary deficiency leniently

---

[7]Plaintiff resubmitted Exhibits B and C as Exhibits 6 and 28, respectively, attached to Affidavit of Tony H. Ashtiani, filed December 19, 2003, but the documents still remain irrelevant.

since Plaintiff offers the document in opposition to a motion for summary judgment. ACandS, 5 F.3d at 1261. Also, on December 19, 2003, Plaintiff resubmitted this document as Exhibit 48, attached to Plaintiff's affidavit. In the affidavit, Plaintiff claims that the document is a true and correct copy of a shift schedule on June 26, 2001, Plaintiff's last day of work. Plaintiff explains that the document itself appears undated because only the back side of the shift schedule shows the date, and mechanics were only given copies of the front side. (Ashtiani Aff. Dec. 19, 2003, ¶ 51.) Since Plaintiff clearly has personal knowledge of the shifts he was assigned, the Court chooses to consider this exhibit.

Labeled as Exhibits G and J is a letter purportedly penned by Fabian Therell ("Therell") and addressed to Raymond J. Griffin Jr, wherein Therell discusses CMI's sick call procedure and his opinion on CMI's treatment of employees based on their race. Labeled as Exhibit H is also a letter written by Therell, but addressed to Timothy A. Riera, EEOC Director, wherein Therell discusses CMI's policy regarding trade days. CMI argues that the letters present inadmissible hearsay. Since Plaintiff offers these letters to prove the truth of the matter asserted, and no hearsay exceptions are found to be applicable, the letters contain hearsay statements.[8] Yet, regardless of the inclusion of hearsay information, the Court declines to consider these exhibits since the Court, as seen below, looks instead to the Perfect Attendance Rewards Program labeled Exhibit H and to the Affidavit of Vince Diaz for such information. Thus, in addition to their hearsay infirmity, these exhibits are redundant.

Also labeled as Exhibit H is what appears to be a CMI document describing the

---

[8]On December 19, 2003, Plaintiff resubmitted these letters as Exhibits 25 and 9, attached to Plaintiff's affidavit. However, these documents remain uncorrected.

16

company's Perfect Attendance Rewards Program, in which Plaintiff highlights the portions revealing that trade days were "non accountable absences" at CMI. Exhibit I purports to be an unsworn statement by Diaz, which Plaintiff later resubmitted in affidavit form on December 19, 2003. In Diaz's affidavit, he states the practice at CMI whereby non-supervisor mechanics would take sick calls from other employees and states who CMI hired after Plaintiff was discharged. CMI argues that the documents contain hearsay. Since Plaintiff offers the documents to prove the truth of the matter asserted therein and no exceptions to the hearsay rule apply, the information is hearsay. However, even though evidence, such as an affidavit, may be in a form that is inadmissible for trial, a court may consider it for summary judgment purposes so long as the facts underlying the evidence, or affidavit, are of a type that would be admissible at trial. Hughes v. United States, 953 F.2d 531, 543 (9th Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid a summary judgment motion")). Since the facts asserted in both exhibits are of a type that would be admissible at trial, as CMI and Diaz are expected to be available to testify at trial, the Court will consider these documents.

Exhibit K purports to be a CMI Absence from Duty Report of Plaintiff. As Plaintiff does not state that he filled in the report and Plaintiff's signature is not on the document, but rather, "For Employee" appears to be written on the space for Signature of Employee, the document is not formally authenticated. However, in light of the fact that this document is offered in opposition to a summary judgment motion, the Court chooses to exercise its discretion to treat the evidentiary deficiency leniently. ACandS, 5 F.3d at 1261. Plaintiff

17

clearly has personal knowledge of his absence from work. Also, in comparison with Exhibits H and I of Defendants' Motion for Summary Judgment, which are admissible for summary judgment purposes and appear to be Absence from Duty Reports showing Plaintiff's absence from June 11-12, 2001, and June 9-10, 2001, respectively, the Court notes the striking similarity of the penmanship contained therein with the writing contained in the present Exhibit K. Therefore, the contents of the exhibit and the circumstances indicate sufficient genuineness. See Alexander Dawson, 586 F.2d at 1302. Thus, the Court will consider this exhibit.

Exhibit N purports to be a letter authored by Stephen Wm. Martinez to Plaintiff. Because Plaintiff did not author the letter, the document is not authenticated pursuant to Rule 56(e). However, since Plaintiff offers this document in opposition to a summary judgment motion, the Court may look leniently at Plaintiff's evidentiary deficiencies. ACandS, 5 F.3d at 1261. Since Plaintiff clearly has personal knowledge of correspondence to him, such as that shown in Exhibit N, the Court may exercise its discretion to consider this exhibit. See Hess, 211 F.R.D. at 406. However, CMI further argues that the letter is inadmissible hearsay. Since Plaintiff offers the evidence to prove the truth of the matter asserted therein, and no hearsay exception appears applicable, this is hearsay evidence. Nonetheless, the Court finds that the facts underlying this letter–the contents of CMI's records pertaining to Plaintiff's absences–are of the type that would be admissible at trial. See Hughes, 953 F.2d at 543. Thus, the Court will consider the exhibit.

