

**UNITED STATES DISTRICT COURT OF GUAM
TERRITORY OF GUAM**

| | |
|---|---|
| TONY H. ASHTIANI, <br><br> Plaintiff, <br><br> v. <br><br> CONTINENTAL MICRONESIA INC., dba CONTINENTAL MICRONESIA, and CONTINENTAL AIRLINES, INC., <br><br> Defendants. | CV 02-00032 <br><br> **ORDER** |

This matter comes before the Court pursuant to Magistrate Judge Manibusan's Order setting a hearing date before the Court for September 1, 2004. As this order meant for the matter to be heard by the Federal District Court Judge, Defendants' objections to Magistrate Manibusan hearing the matter are obviated.

As a preliminary matter, this Court finds that the oral

1

arguments conducted on December 12, 2003 before Judge Unpingco are sufficient and no further oral arguments required. As such, Defendants' request to have a written order submitted is **GRANTED**. The hearing date set for September 1, 2004 is hereby **VACATED**.

## I. BACKGROUND

This case deals with the termination of Tony Ashtiani, a former airplane mechanic, from Defendants' Continental Micronesia, Inc. ("CMI"), d/b/a Continental Micronesia, and Continental Airlines, Inc. (collectively "Defendants") employ. On July 3, 2001, Defendants terminated Plaintiff Tony Ashtiani ("Plaintiff" or "Ashtiani") for violating Continental's attendance policy by failing to report to work for two consecutive days, and not calling in to his supervisor. Plaintiff asserts eight causes of action related to his claims of wrongful termination, discrimination and unlawful practices by CMI.

On May 15, 2003, Ashtiani filed a Second Amended Complaint ("SAC") asserting: (1) intentional infliction of emotional distress; (2) negligent supervision; (3) unlawful discrimination based upon race and national origin; (4) intentional discrimination and intentional retaliation post-9/11; (5) violation of Family and Medical Leave Act of 1993 ("FMLA"); (6) constructive termination; (7) wrongful termination; and (8) sales of fraudulent insurance policies

by Defendant to employees[1].

On November 21, 2003, Plaintiff filed a Motion for Partial Summary Judgment as to six of the causes of action (all but No. 5 and No. 8) and Defendants filed a Motion for Summary Judgment on all eight causes of action. Both parties filed oppositions on November 28, 2003 and replies on December 5, 2003. The Court heard oral arguments on these motions on December 12, 2003.[2] Despite having heard oral arguments, however, the Court never issued an Order. Therefore, these two summary judgment motions are currently before the Court.

Also before the Court is the balance of Plaintiff and Defendants' motions and cross-motions to strike documents such as affidavits/declarations and exhibits. The Court issued an Order on five of these motions on April 23, 2004. A sixth motion to strike was denied on April 28, 2004.

Having considered all papers and argument in the matter, the Court hereby finds and orders as follows:

---

[1] Plaintiff actually phrases this eighth cause of action in the following way: "Sales of Fragulanet [sic] Insuarnce [sic] Policies by Defendant to Employees." (See S. Am. Compl. at 16; see also Pl.'s Opp'n at 18.) Defendants and this Court assume that, instead of "fragulanet," Plaintiff means to say "fraudulent," and, instead of "insuarnce," he means to say "insurance." (See, e.g., Defs.' Mot. at 18.)

[2] Judge Unpingco heard these motions, but never issued a ruling.

## II. ANALYSIS

### A. Summary Judgment Motions

For a party seeking summary judgment to succeed, he must show that there exists "no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). Whether a fact is material is determined by the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the fact might affect the outcome, then it is material. Id. If a party moves for summary judgment on a claim or defense upon which it bears the burden of proof at trial, it must satisfy its burden by offering affirmative, admissible evidence. But, when the non-moving party has the burden of proving the claim or defense, the movant can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The movant is not required to disprove the other party's case. Khachikian v. Devry Inst. of Tech., No. CV 01-05935 NM, 2002 U.S. Dist. LEXIS 3216, at *13 (C.D. Cal. Jan. 14, 2002) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986)).

If the movant meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a

4

genuine issue for trial." FED. R. CIV. P. 56(e). When evaluating whether the non-movant's assertions raise a genuine issue, the court must believe the non-movant's evidence and draw all justifiable inferences in the non-movant's favor. Anderson, 477 U.S. at 255.