**C. Declaration of Kathleen P. Sgambelluri.**

CMI argues that the Declaration of Kathleen P. Sgambelluri should not be considered because it is irrelevant. As noted earlier, "'[r]elevant evidence' means evidence having any

18

tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. The Court finds this declaration to be completely irrelevant since the information contained therein has no relation to the facts in this case, in that the declarant merely discusses Plaintiff's skill at repairing cars at a car rental company and Plaintiff's good attendance there. Although the declarant states that she has personal knowledge of Plaintiff's mistreatment at CMI, such knowledge is neither demonstrated nor explained. Thus, the declaration adds no value or insight to the case, and so the Court will not consider it.

Accordingly, the Court GRANTS IN PART CMI's motion as to Exhibits B through E, J, N, T, and W, attached to Plaintiff's Opposition, Exhibits B, C, D, G, H (Therell letter), and J, attached to Plaintiff's Affidavit in Support of Opposition, and Declaration of Kathleen P. Sgambelluri, and DENIES IN PART CMI's motion as to Exhibits F through I, K, L, M, O through R, U, V, X, and Y, attached to Plaintiff's Opposition, and Exhibits E, H (Perfect Attendance Rewards Program), I, K, and N, attached to Plaintiff's Affidavit in Support of Opposition.

**III.  Plaintiff's Motion to Strike "Sham" Affidavits and Attached Exhibits by Defendant in Attempt to Obstruct Justice.**

Plaintiff moves the Court to strike the affidavits of Dixon McKinzie ("McKinzie"), Herrera, Mendoza, and Jeanne K. Wilson, as well as Defendants' Exhibits E, F, J through N, and Q. Plaintiff argues that the affidavits are shams since they put forth claims that are contradicted by the evidence. An affidavit given in support or in opposition to summary judgment may be a sham if the information contained therein contradicts earlier deposition

19

testimony. <u>Kennedy v. Allied Mut. Ins. Co.</u>, 952 F.2d 262, 266 (9th Cir. 1991) (stating that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony"). Here, Plaintiff does not claim that the affidavits of McKinzie, Herrera, Mendoza, and Wilson, contradict their earlier deposition testimony, if any. Instead, Plaintiff relies on the affidavit of third-party Diaz and documentary evidence such as shift logs to refute the statements given by the affiants. Thus, the Court need not determine at this time whether the affidavits are shams. Accordingly, Plaintiff's motion is DENIED. As for the attached exhibits E, F, J through N, and Q, the Court addresses the admissibility of these documents below.

**IV. Plaintiff's Cross Motion to Strike Defendants' Exhibits.**

Plaintiff moves to strike Exhibits E, F, J through N, and Q, offered in support of Defendants' Motion for Summary Judgment. All of the challenged exhibits are attached specifically to the Affidavit of Dixon McKinzie. Plaintiff asserts that Defendants' exhibits are inadmissible hearsay. Since Defendants offer the exhibits to prove the truth of the matter asserted therein, the information in the exhibits constitutes hearsay, <u>see</u> FED. R. EVID. 801(c), which is inadmissible, FED. R. EVID. 802. However, Defendants claim that the exhibits are admissible under the business record and present sense impression exceptions to the hearsay rule.

The Court first considers whether the challenged exhibits qualify as business records. "Business records are admissible under Rule 803(6)[9] if the following foundational facts are

---

[9] Rule 803(6) defines a business record as:

A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted

20

proved by a qualified witness: 1) the records were made by a person with knowledge at or near the time of the incident, and 2) the records were kept in the course of regularly-conducted business." Blount v. Conn. Life Ins. Co., No. CV 01-1341-BR, 2002 U.S. Dist. LEXIS 25553, at *10-11 (D. Or. July 2, 2002) (citing United States v. Arias-Villanueva, 998 F.2d 1491, 1503 (9th Cir.), cert. denied, 510 U.S. 1001 (1993)). "A qualified witness is the custodian or preparer of the business records or any other person who understands and has personal knowledge of the business's record-keeping system." Id. at *11 (citing United States v. Ray, 930 F.2d 1368, 1371 (9th Cir. 1991), cert. denied, 498 U.S. 1124 (1991)). Also, the person who made the purported business record must himself be acting in the ordinary course of business, under a duty of accuracy, and with the employer relying on the result. United States v. Pazsint, 703 F.2d 420, 424 (9th Cir. 1983); Palmer v. VECO, Inc., No. 94-35958, 1995 U.S. App. LEXIS 30128, at *3 (9th Cir. Oct. 13, 1995).