Here, the Court finds that there is no genuine issue of disputed fact as to the causes of action. As such, the Court can proceed with determining the summary judgment motions.

### 1. Intentional Infliction of Emotional Distress

"Intentional infliction of emotional distress by extreme or outrageous conduct requires 'conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" Abuan v. Gen. Elec. Co., No. 89-00031, 1992 U.S. Dist. LEXIS 8334, at *13 (D. Guam Feb. 25, 1992) (quoting W. PAGE KEETON ET AL., PROSSER & KEETON ON THE LAW OF TORTS § 12, at 60-64 (5th ed. 1984)). Most cases require actual physical injury, but some courts allow recovery "'if the enormity of the outrage itself carries conviction that there has in fact been severe and serious mental distress, which is neither feigned nor trivial.'" Id. at *13-14 (quoting KEETON, supra, § 12, at 64)). Generally, headaches, insomnia, anxiety, and irritability are not "severe" enough injuries to support a cause of action for intentional infliction of emotional

5

distress. Id. (citing Standard Wire & Cable Co. v. Ameri-Trust Corp., 697 F. Supp. 368 (C.D. Cal. 1988)).

Plaintiff claims that Defendants "negligently" created a "hostile work environment for an employee through verbal abuse, imposition of totally unreasonable job assignments, requirements, refusing to investigate Plaintiff's complaints in any meaningful manner ...." (SAC ¶ 21.) However, these acts by Defendants do not amount to outrageous conduct. Also, Plaintiffs may allege that Defendants' discrimination caused him to suffer severe emotional distress. But, some courts have declined to recognize claims for intentional infliction of emotional distress when the employer's conduct causing such emotional distress also forms the basis for a discrimination claim. See, e.g., Hansen v. City of Seattle, No. C98-41WD, 1999 U.S. Dist. LEXIS 6665, at *13 (W.D. Wash. Jan. 25, 1999) (stating that "[a] claim for emotional distress is not cognizable when the only factual basis for the emotional distress claim is also the basis for a discrimination claim"). Accordingly, the Court **DENIES** Plaintiff's motion for partial summary judgment on this claim and **GRANTS** Defendants' motion for summary judgment on this claim.[3]

---

[3] This Court has previously held that the exclusivity provisions of Guam's Worker's Compensation Law, 22 GUAM CODE ANN. § 9106, preclude recovery under tort action for intentional infliction of emotional distress by an employee against an employer for any injury arising out of and in the course of employment. Tolentino v.

6

## 2. Negligent Supervision

"To state a claim for negligent supervision, a plaintiff must allege that: (1) an employer had a duty to supervise its employees; (2) the employer negligently supervised an employee; and (3) such negligence proximately caused the plaintiff's injuries." Ofoma v. Armour, No. 97 C 6420, 1998 U.S. Dist. LEXIS 11052, at *10 (N.D. Ill. June 22, 1998).

Plaintiff asserts that this claim "arises from many cover-ups, which occurred, between Maintenance supervisors, which will be proven during the trial. Defendant Continental knew, or reasonably should have known, that Maintenance supervisors were engaging in the unlawful behavior described herein and above." (SAC ¶ 23,26.)

Plaintiff also alleges that CMI knew or should have known that "Mr. Hammer was not fit to act as the grievance officer to hear, investigate, and remedy complaints in wrongful termination [and] harassment in the work place

---

Greenhill, Inc., No. 00-00001, at *8 (D. Guam Apr. 10, 2001). However, in Shelly, the Superior Court of Guam allowed a claim for intentional infliction of emotional distress by an employee, or former employee, against an employer, or former employer. No. CV1373-95, at 3-5. Shelly also stated that Guam's Worker's Compensation Law does not preclude recovery for "'a claim for emotional and psychological damage, arising out of employment ... where the distress is engendered by an employer's illegal discriminatory practices.'" Id. at 7 (quoting Accardi v. Super. Ct., 21 Cal. Rptr. 292, 298 (1993)). Although these holdings contradict each other, the Court need not explore the issue since Plaintiff cannot establish a prima facie case.