Affiant McKinzie is the Director of Human Resources at CMI, and served as such at all times relevant to Plaintiff's Second Amended Complaint. (McKinzie Aff. ¶¶ 2-3.) Although McKinzie did not prepare any of the documents offered as exhibits and does not claim to be a custodian of the documents, he states that he reviewed all of the attached exhibits "in my capacity as the Director ... and thus have personal knowledge of these documents and the information contained therein." (Id. ¶ 2.) However, such a conclusory statement is insufficient

business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the information or the method or circumstances of preparation indicate lack of trustworthiness.

FED. R. EVID. 803(6).

21

1   to establish that McKinzie understands or has knowledge of CMI's record-keeping system. <u>See</u>

2   <u>Blount</u>, 2002 U.S. Dist. LEXIS 25553, at *11. Furthermore, even if McKinzie is a "qualified

3
    witness," he has not shown that the records were kept in the ordinary course of business and
4
5   that it was the regular practice of CMI to make the documents. <u>See id.</u> at *10-11; FED. R. EVID.

6   803(6). Thus, Exhibits E, F, J through N, and Q do not qualify as business records.[10]

7
        The Court now determines whether the challenged exhibits are admissible as present
8
9   sense impressions under Federal Rule of Evidence 803(1)[11]. To qualify as a present sense

10

11      [10]On December 5, 2003, Defendants re-filed Exhibits J through N and Q as attachments to affidavits
    offered in support of their Reply Memorandum in Support of Defendant CMI's Motion for Summary Judgment.
12  Defendants attached Exhibits J and N to the Affidavit of Glenn Mendoza, and Exhibits K through M and Q to the
    Affidavit of William Herrera. However, Defendants failed to correct the evidence, as revealed below:
13      Regarding Exhibits J and N, Mendoza is a qualified witness since he prepared the documents. (Mendoza
    Aff. ¶ 1.) While Mendoza states that the documents are "business records ... that Continental keeps in its ordinary
14  course of business," (<u>id.</u>), simply stating such does not prove the foundational requirement that the document was
    kept in the course of regularly conducted business, <u>see</u> <u>Blount</u>, 2002 U.S. Dist. LEXIS 25553, at *10-11. Also, the
15  claims that CMI kept the exhibits in the ordinary course of business seem highly improbable. Exhibit J is a
    forwarded email message briefly discussing Plaintiff's absences from work. It was written by Mendoza to Herrera
16  and then forwarded to Robbi Crisostomo, of whom the Court has no knowledge. CMI fails to inform the Court
    whether emails such as this are regularly relied upon and kept in the course of regularly conducted business.
17  Exhibit N appears to be a letter or memo by Mendoza, addressed to no one. Dated January 24, 2002, about six
    months after Plaintiff was discharged from employment, the memo discusses Plaintiff's June 2001 absences.
18  Besides CMI's failure to demonstrate a company policy of creating a document detailing the reasons or events
    leading up to a former employee's termination from work several months after the discharge, the fact that the
19  writing was made six months after the events described disqualifies the document as a business record, as it was
    not "made at or near the time" of Plaintiff's absences from work. <u>See</u> FED. R. EVID. 803(6). Therefore,
20  Defendants have failed to prove that Exhibits J and N are admissible under the business records exception to the
21  hearsay rule.
        As for Exhibits K through M and Q, CMI similarly fails to prove that the exhibits are business records
22  and not inadmissible hearsay. Affiant Herrera authored the documents, and, thus, is a qualified witness.
    Nevertheless, Herrera fails to prove that these emails were kept in the course of regularly conducted business, as
23  he, like Mendoza, merely states that the documents are "business records ... that Continental keeps in its ordinary
    course of business." (Herrera Aff. ¶ 1.) Like Exhibits J and N, these exhibits contain email messages and writings
24  addressed to no third party, which discuss Plaintiff's absences. Due to the failure to demonstrate that the
    documents were "kept in the course of a regularly conducted business activity" and that "it was the regular practice
25  of that business activity to make the memorandum, report or data compilation," <u>see</u> FED. R. EVID. 803(6), CMI has
26  likewise failed to prove the admissibility of Exhibits K through M and Q as business records.

27      [11]Rule 803(1) defines a present sense impression as "[a] statement describing or explaining an event or
    condition made while the declarant was perceiving the event or condition, or immediately thereafter." FED. R.
28  EVID. 803(1).

impression, "an out-of-court statement must be nearly contemporaneous with the incident described and made with little chance for reflection." Bemis v. Edwards, 45 F.3d 1369, 1372 (9th Cir. 1995). The declarant must also have personal knowledge of what he describes. Id. at 1373. However, the Court is unconvinced that any of the challenged documents were created at a time "nearly contemporaneous" with the events described therein.[12] Therefore, the documents fail to qualify under the present sense impression exception. Accordingly, the Court GRANTS Plaintiff's motion and will not consider these exhibits.