7

...." (Id. ¶ 24.) Plaintiff's claim appears to center on allegations that employees of Defendants' acted negligently by doing things such as assigning Plaintiff to carry heavy objects. Plaintiff asserts that Defendants, as employers, had a duty to supervise their employees to ensure that they reasonably carried out their duties. Plaintiff, however, offers no evidence that Defendants negligently supervised their employees. Rather, Plaintiff only points to evidence that employees themselves may have acted negligently. Accordingly, the Court finds that Plaintiff fails to establish a prima facie case of negligent supervision. Therefore, the Court **DENIES** Plaintiff's motion for partial summary judgment on this claim and **GRANTS** Defendants' motion for summary judgment on this claim.[4]

### 3. Unlawful Discrimination Based Upon Race And National Origin

---

[4] Defendants also argue that Guam's Worker's Compensation statute covers injuries by employers, including those that give rise to a claim of negligent supervision. (Defs.' Mot. at 9.) Guam's Worker's Compensation covers any "personal injury by accident arising out of and in the course of ... employment...." 22 GUAM CODE ANN. § 9104 (2003). Employer liability under this statute is "exclusive and in place of all other liability of such employer to the employee...." 22 GUAM CODE ANN. § 9106 (2003). However, in Shelly v. Cont'l Micronesia, Inc., the Superior Court of Guam allowed a claim for negligent supervision by an employee, or former employee, against an employer, or former employer. No. CV1373-95, at 11-13 (Sup. Ct. Guam Sept. 17, 1997). Therefore, it is unclear whether Guam's Worker's Compensation Law bars this claim. Nevertheless, because Plaintiff has failed to demonstrate a prima facie case, the Court need not decide this issue.

The Ninth Circuit "has set a high standard for the granting of summary judgment in employment discrimination cases." Schnidrig v. Columbia Mach., Inc., 80 F.3d 1406 (9th Cir. 1996). When a plaintiff "seeks to establish a prima facie case [of discrimination] through the submission of actual evidence, very little such evidence is necessary to raise a genuine issue of fact regarding an employer's motive; any indication of discriminatory motive ... may suffice to raise a question that can only be resolved by a fact finder." Lowe v. City of Monrovia, 775 F.2d 998, 1009 (9th Cir. 1985).

For a plaintiff to win a Title VII claim of disparate treatment, he must first demonstrate a prima facie case by offering evidence that "give[s] rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981). For discrimination claims, a plaintiff must show that: (1) he is a member of a protected class; (2) he was terminated from a job for which he was qualified or was subjected to an adverse employment action; and (3) others not in his protected class received more favorable treatment. Despanie v. Henderson, No. C 00-3028 CRB, 2001 U.S. Dist. LEXIS 2572, at *8 (N.D. Cal. Mar. 5, 2001). After establishing a prima facie case, the burden shifts to the employer to present legitimate reasons for the adverse employment decision. Brooks v. City of San Mateo, 229 F.3d

917, 928 (9th Cir. 1999). If the employer succeeds in carrying this burden, then the burden shifts back to the plaintiff to show that a genuine issue of material fact exists as to whether the employer's purported reason was pretext. See Bradley v. Harcourt Brace & Co., 104 F.3d 267, 270 (9th Cir. 1996). Pretext is defined as requiring plaintiff to prove employer's reason(s) false and intentional discrimination to be the real reason for discharge. Saint Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515-16 (1993).

The Court finds that Plaintiff meets the first prong for a prima facie case for discrimination, because he is Iranian. As for the second prong, it is undisputed that plaintiff was terminated. It is, however, disputed as to whether Plaintiff was qualified for his job as an aircraft mechanic. Plaintiff offers two letters and an affidavit commending his work performance. (Pl.'s Reply ¶ 31 & Ex. O.) These letters, however, date back to 1994 and 1997 (four years prior to Ashtiani's termination). As for the third prong, Plaintiff argues that others, not in Plaintiff's protected class, were treated more favorably. Plaintiff asserts that at least three others "of different race and nationality" also technically violated Defendants' attendance policy, but that they were not discharged. (Pl.'s Mot. ¶ 23.) As the standard for a prima facie case is very low, Plaintiff meets this standard and the burden

then shifts to the Defendants.

The Court finds Defendants meet their burden by contending that Plaintiff's termination resulted from his violation of Defendant CMI's attendance policy. Plaintiff allegedly violated the policy on June 23 and 24, 2001, when Plaintiff did not appear for work and did not call a supervisor to notify the company of his absence those days and to obtain approval. (Defs.' Mot. at 3-4.) Defendants argue that this put Plaintiff in the last stage of discipline, resulting in termination. When Plaintiff failed to attend a meeting on July 2, 2001, to explain his absences, "Continental then terminated Ashtiani on July 3, 2001, for his no-shows on June 23 and 24, 2001." (Id.) As Defendants met their burden, the burden then shifts back to the Plaintiff.