---

[12]Exhibits E and F are undated CMI Employee Absentee Records detailing Plaintiff's absences from CMI in 2000 and 2001, respectively. Defendants have failed to show that the documents were made nearly contemporaneous to Plaintiff's absences. Exhibit J is a forwarded email message originally written by Mendoza, wherein Plaintiff's absences and failure to call work are discussed. While the original email message is dated June 17, 2001, at 15:15, the message was forwarded on July 2, 2001. Therefore, the June events described in the email are not nearly contemporaneous with the making of the document. Exhibit K shows two email messages written by Herrera. The first is an email message dated June 18, 2001, at 9:32 p.m., which describes Herrera's attempts earlier that day to contact Plaintiff. Since the email was written late at night and Herrera does not state when he last attempted to contact Plaintiff, Defendants have failed to prove that the events described were nearly contemporaneous with the making of the document. The second is an email massage dated June 18, 2001, at 17:29:56, which describes Herrera's attempts earlier that day to contact Plaintiff. Defendants have failed to prove that the events described therein occurred nearly contemporaneously with the making of the statement, as they fail to state when Herrera last tried to contact Plaintiff. Exhibit L contains a series of dated entries made by Herrera. However, the entries fail to indicate the time at which the entries were made or whether the entries were actually made on the dates shown, thus failing to prove near contemporaneity. Exhibit M is a self-addressed email message by Herrera, dated June 19, 2001, at 14:47. In the message, Herrera states that Plaintiff called him at "1107 today" and indicated that he was considering a Leave of Absence request. Apparently, the message was written more than three hours after Plaintiff's call. Thus, there is no near contemporaneity, as Herrera had time to reflect. Exhibit N is a letter written by Mendoza and addressed to no one. Since the letter is dated January 24, 2002, and describes events that occurred in June 2001, there is obviously no near contemporaneity. Exhibit Q is a writing by Herrera, dated June 11, 2001, wherein Plaintiff's refusal of FMLA benefits is discussed. Although Herrera states that he spoke to Plaintiff that morning at "1115 hours," Defendants fail to prove the time the letter was written. Therefore, the Court is not satisfied that the writing was made nearly contemporaneous to or immediately after the events described therein.

23

## CONCLUSION

For all the foregoing reasons, the Court decides as follows:

1. Defendant CMI's Motion to Strike Affidavit of Tony H. Ashtiani and Attached Exhibits 1 through 55, Filed on December 19, 2003, is ORDERED GRANTED IN PART as to Plaintiff's Exhibits 5, 7, 10, 13, 15, 17 through 24, 26, 29 through 38, 40 through 47, and 49 through 55, and DENIED IN PART as to Plaintiff's Exhibits 1 through 4A, 6, 8, 9, 11, 12, 14, 16, 25, 27, 28, 39, and 48, and as to the Affidavit of Vince Diaz,

2. Defendant CMI's Motion to Strike Declaration of Tony Ashtiani and Exhibit 56 Filed January 9, 2004, is ORDERED GRANTED,

3. Defendant CMI's Motion to Strike All Unauthenticated Evidence Proffered by Ashtiani is ORDERED GRANTED IN PART as to Exhibits B through E, J, N, T, and W, attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, Exhibits B, C, D, G, H (Therell letter), and J, attached to Plaintiff's Affidavit in Support of Opposition to Defendants' Motion for Summary Judgment, and Declaration of Kathleen P. Sgambelluri, and DENIED IN PART as to Exhibits F through I, K, L, M, O through R, U, V, X, and Y, attached to Plaintiff's Opposition to Defendants' Motion for Summary Judgment, and Exhibits E, H (Perfect Attendance Rewards Program), I, K, and N, attached to Plaintiff's Affidavit in Support of Opposition to Defendants' Motion for Summary Judgment,

4. Plaintiff's Motion to Strike "Sham" Affidavits and Attached Exhibits by

24

Defendant in Attempt to Obstruct Justice is ORDERED DENIED, and

5.    Plaintiff's Cross Motion to Strike Defendants' Exhibits is ORDERED

GRANTED.

IT IS SO ORDERED this 22nd day of April, 2004.

JOHN S. UNPINGCO
Chief Judge, District Court of Guam

Notice is hereby given that this document was
entered on the docket on 04/24/04          .
No separate notice of entry on the docket will
be issued by this Court.
        Mary L. M. Moran
        Clerk, District Court of Guam

By: _____    04/24/04
    Deputy Clerk          Date

25