Plaintiff argues that this reason is pretext because others, not of Plaintiff's protected class (Middle Eastern or Iranian), also did not personally notify a supervisor of their absence. (Pl.'s Mot. ¶ 23.) However, of these employees who did not personally notify a supervisor of an absence, Plaintiff states that he was the only one who was discharged. (Id. ¶ 24.) Also, Plaintiff claims that he did actually call the company, and he did notify the recipient of his telephone call that he would not be present at work on June 23 and 24, 2001. Plaintiff further claims that the recipient of his call then notified a supervisor of

11

Plaintiff's absence. (Id. ¶ 8 & Exs. B & C.) Additionally, Plaintiff offers proof that it was commonly accepted by employees that they could notify a non-supervisor of absences, and that non-supervisor would relay the message to a supervisor. (Pl.'s Opp'n Aff. ¶ 13 & Ex. I.)

In addition, Plaintiff refutes Defendants' further justification for firing him-his absence from the July 2, 2001, meeting-by offering proof that three days before the meeting, Defendants had already started to prepare Plaintiff's "final paycheck." (Pl.'s Mot. ¶ 15 & Ex. I.) Thus, Plaintiff says, the July 2 meeting was a "staged theatre." (Id. ¶ 15.) Plaintiff also states that he and his former attorney tried to obtain information regarding the purpose of the meeting, but Defendants refused to inform them. (Pl.'s Mot. ¶¶ 12-14 & Exs. F, G, & H.) Furthermore, Plaintiff offers proof of discrimination in his claim that a supervisor stated "that after the recent event of 9-11, 'That Tony Ashtiani would never work around these aircraft again if he could do anything about it. Because he could not trust people like Mr. Ashtiani.'" (Id. ¶ 30 & Ex. N.) Finally, Plaintiff offers evidence that CMI engaged in a cover-up through the declaration of a CMI employee who reviewed Ashtiani's records and stated that the "difference between [Defendant CMI's] various documents is highly unusual, and causes one to wonder if the 10/30/01 P-138 was to try to make records agree with the termination letter,

12

rather than reflect the actual reason for absence." (Pl.'s Opp'n Aff. Ex. N.)

Despite such proffered evidence, the Court finds that the only proof of pretext offered by Plaintiff is the anti-Iranian statement made by a supervisor. That statement, however, was made after the events of 9/11 (September 11, 2001) which was more than two months after Plaintiff was discharged. As a result, it fails to meet the burden for pretext. Accordingly, the Court **DENIES** Plaintiff's motion for partial summary judgment on this claim and **GRANTS** Defendants' motion for summary judgment on this claim.

### 4. Intentional Discrimination, Intentional Retaliation Post 9/11

Since Plaintiff already raises a Title VII employment discrimination claim, the Court limits this cause of action to retaliation. A party claiming retaliation must show that (1) he engaged in activity or opposition protected by Title VII of the Civil Rights Act of 1964, (2) his employer subjected him to an adverse employment decision, and (3) a causal link existed between the protected activity and the employment decision. Folkerson v. Circus Circus Enters., Inc., 107 F.3d 754, 755-56 (9th Cir. 1997); 42 U.S.C. § 2000e-3(a) (2003).

To support this retaliation claim, Plaintiff points to alleged cover-ups by Defendants. For instance, Plaintiff claims that on July 10, 2002, "[D]efendants concealed
13

crucial information, and statistical data in reference to number of terminated employees, all minorities, by shifting months, and not responsive to EEOC requests of specific months in question." (Pl.'s Mot. ¶ 34.) However, these alleged retaliatory acts occurred after Defendants had already terminated Plaintiff's employment. In fact, Plaintiff words this claim as "Retaliation Post-9/11," which the Court infers to mean post-September 11, 2001, a date more than two months after Plaintiff was discharged. Therefore, the factual basis for this claim concerns alleged acts by Defendants directed to a former employee, and cannot constitute adverse employment action. Accordingly, the Court **DENIES** Plaintiff's motion for partial summary judgment on this claim and **GRANTS** Defendants' motion for summary judgment on this claim.

### 5. Family and Medical Leave Act of 1993

The Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., "entitle[s] employees to take reasonable leave ... for the care of a child ... who has a serious health condition ..." 29 U.S.C. § 2601(b)(2). An employer shall not "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title [29 U.S.C.S. §§ 2611 et seq.]." 29 U.S.C. § 2615(a)(1). Further, an employer shall not "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this title." 29 U.S.C. §

14

2615(a)(2). FMLA benefits are available only to an "eligible employee," which means an employee who, during the previous 12-month period, has been employed for at least 1,250 hours of service with his employer. 29 U.S.C. § 2611(2)(A)(ii).[5]

Only Defendants move for summary judgment on this claim, arguing that Plaintiff does not qualify for FMLA benefits because he is not an "eligible employee" since he only worked about 800 hours[6] during the period of June 27, 2000, to June 27, 2001, (Defs.' Mot. at 14), and so failed to meet the 1,250-hour requirement.[7] To prove this contention, Defendants offer for the Court's review

---

[5] To determine whether the employee has been employed for 1,250 hours of service, the legal standards of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 207, are to be applied. 29 U.S.C. § 2611(2)(C). Under FLSA, only the hours actually worked by the employee are considered. Rockwell v. Mack Trucks, Inc., 8 F. Supp. 2d 499, 502 (D. Md. 1998). Neither paid leave, e.g., for vacation, holiday, or illness, nor unpaid leave are credited to the 1,250 hours total. Robbins v. Bureau of Nat'l Affairs, Inc., 896 F. Supp. 18, 21 (D. D.C. 1995).

[6] Defendants argue that Plaintiff only worked 80 days-equivalent to 800 hours of service-during the relevant 12-month period. (Defs.' Mot. at 14.)

[7] Defendants also assert three additional reasons Plaintiff is not entitled to FMLA benefits: (1) Plaintiff failed to provide proper certification of his son's illness due to the absence therein of information pertaining to the start of the illness, the duration of the illness, and the length of time necessary for Plaintiff to care for his ailing son, (Defs.' Mot. at 13 & Ex. P); (2) Plaintiff's son did not suffer from a "serious health condition," but was instead "asymptomatic," (id.); and (3) Plaintiff untimely submitted the certification to Defendants because Defendants received it on July 10, 2001, one week after Plaintiff lost his job (Id. at 13-14).

15

Plaintiff's absentee records for the years 2000 and 2001. (Id. Exs. E & F.) But, the information contained therein is difficult to decipher, as not all letter codes used on the calendars, particularly "D," a check mark, and what appears to read as "FTR," are explained in the code key. Also, Defendants claim that Plaintiff worked 61 days in 2001, yet none of the codes utilized individually amount to 61, which adds more uncertainty as to what code signifies a day Plaintiff actually attended work. Therefore, Defendants' evidence showing ineligibility fails to convince.

Although Defendants have failed to prove that Plaintiff was not an "eligible employee," the burden rests upon Plaintiff to prove his eligibility to FMLA benefits. See Rockwell, 8 F. Supp. 2d at 502. However, Plaintiff offers no proof that he worked the requisite number of hours for FMLA eligibility. Therefore, the Court finds that Plaintiff has failed to demonstrate a prima facie case satisfying FMLA. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment on this claim.

### 6. Constructive Termination

To survive summary judgment on a constructive termination claim, the non-moving party "must show a triable issue of fact as to whether 'a reasonable person in [his] position would have felt that [he] was forced to quit because of intolerable and discriminatory working conditions.'" Bergene v. Salt River Project Agric.

Case 1:02-cv-00032   Document 241   Filed 08/30/2004   Page 16 of 20

Improvement & Power Dist., 272 F.3d 1136, 1143-44 (9th Cir. 2001) (quoting Steiner v. Showboat Operating Co., 25 F.3d 1459, 1465 (9th Cir. 1994)).

Plaintiff has failed to make such a showing since Plaintiff did not quit or resign from employment but was actually terminated by Defendants. (See, e.g., SAC ¶ 14.) Therefore, the Court **DENIES** Plaintiff's motion for partial summary judgment on this claim and **GRANTS** Defendants' motion for summary judgment on this claim.

### 7. Wrongful Termination

Plaintiff appears to state a claim of wrongful termination in violation of the duty of good faith and fair dealing, by citing to California cases raising such a claim. (See Pl.'s Mot. ¶ 20; Pl.'s Opp'n ¶ 22 (citing Cleary v. Am. Airlines, 111 Cal. App. 3d 443 (Cal. Ct. App. 1980); Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 580 (Cal. 1973)).) In Flores v. Hawaiian Rock Prods. Guam, however, the Superior Court of Guam held that Guam "does not recognize claims for breach of the covenant of good faith and fair dealing in the employment context ...." No. CV8120-02, at 10 (Super. Ct. Guam Aug. 8, 2003). Nonetheless, Guam does recognize a claim for wrongful termination in violation of public policy. See Flores, No. CV812-02, at 5-6. If, however, the public policy violated deals with the FMLA, then Plaintiff's claim is be denied, because FMLA provides an adequate remedy. See Cavin v.

17

Case 1:02-cv-00032    Document 241    Filed 08/30/2004    Page 17 of 20

Honda of Am. Mfg., Inc., No. 02-3357, 2003 U.S. App. LEXIS 20722, at *37-38 (6th Cir. Oct. 10, 2003). Therefore, the Court **DENIES** Plaintiff's motion for partial summary judgment on this claim and **GRANTS** Defendants' motion for summary judgment on this claim.

### 8. Sales of Fraudulent Insurance Policy

For Plaintiff to succeed on a claim of fraud, he must show: "1) a misrepresentation; 2) knowledge of falsity (or scienter); 3) intent to defraud to induce reliance; 4) justifiable reliance; [and] 5) resulting damages." Trans Pac. Exp. Co. v. Oka Towers Corp., 2000 Guam 3, 16 (2000) (citing Milne Employees Ass'n v. Sun Carriers, 960 F.2d 1401 (9th Cir. 1991)).

Only Defendants move for summary judgment on this claim. In opposition to Defendants' motion and in support of this claim, Plaintiff argues that Defendants' Human Resources benefit department doctored an application form for converting his employee insurance into an individual insurance policy. (Pl.'s Opp'n ¶¶ 50-52.) Defendants allegedly changed the amount stated in the application form from $250,000 to $500,000, in order to match Plaintiff's $500,000 employee insurance policy. (Id. ¶ 52 & Exs. V & X.) Plaintiff also claims that the insurance policy offered by Defendants is not valid in Guam. (Id. ¶ 52.) Furthermore, Plaintiff contends that he and the families of deceased Guamanian/Pacific Island employees were "deprived

18

of their benefits and being discriminated by the wealthy corporation such as defendants," as Defendants "put the money right in their pocket books as additional profit in the corporation ...." (Pl.'s Opp'n ¶ 54.)

In contrast, Defendants defend the validity of the insurance policy it offered to Plaintiff and to all Continental employees, and argue that, if the policy is invalid, Defendants lacked knowledge of its invalidity, "as the policy is ultimately issued and handled by AIG [the carrier], not Continental. Continental simply acts as an intermediary in offering the policy and plan to its employees." (Defs.' Mot. at 14.) Defendants also furnish a supporting affidavit and letter defending the validity of the insurance policy as held by Defendants' Guam subscribers and noting that a $500,000 employee policy may be converted into an individual insurance policy. (Defs.' Mot. at 5 & Ex. R.)

Based on such proffered evidence, the Court finds that Plaintiff fails to establish a prima facie case, since he cannot, with the facts offered, demonstrate the elements of misrepresentation, knowledge of falsity, intent to defraud to induce reliance, and resulting damages. Therefore, the Court **GRANTS** Defendants' motion for summary judgment on this claim.

B. **Motions and Cross-Motions to Strike**

As this case has been disposed of in its entirety, this

Court **DENIES** as moot the balance of motions and cross-motions to strike evidence.

**IT IS SO ORDERED.**

_____
**RONALD S.W. LEW**[8]
Designated District Judge

DATED: August 27, 2004

Notice is hereby given that this document was entered on the docket on AUG 3 0 2004.
No separate notice of entry on the docket will be issued by this Court.
Mary L. M. Moran
Clerk, District Court of Guam
By: _____ AUG 3 0 2004
Deputy Clerk    Date

---

[8] The Honorable Ronald S.W. Lew, United States District Judge for the Central District of California, sitting by designation.

20